UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-cv-22343

JORGE MONTEAGUDO ALBURQUERQUE

    Plaintiff,

v.

THE DE MOYA GROUP, INC.,

a Florida Profit Corporation,

    Defendant.

_____/

**<u>DEFENDANT, THE DE MOYA GROUP, INC.'S MOTION FOR FINAL SUMMARY
JUDGMENT AND SUPPORTING MEMORANDUM OF LAW</u>**

Pursuant to Federal Rule of Civil Procedure 56(c) and United States District Court for the Southern District of Florida Local Rule 7.5, Defendant, The De Moya Group, Inc. ("De Moya"), moves this Court for entry of an order granting final summary judgment and dismissing Plaintiff, Jorge Monteagudo Alburquerque's retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"), and, in support states as follows:

**INTRODUCTION**

After he was terminated for sleeping on a roller, Plaintiff, a Cuban man, brought this employment discrimination suit[1] against De Moya, a company founded by Cubans, owned by Cubans, and managed by Cubans. Plaintiff claims that De Moya retaliated against him based on his Cuban ethnicity because he complained about his Cuban supervisor's purported "disrespect." Title VII is not meant to deal with such petty workplace slights. *Kavanaugh v. Miami-Dade Cnty.*, 775 F. Supp. 2d 1361, 1367 (S.D. Fla. 2011). There is no basis in the record for a rational trier of

---

[1] Plaintiff's first amended complaint makes passing references to disparate treatment, however, it only asserts two retaliation counts, one under the FCRA and one under Title VII.

fact to find that Plaintiff was subject to a retaliatory discharge. All that the record evidence in this case establishes is that Plaintiff is a former employee with a history of poor work performance who felt disrespected by one of his supervisors. Plaintiff's petty workplace grievances are not a basis for a Title VII lawsuit. *See Hamilton v. Sikorsky Aircraft Corp.*, 9:17-CV-80289, 2018 WL 10704410, at *11 (S.D. Fla. Mar. 6, 2018), *aff'd*, 760 Fed. Appx. 872 (11th Cir. 2019). Summary judgment is proper because Plaintiff has failed to present any evidence to establish that his complaints were protected activity under Title VII or the FCRA, or that there is any causal connection between his termination and his complaints. Moreover, Plaintiff has not, and cannot, proffer any evidence to rebut De Moya's legitimate, non-retaliatory reasons for his termination. Accordingly, De Moya is entitled to final summary judgment as a matter of law.

**I.    BACKGROUND**

Plaintiff is a white Cuban male who worked as a laborer with De Moya from August 2019 until he was terminated on October 7, 2020.[2] (Def. 56.1 ¶¶ 7, 8, 38). De Moya is comprised of a group of companies that handle bridge and roadway construction projects. (*Id.* ¶ 2). The company was founded in 1986 by the De Moya family who originated from Cuba. (*Id.* ¶ 1). The individuals who work at De Moya's road construction sites are different races and nationalities, including white, Black, Hispanic, and South American. (*See id.* ¶ 3). De Moya has a zero-tolerance discrimination policy. (*Id.* ¶ 4). All De Moya employees are required to read the company's policies, which include safety policies, discrimination policies, and drug-free workplace policies. (*Id.* ¶¶ 5, 6).

When Plaintiff started at De Moya, his immediate supervisor was Noel Leon, who is Cuban. (*Id.* ¶ 9). Leon supervised Plaintiff at De Moya for approximately six to seven months. (*Id.*). Plaintiff has alleged that Leon was "disrespectful" to him and spoke to Plaintiff "in a

---

[2] Reference to De Moya's Statement of Material Facts shall be designated at Def. 56.1.

condescending tone." (ECF No. 13, ¶ 18). On September 4, 2020, Plaintiff went to De Moya's main office in Tamiami to complain to the company's vice president of field operations, Chris De Moya, about Leon. (Def. 56.1 ¶ 10). During this meeting, Plaintiff was speaking loudly, being disrespectful towards Chris De Moya, and even pointed his finger at Mr. De Moya's chest. (*Id.* ¶ 18).

