**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:22-cv-22343-KMM Moore/Louis

JORGE MONTEAGUDO ALBURQUERQUE,

      Plaintiff,

v.

THE DE MOYA GROUP, INC.,
a Florida Profit Corporation,

      Defendant.

_____/

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

      Plaintiff, MONTEAGUDO, by and through his undersigned counsel, pursuant to Fed. R. Civ. P. 56, the Local Rules of the United States District Court for the Southern District of Florida, this and this Court's Pre-Trial and Trial Orders [ECF Nos. 4, 11] hereby files his Response to Defendant's Motion for Summary Judgment (ECF No. 45, and hereinafter "Motion"), pursuant to Local Rule 56.1. The undisputed facts and applicable case law demonstrate that Defendant's Motion should be denied.

## INTRODUCTION

### I. BACKGROUND

    This is an action brought under Title VII and the Florida Commission of Human Rights.  The only claims which remain before this Court are Plaintiff's claims for retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. (Count I) and the Florida Civil Rights Act ("FCRA"), §§ 760.01-760.11 (Count II). *See* ECF No. 13. Defendant moves this Court to grant summary judgement on both claims. ECF No. 45. For the reasons stated herein, Plaintiff

respectfully asks this Court to deny Defendant's Motion on all counts as it fails to demonstrate that there exist no disputed facts; and, as a matter of law, Defendant is not entitled to judgment.

As a threshold matter, Plaintiff notes that Defendant's Motion for Summary Judgment and its corresponding Statement of Material Facts [ECF No. 44] fail to conform to the basic and explicit requirements of the Fed. R. Civ. Pr., S.D. Fla. L.R. 56.1, this Court's Pretrial Order [ECF No. 4], and this Court's Trial Order [ECF No. 11] in two basic respects. First, Defendant has failed to comply with the basic filing requirements explicitly set forth in this Court's Trial Order [ECF No. 11] and S.D. Fla. L.R. 56.1 which the Court requires strict compliance with. *See* ECF No. 11. After all, Local Rule 56.1(a) serves "to make review of summary judgment motions less burdensome to the Court." S.D. Fla. L.R. 56.1 cmts. (2008); *see also Carolina Acquisition, LLC v. Double Billed, LLC*, No. 07-61738-CIV, 2009 WL 1298362, at *1 (S.D. Fla. May 8, 2009). The Local Rule is also consistent with determining the appropriateness of summary judgment. *See Phillips v. City of Dawsonville*, 499 F.3d 1239, 1241 (11th Cir. 2007) ("[s]ummary judgment is appropriate *when no genuine issue of material fact exists,* and the moving party is entitled to judgment as a matter of law.") *Id*. (emphasis added).  With regards to this Court's Trial Order requirements, parties are instructed to comply with the three formatting requirements: a) "evidence not previously filed on the docket, evidentiary support for a Party's statement of material facts *shall be filed as separate exhibits* within the Court's electronic case filing system" ECF No. 11(emphasis added); b) the Court instructs the parties for "the first citation to any evidence in support of a motion for summary judgment or statement of material facts shall provide the docket entry for that evidence using the form "ECF No." *Id.;* and c) the Court requires  that "citations to any composite exhibit shall provide both the page number assigned by the Court's electronic case filing system (i.e., the page number of the PDF) and the page number of the document." *Id*.  Notwithstanding this Court's specific

instructions, Defendant: a) attached the evidence as exhibits to its Statement of Facts; b) failed to specifically title the exhibits within the CM/ECF system (e.g., Smith Affidavit dated April 12, 2017); and c) failed to provide the docket entry as well as the page number assigned by the Court in its citations on both of its pleadings. By failing to comply with these basic requirements, Defendant has made it arduous for Plaintiff to confirm the sufficiency of its pleading and evaluate whether they correlate with Defendant's contention that there are no factual disputes. *See Joseph v. Napolitano*, 839 F. Supp.2d 1324, 1329 (S.D. Fla. 2012)("the rule's clear procedural directive is intended to reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching.").

Second, Defendant heavily relies on evidence that is inadmissible in its moving papers while omitting vital information that this Court requires in its consideration of whether the evidence should be considered at all at this stage of the proceedings. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005)( holding that "[o]n motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."). Accordingly, before turning to the merits of Defendant's Motion, Plaintiff respectfully requests that the Court addresses an evidentiary question that may impact the assessment of the claims at issue. Specifically, Plaintiff objects to the introduction of Plaintiff's Deposition Testimony dated October 7, 2022, which was cited by Defendant in support of its Motion, because this proceeding was conducted by Defendant's counsel in violation of the Fed. Rules of Civ. Pro. and the Local Rules.

