## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-22343-KMM

JORGE MENTEAGUDO ALBURQUERQUE,

      Plaintiff,

v.

THE DE MOYA GROUP, INC.,
A Florida Profit Corporation,

      Defendant.

_____ /

## <u>ORDER</u>

THIS CAUSE came before the Court upon Defendant The De Moya Group's ("Defendant") Motion for Summary Judgment. ("Motion" or "Mot.") (ECF No. 45). Plaintiff Jorge Menteagudo Alburquerque ("Plaintiff") filed a response in opposition, ("Resp") (ECF No. 52), and Defendant filed a reply, ("Reply") (ECF No. 56). The Motion is now ripe for review. As discussed below, the Motion is GRANTED.

## I.    BACKGROUND[1]

This is a retaliation dispute arising under the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and the Florida Civil Rights Act ("FCRA"). *See generally* ("Am. Compl.") (ECF No. 13).

As relevant to the Instant Motion, Plaintiff began working as a laborer for Defendant in August 2019. D's 56.1 ¶ 8. Plaintiff asserts that in September 2020, he complained to Christopher

---

[1] The following facts are taken from Defendant's Statement of Material Facts ("D's 56.1") (ECF No. 44) and a review of the corresponding record citations and exhibits.

De Moya, the owner of the company, about "discriminatory treatment" by Plaintiff's supervisor, Noel Leon. Am. Compl. ¶ 19. Plaintiff also alleges that on October 2, 2020, Noel's son, Alejandro Leon, came to the site where Plaintiff was working and physically assaulted Plaintiff. P's 56.1 ¶ 51. Plaintiff alleges that Alejandro "stated that if anything happened to his father, he would disappear Plaintiff." *Id*.

On October 6, 2020, Jerome Nasso, the superintendent at the road site project where Plaintiff was working, observed Plaintiff sleeping on a roller. D's 56.1 ¶ 32. The roller is a machine used to cut lime rock surface for finish grade so that asphalt can be applied afterwards. *Id*. ¶ 26. Nasso then terminated Plaintiff for sleeping on the roller. *Id*. ¶ 37. Nasso stated the violation was inexcusable and warranted termination. *Id*.

Plaintiff initiated the instant lawsuit, arguing that Defendant impermissibly retaliated against Plaintiff. *See generally* Am Compl. Now, Defendant moves for summary judgment.

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III.    DISCUSSION

Defendant moves for summary judgment on both claims asserted in the Amended Complaint. Defendant argues that: (1) Plaintiff fails to demonstrate that he complained of a protected activity, *see* Mot. at 11–14; (2) there is no evidence establishing a causal connection between Plaintiff's complaints and his termination, *id*. at 14–15; and (3) Defendant terminated Plaintiff for a legitimate, non-retaliatory reason, *id*. at 15–19.

"Title VII and the [FCRA] prohibit employers from taking an adverse employment action against an employee because he participated in a protected activity." *Schoppman v. Univ. of S. Fla. Bd. of Trsts.*, 519 Fed. Appx. 549, 552 (11th Cir. 2013). The Court analyzes Plaintiff's Title VII claims of retaliation and FCRA claims of retaliation under the same standard. *See Giles v.*

*Daytona State Coll., Inc.*, 542 Fed. Appx. 869, 872 (11th Cir. 2013).

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Where, as here, a plaintiff seeks to prove his retaliation claim through circumstantial evidence, courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Brungart v. BellSouth Telecomms. Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

Under the *McDonnell Douglas* burden-shifting framework, an employee must first establish a prima facie case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the burden is on the plaintiff to show: (1) he belongs to a protected class; (2) he is qualified to perform the job; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the employee's protected class more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *see McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to show legitimate, nondiscriminatory reasons for the adverse employment action. *Holifield*, 115 F.3d at 1564. If the employer meets this burden, the burden then shifts back to the plaintiff to present "significantly probative evidence showing that the asserted [nondiscriminatory] reason is merely a pretext for discrimination." *Underwood v. Perry County Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005).

Plaintiff alleges that he complained of discrimination and that Defendant then retaliated against him when (1) Comes confronted him, (2) Alejandro confronted him, and (3) Nasso terminated him. *See generally* Am. Compl. As an initial matter, the Court considers whether any

of these three actions are adverse employment actions under Title VII and the FCRA.

