UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:22-cv-22343-KMM Moore/Louis

JORGE MONTEAGUDO ALBURQUERQUE,

Plaintiff,

v.

THE DE MOYA GROUP, INC.,
a Florida Profit Corporation,

Defendant.
_____/

**<u>PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY</u>**

Plaintiff, JORGE MONTEAGUDO ALBURQUERQUE pursuant to Fla. L. R. 7.8, files this Notice of Supplemental Authority to direct the Court's attention to a decision that is highly relevant to the issues raised in the case at bar which was discovered after the filing of the last brief served in this cause by Plaintiff:

1. In <u>Estevez v. Berkeley Coll.</u>, No. 18-CV-10350 (CS), 2022 WL 1963659 (S.D.N.Y. June 6, 2022), the Court denied Defendants Motion for fees under the fee-shifting provision of Title VII, 42 U.S.C. § 2000e-5(k); 28 U.S.C. § 1927; and the Court's inherent authority finding that while Plaintiffs' complaints failed to put their employer on notice that the complained-of activity is, in fact, unlawfully discriminatory, "there was some ambiguity in [Plaintiffs'] complaints, such that the Court cannot say the claims were so entirely meritless as to render this one of the rare cases in which awarding fees to defendants is appropriate." Id. at *5.

A copy of the opinion is attached for this Court's consideration.

Dated: September 11, 2023.   Respectfully submitted,

/s/ Nathaly Saavedra
Nathaly Saavedra, Esq.
Fla. Bar No. 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Fla. Bar No. 115784
Email: juan@peregonza.com
P. Brooks, LaRou, Esq.
Fla. Bar No. 1039018
Email: brooks@peregonza.com
Jocelyn R. Rocha, Esq.
Fla. Bar No. 1039302
Email: jocelyn@peregonza.com
**PEREGONZA THE ATTORNEYS, PLLC**
5201 Blue Lagoon Drive,
Suite 290,
Miami, FL 33126
Tel. (786) 650-0202
Fax. (786) 650-0200

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 11, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Nathaly Saavedra
Nathaly Saavedra, Esq.

**SERVICE LIST**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 1:22-cv-22343-KMM Moore/Louis

| | |
|---|---|
| Nathaly Saavedra, Esq.<br>Fla. Bar No. 118315<br>Email: nathaly@peregonza.com<br>Juan J. Perez, Esq.<br>Fla. Bar No. 115784<br>Email: juan@peregonza.com<br>P. Brooks, LaRou, Esq.<br>Fla. Bar No. 1039018<br>Email: brooks@peregonza.com<br>Jocelyn R. Rocha, Esq.<br>Fla. Bar No. 1039302<br>Email: jocelyn@peregonza.com<br>**PEREGONZA THE ATTORNEYS, PLLC**<br>5201 Blue Lagoon Drive,<br>Suite 290,<br>Miami, FL 33126<br>Tel. (786) 650-0202<br>Fax. (786) 650-0200<br><br>Attorneys for Plaintiff<br><br>Brian H. Pollock, Esq. (174742)<br>brian@fairlawattorney.com<br>FAIRLAW FIRM<br>135 San Lorenzo Avenue<br>Suite 770<br>Coral Gables, FL 33146<br>Tel: (305) 230-4884<br><br>*Counsel for Nathaly Saavedra, Esq. and PereGonza The Attorneys*<br><br>Method of Service: CM/ECF notice | Reginald J. Clyne, Esq.<br>Florida Bar No. 654302<br>reginald.clyne@qpwblaw.com<br>Chanelle Artiles, Esq.<br>Florida Bar No. 10006402<br>chanelle.artiles@qpwblaw.com<br>Quintairos, Prieto, Wood & Boyer, P.A.<br>9300 South Dadeland Blvd., 4th Floor<br>Miami, Florida 33156<br>Telephone: 305-670-1101<br><br>Attorneys for Defendant<br><br>Method of Service: CM/ECF notice |

2022 WL 1963659
United States District Court, S.D. New York.

Jimarzarette ESTEVEZ, Deanna
Mancini, and Diane Mekuli, Plaintiffs,
v.
BERKELEY COLLEGE, Joel
Martinez, Gretchen Orsini, and
David Bertone, Defendants.

