Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF FLORIDA

3    _____

4

5    JORGE MONTEAGUDO ALBURQUERQUE,

6

7           Plaintiff,

8    v.                    CASE NO.: 1:22-cv-22343

9    THE DE MOYA GROUP, INC.,

     A Florida Profit Corporation,

10

11          Defendant.

12   _____

13

14      DEPOSITION OF JORGE MONTEAGUDO ALBURQUERQUE

15

16   DATE:          Thursday, November 17, 2022

17   TIME:          10:00 a.m. - 11:19 a.m.

18   LOCATION:      Zoom

19                  Videoconference

20   REPORTED BY:   Veronica Alonso, Notary Public

21   JOB NO:        5566948

22

23

24

25

**PLAINTIFF'S EXHIBIT**

**2**

Page 2

```
 1              A P P E A R A N C E S

 2

 3   ON BEHALF OF PLAINTIFF(S):

 4   JOCELYN ROCHA, ESQUIRE

 5   NATHALY SAAVEDRA, ESQUIRE

 6   PereGonza The Attorneys, PLLC

 7   5201 Blue Lagoon Drive

 8   Suite 290

 9   Miami, Florida 33126

10   786-650-0202

11   jocelyn@peregonza.com

12

13

14   ON BEHALF OF DEFENDANT(S):

15   REGINALD J. CLYNE, ESQUIRE

16   Quintairos, Prieto, Wood & Boyer, P.A.

17   9300 South Dadeland Boulevard

18   Floor 4

19   Miami, Florida 33156

20   305-670-1101

21   reginald.clyne@qpwblaw.com

22

23

24   INTERPRETER: Oscar Bravo

25
```

Page 3

1                         I N D E X

2     WITNESS                                PAGE

3     JORGE MONTEAGUDO ALBURQUERQUE

4     By Mr. Clyne                              5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1                 P R O C E E D I N G S

2          THE COURT REPORTER:  We are on the record.

3     There is an interpreter present, please state

4     your full name for the record.

5          THE INTERPRETER:  Oscar Bravo.

6          THE COURT REPORTER:  And then please raise

7     your right hand. Do you swear or affirm that

8     you will translate the following from English

9     to Spanish and to Spanish to English the best

10    of your ability?

11         THE INTERPRETER:  I do.

12         THE COURT REPORTER:  Thank you. And then

13    the witness provided proper identification.

14    Please state your full name for the record.

15         THE WITNESS:  Jorge Monteagudo

16    Alburquerque.

17         THE COURT REPORTER:  Okay. Then please

18    raise your right hand. Do you swear or affirm

19    that that testimony that we're about to do in

20    this case today will be the truth, the whole

21    truth, and nothing but the truth?

22         THE WITNESS:  I do.

23         THE COURT REPORTER:  Thank you, you could

24    put your hand.

25

Page 5

1                    DIRECT STATEMENT

2     BY MR. CLYNE:

3          Q    Good morning, sir. My name is Reginald

4     Clyne, and the attorney for the De Moya Group. I'm

5     going to ask you some questions, and I want you to

6     wait until the interpreter has finished the

7     interpretation before trying to answer.

8          A    Okay.

9          Q    If you don't understand my question, ask

10    me to repeat it or rephrase it. Make sure you

11    understand before you try answer. If at any time you

12    need to take a break and there's no pending

13    questions, let me know and we can take a break.

14         A    No problem.

15         Q    And you need to answer every question with

16    a verbal response. Not a uh huh, uh huh. Do you

17    understand?

18         A    Okay.

19         Q    Try to wait until the interpreter finishes

20    before you start answering because the court

21    reporter is taking down everything that has been

22    said.

23         A    Okay.

24         Q    At this time, I'd like to get the

25    appearances of everybody that's present. I'm here,

Page 6

1   Reginald Clyne and with from my office is Andres

2   Fidales, my associate.

3          MS. ROCHA:  Good morning. My name is

4      Jocelyn Rocha, and I'm here with Nathaly

5      Saavedra on behalf of the plaintiff.

6          MR. CLYNE:  Okay. All right. Can you

7      please tell me your full name?

8   A    Jorge Monteagudo Alburquerque.

9   Q    Can you tell me where you were born?

10  A    In Cuba.

11  Q    And what year were you born?

12  A    1969.

13  Q    What was the date of your birth?

14  A    May 5th.

15  Q    And when did you migrate to the United?

16  A    January 27th 2011.

17  Q    Are you currently taking any medications?

18  A    No.

19  Q    Is there anything that would impair your

20  ability to be able to tell the truth?

21  A    No.

22  Q    Do you have any memory problems?

23  A    No.

24  Q    I think I asked you this but we'll try

25  again. When did you migrate to the United States?

Page 7

1          A      January 27, 2011.

2          Q      And when you migrated to the United

3    States, what did city did you migrate to?

4          A      Miami, Florida.

5          Q      Have you lived anywhere else besides

6    Miami, Florida?

7          A      No.

8          Q      What is your current address?

9          A      3261 Northwest 18 Terrace 33125, Miami,

10   Florida.

11         Q      And you live in a house or in an

12   apartment?