Chris De Moya, Plaintiff, and De Moya's administrative assistant, Susan Giraldo, were the only individuals present for this meeting. (*Id.* ¶ 11). Ms. Giraldo was present to help translate between Plaintiff and C. De Moya. (*Id.*). According to Chris De Moya and Ms. Giraldo, Plaintiff never complained about discrimination during the September 4, 2020 meeting. (*Id.* ¶ 16, 17). The only issue Plaintiff repeatedly complained about was feeling disrespected and insisting that Chris De Moya reassign him to another supervisor and work site. (*Id.* ¶ 17).

During his first deposition,[3] Plaintiff described the nature of his complaints made to Mr. De Moya about Leon as follows:

> Q: And that's when you told them that you thought that Mr. De Moya had a bad attitude and treated you with a lack of respect?
>
> A: Let me explain it to you. *The lack of respect happened one day and he never asked to – he never apologized to anything.* I tried to leave it at that not to lose my job. But once, on a certain day, he told me that I had to go to 874. I explained to him that one of my tires was in bad condition and that I couldn't get on the expressway and asked if he had someone else that he could send. He responded no, that it had to be myself. That if I didn't go, I would be fired – I was fired. I went to that place and during the break I explained to him everything that had happened, everything that was happening and I asked him to change me to a different project.

---

[3] Plaintiff was first deposed on October 19, 2022, however, the deposition had to end prematurely, and was continued on November 17, 2022. (*Id.* ¶ 7).

(*Id.* ¶ 12). Notably, Plaintiff's initial testimony was only that Leon disrespected him. It was not until his second deposition, that Plaintiff testified that Leon allegedly discriminated against Plaintiff because he is Cuban and does not speak English. (*Id.* ¶ 14). It is undisputed that Leon was born in Havana, Cuba. (*Id.* ¶ 15). He and Plaintiff came from neighboring villages in Cuba. (*Id.*). Leon admittedly speaks English "very badly." (*Id.*) He only knows "the basic" or what is "necessary to be able to communicate." (*Id.*). Other than Plaintiff's shifting testimony, there is no evidence to support Noel ever made any discriminatory statements about Cubans.

Shortly after the September 4, 2020 meeting, Mr. De Moya reassigned Plaintiff to another work site which was supervised by Manuel Comes, who is also Cuban. (*Id.* ¶¶ 24, 25). Plaintiff worked under Comes until he was terminated on October 7, 2020 by Jerry Nasso. (Id. ¶¶ 26, 32).

**Plaintiff's Ongoing Performance Issues**

During his employment at De Moya, Plaintiff was reprimanded and written up numerous times. (*Id.* ¶¶ 19-24, 26-44). He was continuously observed not working, taking unauthorized breaks, hiding, and falling asleep while operating heavy machinery, such as the roller. (*Id.* ¶¶ 19-20, 27, 30). Plaintiff received verbal and written warnings from different supervisors. (*Id.* ¶¶ 22, 29-30). While working under Leon plaintiff was disciplined for damaging a fiber optic cable, and for breaking a water line. (*Id.* ¶ 22). Leon issued a written reprimand dated March 24, 2020, for the incident involving the water pipe, which stated Plaintiff was one of the laborers below who could have caught the issue before it happened. (*Id.*). Leon also had to verbally reprimand Plaintiff because Plaintiff told another employee that "he did not work with Mexicans." (*Id.* ¶ 23).

While working under Comes, Plaintiff maintained his role as a laborer and was initially assigned to work at ground level assisting the person operating the motor grader in the road project. (*Id.* ¶ 26). A motor grader is the machinery used to cut lime rock surface for finish grade so the

asphalt can be applied afterwards. (*Id.*). If the person on the ground is not clearing the path that the motor grader is leveling, the person operating the motor grader cannot do his job and cut the lime rock. (*Id.*).

Mr. Comes testified that Plaintiff continuously neglected his work duties and caused more work for the other laborers. (*See id.* ¶¶ 27, 29-30). Instead of working, Plaintiff would be found "hiding behind a piece of equipment, behind a tree . . . anywhere other than his work site." (*Id.* ¶ 27). After noticing that Plaintiff could not keep up with the motor grader and was causing the other laborers double work, Comes assigned Plaintiff to operate the roller so he would not have to be on the ground. (*Id.* ¶ 28). Comes found Plaintiff sleeping on the roller multiple times, which is a safety violation and grounds for dismissal. (*Id.* ¶ 31). On September 29, 2020, Plaintiff was written up for being away from the work zone and hiding from his work, leaving the other laborer to handle the workload. (*Id.* ¶ 30).