On October 19, 2022, Plaintiff and his counsel, Jocelyn R. Rocha, Esq.,[1] attended Plaintiff's deposition from Plaintiff's counsel's office which was conducted via zoom by Defendant's Counsel, Mr. Reginald Clyne, Esq. From early on in the proceedings, Mr. Clyne's lack of professionalism and civility began to become apparent. The deposition was laden with a continuous stream of snarky, accusatory questions and innuendos from Mr. Clyne including charges of impropriety against Plaintiff and his counsel after the first break was taken.   *See, e.g.,* Ex. 1. at 33:16-24, ECF No. 50-1 at p. 33:16-24. ("Q. Did you talk at all about your testimony or about what you will say?"; "Just for the record, Mr. Alburqerque is a witness under examination and is not permitted to speak to his attorney, so I'm allowed to ask him what he spoke about and know what he spoke about."); and threats of charges of perjury and sanctions towards Plaintiff and his counsel. See *id.* at 41:17-42-12.(Q. (By Mr. Clyne)"Do you realize you're under oath?"; Q. Do you realize that it is an act of perjury if you lie under oath?"; Q. "So I want you to really think carefully before you answer these questions") See also id. at 43:4-8 (By. Mr. Clyne) "I'm just telling you, you'll get sanctioned. I don't want to sanction you because you're a young attorney, but when a witness is under oath and they're on the stand, they cannot talk to their attorney.") This conduct served no other purpose but to intimidate Plaintiff and Ms. Rocha and was in direct violation of the Federal and local rules as it impeded and frustrated the fair examination of Plaintiff.

Pursuant to the Federal Rules, a witness has the same rights and privileges during a deposition as would a witness testifying in court at trial. See Fed. R. Civ. P. 30(c)(2). Under that premise, courts have ordered depositions to be retaken where parties or their counsel violate ethical

---

[1]Ms. Rocha is a new attorney, admitted as a member of the Florida Bar on September 22, 2022, and admitted in this District Court as of October 6, 2022.

and professional norms during the proceeding. *See Soule v. RSC Equip. Rental, Inc.*, No. 11-2022, 2012 WL 5060059 at *3 (E.D. La. Oct. 18, 2012)(where the Court ordered a deposition to be terminated and enjoined conduct such as:  yelling or raising voices; using a confrontational or argumentative tone or language; accusing witnesses of lying, providing false testimony, or providing testimony that is not true; and disrupting or cutting off witness responses.").

Wary of Mr. Clyne's behavior, Ms. Rocha searched Mr. Clyne on the Florida Bar website. In doing so, Ms. Rocha discovered that Mr. Clyne was delinquent with the Florida Bar and not eligible to practice law. ECF No. 50-12. Upon discovering his delinquent status, Ms. Rocha immediately requested a break to confer with counsel off the record, but Mr. Clyne refused to do so and threaten to move for sanctions against Ms. Rocha once again unless she allowed him to finish. ECF No. 50-2 at ¶. Upon completing his direct examination of Plaintiff, Mr. Clyne agreed to take a break to confer with Ms. Rocha. *Id.* At that time, the parties went off the record and Ms. Rocha informed Mr. Clyne of his ineligibility to conduct the deposition due to his delinquent status off the record. Upon concluding their call, the parties went on the record and Ms. Rocha stated the parties' agreement to adjourn the deposition and continue at another time due to Mr. Clyne's ineligibility. ECF No. 50-49. Based upon this agreement, at approximately 11:48 AM, Plaintiff was dismissed from his counsel's office with the understanding his deposition would be discontinued and rescheduled for a later date.

A few days after the encounter, after receiving Mr. Clyne's certificate of good standing, in satisfying the duty-to-confer requirement, Ms. Rocha emailed Mr. Clyne and sought his agreement to bar use of the October 19, 2022, deposition in this case. ECF No. 50-26. Mr. Clyne initially resisted, ignoring the fatal deficiency of the proceeding and insinuating Plaintiff's request was motivated by his interest in revising his testimony. *Id*. Yet, upon further conferral, Mr. Clyne