An adverse employment action includes "ultimate employment decisions" like "termination, failure to hire, or demotion." *Blue v. Dunn Const. Co.*, 453 F. App'x 881, 884 (11th Cir. 2011) (quotation omitted); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (explaining that a "tangible" or "adverse" employment action consists of "things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone"). Actions that fall short of ultimate employment decisions are also actionable if the employer's actions, "in some substantial way, alter the employee' s compensation, terms, conditions, or privileges of employment"; "deprive him or her of employment opportunities"; or "adversely affect his or her status as an employee." *Blue*, 453 F. App'x at 884 (quotation omitted); *Monaghan*, 955 F.3d at 861 ("[M]istreatment based on race or other prohibited characteristics, including subjection to adverse conditions, is actionable even if the mistreatment does not rise to the level of a tangible employment action, but only if the mistreatment is 'sufficiently severe or pervasive' that it can be said to alter the terms, conditions, or privileges of employment."). An employer's action is "substantial" when a plaintiff demonstrates that he "suffered a serious and material change in the terms, conditions, or privileges or employment." *Blue*, 453 F. App'x at 884 (quotation omitted).

As Defendant notes, it is "undisputed that Plaintiff's termination is a materially adverse employment action." Reply at 7. Accordingly, the Court turns to whether confrontations by Comes and Alejandro constitute adverse employment actions.

First, Plaintiff alleges that he suffered an adverse employment action when "Plaintiff was confronted by Comes and told that Comes had been warned Plaintiff was 'problematic' and was going to be watching him." Resp. at 15. This action did not impact Plaintiff's status as an

employee, his compensation, or his responsibilities. *Blue*, 453 F. App'x at 884.  Plaintiff provides no evidence or explanation as to how this encounter caused him to "suffer[] a serious and material change in the terms, conditions, or privileges or employment."  *Id*.  And, Plaintiff provides no evidence suggesting this encounter was anything more than a petty slight, which is not actionable under a retaliation claim.  Accordingly, the Court finds that the interaction with Comes was not an adverse employment action.

Likewise, the Court finds that the interaction with Alejandro was not an adverse employment action.  First, Plaintiff fails to show that the altercation was meant to retaliate against Plaintiff for complaining *of discrimination*—particularly because Alejandro stated, "if anything happened to his father, he would disappear Plaintiff," suggesting Alejandro was trying to protect his father, not retaliate against Plaintiff.  And, importantly, Plaintiff fails to show any evidence suggesting that the interaction caused him to "suffer[] a serious and material change in the terms, conditions, or privileges or employment."  *Blue*, 453 F. App'x at 884.  This Alejandro incident does not rise to the level of an adverse employment action.  Accordingly, the Court finds that Plaintiff demonstrated that he suffered only one adverse employment action—his termination.

Turning back to Plaintiff's burden, the Court will assume arguendo that Plaintiff can establish a prima facie case of retaliation, because the next steps in the *McDonnell Douglas* framework are dispositive of Plaintiff's retaliation claims.  Accordingly, the Court assumes arguendo that (1) Plaintiff complained of discrimination, which constitutes a protected activity, (2) Plaintiff was terminated, which constitutes an adverse employment action, and (3) there was a causal connection between the complaint and Plaintiff's termination.

Defendant argues it terminated Plaintiff for legitimate, nondiscriminatory reasons.  Namely, Plaintiff had a history of being disciplined for taking unauthorized breaks and leaving his

work station and Plaintiff had been caught sleeping on the work site which was a safety hazard, warranting termination.  In support of its argument, Defendant:  (1) proffered testimony from Plaintiff's supervisors stating that Plaintiff had a history of receiving warnings and disciplinary action from Defendant for unacceptable performance prior to his termination; and (2) submitted documentary evidence such as written reprimands and the disciplinary report issued when Plaintiff was terminated.  Mot. at 16–17.  This evidence, as discussed below, demonstrates that Defendant had legitimate nondiscriminatory reasons for terminating Plaintiff.

First, the testimony demonstrates that Plaintiff had poor performance history.  When asked whether he had "any issues with [Plaintiff]'s performance," Noel Leon, one of Plaintiff's supervisors, stated, "So the supervisors, project managers, the owners of the company, and the foreman would walk by and call me saying that [Plaintiff] was sitting down, that he was stopped, he wasn't working."  Ex. 5, Leon Dep., at 58.  Another supervisor, Manuel Comes, testified about Plaintiff's performance issues, and stated, "I mean, literally, every time I turn around, [Plaintiff] is nowhere to be found.  I'd look around, look around.  He's hiding behind a piece of equipment, behind a tree . . . anywhere other than his work site."  Ex. 6, Comes Dep., p. 45.