No. 18-CV-10350 (CS)
|
Signed 06/06/2022

**Attorneys and Law Firms**

Daniela Nanau, Law Office of Daniela Nanau P.C., Glendale, New York, Counsel for Plaintiffs.

Bran C. Noonan, FordHarrison LLP, New York, New York, Counsel for Defendants.

**OPINION & ORDER**

Seibel, UNITED STATES DISTRICT JUDGE

*1 Before the Court is Defendants' motion for attorneys' fees, (ECF No. 105), and Plaintiffs' cross-motion to stay the ruling on that motion, (ECF No. 112). For the following reasons, both motions are DENIED.

**I. BACKGROUND**

The Court presumes the parties' familiarity with the facts of this case, which are set forth in detail in the Court's July 19, 2021 Opinion and Order. (ECF No. 96 (the "Order").)

Plaintiffs, who were formerly employed in the admissions office of Berkeley College (the "College"), initiated this action on November 7, 2018, bringing hostile work environment and retaliation claims against the College under Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYSHRL"), and an aiding and abetting claim under the NYSHRL against Defendant Martinez. (ECF No. 1 ¶¶ 129-149.)[1] Plaintiffs later amended their Complaint to add NYSHRL aiding and abetting claims against Defendants Orsini and Bertone. (See ECF No. 28 ¶¶ 153-154.) On July 19, 2021, the Court granted Defendants' motion for summary judgment, dismissing all claims. (See Order.) As relevant here, the Court concluded that Estevez and Mancini failed to make out a *prima facie* retaliation case, and that Mekuli's retaliation claim had been abandoned. (Id. at 38-43.) The Court further determined that there was no evidence from which a reasonable jury could conclude that Defendants' proffered explanations for the terminations were pretextual. (Id. at 44-47.) On August 13, 2021, Plaintiffs appealed the Court's July 19 Order in its entirety. (ECF No. 98.)

[1] The instant motion concerns only the retaliation claims. (See ECF No. 105; ECF No. 106 ("Ds' Fees Mem.") at 1 & n.1.)

On August 17, 2021, twenty-eight days after the Order granting Defendants' summary judgment motion was entered,[2] Defendants filed a pre-motion letter in anticipation of the instant motion for attorneys' fees. (See ECF No. 99.) In response, Plaintiffs, without leave,[3] filed a cross-motion (despite the fact that Defendants had not yet moved), in which they requested that the Court dismiss Defendants' proposed fee motion as untimely or, in the alternative, stay litigation regarding attorneys' fees until the Court of Appeals resolves Plaintiffs' appeal of the July 19 Order.[4] (ECF No. 101.) On September 9, 2021, the Court held a conference to discuss both motions and set a schedule for the parties to brief both issues. (See Minute Entry dated Sept. 9, 2021.) The instant motions followed. (ECF Nos. 105, 112.)

[2] While the Court's Order and Opinion is dated July 19, 2021, the order was entered on July 20, 2021. (See ECF No. 97.)

[3] Under my Individual Rules of Practice, a party that wishes to make a motion must submit a letter setting forth the basis for the motion, so that the opposing party may respond and I can hold a pre-motion conference. See Individual Rule of Practice 2(A). The Rule allows for a motion to be filed without following that process where the party reasonably believes that delay in filing might result in the loss of a right, provided that the party files, along with the motion, a letter explaining why the party believes it might be prejudiced if it complied with the pre-motion conference requirement. See id. Plaintiffs neither filed such a letter nor explained why abiding by the rule would prejudice them.

4     As of the date of this Opinion and Order, Plaintiffs' appeal remains pending. *See Estevez v. Berkeley Coll.*, No. 21-1988 (2d Cir.).