13         A      In efficiency.

14         Q      Who do you live in the efficiency with?

15         A      Alone.

16         Q      Are you married?

17         A      No.

18         Q      Have you ever been married?

19         A      Yes.

20         Q      What was the name of your former wife?

21         A      Dixie Gonzalez Castillo.

22         Q      In you last deposition, you said it was be

23   Dixie Gonzalez Moreno, does she have two names?

24         A      Repeat that first name?

25         Q      Moreno.

Page 8

1          MS. ROCHA:  Objection. Form.

2          MR. CLYNE:  Dixie Gonzalez Moreno is what

3     you said in your last deposition. And now

4     you're saying, Dixie Gonzalez Castillo.

5          MS. ROCHA:  Objection. Form. Objection.

6          THE WITNESS:  Well, it's Castillo.

7          MR. CLYNE:  Based, and my question is,

8     does she have 2 names?

9     A    Gonzalez Castillo.

10         MS. ROCHA:  Did you get my objection, Miss

11    Veronica?

12         THE COURT REPORTER:  Yes, you said

13    Objection to form?

14         MS. ROCHA:  Yes, okay.

15         THE COURT REPORTER:  Perfect.

16         MR. CLYNE:  And where does Ms. Castillo

17    live?

18    A    Hialeah.

19    Q    You know what her addresses is?

20    A    No, I don't know.

21    Q    Did you have any children with her?

22         THE INTERPRETER:  Could you repeat that

23    question please?

24    Q    Did you have any children with her?

25    A    No.

Page 9

```
 1        Q     Did you get married to Ms. Castillo here
 2    in the United States or in Cuba?
 3        A     In Cuba.
 4        Q     And when did you get married to her?
 5        A     July 2010.
 6        Q     Shortly before you came to the US then?
 7              MS. ROCHA:   Objection, form.
 8              THE WITNESS:  I do not understand the
 9        question.
10              MR. CLYNE:   I think the interpretation is
11        wrong. I asked him, you get married to her
12        shortly before you came to the United States?
13        A     No, I was married to her in Cuba, in July
14    2010.
15        Q     Correct and you came to the United States
16    in January of 2011, correct?
17        A     January 27th, 2011.
18        Q     So you were married to her about six
19    months before you came to the United States?
20        A     We had a relationship but got married on
21    that date.
22        Q     Okay. When you first came the United
23    States, where did you work?
24        A     My first job was in Winn Dixie.
25        Q     And where was this Winn Dixie located?
```

1      A    3701 Northwest 7th St., 33125.

2      Q    And what was your position at Winn Dixie?

3      A    A Stock Man.

4      Q    And how long did you work at that Winn

5  Dixie?

6      A    Approximately 1 year and a half, two

7  years.

8      Q    And where did you start working at that

9  Winn Dixie?

10     A    Around May, June 2011, when I received the

11  work permit.

12     Q    And what was your reason for the departure

13  from the Winn Dixie?

14     A    I changed jobs to improve my salary.

15     Q    You were not terminated from the Winn

16  Dixie?

17     A    No.

18     Q    And where did you work next after the Winn

19  Dixie?

20     A    In Land Cargo.

21     Q    And what did you do for Land Cargo?

22     A    Dispatcher Agent.

23     Q    And how long did you work at Land Cargo?

24     A    Around three and a half to four years.

25     Q    And I think the translation from the

1    position loading agent, can you confirm that?

2        A    Yes.

3        Q    And what made you leave Land Cargo?

4        A    Because the company reduced the personnel

5    because there was a reduction in leading.

6        Q    And what year was this, that the company

7    did this?

8        A    We're talking about 2016, 2017, around

9    that time.

10        Q    Okay. And where did you work next?

11        A    If I record correctly, I went to work for

12    a cleaning company.

13        Q    Was the name of the cleaning company,

14    Professional Cleaners?

15             MS. ROCHA:  Objection to form.

16             THE WITNESS:  Professional Cleaners.

17    BY MR. CLYNE:

18        Q    So that was a yes, Professional Cleaners?

19        A    Yes.

20        Q    And did the owner of Professional Cleaners

21    work out of Eureka Drive?

22        A    Yes.

23        Q    And that is in South Dade, correct?

24             MS. ROCHA:  Objection to form.

25             THE WITHNESS:  Yes, Eureka.

Page 12

```
 1   BY MR. CLYNE:
 2        Q    What was the owner's name?
 3        A    Reynaldo Hernandez.
 4        Q    How long did you work for Professional
 5   Cleaners?
 6        A    Approximately, it would have been one year
 7   some months, it has been such a long time from that.
 8        Q    You previously stated that you had worked
 9   there for two and a half years to three years, does
10   that sound correct?
11             MS. ROCHA:  Objection to form.
12             MR. CLYNE:  Or is it just one year?
13             THE WITNESS:  Yes more or less. It could
14        be two and a half, three years, it's been such
15        a long time, I don't remember that.
16   BY MR. CLYNE:
17        Q    And what made you leave that job?
18        A    I changed up so I would work during the
19   day because I was working early in the morning.
20        Q    And where did you work next? I think it's
21   Odebrechc, O-D-E-B-R-E-C-H-C.
22        A    Odebrechc.
23        Q    And that is a construction company,
24   correct?
25             MS. ROCHA:  Objection.
```