On October 6, 2020, Jerome Nasso, the superintendent at the road site project where Plaintiff was working, observed Plaintiff sleeping on a roller. (*Id.* ¶ 32). Every morning, Nasso would hold a safety production meeting before the employees start working to discuss the job hazard analysis and their daily assigned tasks. (*Id.* ¶ 33). The morning of October 6, 2020, Nasso assigned Plaintiff to work in area on "Ramp J" – a task which was only supposed to take a couple of hours. (*Id.* ¶ 34). After completing that area, Plaintiff was supposed to follow a grader to the next area when he was finished but he failed to do so. (*Id.*). Later that day, when Nasso went to check on an area of the work site, he saw a someone operating the grader, but there was no roller behind him. (*Id.* ¶ 35). Nasso drove in his truck to look for Plaintiff and the roller and saw the roller parked in the area where Plaintiff was supposed to be working. (*Id.*). When Nasso pulled up in his truck he could see Plaintiff sleeping inside the roller. (*Id.*).

Plaintiff was terminated the following day on October 7, 2020. (*Id.* ¶ 38). Since Nasso does not speak Spanish, he asked another employee, Miguel Quiroz, to translate for him to be a translator to ensure Plaintiff understood what Nasso was saying. (*Id.*). Nasso told Plaintiff that it was inexcusable for him to sleep on the roller and they went back and forth with Plaintiff denying that he was sleeping on the roller. (*Id.* ¶ 39). Another De Moya employee, Miguel Quiroz, witnessed Plaintiff's termination and submitted a witness statement of the incident. (*Id.* ¶ 43). The witness statement was dictated by Mr. Quiroz and written by Nasso. (*Id.*). Nasso asked Carlos Cardona to witness the dictation, and Cardona signed the document as a witness. (*Id.*). Nasso informed Plaintiff he was terminated, and Plaintiff refused to sign the disciplinary forms. (*Id.* ¶ 39).

The disciplinary report completed upon Plaintiff's termination lists the grounds for his termination as: improper conduct, failure to follow instructions, and substandard work. (*Id.* ¶ 40). This was based on Plaintiff sleeping on the roller and his failure to find a supervisor and ask what he needed to do next when he completed his earlier task. (*Id.*).

**Plaintiff's Title VII and FCRA Claims**

Plaintiff filed his initial six-count complaint on July 26, 2022, alleging various claims for racial and national origin discrimination and retaliation in violation of Title VII and the FCRA. (ECF No. 1). Plaintiff alleges that prior to initiating this lawsuit, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").[4] (*Id.* ¶ 9). De Moya filed a motion to dismiss highlighting key omissions and misrepresentations in the initial complaint, such as describing Plaintiff's supervisor, Noel Leon, as American, when his ethnicity is Cuban. (ECF No. 9). Plaintiff filed an amended

---

[4] Plaintiff also filed his notice of charge with the Miami Dade County Commission on Human Rights ("MDCHR") on October 27, 2020.

complaint in which he dropped four of the initial claims and left only his two retaliation claims under the FCRA and Title VII. (ECF No. 13). De Moya now moves for final summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper where, construing all reasonable inferences in the light most favorable to the non-moving party, there is no genuine dispute of material fact to be tried. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc); *see also* Fed. R. Civ. P. 56(a) ("[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 1:19-CV-25298-KMM, 2021 WL 1099933, at *2 (S.D. Fla. Feb. 27, 2021) (citation omitted).