agreed to strike Plaintiff's deposition dated October 19, 2022, and retake Plaintiff's deposition on a mutually convenient date and time. *Id*. Notwithstanding this agreement, Defendant now attempts to introduce limited portions of this inadmissible testimony in support of its Motion. *See* ECF No. 44-3. Defendant's contention that the issue with Mr. Clyne's admission was resolved the same day is irrelevant. While Mr. Clyne was able to promptly correct the issue regarding his eligibility, at the time the deposition was conducted Mr. Clyne, was not a member of The Florida Bar in good standing and therefore was prohibited from engaging in the practice of law. ECF No. 50-12. *See* R. Regul. Fla. Bar 1-3.6. Plaintiff avidly denies and takes issue with Defendant's unfounded accusation that Plaintiff changed his testimony during his second deposition.  See ECF No. 44 at ¶¶13-14. This allegation is nothing more that Defendant's flawed attempt to use the impeded and frustrated testimony of Plaintiff. To overlook Counsel's ineligibility (no matter how fleeting) would be in direct violation of the S.D. Fla. L.R. 3 ("[t]o remain an attorney in good standing of the bar of this Court, each member must remain an active attorney in good standing of The Florida Bar, specifically including compliance with all requirements of the Rules Regulating The Florida Bar, as promulgated by the Supreme Court of Florida. Attorneys who are not in good standing of the bar of this Court **may not** practice before the Court")(emphasis added); the S.D. Fla. L.R. 4(a), ("[e]xcept when an appearance pro hac vice is permitted by the Court, **only members of the bar of this Court may appear as attorneys before this Court**. Attorneys residing within this District and practicing before this Court are expected to be members of the bar of this Court") (emphasis added); and S.D. Fla. L.R.11.1 ((a)The Bar of this Court shall consist of those persons heretofore **admitted** … in accordance with the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys.) (emphasis added). Accordingly, Pursuant to Rule Fed. R. Civ. P. 56(c)(2) Plaintiff requests that in making the determination of whether there is a genuine factual issue for

trial in this case, the Court disregards or ignores Plaintiff's deposition dated October 7, 2022, relied on by the Defendant as it is otherwise inadmissible and could not be "reducible to admissible form" at trial. *Id*. At this stage, this Court is required to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). This Court may not consider non-material facts, nor should it weigh material evidence to determine the truth of the matter. *Id.* at 249. Plaintiff contends that without taking the inadmissible testimony into consideration, it is apparent that Defendant has failed to meet its burden. But even if the Court was to consider the inadmissible evidence, Plaintiff demonstrates below that Defendant has failed to show that it is entitled to judgment as well as highlights the necessity for a jury to evaluate and weigh the factual issues which exist.

## II.  LEGAL STANDARD

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there is a conflict in the evidence, the nonmoving party's evidence is to be believed and all reasonable inferences must be taken in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

In the context of discrimination or retaliation cases, summary judgment is not a preferred result because intent and motive, is generally a question of fact that only a jury can make. *See Batey v. Stone*, 24 F.3d 1330, 1336 (11th Cir. 1994)(where the Court stated granting summary judgment which necessarily involves examining motive and intent is especially questionable); *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d. 913 at 918 (11th Cir. 1993)(stating that "[t]he Court must avoid weighing conflicting evidence or making credibility determinations" when deciding a

motion for summary judgment). The Supreme Court warned against "denigrat[ing] the role of the jury." *Anderson*, 477 U.S. at 255  and has unequivocally held that courts "should give credence to the 'evidence favoring the nonmovant as well as that evidence supporting the moving party that is un-contradicted and un-impeached, at least to the extent that that evidence comes from disinterested witnesses.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, (2000). See also *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1350–51 (11th Cir. 2022)(holding that "'when conflicts arise between the facts evidenced by the parties, we must credit [the non-movant's]  version.' And that is true even if, as is often the case, the plaintiff's evidence consists primarily or solely of her own self-serving sworn statements or testimony."(*citations omitted*)).

III. ANALYSIS

### A.  **<u>Plaintiff has Produced Evidence that he Complained of Discrimination and Retaliation he suffered Adverse Employment Actions</u>**

As Defendant has noted, the similar statutory language in the FCRA and Title VII require identical interpretation. *See Ceus v. City of Tampa*, 803 Fed. Appx. 235, 244 (11th Cir. 2020). Accordingly, both of Plaintiff's claims should be evaluated equally. In order to establish a prima facie case for retaliation under Title VII, Plaintiff must demonstrate that: "(1)[]he engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013,(11th Cir. 1994). Moving for summary judgment, Defendant ignores binding authority and undisputed evidence to argue that Plaintiff cannot meet the first and third element to establish a prima facia case. Plaintiff disagrees.