Comes also testified that he had found the roller stopped with Plaintiff "literally, with his eyes closed laying back and the roller running."  *Id*. at 46.  Comes explained that this was a "big safety hazard" and, "after [Comes] told [Plaintiff] various numerous times, [Comes] wrote him up."  *Id*.  Defendant also provided the disciplinary report that Comes filed about Plaintiff.  *See* Ex. 30.  The disciplinary report, signed by Comes, states, "Employee was warned of constantly disappearing out of his work zone, I approach him while [he was] hiding behind a light tower [] and told him that if caught again not being in his work zone [he] was going to be written with a disciplinary report."  *Id*.

A third supervisor, Jerome Nasso, testified that one day he "found [Plaintiff] sleeping on the roller." Ex. 9, Nasso Dep., p. 34.  Nasso testified that it "was pretty apparent that [Plaintiff] was sleeping," that Plaintiff's head was down, and that Plaintiff was nonresponsive until Nasso yelled "Hey" at him and Plaintiff woke up. *Id*. at 44–45.  Nasso testified that this behavior was "inexcusable," "substandard," and a "safety hazard." *Id*. at 42.  The next day, Nasso terminated Plaintiff. *Id*. at 46.  Defendant submitted the Termination of Employment Form, signed by Nasso, which stated, "[Plaintiff] was found sleeping on roller.  All employees are told during our daily production meeting that when they finish their tasks or are not sure what to do they are to find a superintendent in the area to be given a new task.  Sleeping on a roller is inexcusable in light of the above directions." Ex. 31.

Based on the foregoing, the Court finds that Plaintiff was terminated for legitimate, nondiscriminatory reasons—Plaintiff's disciplinary history, his falling asleep on the job, and creating a safety hazard.  The burden is therefore shifted to Plaintiff to offer significantly probative evidence that Defendant's stated reasons for terminating him were actually pretext for unlawful retaliation.

"The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).  It follows that "[t]he question to be resolved is not the wisdom or accuracy" of Defendant's decision to terminate Plaintiff, or whether that decision was "prudent or fair." *Id*. (citing *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002)).  Instead, the Court's sole concern "is whether unlawful [retaliatory] animus motivate[d]" the decision. *Id*.  "If the employer's reason is 'one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee

cannot succeed by simply quarreling with the wisdom of that reason.'" *Dugandzic v. Nike, Inc.*, 807 F. App'x 971, 976 (11th Cir. 2020); *see also  Gogel v. Kia Motors Mfg. of Ga., Inc.,* 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (noting that the Eleventh Circuit has "repeatedly emphasized" this point) (collecting cases).

"Plaintiff may demonstrate that [Defendant's] reasons were pretextual by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citation and quotation omitted).  "A reason is not pretext for retaliation unless it is shown both that the reason was false, and that retaliation was the real reason." *Gogel*, 967 F.3d at 1136 (alteration and internal quotations omitted) (emphases in original).

Here, Plaintiff advances two arguments in support of his position that the legitimate nondiscriminatory reasons for his termination were pretextual.  First, without any citation to the record, Plaintiff makes the conclusory statement that "Defendant's proffered reason for Plaintiff's termination, evaluated individually, contains a number of inconsistencies so that there is significant question as to the credibility of any of them."  Resp. at 20.  Plaintiff fails to identify a single inconsistency in Defendant's proffered reasons.  Nor can the Court identify one.  This conclusory, unsupported statement is wholly insufficient to meet Plaintiff's burden.

Next, Plaintiff states that "Defendant did not follow its own disciplinary policy." *Id*.  Yet, Plaintiff neither identifies Defendant's disciplinary policy, nor does he explain how Defendant failed to follow the alleged disciplinary policy. *Id*.

As Defendant points out, Plaintiff fails to offer evidence that the reason for his termination—his sleeping on the roller and creating a safety hazard—was false.  Plaintiff also fails

to assert any evidence suggesting that the reason for Plaintiff's termination was pretext for discrimination.

These undisputed facts demonstrate that had a legitimate and non-retaliatory reason for terminating Plaintiff. And, Plaintiff utterly fails to demonstrate that these legitimate, non-discriminatory reasons are pretext for discrimination. Accordingly, Defendant is entitled to summary judgment on both of Plaintiff's claims.

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 45) is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of May, 2023.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

10