## II. DISCUSSION

### A. Motion to Stay

**\*2** Plaintiffs argue that the Court should defer ruling on Defendants' motion for attorneys' fees pending the resolution of their appeal to the Second Circuit.

The Court looks to four factors when determining whether a stay of a pending appeal is appropriate: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (cleaned up). The Second Circuit has "treated these criteria somewhat like a sliding scale," in that "the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors" and "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). Where a district court is asked to stay its own order, courts typically analyze the question of "likelihood of success on the merits" by looking to whether there are " 'serious questions' going to the merits of the dispute and the applicant is able to establish that the balance of hardships tips *decidedly* in its favor." *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL 4247744, at \*2 (S.D.N.Y. Aug. 27, 2014) (emphasis in original) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

Here, even granting Plaintiffs the benefit of the more permissive "serious questions" standard, the first factor weighs against Plaintiffs. As explained at length in the Court's July 19, 2021 Order, Plaintiffs' retaliation claims suffered from a number of deficiencies, starting with the fact that Plaintiffs failed to show that they had even engaged in protected activity in the first place. (Order at 38-43.) Further, even if they had made such a showing, their claims were still not viable because Defendants demonstrated a legitimate, nonretaliatory reason for each Plaintiff's termination, which Plaintiffs failed to rebut. (*Id.* at 43-47.) It was not a close call.

Applying the "sliding scale" approach set out in *Thapa* and other Second Circuit cases, Plaintiffs' burden to show a likelihood of success on the merits of their appeal increases where the irreparable injury to Plaintiffs, if the stay is denied, is not severe. *See Thapa*, 460 F.3d at 334; *In re World Trade Ctr.*, 503 F.3d at 170. Here, the only "irreparable injury" that Plaintiffs articulate is the possibility that they would have to brief an appeal of the fees issue before the Circuit now instead of later. (ECF No. 113 at 4-5.)[5] This is not a particularly compelling case for irreparable injury, notwithstanding the fact that it might be less efficient for Plaintiffs to have to separately appeal the fees issue while their merits appeal is still pending. This relatively minor irreparable injury to Plaintiffs, combined with a weak showing of likelihood of success on the merits, weigh against granting the stay. Similarly, Plaintiffs have not demonstrated that the balance of hardships "tips *decidedly* in [their] favor" such that a relaxed approach to the question of likelihood of success on the merits is appropriate. *See In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at \*2 (emphasis in original).

5     Because Defendants have said they would stay enforcement of any fee award pending the outcome of all appeals in this matter, (*see* ECF No. 116 at 7), Plaintiffs would not be prejudiced by having to pay an award before the Circuit decides their appeal.

**\*3** The remaining factors do not tip the balance toward Plaintiffs. While Defendants' concession that they would not seek payment of any fees until all appeals are decided suggests that they would not be particularly harmed were the Court to grant the stay, the public interest weighs in favor of denying the stay. At this stage, resolution of this issue is the most efficient use of judicial resources. The Court can dispose of this issue now rather than wait and decide it at even greater remove from determination of the merits issue. The parties have already briefed the fees issue and there appears to be little to gain (by way of efficiency) in waiting to address these arguments.

Accordingly, Plaintiffs' motion to stay is denied, and the Court will address Defendants' motion for attorneys' fees.

### B. Motion for Attorneys' Fees

Defendants move for attorneys' fees under the fee-shifting provision of Title VII, 42 U.S.C. § 2000e-5(k); 28 U.S.C. § 1927; and the Court's inherent authority. They also seek a

retroactive extension for their fees motion, which the Court addresses as a threshold matter.

**1. Rule 6(b)**

Defendants request a retroactive extension of their time to move for fees under Federal Rule of Procedure 6(b). Plaintiffs argue that Defendants' motion for fees must be dismissed because it was untimely and Defendants have failed to demonstrate excusable neglect for the late filing. (P's Fees Opp. at 3).