Page 13

```
 1              THE WITNESS:  Yes, construction.
 2        Q     It's owned by some Brazilians?
 3              MS. ROCHA:  Objection, form.
 4              THE WITNESS:  Yes.
 5        Q     When did you work for Odebrechc?
 6        A     Exactly maybe close to a year. If I
 7   remember correctly.
 8        Q     And what years were you at Odebrechc?
 9        A     That was in '18, '17, '18.
10        Q     And how long did you work there, you said,
11   I think one year?
12        A     Yes more or less around that, I don't
13   remember the dates?
14        Q     And what was your job position? Laborer.
15        A     Laborer.
16        Q     Did you operate a heavy equipment, like a
17   roller?
18        A     Yes, they teached me.
19        Q     Did you learn to operate any other type of
20   heavy equipment?
21        A     Wall cox, and I was learning escavators.
22        Q     And what made you leave Odebrechc?
23        A     The end of the project, 836.
24        Q     So it was a road project that you worked
25   on?
```

Page 14

1    A    Yes, correct.

2    Q    And do you hold any special licenses that

3    allows you to drive any equipment?

4    A    No. No, they were just teaching me.

5    Q    Have you worked at any other companies

6    besides Odebrechc and De Moya?

7         MS. ROCHA:  Form.

8         THE WITNESS:  No.

9         THE COURT REPORTER:  I'm sorry, I couldn't

10        catch what the plaintiff said. Not the

11        plaintiff I'm sorry, the attorney for the

12        plaintiff.

13        MS. ROCHA:  I just said Objection, form.

14        THE COURT REPORTER:  Okay, perfect.

15   Thanks.

16        MS. ROCHA:  Thank you.

17   BY MR. CLYNE:

18   Q    Have you worked at any other companies

19   besides the ones that you mentioned today?

20   A    No, construction? No.

21   Q    Any other companies besides the ones you

22   mentioned today and whatever type of business it

23   was.

24   A    No.

25   Q    Have you ever been convicted of a crime?

Page 15

1       A      No.

2       Q      Have you ever used illegal drugs?

3       A      No.

4       Q      Have you ever been drunk at work?

5       A      No.

6       Q      When you were in Cuba, what level of

7   education did you reach?

8              THE INTERPRETER:  One second please. Yeah,

9          I understand that. Agronomist Engineer.

10             MR. CLYNE:  Have you done any courses or

11         taken any classes here in the United States?

12      A      Yes.

13      Q      What did you take?

14      A      In Land Cargo.

15      Q      And what courses did you take in Land

16  Cargo?

17      A      Danger Loaders, Danger Substance or

18  impassible substance.

19      Q      Anything else?

20      A      Dispatcher in a warehouse about loading

21  locations or load locations.

22      Q      What is your nationality?

23      A      Cuban.

24      Q      What is your race?

25      A      White.

1     Q    Did you work for a supervisor by the name

2 of Noel Leon?

3     A    Yes.

4     Q    Do you believe that Noel Leon treated you

5 with disrespect and discourtesy?

6     A    Yes.

7     Q    Did you complain about Mr. Leon because he

8 had a bad attitude and a lack of respect?

9     A    Yes, and because of discrimination.

10     Q    Why is your answer changing today from

11 what you told me, under oath, in your prior

12 deposition on October 19th, 2002?

13     MS. ROCHA:  Objection. Mr. Clyne, we had

14     an agreement as to a conferral that that

15     deposition would be stricked, struck from the

16     record with your reservation of rights.

17     MR. CLYNE:  And I'm now, I'm now going

18     into my reservation of rights. I told you if

19     your client lied under oath, I would take it up

20     with him and I would take it up with the court.

21     So in his prior deposition, he never mentioned

22     discrimination and now he is, so I'm asking

23     him, why is he changing his testimony?  Which

24     is a legitimate question under cross

25     examination, you can impeach a witness with

Page 17

1        prior sworn testimony. His testimony was sworn.

2        So --

3            MS. ROCHA:  Correct but for the record, I

4        would like to object to all other questions

5        that has to do with the former deposition.

6            MR. CLYNE:  That's fine. Sir, why has your

7        testimony changed today?

8            THE WITNESS:  I have not changed my

9        testimony.

10   BY MR. CLYNE:

11       Q    Okay. When I asked you, under oath on

12   October 19th, I see, the question was, you said that

13   you complained about Mr. Leon because he had a bad

14   attitude and a lack of respect. Is that correct?

15   And you answer was, yes. Do you recall that answer?

16           MS. ROCHA:  Objection.

17           THE WITNESS:  Yes.

18   BY MR. CLYNE:

19       Q    So today you're saying that you

20   complained, and you complained to Chris De Moya,

21   correct?

22       A    Yes, I, I complained to Chris De Moya.

23       Q    And was there a lady present when you made

24   a complaint?