The moving party "bears the initial responsibility" of demonstrating the absence of a genuine issue of any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). To discharge this burden, the movant must identify an absence of evidence to support the non-moving party's case. *Id.* at 325. A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). After the moving party has met its burden under Rule 56(c), the burden shifts to the non-moving party who must present evidence of "specific facts showing there is a genuine issue for trial." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must support her assertion that a genuine

material fact remains in dispute by citing specific parts of the record. *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings but must show by affidavits, answers to interrogatories, and admissions that a specific fact exists demonstrating a genuine issue for trial."). "[A]n inference based on speculation and conjecture is not reasonable." *Jolibois v. Florida Int'l Univ. Bd. of Trustees*, 654 Fed. Appx. 461, 463 (11th Cir. 2016) (quoting *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

To avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita*, 475 U.S. at 586. Evidence is required; conclusory and unsubstantiated averments will not do. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita*, 475 U.S. at 587; *see also Allen*, 121 F.3d at 646.

### III. ANALYSIS

#### A. Plaintiff's Retaliation Claims Fail Because He Cannot Establish a Prima Facie Retaliation Claim and Cannot Show His Termination Is a Pretext for Discrimination

Summary judgment is proper because there is no record evidence to sufficiently establish the elements of Plaintiff's claim for retaliatory discharge. Claims of race and national origin retaliation brought under the FCRA and Title VII are analyzed under the same framework. *Ceus v. City of Tampa*, 803 Fed. Appx. 235, 244 (11th Cir. 2020). Accordingly, the arguments that mandate granting summary judgment as to Plaintiff's Title VII claim also apply to Plaintiff's FCRA claims. *See id.*; *see also Villanueva v. City of Fort Pierce*, Fla., 24 F. Supp. 2d 1364, 1372 (S.D. Fla. 1998).

Plaintiff contends De Moya terminated him in retaliation for his complaints, but he has failed to offer any direct evidence of the type of discriminatory intent prohibited by Title VII. *See Harris*

*v. Pub. Health Tr. of Miami-Dade Cnty.*, 1:19-CV-25298-KMM, 2021 WL 1099933, at *5 (S.D. Fla. Feb. 27, 2021). The standard for offering direct evidence of discriminatory intent is a stringent one, and only the most blatant comments will serve to prove such intent. *LeBlanc v. TJX Companies, Inc.*, 214 F. Supp. 2d 1319, 1325 (S.D. Fla. 2002) (citation omitted). In instances where, as here, a plaintiff is relying on circumstantial evidence to provide his retaliation claim, courts employ the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jolibois*, 654 Fed. Appx. at 463.

To establish a prima facie claim of retaliation under Title VII using circumstantial evidence, Plaintiff must show that he: (1) engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) the adverse action is causally related to the protected expression. *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010); *Fulford v. Miami-Dade Cnty.*, 219 F. Supp. 3d 1248, 1255 (S.D. Fla. 2016). Failure to satisfy any of these elements is fatal to a complaint of retaliation. *Higdon v. Jackson*, 393 F. 3d 1211, 1219 (11th Cir. 2004); *see also Vandesande v. Miami-Dade Cnty.,* 431 F. Supp. 2d 1245, 1251 (S.D. Fla. 2006) ("The failure to make a showing sufficient to establish the existence of any essential element of a claim is fatal.").

Under the *McDonnell Douglas* analytical framework, once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Jolibois*, 654 Fed. Appx. at 463 (citing *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007)). The reason offered by the employer "does not have to be a reason that the judge or jurors would act on or approve; instead, all that matters is that the employer advanced an explanation for its action that is not discriminatory in nature." *Jolibois*, 654 Fed. Appx. at 463 (internal quotes omitted). Once the employer offers a legitimate reason, the presumption of retaliation disappears. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059

(11th Cir. 1999); *see also Chapman*, 229 F.3d at 1024 (noting that "the employer's burden is merely one of production"); *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1372 (S.D. Fla. 2001), *aff'd sub nom. Gaston v. Home Depo USA, Inc.*, 265 F.3d 1066 (11th Cir. 2001) (employer's burden is "merely to proffer, not prove, a legitimate, nondiscriminatory reason for its actions, and the burden is thus exceedingly light.").