### *1.*  **There are genuine issues of material fact as it pertains to whether Mr. Monteagudo engaged in statutorily protected activity.**

To meet the first element and survive summary judgment, "plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Little v .United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). However, Plaintiff need not prove that the "underlying discriminatory conduct was actually unlawful" in order to overcome summary judgment on a retaliation claim. *Id*. In *Little*, the plaintiff failed to report a racist remark to the proper personnel until eight months after the remark was said. *Id.* Thus, the 11th Circuit found it "implausible" to presume that Little reasonably believed that this remark constituted a violation of law. *Id.* Standing on the opposite side of the spectrum is Plaintiff, who, each time, complained immediately about the disparate treatment he experienced and the mistreatment he was subjected to in consequence of his complaints. To be clear, Plaintiff alleged that he was retaliated against for his complaints of discrimination and disparate treatment. ECF No. 13 at ¶¶ 19-27, 34-37, 46-49 (emphasis added). The evidence reflects that Plaintiff's perception of his work environment, was of unfair treatment based on his complaints of retaliatory conduct he experienced. Plaintiff made several complaints to Defendant starting on September 14, 2020, and extending until the day of his termination on October 7, 2020.

There is a factual dispute over whether Plaintiff's complaints specifically indicated he was complaining of *discrimination* rather than general workplace animosity between co-workers. While Defendant attempts to categorize Plaintiff's complaint on September 14, 2020 as merely a work dispute about "disrespect" it has failed to present undisputed evidence that supports its position that is entitled to summary judgment.

Plaintiff began working with Defendant on August 14, 2019, under the supervision of Noel Leon (hereinafter "Leon"). ECF No. 51 at ¶¶ 8-9. Early on Leon inquired about what part of Cuba

Plaintiff was from and how long had he been in the United States. ECF No. 51 at ¶ 9. After that interaction, Leon would tell other employees referring to Plaintiff that "these Cubans are lazy" [*Id.* at ¶ 9.]; Leon spoke to Plaintiff in a demeaning and disrespectful manner as if Plaintiff was inferior to him because of where he came from or since he did not speak English. *Id.* Leon would closely follow Plaintiff at the worksite and was quick to admonish Plaintiff if he was taking a break even though breaks throughout the day were mandated as part of the company's safety rules. *Id.* Leon also threatened with and issued Plaintiff unfounded discipline in more than one occasion, [*id.*] and often assigned Plaintiff unfavorable tasks over other employees. *Id.* at ¶ 5, 26.

On or about September 14, 2020, Leon assigned Plaintiff to work with a different operator to perform tasks at another location. *Id.* Plaintiff asked Leon to reconsider the assignment as he had an issue with his method of transportation and in response Leon threaten to fire him. *Id.* Feeling like he was at the end of his rope, Plaintiff decided to go to the main office to complain about Leon's discriminatory behavior and seek intervention from the owner, Chris De Moya ("De Moya"). *Id.* at ¶ 10. That same day, Plaintiff went to the office and asked to speak to De Moya. *Id.* at ¶ __. When Plaintiff arrived, De Moya asked administrative assistant, Susana Giraldo, ("Giraldo") to assist De Moya in communicating with Plaintiff as he concededly did not understand or speak Spanish fluently. *Id.* at ¶ 11. During that meeting, Plaintiff, who was admittedly distraught during their conversation, told De Moya about the discrimination he was subjected to because he was Cuban and did not speak, write, or read English. [*Id.* at ¶¶ 13, 44]. During the meeting, Plaintiff described the several instances of disrespectful and belittling comments Leon made towards him and the treatment he subjected him to as if Plaintiff was inferior to Leon -including the most recent unwarranted threats of termination. *Id.* at ¶ 14. Plaintiff asked

De Moya to transfer him away from Leon. ECF No. 51 at ¶ 17.  De Moya told Plaintiff he would speak to Leon, and that same day, made arrangements to transfer Plaintiff. *Id.*

In its Motion, Defendant does not dispute that Plaintiff complained about Leon disrespecting him and requested a transfer. ECF No. 44 at ¶¶10-11. Defendant, however, contends Plaintiff's complaint was not of discrimination using nothing more than De Moya's and Giraldo's denials to dispute Plaintiff's testimony. ECF No. 45 at 12-13. Defendant appears to claim that the testimony of these two witnesses somehow superseded Plaintiff's. Based solely on these convenient denials, Defendant asks this Court to make credibility determinations in its favor. But that is not the standard. *Reeves*, 530 U.S. at 151 (2000)(holding that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe"); *see also, Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)(*quoting Reeves* for proposition that courts do not give credence to uncontradicted testimony of *interested witnesses*[2] at summary judgment). In doing so, Defendant fails to acknowledge—let alone rebut—the evidence that calls into question De Moya's and Giraldo's recollection of their conversation with Plaintiff. For example, the record shows that: 1) De Moya conceded that due to the language barrier he did not understand everything Plaintiff said and that he relied on Giraldo's translation; 2) that Giraldo does not have any particular training in translation; and 3) that neither Giraldo nor De Moya kept record of the meeting.  ECF No. 51 at ¶ 11. Notwithstanding this undisputed evidence, both De Moya and Giraldo testified repeatedly that they clearly remember Plaintiff "never mentioned discrimination" but were not able to recall any