Federal Rule of Civil Procedure 54(d)(2)(B) states that "[u]nless a statute or a court order provides otherwise, the motion [for attorneys' fees] must ... be filed no later than 14 days after the entry of judgment." Defendants filed their pre-motion letter on August 17, 2021, twenty-eight days after the entry of judgment on July 20, 2021. Under Rule 6(b), a district court "may, for good cause," retroactively extend deadlines "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1).

> [T]he Supreme Court [has] set forth four factors to be considered in connection with an assertion of "excusable neglect" as justification for a missed judicial deadline: (1) "the danger of prejudice" to the party opposing the extension; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control" of the party seeking the extension; and (4) whether the party seeking the extension "acted in good faith." While those factors are the central focus of the inquiry, the ultimate determination depends upon a careful review of "all relevant circumstances."

In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 129 (2d Cir. 2011) (internal citations omitted) (quoting Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392 (1993)). While "excusable neglect is an elastic concept that is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 228 (2d Cir. 2004) (cleaned up), the Second Circuit has noted that as a practical matter the inquiry often focuses on the proffered reason for the delay, see Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003).

Defendants' lead counsel, Mr. Noonan, represents that he was out of his office during the week of July 26, 2021 attending to some family matters, (ECF No. 107 ¶ 56), which would have left sufficient time to prepare the pre-motion letter by August 3, but when he returned on July 31, he had become ill with COVID-19,[6] and remained so until approximately August 14, (*id.* ¶¶ 57-58). He filed the pre-motion letter on August 17, one business day after completing quarantine. (*Id.* ¶ 58.) The Court has no reason to doubt counsel's representations regarding the debilitating nature or the duration of his COVID-19 symptoms, (*see id.* ¶¶ 57-58; ECF No. 115 ¶¶ 2-5), and finds that these circumstances are out of counsel's control and constitute a reasonable justification for the delay, see Stewart v. Hudson Hall LLC, No. 20-CV-885, 2021 WL 406743, at *3 (S.D.N.Y. Feb. 5, 2021).[7]

[6] His symptoms began on July 31 and he tested positive on August 2 (despite being vaccinated). (ECF No. 107 ¶¶ 57-58.)

[7] The fact that Mr. Noonan did not have an associate or another, more senior, attorney (who would not have been familiar with the case) file the pre-motion letter does not convince the Court otherwise. As counsel explains, he would have needed to review any filing as lead counsel on this matter, and he was not in a condition to do so. (ECF No. 114 ("Ds' Fees Reply") at 9-10.) While Mr. Noonan or another attorney with his firm could have, and should have, notified the Court that an extension was needed prior to the deadline running, that oversight does not make the neglect here inexcusable.

**\*4** The other factors likewise weigh in favor of finding excusable neglect under Rule 6(b). Plaintiffs argue that, had the fees motion been filed two weeks earlier and prior to their notice of appeal, it would have been possible to litigate all appealable issues together. (ECF No. 111 ("Ps' Fees Opp.") at 7.) But this argument is somewhat disingenuous: earlier notice of the fees motion would not have changed the deadline for Plaintiffs to file their notice of appeal, the fees motion could not have been decided before that deadline, and nothing about the two-week delay would have prevented the parties from seeking a stay in the Court of Appeals pending the fees motion or asking this Court to expedite consideration of the fees motion. Finally, the length of the delay is quite minimal, and, as suggested above, there is no basis to conclude that Defendants' counsel is acting in bad faith.

Accordingly, Defendants' motion for a retroactive extension under Rule 6(b) is granted, and the Court turns to the substance of the fees motion.

### 2. Title VII

Defendants argue that they are entitled to an award of fees as the prevailing party under Title VII. Section 706(k) of Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs." 42 U.S.C. § 2000e-5(k). While a prevailing plaintiff will typically be awarded attorneys' fees as a matter of course under this provision, a prevailing defendant must show that the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 422 (1978).