25       A    Yes, one from the office.

Page 18

1    Q    Was she helping translate?

2    A    Yes.

3    Q    Okay. And so today you said that you

4    complained about the lack of respect and

5    discrimination, correct?

6         MS. ROCHA:  Objection, form.

7         THE WITNESS:  Yes.

8    Q    Why did you leave out the discrimination

9    in your first testimony under oath?

10        MS. ROCHA:  Objection, form.

11        THE WITNESS:  I presented on my first

12        testimony how he was disrespectful to me and

13        how he discriminated because I did not know to

14        speak English and because I was Cuban.

15        MS. ROCHA:  Sorry, I would like to

16        instruct my witness to just remember to give

17        the translator, I mean the interpreter, a

18        chance to translate. So just break it down a

19        little bit okay?

20        THE WITNESS:  Okay, thank you.

21   BY MR. CLYNE:

22   Q    So, what did you tell Mr. De Moya about

23   Mr.  Noel and your working conditions?

24   A    I explained to him that he wanted me to go

25   to work at 874 and I said to him that I never, every

1    time I told him that every time that he needed me to

2    do some work, I would be available and I told him

3    yes. He told me one day in the morning, so that I

4    would go to 874 before the project 552 in the

5    turnpike. And I explained to him that I had a

6    problem with the tire in the front. If it was

7    possible, for him to send somebody else because I

8    was afraid. Because of that tire. Well he told me

9    that if I do not go, you take it or leave. Those

10   were his words, if you don't go, you're fired.

11        Q    And you complained about his statement to

12   you, his statements to you to Mr. De Moya? About

13   that-

14             MS. ROCHA:  Object to form.

15             THE WITNESS:  Yes, the lunch hour, I went

16        to the office, which is in the front, Tamiami

17        Airport.

18   BY MR. CLYNE:

19        Q    And Mr. De Leon is Cuban American,

20   correct?

21             MS. ROCHA:  Objection.

22             THE WITNESS:  Yes.

23   BY MR. CLYNE:

24        Q    And he speaks Spanish, correct?

25             MS. ROCHA:  Objection.

Page 20

```
 1              THE WITNESS:  And English too.
 2      Q    Okay. And he speaks to you in Spanish,
 3   correct?
 4              MS. ROCHA:  Objection.
 5              THE WITNESS:  Correct. I do not know how
 6       to speak or read or write English.
 7   BY MR. CLYNE:
 8      Q    So, you complained about this disrespect
 9   to, to Mr. De Moya? Correct?
10              MS. ROCHA:  Objection, form.
11              THE WITNESS:  Correct.
12      Q    Did Mr. De Moya give you a new supervisor?
13      A    Yes.
14      Q    And was that Manny Gomez?
15              MS. ROCHA:  Objection to form.
16              THE WITNESS:  Yes, correct.
17      Q    And that's spelt C-O-M-E-S, I',
18   pronouncing it improperly. And he's also a
19   Cunab-American, correct?
20              MS. ROCHA:  Objection.
21              THE WITNESS:  Yes, but he says he's
22       American. He came here when he was a child.
23      Q    Does he also speak in Spanish?
24      A    Yes.
25      Q    And Chris De Moya and the De Moya family,
```

Page 21

```
 1   came from Cuba, correct?
 2            MS. ROCHA:  Objection, form.
 3            THE WITNESS:  Yes, but Chris is American.
 4   BY MR. CLYNE:
 5       Q    Are you an American Citizen sir?
 6       A    No.
 7       Q    Do you have a green card?
 8       A    Yes.
 9       Q    Do you intend on becoming an American
10   citizen?
11       A    Yes.
12       Q    So you do not fault people who emigrate to
13   this country and become American citizens?
14            MS. ROCHA:  Objection, form.
15            THE WITNESS:  Can you repeat the question?
16   BY MR. CLYNE:
17       Q    You don't hold it against a immigrant who
18   comes to this country and becomes an American
19   citizen?
20            MS. ROCHA:  Objection, form.
21            THE WITNESS:  No.
22       Q    When you went to Mr. Comes, you worked on
23   a different project at a different site, correct?
24            MS. ROCHA:  Objection, form.
25            THE WITNESS:  Doing the same thing but in
```

Page 22

1         a different place, different project.

2         Q    And what was the name of the new project?

3         A    106 and turnpike.

4         Q    Did Mr. Comes, treat you with disrespect?

5              MS. ROCHA:  Okay, remember to slow down.

6              THE WITNESS:  Okay. When I got to that

7         project, he discriminated against me in this

8         form. He told me that Noel had told him and

9         that I was conflict, conflicting because I

10        would complain.

11   BY MR. CLYNE:

12        Q    How did Mr. Comes treat you with

13   disrespect, sir?

14        A    Well he told me that, that if I was

15   conflicted and they had told me.

16        Q    Did he say, he say conflicted. Did he mean

17   that you caused conflict? And he received the phone

18   call?

19              MR. ROCHA:  Objection, form.

20              THE WITNESS:  No, they told that to the

21        people who talked to the office. When they

22        violate their rights.