The burden then shifts back to the plaintiff, who must demonstrate that the proffered reason was merely a pretext to mask discriminatory actions. *Jolibois*, 654 Fed. Appx. at 463. In doing so, the plaintiff must "meet that reason head on and rebut it," and cannot succeed in doing so "by simply quarreling with the wisdom of that reason." *Id*. (quoting *Chapman*, 229 F.3d at 1030). Importantly, unsupported conclusory allegations of discrimination "are insufficient to show pretext." *Jolibois*, 654 Fed. Appx. at 464 (citing *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)). Throughout the entire burden-shifting process in analyzing a Title VII retaliation claim, the ultimate burden of persuasion remains on the employee. *See Russell v. Am. Eagle Airlines, Inc.,* 46 F. Supp. 2d 1330, 1335 (S.D. Fla. 1999), *aff'd sub nom. Russell v. Am. Airlines, Inc.*, 226 F.3d 647 (11th Cir. 2000); *Carter v. Columbia Cnty.*, 3:12-CV-1045-J-39MCR, 2014 WL 12498261, at *5 (M.D. Fla. Apr. 3, 2014), aff'd, 597 Fed. Appx. 574 (11th Cir. 2014).

Plaintiff's retaliation must fail as a matter of law because he cannot establish the first and third prongs of a prima facia retaliation claim under Title VII. First, Plaintiff has offered no record evidence in which a reasonable jury could find that Plaintiff engaged in a statutorily protected activity. Second, there is no record evidence establishing Plaintiff's termination was causally related to his alleged protected communications. Lastly, even if the Court were to assume that Plaintiff established a prima facie claim of retaliation, there is no competent record evidence to overcome De Moya's legitimate reasons for terminating him.

1. **Plaintiff's Complaints Do Not Constitute Protected Activity**

An employer may not discriminate against an employee because he has (1) "participated in any manner in an EEOC investigation" (the participation clause), or (2) opposed an unlawful employment practice (the opposition clause). *See* 42 U.S.C. § 2000e–3(a); *Renta v. Cigna Dental Health, Inc.*, 08-60938CIV, 2009 WL 3618246, at *3 (S.D. Fla. October 29, 2009); *see also Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1350 (11th Cir. 1999). Plaintiff's EEOC charge was filed after his termination, therefore, he can only attempt to seek relief for violation of the opposition clause under Title VII.

Plaintiff has failed to offer any record evidence demonstrating that his complaints to Chris De Moya about Noel Leon's "disrespect" constitute a protected activity. An employee complaint constitutes protected opposition *only if* the individual explicitly or implicitly communicates a reasonable belief that the employment practice constitutes unlawful employment discrimination against a class protected by Title VII. *See Smith v. City of Fort Pierce*, Fla., 565 Fed. Appx. 774, 777 (11th Cir. 2014) (emphasis added). Likewise, an employee who seeks protection under the opposition clause must have a "good faith, reasonable belief" that her employer has engaged in unlawful discrimination. *Clover*, 176 F.3d at 1351; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law. *Clover*, 176 F.3d at 1351; *see also Ramirez v. Miami-Dade Cnty.*, 846 F. Supp. 2d 1308, 1316 (S.D. Fla. 2012), *aff'd*, 509 Fed. Appx. 896 (11th Cir. 2013) ("The objective reasonableness of [plaintiff's] complaint is determined in accordance with Eleventh Circuit precedent."). Moreover, in determining the objective reasonableness of an employee's belief for opposition clause purposes, the only relevant conduct is employer conduct that the

alleged victim actually opposed. *City of Fort Pierce*, 08-14309-CIV, 2009 WL 10668949, at *4 (citation omitted).

Plaintiff contends that he engaged in protected activity when he complained to Chris De Moya in September 2020 about Noel Leon's "disrespect" and asked to be reassigned to another supervisor. However, Plaintiff's testimony reflects that his dispute with Noel Leon was unrelated to his national origin. When explaining what happened between him and Leon, Plaintiff testified:

> Let me explain it to you. *The lack of respect happened one day and he never asked to – he never apologized to anything.* I tried to leave it at that not to lose my job. But once, on a certain day, he told me that I had to go to 874. I explained to him that one of my tires was in bad condition and that I couldn't get on the expressway and asked if he had someone else that he could send. He responded no, that it had to be myself. That if I didn't go, I would be fired – I was fired. I went to that place and during the break I explained to him everything that had happened, everything that was happening and I asked him to change me to a different project.