---

[2] Giraldo is an interested witness. See ECF No. 50-11 at 58:3-8 at  which highlights evidence of her bias.

other specific of what was said during that meeting. *Id*. at ¶ 16. Under the applicable standard, Plaintiff's testimony about what was said in this meeting, is presumed to be true and all reasonable inferences must be drawn in his favor, "[e]ven though the 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir.2006) (internal quotation marks and citations omitted). "And that is true even if, as is often the case, the plaintiff's evidence consists primarily or solely of his own self-serving sworn statements or testimony." *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008); *see also Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). Thus, at best, Defendant has established a conflict between the parties' allegations exists.

Defendant further contends that even if the Plaintiff had a good faith belief that he was being discriminated against the same was not objectively reasonable because he did not provide any evidence of the derogatory comments or that his complaints were more than a work disagreement. In support of its contention, Defendant ignores binding precedent or otherwise cites to cases that are distinguishable or that stand for a different proposition all together. Importantly, Defendant appears to ignore the legal precedent that "[t]here is no magic word requirement." *Olson v. Lowe's Home Ctr. Inc.*, 130 Fed.Appx. 380, 391, n.22 (11th Cir. 2005). Further, a plaintiff need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment; such a requirement "[w]ould not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances." *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022). In other words,

Plaintiff just has to show that the conduct of which he complained of were "close enough" to unlawful discrimination as to satisfy the objective component. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). Plaintiff meets this standard; and, at minimum, the disputes between the parties, creates an issue of fact to be determined by the jury.

Plaintiff has presented evidence that he believed the discrimination he was subjected to by Leon stemmed from the fact he was Cuban who migrated to the United States and does not speak, read, or write any English. ECF No. 51 at ¶. The content of Plaintiff's complaint, therefore, alleged unlawful employment practice. *See 42 U.S.C. §2000e-2(a)(1); Castaneda v. Partida*, 430 U.S. 482, 499 (1977). Plaintiff further presented evidence that during their meeting, he told De Moya that Plaintiff was discriminated and that he described several instances of how Leon was disrespectful, describing the facts which supported his belief that the basis of that treatment was related to where he was from. *Id*. at ¶ 13. Notwithstanding well settled law, Defendant in its Motion as well as throughout this litigation has made a great deal of the fact that Leon was also Cuban. See ECF No. 44 at ¶ 15. To the extent Defendant contents this fact has any weight in evaluating Plaintiff's  subjective belief, such argument wholesale lacks merit and the Supreme Court has warned against such biased assumptions. *See Castaneda*, 430 U.S. at 499 ("[b]ecause of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group."). This may be an argument for the jury but does not support a grant of summary judgment in Defendant's favor.

Furthermore, the undisputed fact that De Moya immediately transferred Plaintiff to another job site - lends credence to Mr. Monteagudo's claim that his conversation with De Moya was about more than a grievance of a minor nuisance or a complaint about an isolated workplace disagreement under the perception theory which has been recognized by other courts.  *See*

*Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002), *Wesolowski v. Napolitano*, 2 F.Supp.3d 1318 (S.D. Ga. 2014). Especially, when as conceded by the Defendant, transferring employees among projects to resolve "personality conflicts" was not a common practice. ECF No. 51 at ¶ 17.

It is well settled law that while some circumstances on their own may be insufficient to sustain an independent cause of action, when raised together, the events may reasonably lead a Plaintiff to believe that he was opposing an unlawful employment practice. *Howell v. Correctional Med. Serv.*, 612 Fed. Appx. 590, 691 (11th Cir. 2015). Therefore, when the evidence is considered as a whole, Plaintiff has certainly presented enough evidence to raise the inference that his complaint meets the standard; and, at minimum, the evidence presented create an issue of fact to be determined by the jury.

2. **Plaintiff survives summary judgment on his retaliation claim because he has demonstrated that he was subjected to mistreatment and a hostile work environment in retaliation to his complaints after he was transferred.**

In its Motion Defendant only argues that Plaintiff's termination was an adverse action. Plaintiff agrees. However, Plaintiff contends that the threats levied against Plaintiff by Comes, Alejandro Leon, and  Nasso, also constitute adverse actions under the anti-retaliation provision. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)(holding that "[t]itle VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions.")  Plaintiff claims that he faced adverse employment actions after his transfer when, he was confronted by Comes and told that Comes will be watching him, when he was physically attacked and threaten by Alejandro Leon, and when he was issued discipline,  and when he was terminated by Nasso.