A claim may be "frivolous, unreasonable, or groundless" even if not brought in "subjective bad faith." *Id.* at 421-22. But a "defendants' burden of establishing that a claim was 'frivolous, unreasonable, or groundless' or 'clearly meritless' is a heavy one, and 'it is very rare that victorious defendants in civil rights cases will recover attorneys' fees.' " *Fleming v. MaxMara USA, Inc.*, No. 06-CV-6357, 2010 WL 1629705, at *8 (E.D.N.Y. Apr. 21, 2010) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2004)); *see Hughes v. Rowe*, 449 U.S. 5, 14 (1980) ("[T]he plaintiff's action must be meritless in the sense that it is groundless or without foundation."). As such, the mere assertion of a losing argument does not satisfy the *Christiansburg* standard. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998) (" '[T]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees' in favor of the defendant.") (quoting *Hughes*, 449 U.S. at 14); *Nardoni v. City of N.Y.*, No. 17-CV-2695, 2019 WL 542349, at *7 (S.D.N.Y. Feb. 12, 2019) ("After examining the evidence in this case, we believe that there was an objectively reasonable basis – even if it was unmeritorious – to make such an argument."), *report and recommendation adopted*, 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019).

The fee issue here presents a close call: Plaintiff's retaliation theory was, for the reasons detailed at length in the Court's July 19 Order, extremely thin. (*See* Order at 37-47.) And, as Defendants point out, Plaintiffs stretched the record to the point of misrepresenting testimony, and have continued to do so on this motion.[8]

---

[8] The Court has already warned Plaintiffs' counsel against misrepresenting and mischaracterizing the record, (*see* Order at 18 n.12, 36 n.18, 39-40 & n.20), yet Plaintiffs in their briefs on these cross-motions push some of the same unsupported arguments that prompted those warnings. For example, in support of their stay request and in opposition to Defendants' fees motion, Plaintiffs protest my finding in the Order that there was no evidence supporting their position, (*see* ECF. No. 87 at 26), that Estevez complained to her supervisor, Bertone, that male co-worker Daniel Lapan had commented that there was "too much estrogen" in a part of the office where several women sat, (*see* ECF No. 117 at 6-7; Ps' Fees Opp. at 9). As the Court found during summary judgment, this claim is clearly belied by the record. (*See* Order at 39-40 & n.20.) Undeterred, Plaintiffs attempt to push back against the Court's previous characterization of this claim as a "whopper" by quoting testimony from Estevez's deposition that they claim the Court "overlooked." (Ps' Fees Opp. at 9-10.) But the language that Plaintiffs quote merely confirms the lack of evidence that Estevez complained to Bertone about the "estrogen" comment: Plaintiffs accurately quote Estevez's testimony that she complained to Bertone about " 'my students, my enrollment, Daniel [Lapan]'s insubordination, the hostility in the admission's office, Daniel stealing my students.... Joel [Martinez] excluding me from managerial meetings and inviting Daniel [Lapan] to them.' " (Ps' Fees Opp. at 9 (alteration in original) (quoting ECF No. 88 ¶ 120 (quoting ECF No. 73-10 at 204:14-205:7)).) Nowhere in the quoted language does Estevez mention the "estrogen" comment. Further, beyond the quoted portion, Plaintiffs provided other deposition excerpts in which Estevez was asked several follow-up questions regarding her complaints to Bertone about Lapan, (ECF No. 73-10 at 205:21-24, 207:1-208:23, 212:5-24), and none of her answers refer to the comment either.

Later in their brief, Plaintiffs make a similar misrepresentation, stating that "[Human Resources manager Clarissa] Gilliam remembered speaking to Estevez while investigating Mancini's complaint, and that Estevez complained about ... Lapan's 'too much estrogen' comments." (Ps' Fees Opp. at 12.) This is another falsification that the Court specifically called out in the July 19 Order, noting that it "d[id] not seem inadvertent" and explicitly cautioning counsel "against such misleading conduct in the future." (Order at 39 n.20; *see id.* at 18 n.12.) In its summary judgment papers and on the instant fees motion, Plaintiffs' purported support for this assertion is paragraph 158 of their response to Defendants' Rule 56.1 statement, (ECF No. 88), which in turn cites page 86 of Gilliam's deposition. On that page,

Gilliam acknowledges that Estevez complained about Lapan, but she states only that Estevez complained about Lapan and Martinez getting lunch. (ECF No. 73-9 at 86:9-25.) On page 89 of her deposition, Gilliam testified unequivocally that no one ever told her that Lapan refused to sit in the bullpen because there was "too much estrogen" there. (ECF No. 115-2 at 89:15-18.)