23   BY MR. CLYNE:

24        Q    Did a lady name Susan Geraldo, translate

25   for you when you were talking to Mr. De Moya?

Page 23

```
 1          MS. ROCHA:  Objection, form.
 2          THE WITNESS:  Yes. Well there was a lady
 3      there, I don't know if it was her.
 4  BY MR. CLYNE:
 5      Q    Other than saying that he heard that you
 6  caused conflict, how did MR. Comes treat you?
 7      A    For example, as soon as I got to that
 8  project, I didn't go to do the function of job that
 9  I used, that I was doing? For example, I was now
10  working with the roller or the contractor. They,
11  they lowered me.
12      Q    So you did not use the roller when you
13  were working under Mr. Comes?
14          MS. ROCHA:  Objection, form.
15          THE WITNESS:  As soon as I, that they,
16      they, they removed me from the roller, and they
17      assigned a black American that didn't know how
18      to do it?
19  BY MR. CLYNE:
20      Q    Weren't you, aren't you fired because you
21  were found sleeping on a roller?
22          MS. ROCHA:  Objection, form.
23          THE WITNESS:  No, that didn't happen.
24      Q    Did a Andro Saxton Supervisor said he saw
25  you sleeping on a roller and asked you to sign a
```

1   form for discipline and you refused?

2          MS. ROCHA:  Objection, form.

3          THE WITNESS:  Yes.

4   BY MR. CLYNE:

5      Q    So when you're saying you weren't allowed

6   to provide, drive a roller after you moved to Mr.

7   Comes team, are you lying to me? Or did you make a

8   very big, big, mistake?

9          MS. ROCHA:  Objection, form.

10         THE WITNESS:  No. In the first few days,

11      that they moved me to that project, they did

12      not allow me to work on the roller. When they

13      started, when the job started getting behind,

14      due to the complaints from the operator Miguel

15      Piros, why, if I were the one who knew the job,

16      they didn't give me the possibility to do it.

17      So that everything will be fluid.

18   BY MR. CLYNE:

19      Q    Okay. So at that site, you were allowed to

20   drive the roller? Is that your testimony?

21         MS. ROCHA:  Objection. Object to form.

22         THE WITNESS:  Yes.

23   BY MR. CLYNE:

24      Q    And it appears for just a few days, you

25   were not driving the roller?

Page 25

```
1              MS. ROCHA:  Objection, form. Okay thank
2         you.
3              MR. CLYNE:  I couldn't understand his
4         response.
5         A    Yes, the, yes the first few days, they did
6    not allow me to work with pre plan dates, they took
7    me down from the three month, I don't know why.
8         Q    What were you doing the first few days?
9    Could you translate please sir?
10        A    Yeah, with the shovel on the floor.
11        Q    And you were hired as a laborer, correct?
12             MS. ROCHA:  Objection to form.
13             THE WITNESS:  Yes.
14   BY MR. CLYNE:
15        Q    And do you agree with me that as a
16   laborer, that you should do whatever job that is
17   necessary to complete the project?
18             MS. ROCHA:  Objection, form.
19             THE WITNESS:  But in reality my job was as
20        a helper, finishing grade.
21   BY MR. CLYNE:
22        Q    I think it's finishing grade.
23        A    Yeah, finishing graded which is the ended,
24   yes to finish the grade of the asphalt. That's what
25   I was prepared for or trained for.
```

Page 26

1      Q      Did you ever work as a spotter when you

2   worked for the De Moya group?

3      A      Repeat?

4      Q      Did you work as a spotter? What person

5   who, okay.

6      A      What does it mean a spotter?

7      Q      It is a person who makes sure that someone

8   who is driving the equipment doesn't get overhead

9   lines or underground plumbing.

10     A      On the, on the floor is the one that I

11  will guide the person with the machine.

12     Q      Okay, that, that is a spotter.

13     A      Yes. Never in that job was a problem.

14     Q      Did you work with a man by the name of

15  Louis Rivas?

16     A      He was the operator of the escavator.

17     Q      And it's your testimony, there was never a

18  problem when you were working on the ground as the

19  spotter. Is that correct?

20            MS. ROCHA:   Objection, form.

21            THE WITNESS:   In the finish grade.

22  BY MR. CLYNE:

23     Q      When you were working as a spotter, were

24  you given a counseling or a discipline because Mr.

25  Rivas hit the overhead, AT&T lines?

Page 27

```
 1        A     No.
 2        Q     Did you receive a warning from your
 3   supervisor that you needed to pay attention to your
 4   job? To make sure as a spotter, you do not hit
 5   overhead lines.
 6              MS. ROCHA:  Objection, form.
 7              THE WITNESS:  When they took us to work at
 8         that place, at that moment it was present, Noel
 9         and Fabrisio, project managers. And I explained
10         to them, the risk that there were or there was,
11         because those cables were not tense, and it was
12         very difficult to do the job with those cables
13         in the way. And they said that we have to
14         continue doing it, in the most, the best
15         possible way.
16        Q     In your complaint of discrimination, you
17   said that you were an exemplary employee. Is that
18   correct?
19              MS. ROCHA:  Objection.  Objection you're
20         fine.
21              THE WITNESS:  Yes.
22   BY MR. CLYNE:
23        Q     By exemplary employee, you mean you were
24   never disciplined?
25              MS. ROCHA:  Objection, form.
```

Page 28

1                THE WITNESS:  No.

2       BY MR. CLYNE:

3          Q     Okay so, when you say no, that means you

4       have been disciplined while you worked at De Moya?