(Def. 56.1 ¶ 12) (emphasis added). Chris De Moya and Susan Giraldo, De Moya's administrative assistant both testified that Plaintiff never complained of discrimination during the September 2020 meeting. (*Id.* ¶ 16). According to Ms. Giraldo, it was evident during the meeting that Plaintiff and Noel Leon did not get along and Plaintiff wanted to focus on getting assigned to another project. (*See id.*). Plaintiff's communications to her and Chris De Moya indicated that Plaintiff felt disrespected or maybe spoken to in a rude fashion by Noel Leon. (*Id.*). Based on the record testimony, the dispute between Plaintiff and Noel Leon was directly related to Leon instructing him to go to a work site. Thus, there is no basis for finding a discriminatory intent.

There is no competent record evidence to support Plaintiff's conclusory complaint allegation that Noel Leon made "discriminatory and disrespectful comments about Cubans." (ECF. No. 13 ¶ 18). Moreover, opposition to "racially charged" remarks such as the ones Plaintiff claims were uttered by Noel Leon, is not statutorily protected activity under Title VII. *See Ceus*, 803 Fed. Appx.

at 247; *United States v. City of Fort Pierce*, 2009 WL 10668949, at *5 (finding that African American employee's opposition to supervising employee's "monkey" comments was not protected activity sufficient to support a Title VII claim); *Butler*, 536 F.3d at 1213-14 ("[A] racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII ... and opposition to such a remark, consequently, is not statutorily protected conduct.").

Plaintiff has not offered any record evidence indicating Noel Leon made any derogatory comments about Cubans. The alleged derogatory comments were not specified by Plaintiff in his deposition, and no other witness has testified that Noel Leon made derogatory comments about Cubans. Furthermore, there is no evidence that Chris De Moya or any senior managers made such derogatory comments. *See Little*, 103 F.3d at 959 (stating that "opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual"). Setting aside the fact that the only "evidence" proffered to support that Noel Leon made negative comments about Cubans is Plaintiff's speculatory allegations, "not every uncalled for, ugly, racist statement by a co-worker is an unlawful employment practice." *Ceus*, 803 Fed. Appx. at 247 (quoting *Butler*, 536 F.3d at 1213). Accordingly, to the extent that Plaintiff believed Noel Leon's comments were an unlawful employment practice by De Moya, his belief was not objectively reasonable. *City of Fort Pierce*, 2009 WL 10668949, at *5 (citing *Butler*, 536 F.3d at 1214).

There is no binding or persuasive Eleventh Circuit case law to support Plaintiff's claims that his belief De Moya's employment practices were unlawful. To the contrary, the case law from this Circuit states that such workplace disagreements do not fall within the purview of Title VII. *See Ceus*, 803 Fed. Appx. at 247 ("Title VII does not prohibit or regulate workplace issues of civility

or personality conflicts."); *Kavanaugh v. Miami-Dade Cnty.*, 775 F. Supp. 2d 1361, 1367 (S.D. Fla. 2011). As such, even if the Court were to assume Plaintiff had a good faith belief that he was subjected to discrimination for being Cuban, Plaintiff did not engage in a protected activity because his belief was not objectively reasonable in light of Eleventh Circuit precedent. *See Ramirez*, 846 F. Supp. 2d at 1316.

Title VII is not a general civility code for the American workplace. *Burlington n & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* Leon disrespecting Plaintiff is the type of petty slight and minor annoyance this Court should not be inundated with under Title VII. Plaintiff cannot sufficiently establish he opposed an unlawful discrimination or employment practice when he complained about Noel Leon. Because Plaintiff cannot satisfy the first prong of his retaliation claim, this Court should grant final summary judgment in favor of De Moya as a matter of law.

2. **There is No Record Evidence to Establish a Causal Connection Between Plaintiff's Complaints and his Termination**

"To satisfy the causal connection requirement in his retaliation claim, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Rodriguez v. Sec'y, U.S. Dept. of Homeland Sec.*, 608 Fed. Appx. 717, 720 (11th Cir. 2015). Plaintiff cannot satisfy the causal connection requirement because there is no evidence showing that Nasso, the decision-maker behind his termination, was aware of Plaintiff's September 2020 complaints to Chris De Moya when he terminated Plaintiff. *See id.*; *Gaston*, 129 F. Supp. 2d at 1376. Additionally, Plaintiff has no evidence that his termination is at all related to such complaints.