Defendant's Motion highlights the well settled law discriminatory treatment is actionable only if it reaches a sufficient level of substantiality. However, in overlooking the events that occurred between Plaintiff's transfer and his termination, Defendant ignores the binding authority that recognizes that "mistreatment based on retaliation for a protected conduct is actionable whether or not the mistreatment rises to the level of a tangible employment action but only if the mistreatment 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861(11th Cir. 2020).

In *Monaghan* the 11th Circuit found that statements from a supervisor to the Plaintiff such as Plaintiff "better watch it" and "how dare you make complaints about me" "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id.* at 863; *see also Burlington Northern and Sata Fe Ry. Co. v. White*, 548 U.S. 53 at 70-72 (2006)(holding that a jury could reasonably find that reassignment to a less prestigious and more arduous position and a 37-day suspension without pay were—despite the receipt of backpay—materially adverse retaliatory actions). Like in *Monaghan*, here Plaintiff was confronted by Comes and told that Comes had been warned Plaintiff was "problematic" and was going to be watching him. ECF No. 51 at ¶ 26; Plaintiff was assigned tasks that he was overqualified for, [*id.*] physically attacked and threaten by Alejandro Leon and subjected to unfair discipline. *Id.* at ¶ 46. Therefore, a reasonable jury could find that Comes, Alejandro Leon, and Nasso, motivated by their retaliatory intent, subjected Plaintiff to a hostile work environment. The Court should therefore ***deny*** Defendant's Motion and permit a jury to hear the evidence.

### 3.  There is a casual link between Plaintiff's Complaints and the Further Mistreatment Which Ultimately Led to his Termination.

Under the third prong, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791,

799 (11th Cir. 2000). "At minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Clover*, 176 F.3d at 1354. A plaintiff may also demonstrate a relationship through proximity to the complaint and the adverse employment action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). As such, a court deciding whether a retaliation claim survives summary judgment need not only rely on the *McDonnel Douglas* framework. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012) (holding that a plaintiff in a retaliation claim survives summary judgment if she otherwise presents "enough circumstantial evidence to raise a reasonable inference" that the termination was linked to the protected activity). Defendant argues that: i) Plaintiff cannot show that any decisionmaker had knowledge of his complaints; and ii) Plaintiff has no evidence that his termination is related to such complaints. ECF No. 45 at p. 14. Plaintiff disagrees. Mr. Monteagudo has certainly presented enough evidence to raise the inference that the adverse employment actions were due to his complaints of discrimination and further mistreatment.

> ### iii) Those who rendered the decision to terminate Plaintiff knew of his verbal complaints and subjected Plaintiff to disparate treatment and ultimately termination because of his complaints.

Notwithstanding Defendant's denials, Plaintiff has provided ample evidence that demonstrates that the same individuals that were involved in the further mistreatment that he was subjected to which led to Plaintiff's termination -namely Comes, Nasso, and Alejandro Leon-- were all aware of his complaints. First, it is undisputed that De Moya spoke to Leon and informed him of Plaintiff's transfer to a different project after Plaintiff's complaints. *Id.* at ¶ 24. Furthermore, it's also undisputed that Leon knew which project Plaintiff was being transferred to. *Id.* In fact, the evidence reflects Leon spoke to Victor Suarez ("Suarez") the Supervisor of the project about

Monteagudo as early as two days after the transfer was made. *Id*.  Further, Manuel Cardona ("Cardona"), the foreman at the new jobsite, testified that Suarez advised him and the other three supervisors of Mr. Monteagudo's transfer. *Id*. Notwithstanding this testimony, Comes and Nasso both testified that that they did not recall speaking to Suarez about Plaintiff, but both admitted they "heard" the reasons Plaintiff was transferred away from Leon's supervision. *Id.* Reviewing the evidence in the light most favorable to Plaintiff, it is reasonable to infer that Suarez, as the project supervisor, then informed his direct reports of Monteagudo being transferred and the events that led to that decision. *See Goldsmith v. City of Atmore*, 996 F.2d 1155 at 1163 (11th Cir. 1993). While Nasso denied knowing who Leon was initially, Nasso conceded during his testimony that he knew an incident had happened at the other project with Plaintiff and Leon, former supervisor. *Id*. He also admitted that he knew that was the reason Plaintiff got transferred to the new project and that he knew there was an issue with Plaintiff and a quality control ("QC") guy but he did not recall any other specifics. *Id*. Based upon this information, an inference can be drawn by a jury that both Nasso and Cardona – the two individuals that were involved in Plaintiff's termination - knew of Plaintiff's protected activity. Plaintiff has produced the evidence; it is up to a jury to decide whether this inference is credible.