In addition, Defendants point out Plaintiffs' unsupported assertions, made for the first time in their brief opposing the fees motion, that Ms. Gilliam believed that all three Plaintiffs "were engaged in protected activity by complaining about a hostile work environment in White Plains, which is why she objected to Defendants' decision to terminate their employment," and that she testified to this effect. (Ps' Fees Opp. at 12-13; *see* Ds' Fees Reply at 2.) In support of these assertions, Plaintiffs cite paragraph 31 of their Rule 56.1 counterstatement. (Ps' Fees Opp. at 13, 15.) There are two paragraphs numbered 31 in that counterstatement, neither of which says anything about Gilliam or Plaintiffs' termination. (*See* ECF No. 115-1 at 16-17.) It seems Plaintiffs meant to cite paragraph 37 of their Rule 56.1 counterstatement, (ECF No. 89 ¶ 37), which in turn cites pages 121 and 122 of Ms. Gilliam's deposition, where she testified in relevant part:

> With all three [Plaintiffs] ... when the terminations came to my attention ... my recommendation was, although there were performance issues, I did not believe at the time they were terminated that they should be terminated. More time should be given to observe and deal with performance under the management with everything that's going on. That was my recommendation.

(ECF No. 73-9 at 121:19-122:4). To say, from this testimony, that Gilliam "invok[ed] Plaintiffs' protected activity as a reason not to fire them," (Ps' Fees Opp. at 15), goes beyond stretching the record and approaches complete fabrication.

> That Plaintiffs' counsel continues to make false assertions, after being specifically cautioned not to do so, is disturbing.

**\*5** The Court cannot, however, say the retaliation claim was so frivolous that an award of attorneys' fees is appropriate. Estevez did complain about Lapan's conduct, including his "insubordination," (*see* ECF No. 73-10 at 204:22-208:23), albeit in a manner that failed to put her employer on notice that "the complained-of activity is, in fact, unlawfully discriminatory," *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (*per curiam*).[9] Similarly, Mancini complained to Gilliam about Carmichael and the "toxic work environment", (*see* ECF No. 74-9) – again in a manner that was too vague to give Gilliam notice that she was complaining about conduct based on gender. *See Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) ("[T]he mere fact that plaintiff used the term 'hostile environment' in her email to her supervisor is not enough; the court must look at the substance of her complaint, not the terminology that she used."). But there is arguably some ambiguity in Mancini's and Estevez's complaints, such that the Court cannot say the claims were so entirely meritless as to render this one of the rare cases in which awarding fees to defendants is appropriate.

[9] In their opposition, Plaintiffs argue, in essence, that because Estevez complained that Lapan was insubordinate, and because the reason Lapan was insubordinate was because he was sexist, Defendants should have known that Estevez was complaining that Lapan was sexist. (Ps' Fees Opp. at 9-10.) Aside from the fact that Plaintiffs failed to spell out this argument in their summary judgment papers and the fact that Estevez never testified or otherwise stated that that was her reasoning, (*see* ECF No. 73-10 at 204:22-208:23), acceptance of Plaintiffs' argument would require employers to read the minds of both the complaining employee and the employee who is the subject of the complaint. Title VII does not place such a burden. *See, e.g.*, *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (no protected activity where complaints were generalized and employer could not reasonably have understood them as addressed to conduct prohibited by Title VII).