5                MS. ROCHA:  Objection, form.

6                THE WITNESS:  No.

7       BY MR. CLYNE:

8          Q     So it's your testimony that you were never

9       given any warnings or any discipline of any type

10      while you were at De Moya Group.

11               MS. ROCHA:  Objection, form.

12               THE WITNESS:  No.

13      BY MR. CLYNE:

14         Q     Were you given a thorough counseling on

15      February 21st 2020 regarding the-

16               MS. ROCHA:  Objection, same.

17      BY MR. CLYNE:

18         Q     Let me finish the question before you jump

19      in.

20               MS. ROCHA:  I'm sorry.

21               MR. CLYNE:  Were you given a warning on

22          February 21st, 2020 regarding your work as a

23          spotter to be more careful?

24               MS. ROCHA:  Objection, form.

25               THE WITNESS:  No.

1  BY MR. CLYNE:

2      Q    When you were hired as a laborer, were you

3  told that you would have to use a pick, shovel, pick

4  up trash, project clean-up, be a spotter for dump

5  trucks and spotter for utilities?

6          MS. ROCHA:  Objection, form.

7          THE WITNESS:  When I was hired by De Moya,

8      I was hired to for the finish grader, as a

9      helper.

10  BY MR. CLYNE:

11      Q    Would you agree with me that when you're

12  building a road, that finishing, and grading is the

13  last part of the project? That there are other tasks

14  that need to be done?

15          MS. ROCHA:  Objection, form.

16          THE WITNESS:  Yes.

17  BY MR. CLYNE:

18      Q    On February 21st, 2020 were you given a

19  warning because you walked away as a spotter which

20  caused Mr. Rivas to hit overhead lines?

21          MS. ROCHA:  Objection, form.

22          THE WITNESS:  No.

23  BY MR. CLYNE:

24      Q    On March 24th, 2020 were you again given a

25  warning because the, Mr. Louis Rivas who was

Page 30

1    operating heavy equipment, hit a water line?

2              MS. ROCHA:  Objection, form.

3              THE WITNESS:  No, I was not the, Rivas

4        helper.

5    BY MR. CLYNE:

6        Q    Were you acting as a spotter and failed to

7    give him proper spotting which caused him to hit the

8    water line?

9              MS. ROCHA:  Objection, form.

10             THE WITNESS:  No, Gustavo was the helper

11       of Louis Rivas.

12   BY MR. CLYNE:

13       Q    Okay. So, it's your testimony under oath

14   that you had not been given any warnings about an

15   incident, where a water line was broken on March

16   24th, 2020?

17       A    No, never, no.

18       Q    Sir, do you understand that when you were

19   sworn in today, you swore to tell the truth and that

20   the penalty for lying is a misdemeanor in the State

21   of Florida.

22             MS. ROCHA:  Objection.

23             THE WITNESS:  Yes.

24   BY MR. CLYNE:

25       Q    And it's punishable with six months

Page 31

1    incarceration.

2              MS. ROCHA:  Objection.

3              THE WITNESS:  Yes.

4    BY MR. CLYNE:

5        Q    All right. Do you want to change any of

6    your testimony to correct it before we go? Any

7    phrase.

8              MS. ROCHA:  Objection.

9              THE WITNESS:  No. I'm always telling you,

10             that this is not true and I was not the helper

11             of Louis Rivas, it was Gustavo.

12   BY MR. CLYNE:

13       Q    Were you advised on July 16th, 2020 by

14   Noel Leon that you had drove through the base rock,

15   running the length of the base, which would lead to

16   be fixed and re-inspected?

17             MS. ROCHA:  Objection, form.

18             THE INTERPRTER:  I'm sorry I do not

19             understand completely your question, can you

20             please repeat it?

21             MR. CLYNE:  Were you advised on 7/16/2020

22             that you drove through the base rock, running

23             the length of the base, which would need to be

24             fixed and re- inspected?

25             THE WITNESS:  No. When we finished, when

Page 32

```
 1        we ended the finish grade, I will put the
 2        barriers around the area with the tape and
 3        barrels. And not till we are planning, and not
 4        till we apply the prime, which is the liquid
 5        asphalt and sand, you cannot go through that
 6        area.
 7   BY MR. CLYNE:
 8        Q    On September 4th, 2020, were you told to
 9   clean the rock, the outer rock and designated
10   material between the road, shelter and the temporary
11   barrier block?
12             THE INTERPRETER:  You're going to have to
13        break that up please.
14             MR. CLYNE:  Okay. On September 4th, 2020,
15        were you assigned to clean the rock and dirt
16        between the road shoulder and the temporary
17        barrier block?
18             THE WITNESS:  With whom who were the
19        operator.
20   BY MR. CLYNE:
21        Q    There was no body out there who gave you
22   the assignment?
23             MS. ROCHA:  Objection, form. Sorry.
24             THE WITNESS:  That date is the day that I
25        told him that I could not go to the 874 because
```

Page 33

1          of the car problem. I was working in that

2          place, somebody by the last name of Jimenez and

3          his helper, his name was Roberto. They did not

4          call or gave me a warning for that.