The decision maker that terminated Plaintiff was Mr. Nasso. (Def. 56.1 ¶ 32). Plaintiff has failed to present any evidence that Nasso was aware of Plaintiff's complaints about Noel Leon's

alleged comments regarding Cubans. When Nasso terminated Plaintiff, Chris De Moya had already transferred Plaintiff from Noel Leon's team to a different project at a different location under a different supervisor. (*See id.* ¶ 24). Mr. Nasso was unaware of any specific details regarding Plaintiff's meeting with Chris De Moya a month before to complain about his previous supervisor. (*Id.* ¶ 42). Although Nasso heard of an incident Plaintiff had with Leon on another project and that is why he was transferred to their site, he was not part of it, so he did not know any specifics. (Def. 56.1 ¶ 43). In addition, Noel Leon testified he does not know who Nasso is. (*Id.*). Nasso does not speak Spanish and there is no evidence to support that he learned of Plaintiff's complaints about Leon through any other avenue.

Even if the meeting with Chris de Moya could be considered protected conduct, the record evidence establishes Nasso had no knowledge of Plaintiff's prior complaints about Leon. Temporal proximity between the adverse employment action and the protected activity is not sufficient to create a genuine issue of material fact as to the causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. *LeBlanc v. TJX Companies, Inc.*, 214 F. Supp. 2d 1319, 1324–25 (S.D. Fla. 2002). Consequently, Nasso's unrebutted lack of knowledge of Plaintiff's complaints regarding Noel Leon's alleged comments precludes a finding of a causal connection. Accordingly, summary judgment in favor of De Moya is proper as a matter of law.

### B. De Moya Terminated Plaintiff for a Legitimate, Non-Retaliatory Reason

De Moya has exceedingly satisfied its burden to proffer a legitimate, nondiscriminatory reason for its actions. "A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence." *Russell*, 46 F. Supp. 2d at 1336 (finding plaintiff's argument to rebut employer's rationale for adverse employment action were "notably lacking evidentiary support"). To properly rebut an employer's legitimate, non-

discriminatory reason, a plaintiff "may not ... merely rest on the laurels of [his] prima facie case in the face of powerful justification evidence offered by the defendant." *Id*.

Plaintiff has not met his burden of producing probative evidence that De Moya was acting with discriminatory intent when it terminated his employment. *See Fusaro v. Hialeah Hous. Auth*., 33 F. Supp. 2d 1354, 1360 (S.D. Fla. 1999). An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination. *Clark v. Coats & Clark, Inc*., 990 F.2d 1217, 1228 (11th Cir. 1993). "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason" as long as "the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[F]ederal courts do not sit to second-guess the business judgment of employers.").

The record evidence of Plaintiff's workplace misconduct are more than sufficient to satisfy De Moya's burden to show a legitimate, non-retaliatory reasons for his termination. *Fusaro v. Hialeah Hous. Auth*., 33 F. Supp. 2d 1354, 1358 (S.D. Fla. 1999) (a defendant's burden for rebutting a plaintiff's retaliation claim is "exceedingly light"; the defendant "must merely proffer the legitimate reasons, not prove them.") (citation omitted).

Here, De Moya has proffered testimony from two of Plaintiff's supervisors and the vice president of field operations establishing Plaintiff had a history of receiving warnings and disciplinary action from De Moya for unacceptable performance prior to his termination. (*See* Def. 56.1 ¶¶ 19-42). De Moya has also submitted documentary evidence such as written reprimands and the disciplinary report issued when Plaintiff was terminated to show that De Moya had a legitimate, non-retaliatory reason for the termination. *See Lyons v. Miami Dade Cnty. Fire Rescue Dept*., 470 Fed. Appx. 801, 803 (11th Cir. 2012) (holding summary judgment dismissal was proper

because employee failed to prove that the legitimate reason proffered for her termination was pretextual).