Regarding Comes, Plaintiff has presented evidence that from the outset, Comes made it clear to Plaintiff he knew of Plaintiff's complaint against Leon. *Id.* at ¶ 26.  Comes wasted no time and within a few days of Plaintiff's transfer confronted Plaintiff about his protected activity while insinuating he will be "keeping an eye on [plaintiff]" and cautioned him not to start any problems. *Id*. These were not hollow threats, as Comes as his direct supervisor had the authority to terminate Plaintiff and Plaintiff had heard from various co-workers that he needed to be careful. *Id*.  Comes' denials of this knowledge cannot prevail at summary judgment. Plaintiff's sworn testimony,

standing alone, constitutes sufficient evidence upon which to dispute Defendant's version of events and require denial of summary judgment. *See Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment"); *see also Rollins v. TechSouth*, Inc., 833 F.2d 1525, 1530-31 (11th Cir. 1987)(reversing summary judgment because plaintiff's affidavit created questions of fact for jury determination).

Furthermore, Plaintiff presented direct evidence of retaliation. It is undisputed that on October 2, 2020, Plaintiff was confronted by Leon's son—Alejandro Leon ("Alejandro")—regarding Plaintiff's complaints about Leon, his father. *Id*. at ¶ 46.  The record evidence supports that Plaintiff immediately reported the incident as retaliation to Comes. *Id*. at ¶ 47. Plaintiff described to Comes what had transpired including Alejandro's threat to "keep his dad's name out of Plaintiff's mouth." Despite the seriousness of the events, Comes deterred Plaintiff from reporting the incident to the main office assuring Plaintiff that he would "handle it". *Id*. While Comes denied Plaintiff's complaint regarding the incident, Comes' phone records reveal that on the day of the incident, Plaintiff called Comes and shortly thereafter, Comes and Alejandro spoke on the phone three times after the altercation between Plaintiff and Alejandro. *Id*. Therefore, it is reasonable to infer that shortly after Plaintiff's complaint, Plaintiff's complaint was directly relayed back to Alejandro by Comes. *See Clover*, 176 F.3d at 1354 ("[t]he defendant's awareness of the protected statement, however, may be established by circumstantial evidence."); *see also Jacomb v. BBVA Compass Bank*, 791 F. App'x 120, 124 (11th Cir. 2019) (finding that even without direct evidence, it was "plausible that a relatively high-level manager would know about an EEOC charge filed by one of the employees he supervises"). Accordingly, there can be no dispute by Defendant that those involved in the decisions which subjected Plaintiff to adverse actions,

including Plaintiff's termination, knew of his protected activities, and harassed and terminated him because of them.

vi. *Casual Connection Exists between Plaintiff's complaints and the Adverse employment Actions he was subjected to up to and including his termination*

A plaintiff can show a causal connection by showing a close temporal proximity between her employer's discovery of the protected activity and the adverse action, but the temporal proximity must be "very close." *Thomas v. Dejoy*, No. 5:19-cv-549-TKW-MJF, 2021 WL 4992892, at *10 (N.D. Fla. July 19, 2021) (looking to temporal proximity test post-Babb and citing Debe). For example, a district court found causation where "numerous adverse events . . . occurred within weeks after each of [the plaintiff's] protected acts." *Norman v. McDonough*, No. 2:20-cv-01765-KOB, 2022 WL 3007595, at *9 (N.D. Ala. July 28, 2022).

Under this new framework, the Court concluded that, viewed collectively, the acts complained of by the plaintiff—being improperly listed as a no-show for work, receiving reprimands and a suspension, and having a supervisor solicit co-workers for negative comments about the plaintiff, threaten to shoot the plaintiff in the head if she called headquarters to complain, and a delay in authorizing medical treatment for the plaintiff's allergic reaction—were "sufficient to constitute prohibited discrimination." *Id.*

**B. Plaintiff Survives Summary Judgment Because There Is a Genuine Issue of Fact as to The Legitimate Non-Retaliatory Reason For His Termination and Plaintiff Has Elicited Evidence Which Refutes Defendant's Reason For Termination.**