There is also at least some evidence that Mekuli complained to Gilliam that Carmichael " 'constantly stare[d]' at her," that Mekuli "had to move into her cubicle to hide her body" from Carmichael, and that Carmichael acted inappropriately toward her and generally made her uncomfortable. (Order at 17-18 (citing ECF No. 69-1 Ex. II at 188:11-190:21).) While Plaintiffs inexplicably abandoned Mekuli's retaliation claim by failing to argue it in their opposition, (*see id.* at 42-43),[10] this scintilla of evidence in Plaintiffs' favor demonstrates that pursuing the retaliation claim through summary judgment was not completely unreasonable.

[10] Plaintiffs argue that they did not abandon these arguments, stating that they "included testimonial evidence of this meeting [between Gilliam and Mekuli] in their summary judgment papers, and noted it throughout their opposition brief." (Ps' Fees Opp. at 12 (citing ECF No. 72 at 1-2, 11).) But pages 1-2 of Plaintiffs' opposition brief include only a general assertion, as part of the Preliminary Statement,

that "each Plaintiff complained to the individually named Defendants and to the Berkeley College Human Resources Department about a gender-based hostile work environment at the White Plains location where they worked, which was caused by both co-worker and supervisor misconduct." (ECF No. 72 at 1-2.) No citation to the record is given for this assertion. And pages 11-12 of the brief refer only to the fact that Gilliam interviewed each Plaintiff and that each was given what Plaintiffs characterize as retaliatory Performance Improvement Plans; the only complaints to which Plaintiff refers on those pages are Mancini's, not Mekuli's. (*Id.* at 11-12.) Likewise, the portion of the brief addressing whether Plaintiffs engaged in protected activity refers only to Mancini and Estevez and says nothing about Mekuli. (*Id.* at 25-28.) Plaintiffs' counsel's allegation that the evidence of Mekuli's complaints was noted throughout Plaintiffs' opposition brief is another unacceptable distortion of the record.

**\*6** Defendants cite cases where defendants were awarded fees, but in those plaintiffs pursued claims that were, by comparison, more lacking than those presented here. For example, in *Perry v. S.Z. Restaurant Corp.*, the plaintiff alleged that he was denied use of a Burger King bathroom because he is Black, but his own trial testimony confirmed that the bathroom in question was out of order, and that he had seen the sign indicating as much on the bathroom door as well as a chain blocking access to the stairway where the bathroom was located. 45 F. Supp. 2d 272, 274 (S.D.N.Y. 1999). In *Steinberg v. St. Regis/Sheraton Hotel*, the court deemed Title VII and Age Discrimination in Employment Act claims "insupportable" because the plaintiff employees' respective claims of religious and national origin discrimination were undercut by the fact that among their supervisors were members of the same religion and of the same national origin. 583 F. Supp. 421, 423-25 (S.D.N.Y. 1984). Likewise, the plaintiffs could not plausibly claim age discrimination when the employees hired to replace them were the same age or older. *Id.* The instant case is simply not as frivolous as either *Perry* or *Steinberg*.