5     BY MR. CLYNE:

6          Q     Did you even, did you refuse to work with

7     Jimenez, because you said that he was not your

8     operator.

9               MS. ROCHA:  Objection, form.

10              THE WITNESS:  No. The reason why I didn't

11         go is because I told him about the problem with

12         tire. That I already explained to you the

13         answer that Noel gave me.

14    BY MR. CLYNE:

15         Q     On September 4th, 2020, is that the day

16    you went to speak to MR. De Moya?

17         A     I do not remember the date when I spoke

18    with him exactly, in his office.

19         Q     When you went to work under Manuel Comes,

20    C- O-M-E-S, did he verbally warn you that you were

21    constantly disappearing from the work zone? Manny

22    Comes.

23         A     No, never. Never, I never left the work

24    area.  I was always at my work area.

25         Q     Did Mr. Comes approach you hiding behind a

Page 34

1   light tower mass, and told you that if you were out

2   of your work zone again, you would receive a written

3   warning?

4          MS. ROCHA:  Objection, form.

5          MR. CLYNE:  Did Mr. Comes find you hiding

6      behind a light tower mass and tell you, go

7      ahead, say that.

8      A   No that is not true.

9      Q   Did he tell you that if he caught you out

10  of your work zone again, you would receive a written

11  warning.

12     A   No, that is not true. No, that is not

13  true.

14     Q   Did Manny comes tell you you need to focus

15  and do your job?

16     A   My work was to be in the area, paying

17  attention to the operator in the complete process,

18  the finishing grader. Whether the terrain on the

19  ground and that there wasn't anything in the work

20  area that the machine could have any kind of

21  problem. That was my function.

22     Q   Okay. On September 29th, 2020, did you

23  receive a written warning from Mr. Comes for sitting

24  around, not working and not following instructions.

25     A   No.

Page 35

1      Q    So you're saying that if there's a

2   document showing that you received a written warning

3   from MR.  Comes, that Mr. Comes is lying?

4           MS. ROCHA:  Objection, form.

5      A    There was no written document, never

6   received a warning. I did not give any motive for

7   that. I was always paying attention in the work area

8   for the job or work, the machine and the finished

9   grader.

10     Q    Okay.

11     A    So that the operator of the machine, he

12  would put all his confidence in me, because he sees

13  that I work responsible.

14     Q    On October 2nd, 2020, did you block access

15  to the site from Mr., to Mr. Alejandro Leon?

16     A    No.

17     Q    Did he have someone with him on that day,

18  Jose Batista?

19          MS. ROCHA:  Objection, form. You can

20      answer.

21          THE WITNESS:  Jose Batista was driving the

22      truck.

23  BY MR. CLYNE:

24     Q    Did you block access to MR. Batista?

25     A    No, never. I did even recognize the truck,

Page 36

```
 1   but they all look alike. White fort.
 2        Q    Were you using the roller on that day?
 3        A    Yes. So you were allowed to use the roller
 4   when you worked for Mr. Comes?
 5             MS. ROCHA:  Objection. Objection, form.
 6             THE WITNESS:  With Mr. Comes, after the
 7        three days, that's when I got the roller. Due
 8        to the complaints of Miguel Piro's the
 9        operator.
10   BY MR. CLYNE:
11        Q    All right. On October 6th, 2020. Did Mr.
12   Jerome Naso, find you sleeping on your roller?
13        A    That is not true.
14        Q    Did he find you sleeping on the roller
15   with the engine running?
16             MS. ROCHA:  Objection, form.
17             THE WITNESS:  That is not true.
18   BY MR. CLYNE:
19        Q    Would you agree with me that it is
20   dangerous for an employee to be asleep when driving,
21   when, when in the cab of a heavy equipment.
22             MS. ROCHA:  Objection, form.
23             THE WITNESS:  Yes, yes I agree with that
24        but it didn't happen.
25
```

Page 37

1    BY MR. CLYNE:

2        Q    Could you kill someone if you rolled over

3    them, with the roller?

4        A    I understand but it didn't happen.

5        Q    I know, I'm asking a question. Could you

6    kill someone with a roller, if you rolled over them?

7              MS. ROCHA:  Objection, form.

8              THE WITNESS:  Yes, that would happen, but

9        it didn't happen. I was always being careful

10       with my job.

11   BY MR. CLYNE:

12       Q    Could a roller cause a lot of damage to

13   the property, if someone fell asleep and it kept

14   rolling forward?

15       A    I agree with that but it didn't happen in

16   my case.

17       Q    Would you agree with me that it's a

18   serious offense for an employee if he's sleeping

19   behind the wheel of a roller and the engine is

20   running?