We anticipate Plaintiff will argue that his denial of the claim that he was sleeping on the roller is sufficient to create an issue of material fact as to whether his termination was merely a pretext for unlawful, retaliatory conduct. To show pretext, the plaintiff must present sufficient evidence "to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Gerard v. Bd. of Regents of State of Ga.*, 324 Fed. Appx. 818, 826 (11th Cir. 2009). "Conclusory allegations, without more, are insufficient to show pretext." *Id.* (quoting *Mayfield*, 101 F.3d at 1376–77); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998) (noting that "a naked assertion is not evidence of pretext, especially when the uncontroverted evidence suggests that the statement was in fact true").

Plaintiff denies falling asleep on the roller. (Def. 56.1 ¶ 39). However, Plaintiff's unsupported, self-serving denials of sleeping on the roller are not evidence of pretext and are insufficient to create a fact issue. *See Gerard*, 324 Fed. Appx. at 826. Additionally, Plaintiff alleges in his complaint that is De Moya is "unable to support its claim that Plaintiff had performance issues while employed with [De Moya]." (ECF No. 13, ¶ 30). The complaint then asserts that "even if Plaintiff did exhibit poor performance while employed by De Moya, complaints of discriminatory treatment were motivating factors for Defendant's decision to terminate his employment." (*Id*. ¶ 31). It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated." *Alexander v. Fulton County, GA.*, 207 F.3d 1303, 1341 (11th Cir. 2000). Plaintiff's only support for his claim of pretext are self-serving, conclusory allegations. For example, Plaintiff's naked assertions that his complaints were "motivating factors" for De Moya's decision to terminate him are insufficient to avoid summary judgment. This is especially

true in light of the fact that the extensive evidence supporting De Moya's reason for terminating Plaintiff remains uncontroverted.

Plaintiff has no competent evidence to establish Nasso's reason was racially motivated or a pretext for discrimination on the basis of his Cuban origin. Without competent record evidence challenging De Moya's legitimate reason for terminating Plaintiff, no reasonable jury can conclude that De Moya's reasons were a pretext. As a result, summary judgment is appropriate.

## CONCLUSION

The controlling Title VII precedent requires summary judgment in favor of De Moya because Plaintiff cannot satisfy the elements of his retaliation claims. Plaintiff has failed to submit any competent record evidence establishing that his complaints were in opposition to an unlawful employment practice, or that they had any causal connection to his termination for failure to follow instructions and sleeping inside heavy machinery. De Moya had legitimate, non-retaliatory reasons for terminating Plaintiff and there is no record evidence rebutting De Moya's rationale. Therefore, De Moya is entitled to summary judgment as a matter of law.

De Moya respectfully requests that this Court grant final summary judgment in its favor, and dismiss all counts of Plaintiff's operative complaint, and award any other further relief it deems just and proper.

Dated: March 20, 2023                                        Respectfully submitted,

                By:     /s/ *Reginald J. Clyne*
                      Reginald J. Clyne, Esq.
                      Florida Bar No.: 654302
                      Chanelle Artiles, Esq.
                      Florida Bar No.: 1006402
                      QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
                      *Attorneys for Defendant, The De Moya Group, Inc.*
                      9300 S. Dadeland Blvd., 4th Floor

                Miami, FL 33156
                Tel: (305) 670-1101
                Fax: (305) 670-1161
                Email: rclyne.pleadings@qpwblaw.com
                    reginald.clyne@qpwblaw.com
                    chanelle.artiles@qpwblaw.com
                    andres.vidales@qpwblaw.com
                    cecilia.quevedo@qpwblaw.com

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on March 20, 2023, the foregoing was electronically filed with the Clerk of Court via CM/ECF system, which will send a notice of electronic filing to the counsel of record on the service list below.

**Nathaly Saavedra, Esq.**
**Juan J. Perez, Esq.**
Peregonza The Attorneys, PLLC
5201 Blue Lagoon Dr., Suite 290
Miami, FL 33126
Tel. 786-650-0202 / Fax: 786-650-0200
nathaly@peregonza.com
juan@peregonza.com

                    /s/ *Reginald J. Clyne*