Though Mr. Monteagudo contends that there are issues of fact as to Defendant's "reasons" for termination, even if this was not disputed, Plaintiff survives summary judgment because those reasons are not supported by the evidence in this case. In order to show pretext, a plaintiff must show that, based on a preponderance of the evidence, the proffered reason(s) are weak, implausible, inconsistent, or contradictory so that a "reasonable factfinder could find them

unworthy of credence." *Combs v. Plantation Patterns*, 106 F. 3d 1519, 1538 (11th Cir. 1997). A plaintiff can also show pretext where a defendant has proffered "shifting and inconsistent explanations" for termination. *See Cleveland v. Home Shopping Network, Inc*., 369 F. 3d 1189, 1193 (11th Cir. 2004). Defendant's proffered reason for Plaintiff's termination, evaluated individually, contains a number of inconsistencies so that there is significant question as to the credibility of any of them. Thus, such a question should be left to a jury.

   2.. *Defendant did not follow its own disciplinary policy*

   Again, Defendant's proffered reason for termination is that Plaintiff violated safety rules when he was caught sleeping on a roller. ECF No. 44 at ¶¶ 35-43. Under the third prong, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart*, 231 F.3d at 799. "At minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Clover*, 176 F.3d at 1354. A plaintiff may also demonstrate a relationship through proximity to the complaint and the adverse employment action. *Higdon*, 393 F.3d at 1220. Using these standards, Plaintiff has certainly presented enough evidence to raise the inference that his termination was due to his complaints of discrimination and harassment. The individuals who participated and/or made the decision to terminate Plaintiff all knew of his  discrimination complaints. *See* Section A. 3. iii *supra*. The time frame in this case also leans towards a finding of causation. Plaintiff made his first complaint and was transferred on September 14, 2020. *See* ECF No. 51 at ¶.  He was then terminated on October 7. 2020. *Id*. at ¶ 38. The proximity to the complaint and transfer and his termination is indicia of Defendant's illegal actions.

   Simply put, as it pertains to a claim for retaliation, it does not matter whether Plaintiff believed the decision makers had bias against him based on his national origin or race; rather, the

question is did they have a bias against him because of his *protected activity*. Plaintiff contends

they did, as evidenced by their knowledge and the proximity. There has also been evidence

presented by Plaintiff to call into question whether the proffered reason for his termination was, in

fact, valid. *See* Section B.i., *supra*. Because there is significant issue of fact as it pertains to the

evidence in this case, a jury should decide whether Plaintiff's alleged safety violation was, indeed,

the reason for his termination.

<div align="center"><u>**CONCLUSION**</u></div>

In sum, Plaintiff has identified a bevy of facts, and provided record evidence, of which

there remain genuine issues. Furthermore, Plaintiff has also demonstrated that, even if there were

no disputed facts, Defendant has failed to meet its burden of proof under the law to warrant the

granting of its Motion. Plaintiff respectfully requests that this Court ***DENY*** Defendant's Motion

and permit the facts to be presented to a jury.

Dated: April 3, 2023                    Respectfully submitted,

<div style="margin-left: 3em">

*/s/ Nathaly Saavedra*
Nathaly Saavedra, Esq.
Fla. Bar No. 118315
Email: nathaly@peregonza.com
P. Brooks, LaRou, Esq.
Fla. Bar No. 1039018
Email: brooks@peregonza.com
Juan J. Perez, Esq.
Fla. Bar No. 115784
Email: juan@peregonza.com
**PEREGONZA THE ATTORNEYS, PLLC**
5201 Blue Lagoon Drive, Suite 290
Miami, FL 33126
Tel. (786) 650-0202
Fax. (786) 650-0200

</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 3, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ *Nathaly Saavedra*</u>
Nathaly Saavedra, Esq.

## **SERVICE LIST**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 1:22-cv-22343-KMM Moore/Louis

Nathaly Saavedra, Esq.
Fla. Bar No. 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Fla. Bar No. 115784
Email: juan@peregonza.com
P. Brooks, LaRou, Esq.
Fla. Bar No. 1039018
Email: brooks@peregonza.com
**PEREGONZA THE ATTORNEYS, PLLC**
5201 Blue Lagoon Drive,
Suite 290,
Miami, FL 33126
Tel. (786) 650-0202
Fax. (786) 650-0200

Attorneys  for Plaintiff


Reginald J. Clyne, Esq.
Florida Bar No. 654302
reginald.clyne@qpwblaw.com
Chanelle Artiles, Esq.
Florida Bar No. 10006402
chanelle.artiles@qpwblaw.com
Quintairos, Prieto, Wood & Boyer, P.A.
9300 South Dadeland Blvd., 4th Floor
Miami, Florida 33156
Telephone: 305-670-1101

Attorneys for Defendant


Method of Service: CM/ECF notice