Defendants' remaining authorities are also inapposite. *See Briskovic v. Our Lady of Mercy Med. Ctr.*, No. 96-CV-7452, 2000 WL 890182, at \*1 (S.D.N.Y. July 5, 2000) (awarding fees to defendant in Title VII claim where "the evidence was clear that Plaintiff was fired because he had gotten into an argument with a supervisory employee in which he had called her 'a black bitch' and threatened to 'blow up the fucking building' "); *Supulski v. Dansville Cent. Sch. Dist.*, No. 13-CV-6253, 2014 WL 7215184, at \*3-4 (W.D.N.Y. Dec. 17, 2014) (plaintiff agreed to resign from her position in exchange for more than nine months of compensation, unsuccessfully attempted to revoke her resignation, and sued for retaliation under Title VII); *Lee v. Glessing*, No. 99-CV-872, 2006 WL 2524185, at \*4 (N.D.N.Y. Aug. 30, 2006) (Title VII plaintiff "failed to relate a single instance in which he experienced discrimination or sexual harassment during the time he worked" for his former employer); *David v. Apfel, Levy, Zlotnick & Co.*, No. 91-CV-3384, 1994 WL 532745, at \*1 (S.D.N.Y. Sept. 29, 1994) (Title VII discrimination claim was baseless where plaintiff conceded he was fired after confrontation with a coworker and there was no evidence that race or gender played any role in decision), *aff'd*, 101 F.3d 684 (2d Cir. 1996); *Puglisi v. Underhill Park Taxpayer Assoc.*, 964 F. Supp. 811, 815-16 (S.D.N.Y. 1997) (plaintiff directly contradicted key allegations in his complaint, including by admitting that he was unaware whether a taxpayers' meeting – at which he claimed he was coerced to evict Black tenants – even happened, and that he had no knowledge to back up his allegation that a municipality selectively enforced codes and ordinances); *Colucci v. N.Y. Times Co.*, 533 F. Supp. 1011, 1012 (S.D.N.Y. 1982) (Title VII discrimination and retaliation claims lacked basis in fact where evidence demonstrated that plaintiff never applied for the promotion he complained he was denied, plaintiff failed to take advantage of employer's efforts to "improve his qualifications and opportunities for promotion," and a co-worker who had made similar sex-discrimination complaints was promoted).

In short, although the retaliation claims in this case were "very weak," the Court finds they were "not so frivolous as to warrant an award of attorney's fees." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006) (cleaned up).

### 3. 28 U.S.C. § 1927 and the Court's Inherent Power

Defendants also argue that they are entitled to attorneys' fees under 28 U.S.C. § 1927 and the Court's inherent power. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of section 1927 sanctions is "to deter unnecessary delays in litigation." *Bowler v. U.S. Immigr. & Naturalization Serv.*, 901 F. Supp. 597, 604 (S.D.N.Y. 1995). "The sanctions authorized under section

1927 are not to be lightly imposed; nor are they to be triggered because a lawyer vigorously and zealously pressed his client's interests." *Colucci*, 533 F. Supp. at 1013-14. Rather, "[t]he section is directed against attorneys who willfully abuse judicial processes." *Id.* at 1014.

**\*7** "The only difference between a sanctions award under § 1927 and a court's inherent power is that 'awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). Accordingly, "requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry." *Id.* (cleaned up). "The decision to issue sanctions under either ground lies within this Court's broad discretion." *Id.*

To impose sanctions under section 1927 or the Court's inherent power, there must be "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (cleaned up). Having already found that the claims Plaintiffs pursued were not so frivolous as to warrant an award of fees under Title VII, the Court cannot say that section 1927 sanctions are appropriate in this case. It is not clear that the claims were entirely without color, even if Plaintiffs' counsel's reckless approach to misrepresenting the record could give rise to an inference of bad faith.

**4. Rule 11**

Defendants did not move under Federal Rule of Civil Procedure 11, and the Court does not consider it in connection with Plaintiffs' counsel's conduct in opposing summary judgment. But the Court on its own motion raises the issue in connection with Plaintiffs' counsel's conduct in opposing Defendants' fee motion and in moving for a stay. Footnote 8 above describes factual contentions that appear to lack evidentiary support, were made in support of unwarranted legal contentions, and/or were presented for an improper purpose. *See* Fed. R. Civ. P. 11(b). Accordingly, Plaintiffs' counsel is ORDERED to SHOW CAUSE in writing, no later than June 20, 2022, why the assertions described in that footnote does not violate Rule 11(b). *See* Fed. R. Civ. P. 11(c)(3). If Defendants wish to respond, they may do so by July 5, 2022, and in that event, Plaintiffs' counsel may reply by July 12, 2022.

**III. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to stay and Defendants' motion for fees are both DENIED. Plaintiffs' counsel is ordered to show cause by June 20, 2022, as set forth herein.

**SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 1963659, 2022 IER Cases 194,903

---

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.