21             MS. ROCHA:  Objection, form.

22             THE WITNESS:  Can you repeat the question?

23       Q    Can you read it back please?

24             MS. ROCHA:  Veronica?

25             THE COURT REPORTER:  I'm sorry, say that

Page 38

1      one more time?

2          MR. CLYNE:  Yeah, I wanted you to read

3      back the question please.

4          THE COURT REPORTER:  I see.

5          MR. CLYNE:  If it's too hard Veronica, I

6      can read it.

7          THE INTERPRETER:  It starts with will you

8      agree with me.

9          MR. CLYNE:  I, I, I'll repeat the

10     question, this is taking too long. Will you

11     agree with me sir, that it is very dangerous

12     and a serious offense for the employee to be

13     sleeping at the wheel of heavy equipment with

14     the engine running?

15         MS. ROCHA:  Objection, form.

16         THE WITNESS:  You said it is very

17     dangerous to, to work with the heavy equipment

18     but in my case it didn't happen. I was always

19     attentive to my work.

20     Q    Prior to October 6th, had you had many

21   interactions with Mr. Jerry Naso?

22         THE INTERPRETER:  Jerry Naso?

23         MR. CLYNE:  Nasso, N-A-S-S-O.

24         THE WITNESS:  None.

25

Page 39

1   BY MR. CLYNE:

2       Q    Did he tell you that he wanted you to sign

3   a form, because he found you sleeping at the wheel

4   and you refused to sign the for.

5              MS. ROCHA:  Objection, form.

6              THE    WITHESS:  He came in the morning

7         early with a tablet, with a warning page,

8         blank, so that I would sign it. That he had

9         found me the prior day, sleeping on the

10        equipment. That I should sign it. When I told

11        him that it was not true, that I could not sign

12        it, a blank document, plus being something that

13        was not true. His words were, if you are not

14        going to sign it, no more work in the company.

15  BY MR. CLYNE:

16      Q    All right, thank you. And you refused to

17  sign the paper? Correct?

18      A    A blank document.

19      Q    Okay.

20      A    I asked for an explanation why was he

21  doing that, if it was something that was not true.

22      Q    There's no pending questions, thank you

23  for your answer. I have, I have no further questions

24  sir.  Thank you very much for your time.

25              THE COURT REPORTER:  Are we off the

Page 40

```
 1      record?
 2          MS. ROCHA:  Can we, can we take like a
 3      five- minute break just so I can gather my
 4      notes and see if I have any questions to
 5      clarify?
 6          THE WITNESS:  Okay.
 7          THE COURT REPORTER:  Okay so I'll pause
 8      the record.
 9              (Thereupon, a break was had)
10          THE INTERPRETER:  Okay, thank you.
11          THE COURT REPORTER:  When? I'm sorry,
12      couldn't hear you, can you say it again?
13          MR. CLYNE:  Yes, I'm ordering.
14          THE COURT REPORTER:  Okay for a standard
15      ten day?
16          MR. CLYNE:  Standard ten day is fine.
17          THE COURT REPORTTER:  All right and is the
18      witness going to read or waive his right to
19      read the transcript?
20          MS. ROCHA:  We'll read.
21          THE COURT REPORTER:  Read, all right.
22      Okay, thank you.
23          MR. CLYNE:  Thank you, take care.
24          THE COURT REPORTER:  Thank you everybody.
25          THE INTERPRETER:  Okay, thank you very
```

Page 41

1          much.   Take care.

2                  THE COURT REPORTER:   Thank you, bye.

3          (Thereupon, the deposition was concluded)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 42

CERTIFICATE OF NOTARY PUBLIC

1

2

3          I, VERONICA ALONSO, the officer before whom

4    The foregoing proceedings were taken, do hereby

5    certify that any witness(es) in the foregoing

6    proceedings, prior to testifying, were duly sworn;

7    that the proceedings were recorded by me and

8    thereafter reduced to typewriting by a qualified

9    transcriptionist; that said digital audio recording

10   of said proceedings are a true and accurate record

11   to the best of my knowledge, skills, and ability;

12   that I am neither counsel for, related to, nor

13   employed by any of the parties to the action in

14   which this was taken; and, further, that I am not a

15   relative or employee of any counsel or attorney

16   employed by the parties hereto, nor financially or

17   otherwise interested in the outcome of this action.

18

19   _signature_

20

21   _____

22   VERONICA ALONSO

23   Notary Public in and for the Florida

24

25

Page 43

1              CERTIFICATE OF TRANSCRIBER

2

3        I, CHARITY RIVERA-GARCIA, do hereby

4   Certify that this transcript was prepared from

5   the digital audio recording of the foregoing

6   proceeding, that said transcript is a true and

7   accurate record of the proceedings to the best

8   of my knowledge, skills, and ability; that I am

9   neither counsel for, related to, nor employed

10  by any of the parties to the action in which

11  this was taken; and, further, that I am not a

12  relative or employee of any counsel or attorney

13  employed by the parties hereto, nor financially

14  or otherwise interested in the outcome of this

15  action.

16

17

18

19

20  CHARITY RIVERA-GARCIA

21

22

23

24

25