

Nathaly Saavedra <nathaly@peregonza.com>

---

## Public Records Request - Miami-Dade Commission on Human Rights; CHR Charge No. F-8515

1 message

---

**Thompson, Adrienne (HR)** <Adrienne.Thompson@miamidade.gov>
To: "jocelyn@peregonza.com" <jocelyn@peregonza.com>

Mon, Nov 21, 2022 at 1:31 PM

Good afternoon,

Please see the attached, thank you

Thank you,

**Adrienne D. Thompson, HRFEP Specialist**
Human Resources: Division of Human Rights and Fair Employment Practices
111 NW 1ˢᵗ street, 21ˢᵀ Floor, Miami, FL 33128
Office: (305)375-2670l Fax: (305)375-2114
Email: Adrienne.Thompson@miamidade.gov
Link: www.miamidade.gov/humanrights

Human Resources…*Matters!*
**Connect with Us** on Facebook · twitter

*"Delivering Excellence Every Day"*
*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

---

 **8515 - Case File.pdf**
28337K

PLAINTIFF'S EXHIBIT

43

# PEREGONZA
## THE ATTORNEYS

**PEREGONZA THE ATTORNEYS, PLLC**
1414 NW 107TH AVE., STE 302, DORAL, FL 33172
O: 786.650.0202 · F: 786.650.0200 · OFFICE@PEREGONZA.COM

RECEIVED
NOV 1 2 2020
FDU-MIAMI DISTRICT OFFICE

October 27, 2020

***Via Certified Mail, Return Receipt Requested, and Email***
Equal Employment Opportunity Commission
100 SE 2nd Street, Suite 1500
Miami, FL 33131
Fax: 305-808-1855
Email: miamatty@eeoc.gov

|  |  |
|---|---|
| Re: | Notice of Representation; Charge of Discrimination |
| Our Client: | Mr. Jorge Monteagudo |
| Our File No: | EL20-02414 |

Dear Sir or Madam:

This firm is honored to represent Mr. Jorge Monteagudo ("Mr. Monteagudo") with respect to his discrimination claims arising out of his employment with The De Moya Group, Inc. ("Respondent"). As such, please direct all future correspondence with regard to the subject matter of this letter to me at the above address.

Enclosed you will find a signed Charge of Discrimination alleging Mr. Monteagudo's discrimination claims against the Respondent.

Should You have any questions or concerns regarding anything in this letter, please do not hesitate to contact me at the email address below or phone number provided herein.

Very Truly Yours,

*/s/ Nathaly Saavedra, Esq.*
Nathaly@PereGonza.com
For the Firm

NS
Enclosure



**MIAMI·DADE**
**COUNTY**

miamidade.gov

**Human Resources**
Human Rights and Fair Employment Practices
111 NW 1st Street • 21st FL
Miami, FL 33128
T 305-375-2784  F 305-375-2114

February 16, 2021

**VIA EMAIL at Nathaly@peregonza.com**
Nathaly Saavedra, Esq.
Peregonza the attorneys. PLC
1414 NW 107TH AVE STE. 302
Doral, FL  33172

**Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc**
    **CHR Charge No. F-8515**
    **EEOC Charge No. 15C-2021-00021**

Dear Ms. Saavedra:

This is to inform you that your client's charge of employment discrimination based on, ☒ Title VII of the Civil Rights Act of 1964, as amended; ☐ the Age Discrimination in Employment Act of 1967, as amended; ☐ Title I of the Americans with Disabilities Act of 1990, as amended, has been deferred to the Miami-Dade Commission on Human Rights (CHR) for investigation by the U.S. Equal Employment Opportunity Commission (EEOC).

Further, the Respondent in this matter has submitted a response to the allegations raised in the above-cited charge. As part of the investigation of this claim, it is necessary to schedule a conference with your client to obtain your client's rebuttal to the Respondent's articulated defense.

Upon receipt of this letter, please email me at mercedes.obando@miamidade.gov your/your client's availability on two or three dates in order to schedule the rebuttal interview. I will review my own availability and will respond with a confirmation of the date, time, and telephone number to contact for the rebuttal interview. If for some reason, you do not receive a response, or would like to speak to a representative, you may call (305) 375-2784 and leave a message; someone will return the call within 24 hours.

Please note that if you/your client fail(s) to respond within thirty (30) days of the receipt of this letter, we will assume that you/your client are/is no longer interested in pursuing the charge and the file will be closed.

Sincerely,

Mercedes Obando, HRFEP Specialist
Commission on Human Rights, Human Rights & Fair Employment
Human Resources Department
c:  Case file

F-025B
Rev. 04/20

RECEIVED

NOV 1 2 2020

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION DISTRICT OFFICE | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | X  EEOC<br>X  FEPA (FCHR)<br>X  MDCCHR | F-8515/15C-2021-00021 |

**EEOC – U.S. Equal Employment Opportunity Commission** and
**FCHR – Florida Commission on Human Relations**, and
**MDCCHR – Miami-Dade County Commission on Human Rights**
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Jorge Monteagudo Alburquerque | (786) 344-7868 | 05/07/1969 |

| Street Address | City, State and ZIP Code |  |
|---|---|---|
| 3261 NW 18th Terrace | Miami, Florida 33125 |  |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| The De Moya Group, Inc. | 15+ | (305) 824-1048 |

| Street Address | City, State and ZIP Code |  |
|---|---|---|
| 14600 SW 136th ST | Miami, Florida 33186 |  |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| _x_ RACE __ COLOR __ SEX __ RELIGION _X_ NATIONAL ORIGIN <br><br> _X_ RETALIATION ___ AGE __ DISABILITY ____ OTHER ) | Earliest<br>August 2020 | Latest<br>10/6/2020 |
|  | CONTINUING ACTION | |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*): I am a Hispanic man from Cuba. I was employed with The De Moya Group from on or about 2019 until on or about October 6, 2020 as a laborer. During my employment with the Company I was subjected to discrimination because of my race, or national origin and retaliation for my complaints of discrimination included but not limited to the following:

On or about August 2020, I was working under the supervision of Noel Leon. Mr. Leon made discriminative and disrespectful comments regarding Cubans. Mr. Leon would say things like "Cubans are lazy" that made me uncomfortable.  After being treated differently, I requested to speak to the owner of the company and complained about the discriminatory treatment. I was then assigned to work on a project under the supervision of Manny (LNU) (Cuban American). A few days after I was transferred, Manny (LNU) called me to his car at the site of the project where I was working and told me that Mr. Leon had contacted him and said that I was very problematic. I assure Manny I was there to do my job and nothing else. On or about October 2, 2020, a couple of days after that conversation, Alejandro Leon, the son of Noel Leon came to the site where I was working. Alejandro was not supposed to be at the site and went there to harass me. He physically attacked me and threaten me. After he attacked me, I reported the incident to Manny (LNU). Manny said he would take care of the situation. However, he never said anything else to me. On Monday, I filed a police report because I was really concern for my safety. On Tuesday, afternoon I went to the superintendent Jerry (LNU) (White, American) to report the disparate treatment. On October 7, 2020, Elena (LNU) from Human Resources Department called me in the morning to advise they would be conducting an investigation. That same day, Jerry (LNU) met with me and let me know I was being written up for "sleeping on the job." He advised if I did not sign the write up, I would be terminated. I refused to sign the write up as it was completely false and was used as a pretext. Therefore, I was terminated.

Throughout my employment, my work has always been exemplary. Any reason proffered by my employer for the adverse employment actions is mere pretext for unlawful discrimination and retaliation; throughout my times I did perform my job at satisfactory or above-satisfactory levels. I feel that I have been discriminated and retaliated against in violation of Title VII, the Florida Civil Rights Act and local laws.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>10/27/2020.    *[signature]*<br>Date    *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |

RECEIVED MIAMI DISTRICT OFFICE 12 2020

**MIAMI-DADE COMMISSION ON HUMAN RIGHTS**
111 NW 1 Street, 21st Floor, Miami, FL  33128
P. (305) 375-2784 F. (305) 375-2114
ofep@miamidade.gov
www.miamidade.gov/humanrights

**MIAMI-DADE**
**COUNTY**
miamidade.gov

| | |
|---|---|
| <u>VIA EMAIL at Nathaly@peregonza.com</u><br><br>**Nathaly Saavedra, Esq.**<br>**Peregonza the attorneys. PLC**<br>**1414 NW 107TH AVE STE. 302**<br>**Doral, FL  33172** | **PERSON FILING CHARGE**<br>**Jorge Monteagudo Alburquer** |
| | **DATE OF ALLEGED VIOLATION**<br>**10/6/2020** |
| | **CHR CHARGE No.**<br>**F-8515** |
| | **EEOC CHARGE No.**<br>**15C-2021-00021** |

## NOTICE OF CHARGE OF DISCRIMINATION

**YOUR CHARGE OF DISCRIMINATION** has been filed under Chapter 11A of the Miami-Dade County Code, as amended and a) ☒ Title VII of the Civil Rights Act of 1964, as amended (Title VII); b) ☐ Title I of the Americans with Disabilities Act of 1990, as amended (ADA); c) ☐ The Age Discrimination in Employment Act of 1967, as amended (ADEA).

**THE MIAMI-DADE COMMISSION ON HUMAN RIGHTS ("CHR"):** is a civil rights enforcement agency upholding Chapter 11A of the Miami-Dade County Code, as amended, prohibiting discrimination. It is a neutral fact-finding agency, which does not represent or promote either party to a charge. The CHR is a designated deferral agency to the U.S. Equal Employment Opportunity Commission (EEOC), and as such, is authorized to investigate complaints filed under Title VII, the ADA and the ADEA. A copy of Chapter 11A may be obtained at www.municode.com.

**MEDIATION:** The CHR offers mediation, which gives parties an opportunity to resolve the issues of the charge in a voluntary and informal manner without extensive investigation or expenditures of resources. Mediation is not a forum for reaching a determination and therefore, does not constitute an admission of guilt.  If you are agreeable to participating in a Mediation Conference, please complete the enclosed Invitation to Mediate form and email it to ofep@miamidade.gov or contact the CHR at (305) 375-2784.

**PRE-DETERMINATION CONCILIATION:** After reviewing the charge and information obtained during the investigation, the CHR may determine that the involved parties could benefit from Pre-Determination Conciliation and inquire if the parties would be interested. If the Pre-Determination Conciliation is unsuccessful, the case is returned to the Investigative Unit for completion of the investigation.

**CHARGING PARTY RESPONSIBILITIES:** You are expected to fully cooperate with the CHR in this investigation. As such, you must immediately notify the CHR of any changes to your email, address and/or telephone number. **We use both email and certified mail for our correspondence. Failure to read your email or claim your certified mail may result in a determination being made on your case without your input, or the case being dismissed.** You are expected to respond to questions from the investigator truthfully and to the best of your knowledge. Information that you provide to the CHR is made part of the record. However, the investigator determines the relevancy of the testimony and witnesses.

**REVIEW BY EEOC:** Under Section 1601.76 of the U.S. Equal Employment Opportunity Commission's (EEOC) regulations, you are entitled to request a substantial weight review of the CHR's final findings on this case. To obtain this review, you must notify the EEOC in writing within fifteen (15) days of your receipt of our determination in this case. **You are not required to make a request for review at this time.** Your request for a substantial weight review must be mailed to the following address: U.S. EEOC, Local & State Coordinator, 100 SE 2nd Street, Suite 1500, Miami, FL  33131

**NOTICE OF RIGHTS TO SUE:** If the CHR has not made a determination on your case within one hundred eighty (180) days from receipt of the charge, you may request a Notice of Right to Sue from the Director. Once the request is received, the CHR will stop processing the case and will forward your request to the Miami District Office of the EEOC for issuance of the Notice of Right to Sue. The Notice allows you to file a claim in U.S. District Court with respect to your discrimination charge.

Enclosures:  Charge of Discrimination, Intake and Investigative Process, Mediation Fact Sheet, Invitation to Mediate, Affidavit to Authenticate Documents

| **Date**<br><br>December 8, 2020 | **Erin A. New, Division Director**<br>Human Rights & Fair Employment<br>Human Resources Department | **Signature**<br><br>*Erin A. New* |
|---|---|---|

**Miami-Dade Commission on Human Rights (CHR)**
**Intake and Investigative Process**

**The Intake:**

1) The first step in the process of filing a discrimination complaint with CHR is to meet with an Intake Specialist to discuss the nature of your claim. The Intake Specialist may interview you in person or over the phone. You will be asked some specific questions to make sure the agency can accept your complaint. You do not need a lawyer to file a complaint with our office, however, you may choose to have one represent you at any point during the process.  All of our services are free of charge.

2) If we determine we can accept your complaint for investigation, the Intake Specialist will assist you by drafting a document which includes a summary of your allegations. You will be required to sign (you may e-sign) the document and return the original to us as soon as possible. If we do not receive the signed document within 90 days from your initial contact with the agency, the file will be closed and we will not proceed with the investigation of your complaint.

3) If we cannot accept your complaint for investigation, we may refer you to another agency for further assistance.

**The Investigation:**

1) You and the Respondent (e.g. employer or housing provider) will be sent a copy of the complaint through email and/or certified mail. Please make sure that you let us know if there is a change in your email address, home address or phone number throughout the process. Please answer emails and /or pick up certified mail. If you don't, we'll assume that we've lost contact with you and we may close your case for that reason.

2) The Respondent is also sent a questionnaire (a request for information) about the issues you allege in your complaint, along with a copy of the charge. Normally, the Respondent has 20 days to respond to the allegations made in your complaint. However, under certain circumstances, the CHR may allow Respondent a reasonable extension of time to respond.

3) If the Respondent fails to respond within the allotted time period, other attempts are usually made to obtain a response, such as warning letters and the issuance of a subpoena.

4) After the response to the complaint is received, an investigator will contact you to schedule a rebuttal interview. You should collect all relevant documents, names and contact information for witnesses in order to email them to the investigator. You should also be prepared to answer questions about the case. Please note you may be required to provide additional information to establish proof of discrimination, including notarized witness affidavits and other documentation to prove your claim.

5) After the rebuttal interview, the case will be put in the regular rotation of cases for investigation. While each case is reviewed regularly, there may be older cases on file and those may take priority. Depending on the agency's overall workload and staffing levels, case investigations generally take six months or longer.

6) During the investigation, the Respondent may be questioned, along with relevant witnesses, and documents will be reviewed to determine what occurred in your case.

7) It is very important that you respond to the investigator's emails, telephone calls or letters. If you do not respond or fail to cooperate with our investigation, we may close your case.

8) The above procedures are subject to change, based upon the specifics of each case.

**Mediation:**

The parties can consent to a voluntary process where a mediator will work with both parties to resolve the issues and reach an agreement. This can occur early in the process or at any time during the investigation. If an agreement can be reached between the parties that will resolve the issue, the agency will assist in drafting the agreement and ensure its enforcement.

**Requesting a Right to Sue Letter:**

If you desire, you may request a Right to Sue Letter in writing after the case has been filed with the agency for at least 180 days and take your case into court.

**The Finding:**

**1) Probable Cause.** If, after investigation, the agency finds that Probable Cause exists to believe that you have been the victim of illegal discrimination, a finding of Probable Cause will be issued and we will make an attempt to conciliate the matter. Conciliation is the process that involves ensuring that you are made whole and that the Respondent stops the illegal activity. If a Conciliation Agreement is reached, we will ensure that the provisions of the agreement are fulfilled. If a Conciliation Agreement cannot be reached and the Respondent filed a timely appeal request, the case will go before the CHR Hearing Panel or Hearing Officer. If no appeal was requested, the agency's determination becomes final and you may pursue further remedy through a private action in Court.

**2) No Probable Cause.** If the agency finds No Probable Cause to believe that you were a victim of illegal discrimination, a finding of No Probable Cause will be issued. You have a right to appeal if you do not agree with the finding. You must file a request for an appeal within 15 days of receipt of the agency's determination. Appeal requests must be filed via email or certified mail – appeal requests made by telephone, regular mail or fax will **not** be accepted. For further information about the appeal hearing process, please request a copy of the agency's Hearing Procedures.

**Your Help:** You can assist us by keeping the investigator informed of your current contact information; responding to letters or calls promptly; and letting us know of any and all information that will help us discover the facts relevant to your case.

**Please feel free to contact us at any time if you have any questions about our services or need to know the status of your case.**

**Miami-Dade**
**Commission on Human Rights**
**111 NW 1 Street, 21st Floor**
**Miami, FL  33128**
**Phone: (305)375-2784**
**Fax: (305)375-2114**
**E-mail: ofep@miamidade.gov**

# <u>Miami Dade Commission on Human Rights</u>
# <u>Invitation to Mediation Conference</u>

**RE: Jorge Monteagudo Alburquer vs The De Moya Group, Inc**

**CHR Charge No.:  F-8515**
**EEOC Charge No.: 15C-2021-00021**

☐      I agree to participate in a Mediation Conference.

I understand that the purpose of this conference is to provide an effective, timely and voluntary resolution of the charge of discrimination. I understand that the mediator(s) will assist the parties in resolving the dispute; and may make suggestions, but will not make any judgment on the merits of the case, and will not represent either party. I understand that I have the right to have an attorney represent me at the mediation conference if I so choose. I understand that if an agreement is reached, it will be put in writing and signed by both parties, and the case will be closed.

I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding.

The parties agree not to subpoena the mediator(s) or compel the mediator(s) to produce any document provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. The parties further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

☐      I do not believe that this matter can be resolved through Mediation.

I understand that if either party declines to engage in mediation or if the mediation is unsuccessful, the Miami-Dade Commission on Human Rights will issue a final determination related to probable cause.

Signature: _____     Date: _____

Printed Name: _____

Telephone Number: _____

# Miami-Dade Commission on Human Rights
## Mediation Fact Sheet

### DEFINITION AND EXPLANATION

➢ The Miami-Dade Commission on Human Rights (CHR) schedules mediation conferences for new complaints of discrimination pursuant to Chapter 11A of the Miami-Dade County Code.  Mediation is a process in which an impartial person, the mediation, helps the parties to resolve their dispute.  The mediator may suggest ways of resolving the dispute but does not make any judgment.

➢ The purpose of the mediation conference is to provide for the exchange of concerns from both parties to work towards a possible resolution of the dispute.  This informal conference is an opportunity for the complaining party and the employer (respondent) to resolve their dispute prior to the investigation.

➢ The CHR provides an impartial representative to 1.) Conduct the mediation process, 2.) Conduct onsite mediation of complaints in accordance with appropriate documents in accordance with all statutory and procedural requirements.  All communications at the conference are confidential.

### POSSIBLE OUTCOMES

1. The parties may enter into a Settlement Agreement prior to or during the conference.  If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is binding and enforceable in the same manner as any other written contract.

2. The mediator may declare that further efforts at mediation are no longer worthwhile.  If the parties fail to resolve voluntarily the dispute, the case will be assigned to an investigator for a thorough investigation of the merits of the complaints.  A finding will then be made based on an examination of the evidence.

3. The parties may complete the full mediation session, at which time a written declaration of either party will be made to the effect that the mediation proceedings are terminated.

### PREPARING FOR A SUCESSFUL CONFERENCE

#### COMPLAINANT

➢ It is suggested that you bring any information that you wish to present at the conference concerning the reason(s) you believe discrimination occurred.  Limit your statements to the issues raised in your complaint.

➢ Be prepared to state what you are requesting from the respondent.  An itemized statement of losses would be helpful.  Be prepared to consider various ways to resolve the complaint.

#### RESPONDENT

➢ It is suggested that you bring any information which would support your position.  Respondent's representatives must have the authority to settle and all persons necessary to the decision to settle should be present.  They should have direct knowledge of the events and circumstances cited in the complaint.  The names and addresses of such persons shall be communicated in writing to the CHR.

### OTHER IMPORTANT POINTS

➢ Mediation sessions are private and confidential.  The parties and their representatives may attend mediation sessions.  Other persons may attend only with the permission of the parties and with the consent of the mediator.

➢ There shall be no stenographic record of the mediation process and no person shall tape record any portion of the mediation session.

➢ If mediation efforts are not successful within thirty (30) days of the complaint being referred to the Mediation Specialist, the case will be forwarded to appropriate CHR personnel for investigation.

➢ Pursuant to Chapter 11A of the Miami-Dade County Code, it is an unlawful employment practice to retaliate or discriminate against a person who has opposed a discriminatory practice or who has made or filed a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Chapter.

## AFFIDAVIT TO AUTHENTICATE DOCUMENTS

State of Florida

County of _____

1. **TRUE AND CORRECT COPIES**

I (We), _____
[Name(s) of custodian(s) of records]

_____ ,
[Title(s) of such person(s)]

after being duly sworn, hereby attest the attached documents are true and correct copies of the originals maintained by

_____
[Name of Respondent or entity keeping document(s)]

_____ .
[Name of section(s) or division(s) maintaining record(s)]


_____
[Signature of Custodian]

Sworn and subscribed before me this

_____ day of _____ 20_____

_____
Public Notary
My Commission expires: _____


2. **ACCURACY OF ORIGINAL DOCUMENT**

I (We), _____
[Name of person(s) generating documents or person(s) familiar with events reflected in documents]

_____ ,
[Title(s) of such person(s)]

after being duly sworn, hereby attest that the originals of the attached documents accurately reflect the events on them.

_____
[Signature of Custodian]

Sworn and subscribed before me this

_____ day of _____ 20_____

_____
Public Notary
My Commission expires: _____


**Pursuant to Section 11A-28(5)(f) of the Miami-Dade County Code, as amended, "[a]ny person who, with intent thereby to mislead the Commission or the Director, makes or causes to be made any false entry or statement of fact in any report, account, record or other document submitted to the Commission pursuant to its subpoena or other record, or shall willfully neglect or fail to make or cause to be made full, true and correct in such reports, accounts, records or other documents, or shall willfully mutilate, alter, or by any other means falsify documentary evidence, may be fined by the County Court of Dade County, Florida not more than five hundred dollars ($500) or imprisoned not more than sixty (60) days or both."**

**MIAMI-DADE COMMISSION ON HUMAN RIGHTS**
111 NW 1 Street, 21st Floor, Miami, FL 33128
P. (305) 375-2784 F. (305) 375-2114
ofep@miamidade.gov
www.miamidade.gov/humanrights

**MIAMI-DADE**
**COUNTY**
**miamidade.gov**

| | |
|---|---|
| **VIA EMAIL at Carli.bailey@demoya.com**<br><br>**Human Resources Manager**<br>**The De Moya Group, Inc.**<br>**14600 SW 136th ST**<br>**Miami, FL  33186** | **PERSON FILING CHARGE**<br>**Jorge Monteagudo Alburquer** |
| | **DATE OF ALLEGED VIOLATION**<br>**10/6/2020** |
| | **CHR CHARGE No.**<br>**F-8515** |
| | **EEOC CHARGE No.**<br>**15C-2021-00021** |

## NOTICE OF CHARGE OF DISCRIMINATION

**YOU ARE HEREBY NOTICED** that a charge of discrimination (Charge) has been filed against your organization under Chapter 11A of the Miami-Dade County Code, as amended (Chapter 11A) and a) ☒ Title VII of the Civil Rights Act of 1964, as amended (Title VII); b) ☐ Title I of the Americans with Disabilities Act of 1990, as amended (ADA); c) ☐ The Age Discrimination in Employment Act of 1967, as amended (ADEA).

**THE MIAMI-DADE COMMISSION ON HUMAN RIGHTS ("CHR"):** is a civil rights enforcement agency upholding Chapter 11A, which prohibits discrimination. It is a neutral fact-finding agency, which does not represent or promote either party to a charge. The CHR is a designated deferral agency to the U.S. Equal Employment Opportunity Commission (EEOC), and as such, is authorized to investigate complaints filed under Title VII, the ADA and the ADEA. A copy of Chapter 11A may be obtained at www.municode.com.

**MEDIATION:** The CHR offers mediation, which gives parties an opportunity to resolve the issues of the charge in a voluntary and informal manner without investigation or expenditures of resources. Mediation is not a forum for reaching a determination and therefore, does not constitute an admission of guilt.  If you are agreeable to participating in a Mediation Conference, please complete the enclosed Invitation to Mediate form and email it to ofep@miamidade.gov or contact the CHR at (305) 375-2784.

**PRE-DETERMINATION CONCILIATION:** After reviewing the charge and information obtained during the investigation, the CHR may determine that the involved parties could benefit from Pre-Determination Conciliation and inquire if the parties would be interested. If the Pre-Determination Conciliation is unsuccessful, the case is returned to the Investigative Unit for completion of the investigation. Upon completion of the investigation, a determination will be issued related to probable cause.

**REQUEST FOR INFORMATION:** Please submit your response to the enclosed Request for Information (RFI) to ofep@miamidade.gov within twenty (20) days of the receipt of this notice. If you believe that you do not have the requisite number of employees it is important that you answer question #1 in the RFI and provide relevant documentation. If it is determined that your organization is not covered, the case will be closed. Also complete the enclosed Affidavit to Authenticate Documents (Affidavit) and submit it along with any documents you provide to the CHR. You are advised that failure to provide the requested information may result in either adverse findings or the CHR may invoke its subpoena and enforcement powers. Please note that this is an initial investigative inquiry and that additional information may be requested in the future. Any requests for extensions to the RFI should be emailed as soon as possible to ofep@miamidad.gov.

**PRE-DETERMINATION CONCILIATION:** After reviewing the charge and information obtained during the investigation, the CHR may determine that the involved parties could benefit from Pre-Determination Conciliation and inquire if the parties would be interested. If the Pre-Determination Conciliation is unsuccessful, the case is returned to the Investigative Unit for the completion of the investigation.

**RETALIATION:** You are advised that it is illegal to retaliate against any person for filing a complaint, testifying, assisting, or participating in an investigation, proceeding, or hearing on an alleged unlawful practice.

**INVESTIGATIVE AUTHORITY:** Section 11A-28(4)(a) states that the CHR shall have access to documents and other evidence relevant to the complaint and in furtherance of the investigation. Additionally, Section 11A-28(5)(g) states that misleading or false statements of fact or failure to provide or falsification of evidence may incur a fine of not more than five hundred dollars ($500.00) or imprisonment of not more than sixty (60) days or both.

**Enclosures: Charge, RFI, Invitation to Mediate and Fact Sheet, Affidavit, Consent to Conduct Business Electronically**

| **Date**<br><br>**January 21, 2021** | **Erin A. New, Division Director**<br>**Human Rights & Fair Employment**<br>**Human Resources Department** | **Signature**<br><br>*Erin a. New* |
|---|---|---|

# REQUEST FOR INFORMATION

**Jorge Monteagudo Alburquer vs The De Moya Group, Inc**

**CHR Charge No.    F-8515**
EEOC Charge No. 15C-2021-00021

☐ **1. Provide the name of the legal entity of your organization as registered under state law, giving the total number of employees, including part time employees, and explain the nature and type of business conducted by your organization. If you have less than fifteen (15) employees, please submit copies of the Quarterly Wage and Tax Reports for the current and preceding calendar year.**

☐ **2. Submit a written statement outlining your position to the allegation(s) raised in the enclosed charge of discrimination.**

☐ **3. Submit copies of all written rules relating to employee duties, conduct, progressive discipline (if applicable), and discharge procedures. Have all employees been given copies of these rules? If not, explain how employees learn the content of the rules**

☐ **4. Supply copies of any and all performance evaluations and disciplinary actions in** the personnel file of the charging party. Also submit a copy of the charging party's job **description and requirements for the position.**

☐ **5. What performance standard was the Charging Party expected to meet? What standards did the charging party fail to meet?**

☐ **6. Submit a list of all employees discharged during the relevant period of June 2020 through December 2020. Identify each employee by name; race; national origin; date of hire; pay rate; position held; supervisor; date of discharge; reason for discharge; and prior disciplinary record.**

☐ **7. Submit a list of all employees hired during the relevant period above. Identify each by name; race; national origin; date of hire; pay rate; position held; supervisor; date and reason of discharge (if applicable)**

☐ **8. Complete the enclosed Affidavit to Authenticate Documents and return it with the requested documents.**

# Miami Dade Commission on Human Rights

# Invitation to Mediation Conference

**RE: Jorge Monteagudo Alburquer vs The De Moya Group, Inc**

**CHR Charge No.:  F-8515**
**EEOC Charge No.: 15C-2021-00021**

☐       **I agree to participate in a Mediation Conference.**

I understand that the purpose of this conference is to provide an effective, timely and voluntary resolution of the charge of discrimination. I understand that the mediator(s) will assist the parties in resolving the dispute; and may make suggestions, but will not make any judgment on the merits of the case, and will not represent either party. I understand that I have the right to have an attorney represent me at the mediation conference if I so choose. I understand that if an agreement is reached, it will be put in writing and signed by both parties, and the case will be closed.

I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding.

The parties agree not to subpoena the mediator(s) or compel the mediator(s) to produce any document provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. The parties further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

☐       **I do not believe that this matter can be resolved through Mediation.**

I understand that if either party declines to engage in mediation or if the mediation is unsuccessful, the Miami-Dade Commission on Human Rights will issue a final determination related to probable cause.

Signature: _____      Date: _____

Printed Name: _____

Telephone Number: _____

# Miami-Dade Commission on Human Rights
## Mediation Fact Sheet

**DEFINITION AND EXPLANATION**

➢ The Miami-Dade Commission on Human Rights (CHR) schedules mediation conferences for new complaints of discrimination pursuant to Chapter 11A of the Miami-Dade County Code. Mediation is a process in which an impartial person, the mediation, helps the parties to resolve their dispute. The mediator may suggest ways of resolving the dispute but does not make any judgment.

➢ The purpose of the mediation conference is to provide for the exchange of concerns from both parties to work towards a possible resolution of the dispute. This informal conference is an opportunity for the complaining party and the employer (respondent) to resolve their dispute prior to the investigation.

➢ The CHR provides an impartial representative to 1.) Conduct the mediation process, 2.) Conduct onsite mediation of complaints in accordance with appropriate documents in accordance with all statutory and procedural requirements. All communications at the conference are confidential.

**POSSIBLE OUTCOMES**

1. The parties may enter into a Settlement Agreement prior to or during the conference. If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is binding and enforceable in the same manner as any other written contract.

2. The mediator may declare that further efforts at mediation are no longer worthwhile. If the parties fail to resolve voluntarily the dispute, the case will be assigned to an investigator for a thorough investigation of the merits of the complaints. A finding will then be made based on an examination of the evidence.

3. The parties may complete the full mediation session, at which time a written declaration of either party will be made to the effect that the mediation proceedings are terminated.

**PREPARING FOR A SUCESSFUL CONFERENCE**

**COMPLAINANT**

➢ It is suggested that you bring any information that you wish to present at the conference concerning the reason(s) you believe discrimination occurred. Limit your statements to the issues raised in your complaint.

➢ Be prepared to state what you are requesting from the respondent. An itemized statement of losses would be helpful. Be prepared to consider various ways to resolve the complaint.

**RESPONDENT**

➢ It is suggested that you bring any information which would support your position. Respondent's representatives must have the authority to settle and all persons necessary to the decision to settle should be present. They should have direct knowledge of the events and circumstances cited in the complaint. The names and addresses of such persons shall be communicated in writing to the CHR.

**OTHER IMPORTANT POINTS**

➢ Mediation sessions are private and confidential. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

➢ There shall be no stenographic record of the mediation process and no person shall tape record any portion of the mediation session.

➢ If mediation efforts are not successful within thirty (30) days of the complaint being referred to the Mediation Specialist, the case will be forwarded to appropriate CHR personnel for investigation.

➢ Pursuant to Chapter 11A of the Miami-Dade County Code, it is an unlawful employment practice to retaliate or discriminate against a person who has opposed a discriminatory practice or who has made or filed a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Chapter.

**AFFIDAVIT TO AUTHENTICATE DOCUMENTS**

**State of Florida**

**County of** _____

**1. TRUE AND CORRECT COPIES**

**I (We),**

_____

**[Name(s) of custodian(s) of records]**

_____ ,

**[Title(s) of such person(s)]**

**after being duly sworn, hereby attest the attached documents are true and correct copies of the originals maintained by**

_____

**[Name of Respondent or entity keeping document(s)]**

_____ .

**[Name of section(s) or division(s) maintaining record(s)]**

_____

**[Signature of Custodian]**

**Sworn and subscribed before me this**

_____ **day of** _____ **20_____**

_____

**Public Notary**
**My Commission expires:** _____

**2. ACCURACY OF ORIGINAL DOCUMENT**

**I (We),**

_____

**[Name of person(s) generating documents or person(s) familiar with events reflected in documents]**

_____ ,

**[Title(s) of such person(s)]**

**after being duly sworn, hereby attest that the originals of the attached documents accurately reflect the events on them.**

_____

**[Signature of Custodian]**

**Sworn and subscribed before me this**

_____ **day of** _____ **20_____**

_____

**Public Notary**
**My Commission expires:** _____

**Pursuant to Section 11A-28(5)(f) of the Miami-Dade County Code, as amended, "[a]ny person who, with intent thereby to mislead the Commission or the Director, makes or causes to be made any false entry or statement of fact in any report, account, record or other document submitted to the Commission pursuant to its subpoena or other record, or shall willfully neglect or fail to make or cause to be made full, true and correct in such reports, accounts, records or other documents, or shall willfully mutilate, alter, or by any other means falsify documentary evidence, may be fined by the County Court of Dade County, Florida not more than five hundred dollars ($500) or imprisoned not more than sixty (60) days or both."**

**Obando, Mercedes (HR)**

| | |
|---|---|
| **From:** | postmaster@demoya.com |
| **To:** | Carli.bailey@demoya.com |
| **Sent:** | Thursday, January 21, 2021 12:11 PM |
| **Subject:** | Delivered: Notice of Charge: F-8515, Monteagudo Alburquer, Jorge V. The De Moya Group, Inc |

## Your message has been delivered to the following recipients:

Carli.bailey@demoya.com

Subject: Notice of Charge: F-8515, Monteagudo Alburquer, Jorge V. The De Moya Group, Inc

## Miami Dade Commission on Human Rights
## Invitation to Mediation Conference

**RE: Jorge Monteagudo Alburquer vs The De Moya Group, Inc**
**CHR Charge No.:  F-8515**
**EEOC Charge No.: 15C-2021-00021**

☑       I agree to participate in a Mediation Conference.

I understand that the purpose of this conference is to provide an effective, timely and voluntary resolution of the charge of discrimination. I understand that the mediator(s) will assist the parties in resolving the dispute; and may make suggestions, but will not make any judgment on the merits of the case, and will not represent either party. I understand that I have the right to have an attorney represent me at the mediation conference if I so choose. I understand that if an agreement is reached, it will be put in writing and signed by both parties, and the case will be closed.

I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding.

The parties agree not to subpoena the mediator(s) or compel the mediator(s) to produce any document provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. The parties further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

☐       I do not believe that this matter can be resolved through Mediation.

I understand that if either party declines to engage in mediation or if the mediation is unsuccessful, the Miami-Dade Commission on Human Rights will issue a final determination related to probable cause.

Signature: _for claimant_     Date: _12|9|2020_
Printed Name: _Nathaly Saavedra, Esq._
Telephone Number: _786·650·0202_



**HUMAN RIGHTS & FAIR EMPLOYMENT PRACTICES**
111 NW 1st Street, 21st Floor, Miami, FL 33128
(305) 375-2784 FAX: (305) 375-2114
ofep@miamidade.gov

miamidade.gov

## CONSENT TO CONDUCT BUSINESS ELECTRONICALLY

Please read this notice carefully before giving consent. This Consent to Conduct Business Electronically ("Consent") applies to all communications provided by the Human Rights & Fair Employment Practices Division ("HRFEP") of the Miami-Dade Human Resources Department.

1. Scope and Method. You agree that HRFEP may provide you with any communication electronically, via email, and discontinue sending paper document to you, unless and until you withdraw consent as described below. You also agree that you will still be bound by certain deadlines and timeframes to submit information to our agency, such as in the case of filing an appeal.

To access the information being provided to you electronically, you must have the ability to receive and access Portable Document Format or "PDF" files, such as Adobe Acrobat Reader®. If you do not have such software, click here to download a free version of Adobe Acrobat Reader®.

2. Withdrawing Consent. You may withdraw your consent to receive electronic communications from HRFEP by emailing us or writing to us at the address noted above. Any withdrawal of your Consent will only become effective after HRFEPs receipt of your withdrawal notice. Termination of your Consent shall not affect the legal enforceability of any documents provided to you.

3. E-mail address of Record. The e-mail address of record will be the only e-mail address that electronic communication is sent to. It is your responsibility to provide us with a valid and accurate e-mail address and to update promptly any changes to this information.

4. Requesting Paper Copies. When you give Consent, **you will not receive a paper copy** of any communication, unless you request it or we otherwise deem it appropriate to do so. You can obtain a paper copy of an electronic communication by printing it yourself or by requesting we mail you a paper copy, provided that such request is made within a reasonable time after we first send you the electronic communication.

5. Termination/Changes. We reserve the right to discontinue, terminate, or change the terms and conditions of this Consent. We will provide you with notice of any such termination or change as required by law.

6. Acceptance and Consent. By agreeing to this Consent, you agree to the following statements: I have read, understand and agree to be bound by the terms and conditions described above and consent to receive electronic documents as described above. I understand and agree that information provided to me electronically may contain important information and I agree to review such information in a timely manner; and if I cannot access my e-mail for any reason whatsoever, I must immediately notify HRFEP and arrange to have any communication delivered via alternative means.

_____
Print Name

_____
Signature

12|9|2020
_____
Date

nathaly@peregonza.com
_____
E-mail esther@peregonza.com

101
Rev. 01/17


miamidade.gov

**HUMAN RIGHTS & FAIR EMPLOYMENT PRACTICES**
111 NW 1st Street, 21st Floor, Miami, FL 33128
(305) 375-2784 FAX: (305) 375-2114
ofep@miamidade.gov

## CONSENT TO CONDUCT BUSINESS ELECTRONICALLY

Please read this notice carefully before giving consent. This Consent to Conduct Business Electronically ("Consent") applies to all communications provided by the Human Rights & Fair Employment Practices Division ("HRFEP") of the Miami-Dade Human Resources Department.

1. Scope and Method. You agree that HRFEP may provide you with any communication electronically, via email, and discontinue sending paper document to you, unless and until you withdraw consent as described below. You also agree that you will still be bound by certain deadlines and timeframes to submit information to our agency, such as in the case of filing an appeal.

To access the information being provided to you electronically, you must have the ability to receive and access Portable Document Format or "PDF" files, such as Adobe Acrobat Reader®. If you do not have such software, click here to download a free version of Adobe Acrobat Reader®.

2. Withdrawing Consent. You may withdraw your consent to receive electronic communications from HRFEP by emailing us or writing to us at the address noted above. Any withdrawal of your Consent will only become effective after HRFEPs receipt of your withdrawal notice. Termination of your Consent shall not affect the legal enforceability of any documents provided to you.

3. E-mail address of Record. The e-mail address of record will be the only e-mail address that electronic communication is sent to. It is your responsibility to provide us with a valid and accurate e-mail address and to update promptly any changes to this information.

4. Requesting Paper Copies. When you give Consent, **you will not receive a paper copy** of any communication, unless you request it or we otherwise deem it appropriate to do so. You can obtain a paper copy of an electronic communication by printing it yourself or by requesting we mail you a paper copy, provided that such request is made within a reasonable time after we first send you the electronic communication.

5. Termination/Changes. We reserve the right to discontinue, terminate, or change the terms and conditions of this Consent. We will provide you with notice of any such termination or change as required by law.

6. Acceptance and Consent. By agreeing to this Consent, you agree to the following statements: I have read, understand and agree to be bound by the terms and conditions described above and consent to receive electronic documents as described above. I understand and agree that information provided to me electronically may contain important information and I agree to review such information in a timely manner; and if I cannot access my e-mail for any reason whatsoever, I must immediately notify HRFEP and arrange to have any communication delivered via alternative means.

_Alisa de Moya_
Print Name

_(signature)_
Signature

_2/10/2021_
Date

_alisa.demoya@demoya.com_
E-mail

101
Rev. 01/17

## Miami Dade Commission on Human Rights

## Invitation to Mediation Conference

**RE: Jorge Monteagudo Alburquer vs The De Moya Group, Inc**

**CHR Charge No.:  F-8515**
**EEOC Charge No.: 15C-2021-00021**

☑        I agree to participate in a Mediation Conference.

I understand that the purpose of this conference is to provide an effective, timely and voluntary resolution of the charge of discrimination. I understand that the mediator(s) will assist the parties in resolving the dispute; and may make suggestions, but will not make any judgment on the merits of the case, and will not represent either party. I understand that I have the right to have an attorney represent me at the mediation conference if I so choose. I understand that if an agreement is reached, it will be put in writing and signed by both parties, and the case will be closed.

I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding.

The parties agree not to subpoena the mediator(s) or compel the mediator(s) to produce any document provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. The parties further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

☐        I do not believe that this matter can be resolved through Mediation.

I understand that if either party declines to engage in mediation or if the mediation is unsuccessful, the Miami-Dade Commission on Human Rights will issue a final determination related to probable cause.

Signature: _____     Date: 2/10/2021

Printed Name: Alisa de Moya

Telephone Number: 305-255-5713

## AFFIDAVIT TO AUTHENTICATE DOCUMENTS

State of Florida

County of _Miami Dade_

1. **TRUE AND CORRECT COPIES**

I (We), _Carli Bailey_
_____
[Name(s) of custodian(s) of records]

_Asst. Sec/Trea_ ,
_____
[Title(s) of such person(s)]

after being duly sworn, hereby attest the attached documents are true and correct copies of the originals maintained by

_The demoya Group Inc_
_____
[Name of Respondent or entity keeping document(s)]

_____ .
[Name of section(s) or division(s) maintaining record(s)]

_____
[Signature of Custodian]

Sworn and subscribed before me this

_10_ day of _Feb_ 20_21_

_____
Public Notary
My Commission expires: _____

JACEY DANIELLE DE MOYA
Notary Public - State of Florida
Commission # HH 035277
My Comm. Expires Aug 23, 2024
Bonded through National Notary Assn.

2. **ACCURACY OF ORIGINAL DOCUMENT**

I (We), _Carli Bailey & Alisa demoya_
_____
[Name of person(s) generating documents or person(s) familiar with events reflected in documents]

_Asst. Sec/Trea_ ,
_____
[Title(s) of such person(s)]

after being duly sworn, hereby attest that the originals of the attached documents accurately reflect the events on them.

_____
[Signature of Custodian]

Sworn and subscribed before me this

_10_ day of _Feb_ 20_21_

_____
Public Notary
My Commission expires: _____

JACEY DANIELLE DE MOYA
Notary Public - State of Florida
Commission # HH 035277
My Comm. Expires Aug 23, 2024
Bonded through National Notary Assn.

**Pursuant to Section 11A-28(5)(f) of the Miami-Dade County Code, as amended, "[a]ny person who, with intent thereby to mislead the Commission or the Director, makes or causes to be made any false entry or statement of fact in any report, account, record or other document submitted to the Commission pursuant to its subpoena or other record, or shall willfully neglect or fail to make or cause to be made full, true and correct in such reports, accounts, records or other documents, or shall willfully mutilate, alter, or by any other means falsify documentary evidence, may be fined by the County Court of Dade County, Florida not more than five hundred dollars ($500) or imprisoned not more than sixty (60) days or both."**



**the de Moya Group inc.**
Engineering • Construction • Management

Name of Legal Entity of Your Organization:

The de Moya Group, Inc                                    February 10, 2021
14600 SW 136 Street
Miami, FL 33186

FEID # 59-2629362

Number of full and part time employees as of Week Ending 10/10/20:    305

The de Moya's were Cuban refugees who came to Miami, Florida in 1959 to escape Fidel Castro. Jorge de Moya Sr was a Civil Engineer and his wife Caridad was a Nurse. They had seven children, five boys and two girls. Their children would later form The de Moya Group, Inc.

The de Moya Group was founded by Armando & Alisa de Moya together with Alvaro de Moya, Jorge Juan de Moya, as well as other family members who chose to invest in the Company. In 1986 we opened our office in our one car garage at our modest home in Cutler Ridge. The Company started 35 years ago when Armando & Alvaro de Moya built their first project, a $62,000 turning lane for the Florida Department of Transportation (FDOT).

We have employees that have been working with us since the early 1990's, we value the employees that are dedicated and eager to perform their duties and they value working for us. Employers and their employees must have a good working and personal relationship to continue working with each other for more than three decades. Our three sons have been involved in the business since they were twelve years old, starting out as laborers in the summers, then on to operating heavy equipment and becoming Supervisors and Officers of the Company. They have grown up appreciating our workforce from the laborers to the managers.

The Company credits its successes to the many dedicated, talented and hardworking employees that have helped to make the company what it is today. The underlying philosophy being that "a Company is only as good as the people it employs" and to that end, the Company considers every employee an important part of its success. Constructing Roads and Bridges can be very dangerous and we must make sure that our employees understand there is no margin for error in many circumstances of construction. Safety must come first.

Mr. Jorge Monteagudo (Cuban) was hired 8/14/19 to work on our MDX Project in Kendall. He was hired as a laborer which could entail working with hand tools such as a pic and shovel, picking up trash, project cleanup, spotter for dump trucks, spotter for utilities etc. He was also assigned to operate a roller from time to time. He has been involved in several incidents and his attitude and failure to complete his assigned work has been well documented.

FAILURE TO PROTECT OVERHEAD & UNDERGROUND UTILITY LINES CAUSING UTILITY DAMAGE ON PROJECT 552

In February and March of 2020 his Supervisor, Noel Leon (Cuban) began to see that Jorge's full attention was not focused on his job or the tasks he was assigned. He was assigned to be a spotter for the equipment operator to make sure the operator would avoid hitting any utilities thereby damaging them, repairs to utilities must be repaired at the contractor's expense.

FAILURE TO PROTECT AT&T OVERHEAD LINE CAUSING UTILITY DAMAGE PROJECT 552

On 2/21/2020 the operator, Luis Rivas (Nicaraguan), was removing asphalt using an excavator, he lifted the arm and hit the overhead AT&T lines. There were two spotters assigned to help protect the overhead and underground utilities. Neither spotter, Mr. Monteagudo (Cuban) who had walked away from the operation or Gustavo Rivas (Nicaraguan) had warned the operator that there was a utility line above him. The AT&T line was knocked down and damaged. The equipment operator received a written disciplinary warning, the spotters were also verbally warned they were also responsible for not doing the task they were assigned to protect the utilities.

FAILURE TO PROTECT MIAMI-DADE WATER & SEWER UNDERGROUND WATER LINE CAUSING UTILITY DAMAGE ON PROJECT 552

On 3/24/20 a similar scenario occurred, Luis Rivas was operating heavy equipment and the two spotters, Jorge Monteagudo and Gustavo Rivas both failed to warn the operator there was a MDWAS water line underground, a 1" water pipe was broken. All three employees received warnings.

**Luis Rivas has received a total of 3 warnings since his hire date 9/19/2019

**Gustavo Rivas has received a total of 2 warnings since his hire date 9/16/2019

CARELESSNESS – DAMAGING THE INSPECTED ROCK BASE ON PROJECT 552

On 7/16/20 Noel Leon (Supervisor) had just inspected the base rock on the project with the CEI inspector who passed the base rock. After the inspection Mr. Monteagudo drove through the base rock rutting the length of the base which would need to be fixed and reinspected. Noel scolded both Mr. Monteagudo and his Foreman, Francisco Baldemar (Hispanic origin unknown) for allowing the approved base rock to be damaged. The next day Noel Leon had a safety meeting with the crews to make sure this would not happen again.

REQUEST TO WORK NIGHTS ON PROJECT 552

Mr. Monteagudo approached his Supervisor, Noel Leon and Project Manager, Fabricio Cedillo (Ecuador) to request that he be moved to working nights. They set him up to work nights with the MOT Crews to fix the MOT for MOT shifts and installing temporary barrier walls. Mr. Monteagudo requested to be permanently placed working nights but we were unable to accommodate his request because the MOT Supervisor, Christian Ferreras (Hispanic origin unknown) had already hired new employees on his crew.

REFUSAL TO FOLLOW DIRECTIONS ON PROJECT 552

On 9/4/20 Mr. Monteagudo was assigned to clean the windrow (piles of rock and dirt material) between the road shoulder and the temporary barrier wall. He did not perform any of this work on 9/4/20 which had been assigned by Noel Leon. The next day Noel Leon came to the project and found the work had not been performed. He told Mr. Monteagudo to join up with the equipment operator, Fermin Jimenez (Mexican) to complete his assignment from the previous day. Mr. Monteagudo told Noel he doesn't work with the operator Fermin Jimenez. Noel ordered him to work with Fermin Jimenez, if he refused he would be terminated from The de Moya Group. Mr. Monteagudo complied so he was not terminated on that day. In my opinion, Mr. Monteagudo should have been terminated for not performing the assigned work on 9/4/20. Noel Leon made the decision to give Jorge another chance.

CONVERSATION WITH CHRISTOPHER DE MOYA (OWNER) MAIN OFFICE

Sometime after 9/4/20 Mr Monteagudo showed up at the Main Office without prior notification.  He told our employee Susan Giraldo (Columbian) he needed to speak with Christopher de Moya (Owner). His demeanor frightened the girls working downstairs. Christopher was in a meeting. Susan walked upstairs to ask Christopher if he could come down to speak with Mr. Monteaqudo. Susan told Chris that he was upset and that she personally was not comfortable having him in our office. Chris asked Susan if she could translate for him in our conference room. Susan agreed. She has stated that Mr. Monteagudo would raise his voice and he was pointing his finger at Christopher de Moya. Both Susan and Christopher told him to please lower his finger and calm down.  Jorge was claiming that Noel Leon had disrespected him. He told Chris he had had enough. He requested that Chris reassign him to another project. Chris told him that he would talk to Noel and others regarding the situation and see what he could do. Mr. Monteagudo never once mentioned that he had been discriminated or retaliated against to Christopher or Susan. He left the office and he never came back.

CHRISTOPHER DE MOYA MADE ARRANGEMENTS TO TRANSFER MR. MONTEAGUDO AS REQUESTED TO PROJECT 490

On 9/14/20 Christopher de Moya had Mr. Monteagudo transferred to our Turnpike project which is operated by our subsidiary, Asphalt Group, Inc. The Supervisory Team on this project are employees of Asphalt Group, Inc. Most of them have only worked for the Company 1 to 2 years and have not met most of our de Moya Group employees. Due to the large size of the project, some of The de Moya Group supervisors were transferred to the employment of Asphalt Group. The de Moya Group also has equipment operators and laborer employees working on that project under Asphalt Group Supervisors. As of 9/14/20, Mr. Monteagudo was one of those employees.

** Mr. Monteagudo has accused Noel Leon of calling his new Supervisors to let them know he is trouble.

WARNING FOR HIDING BEHIND A LIGHT TOWER MASS ON PROJECT 490

No date was noted but after his transfer to Project 490 Manuel Comes (Cuban) verbally warned Mr. Monteagudo about constantly disappearing out of his work zone. Manny says he approached him hiding behind the light tower mass. Manny told him if he was caught out of his work zone again he would receive a written warning. Manny told him he needs to focus and do his job.

**WARNING FOR SITTING AROUND AND NOT PERFORMING DUTIES ON PROJECT 490**
On 9/29/20, Mr. Monteagudo was found not performing his work assignment. Mr. Manuel Comes (Cuban) wrote a warning that Mr. Monteagudo was supposed to be spotting trucks and helping the grader operator, Miguel Quiroz (Honduran) by clearing stakes on the ground so the operator could see the grade marks. Mr. Monteagudo was issued a written warning for <u>sitting around, not working and not following instructions</u>. Manny also commented to "Stay Productive."

**MR. MONTEAGUDO BLOCKED ACCESS TO SUPERVISOR ALEJANDRO LEON TO ENTER PROJECT 490**
10/2/20 (the date stated on the EEOC Charge of Discrimination) Mr. Monteagudo stated that Mr. Alejandro Leon (Cuban), son of Noel Leon, had come to the project to harass him and Mr. Alejandro Leon was not supposed to be on that project. He states that Alejandro had physically attacked and threatened him. Alejandro Leon is the Quality Control Supervisor he was supposed to be there to do his job, he needs access to all of our projects. On this day they were inspecting the rock base to make sure it meets FDOT specifications.  A witness, Jose Batista (Cuban) also Quality Control has stated Mr. Monteagudo was operating a roller and blocking their entrance to the project. Mr. Batista states that he was driving the truck with Alejandro. They tried waving to the roller operator to move the roller so they could pass. When the roller was not moved, Alejandro got out of the pickup to tell Mr. Monteagudo to move the roller out of the way so they could enter, Mr. Monteagudo refused. Alejandro advised him that he needs to guarantee project access to all Supervisors, Survey Crews and Mechanics. When Alejandro got back into the truck, Mr. Batista advised him that the roller operator was the person that had been trying to get other employees to file a complaint against his Father, Noel Leon. Alejandro went back to the roller to ask Mr. Monteagudo why he was making bad comments about his Father to other workers. Per Alejandro, after their discussion Mr. Monteagudo agreed that Noel Leon is respectful, a great person and denied he had made insulting comments about Noel. Alejandro told him thank you, he would find out who the person was that is behind spreading rumors.

**FILED POLICE REPORT AGAINST ALEJANDRO LEON**
On Monday 10/5/20, Mr Monteagudo went to Palmetto Bay Police Department and filed a complaint against Mr. Alejandro Leon for assault. In his report he listed Noel Leon as a witness, no witness saw Noel on Project 490. Noel Leon does not have any work on Project 490, he works farther South in the Kendall area on Project 552.
**Please note that neither Alejandro Leon, Noel Leon or The Company were aware that Mr. Monteagudo had filed a police complaint against them until we received a copy of the EEOC Complaint Report on January 21, 2021. When I asked Alejandro to send me a copy of the police report he had no idea that there was one. He called the Police Department and was able to get a copy.

**MR. MONTEAGUDO WAS FOUND SLEEPING ON A ROLLER WITH THE ENGINE RUNNING ON PROJECT 490**
On 10/6/20, Mr. Jerome Nasso (White American) needed a roller on Ramp I, he went to get the roller and operator from Ramp J. Mr. Monteagudo should have been compacting the area on Ramp J but he was found sitting on the roller with his eyes closed and his head leaning slightly back. Mr. Nasso had to get out of his truck and shouted "Hey" as he was walking towards the roller. It took a few seconds before Mr. Monteagudo opened his eyes. He was clearly sleeping on the roller with the engine running. Mr. Nasso determined sleeping on the job and especially on heavy equipment with the engine running to be

inexcusable behavior and terminated Mr. Monteagudo. Mr. Nasso requested a Hispanic Employee come to translate to Mr. Monteagudo that he was being terminated for sleeping on the roller. Mr. Monteagudo argued against the termination.   Mr. Nasso asked him to sign the termination form which had been completed and Mr. Monteagudo refused to sign. He was not terminated for refusal of signing the written warning and termination form, he was terminated for Improper Conduct, Failure to Follow Instructions, Found Sleeping on the Roller. This is a very serious and dangerous safety offense, termination was the correct decision for the safety of all employees.

In Summary, Mr. Jorge Monteagudo (Cuban) was not satisfied working for the Company. He refused to complete work that was assigned to him until he was told he would be terminated. In September 2020 he notified Christopher de Moya (Cuban American) that he was unhappy working under Noel Leon (Cuban). He told Christopher in front of Susan Giraldo (Columbian) he felt disrespected by Noel. There was no mention of discrimination of his Race or National Origin and there was no Retaliation against Mr. Monteagudo. He requested we move him to another project which we granted to him. Once he was transferred to the other project he started with the same behavior of being unreliable to complete his assignments. He blocked a Supervisor, Alejandro Leon (son of Noel Leon) from entering the project to perform his Quality Control Work, upsetting Alejandro Leon to the point he had to get out of his truck to ask Jorge to give him access to the project and told him to stop talking negatively about Alejandro's Father. Jorge filed a Police Report on 10/5/20 that he was assaulted by Alejandro Leon (Cuban) although no witness saw any assault committed including Mr. Jose Batista (Cuban) sitting in the truck blocked by Jorge. On 10/6/20 Jorge Monteagudo was found sleeping on a roller while the engine was running. He was terminated that day by Supervisor Jerry Nasso.

Mr. Monteagudo closes his EEOC statement saying that his work has always been exemplary. His work record at The de Moya Group shows that he has not been an exemplary employee. There was no conspiracy to get rid of him. He was given chance after chance and it is his own behavior that got him terminated. There was no Discrimination of his race and country of origin because we welcome employees of all Nationalities and Races. Neither The de Moya Group nor his Supervisors tried to retaliate against him. Throughout his employment he has complained and openly spoken against the Supervisors that tried to guide him towards being a better employee.

The de Moya Group agrees with the Supervisors who tried in vain to help him. Ultimately, based on his behavior from February to October 2020; Mr. Monteagudo would not follow instructions, he would not complete his tasks or work safely. He has never taken responsibility for his improper actions, he is the one that has  complained about having to work with Crews he did not like, Supervisors he did not like and the Company that tried to help him when he asked. When he was terminated for sleeping on the roller, he blamed his White American Supervisor Jerry Nasso.

Sincerely,
Alisa de Moya
Secretary/Treasurer

alisa.demoya @ demoya.com



JORGE MONTEAGUDO EEOC COMPLAINT OF DISCRIMINATION
ATTORNEY; PEREGONZA THE ATTORNEYS
1414 NW 107 AVE, STE 302, DORAL FL 33172
O 786-650-0202 F 786-650-0200 OFFICE@PEREGONZA.COM

**THE DE MOYA GROUP, INC**
**COMPLAINT DATED: 10/27/2020**

Complaint  **DISCRIMINATION BASED ON RACE, RETALIATION & NATIONAL ORIGIN**
**JORGE MONTEAGUDO EEOC COMPLAINT OF DISCRIMINATION**
**DESCRIPTION OF COMPLAINT PER JORGE MONTEAGUDO:**

| | |
|---|---|
| Monteagudo | I AM A HISPANIC MAN FROM CUBA |
| Monteagudo | I WAS EMPLOYED BY THE DE MOYA GROUP FROM 2019 TO 10/6/2020 |
| Monteagudo | I WAS DISCRIMINATED AGAINST BECAUSE OF MY RACE OR NATIONAL ORIGIN AND RETALIATION FOR MY COMPLAINTS OF DISCRIMINATION |
| de Moya Response | The de Moya Group was founded by a family of Cuban Americans, we have a policy of accepting employees of all Races & National Origin. We do require that all employees follow the instructions of their supervisors, work safely and put forth their best efforts to complete their assignments. When working to build Road and Bridge Projects all employees must work safely, there is no margin for error. |
| Monteagudo | SUPERVISOR NOEL LEON MADE DISCRIMINATE AND DISRESPECTFUL COMMENTS REGARDING CUBANS, SUCH AS "CUBANS ARE LAZY" |
| de Moya Response | Noel Leon (Cuban) has been with The de Moya Group since 2007, this is the first complaint made against him since he was hired. He is very well respected by his peers. |
| Monteagudo | AFTER BEING TREATED DIFFERENTLY I SPOKE TO THE OWNER AND COMPLAINED OF THE DISCRIMINATORY TREATMENT. |
| de Moya Response | Mr. Monteagudo has not been treated differently than other employees, he was expected to perform his job as all employees are. He has not been discriminated against for Race or National Origin as our Company is a melting pot of employees from many Countries.. He has been warned many times about focusing on and completing his job. He has stood up to his Supervisors by not peforming any job he didn't feel like doing and complaining about having to work with certain crews. He was warned he would be terminated if he did not get his work done when asked. Anyone that wants to work in construction will have to perform the work that needs to be done in order to keep the project moving. |
| de Moya Response | Mr. Monteagudo came to our Main Office to speak with an Owner Christopher de Moya (Cuban American). He came into our office with a threatening demeanor. He frightened the girls in our office by raising his voice, they felt very uncomfortable having him in the office. He spoke with Christopher along with our employee Susan Giraldo (Columbian) attempting to translate from Spanish to English. During the meeting he was speaking in a loud voice and pointing his finger. Both Susan and Christopher asked him to calm down and stop pointing at them. He claimed that Noel Leon had been disrespectful with him and he asked to be reassigned to another project. He never said the word discrimination or retaliation to either Susan or Chris.  Christopher told him he would speak with Noel and others  to see what he could do for him. It was decided he could be transferred to our Turnpike/Okeechobee Project 490. He was transferred on 9/14/2020. |
| Monteagudo | I WAS ASSIGNED TO WORK ON A DIFFERENT PROJECT WITH SUPERVISOR MANNY COMES, CUBAN AMERICAN |

**THE DE MOYA GROUP, INC**
**COMPLAINT DATED: 10/27/2020**

Complaint    **DISCRIMINATION BASED ON RACE, RETALIATION & NATIONAL ORIGIN**
**JORGE MONTEAGUDO EEOC COMPLAINT OF DISCRIMINATION**
**DESCRIPTION OF COMPLAINT PER JORGE MONTEAGUDO:**

| | |
|---|---|
| de Moya Response | Mr. Monteagudo received his first verbal warning for hiding behind a light tower from Manny Comes. He received a written warning from Manny Comes on 9/29/20 he was supposed to be spotting trucks and helping the grader operator Miguel Quiroz by removing stakes so Miguel could see the grade marks for finishing the rock. Mr. Monteagudo was sitting around, not working or following Manny's instructions. |
| Monteagudo | A FEW DAYS AFTER BEING TRANSFERRED MANNY CALLED ME TO HIS CAR AND TOLD ME THAT NOEL LEON HAD CALLED HIM TO SAY I WAS VERY PROBLEMATIC |
| Monteagudo | I ASSURED MANNY I WAS JUST THERE TO DO MY JOB |
| de Moya Response | Manny Comes and Noel Leon do not know each other, they have never spoken to each other or worked together. We have confirmed they don't have each others phone numbers. This phone call never took place. |
| Monteagudo | ON ABOUT OCTOBER 2, 2020, ALEJANDRO LEON, THE SON OF NOEL LEON CAME TO THE SITE WHERE I WAS WORKING. |
| Monteagudo | ALEJANDRO WAS NOT SUPPOSED TO BE AT THAT SITE AND WENT THERE TO HARASS ME |
| de Moya Response | Alejandro Leon is the Supervisor of Quality Control on all de Moya Projects. He needs access to all projects, his presence on that worksite was to inspect and test the base rock. Mr. Monteagudo was on a roller and he was intentially blocking Alejandro access to the project by refusing to move the roller out of the road so Alejandro and his assistant Jose Batista (Cuban) could perform their tests which are required by the Florida Department of Transportation. When it became clear that Jorge M was not moving the roller to let them proceed, Alejandro got out of the truck to tell him he had to move the roller and let him pass. |
| Monteagudo | ALEJANDRO PHYSICALLY ATTACKED ME, I REPORTED THE INCIDENT TO MANNY, MANNY SAID HE WOULD TAKE CARE OF THE SITUATION. MANNY NEVER SAID ANYTHING TO ME. |
| de Moya Response | Alejandro climbed up onto the side of the roller to speak to Jorge and told him he had to move the roller out of the way and he needs to respect all Supervisors, the Survey Crews and Mechanics and make sure he gives them access to the project. It had also come to Alejandro's attention that this was the employee that had been spreading lies about his Father Noel. Alejandro asked him why he was spreading lies about Noel when everyone knew what a great Supervisor Noel was. |
| Monteagudo | ON MONDAY OCTOBER 5, 2020 AT 6:00PM I FILED A POLICE REPORT BECAUSE I WAS CONCERNED FOR MY SAFETY |
| de Moya Response | The police report accused Alejandro Leon of Assault on Project 490 and listed Noel Leon as a Witness. Noel Leon was not on Project 490, he is the Supervisor on Project 552. Monteagudo goes on to say Alejandro Leon drove in, jumped up onto the roller and struck him twice on the chest and verbally threatened him. He failed to report that he was on the roller blocking Alejandro Leon's entrance to the project for a Quality Control inspection which was the only reason Alejandro got out of the truck. Alejandro asked Mr. Monteagudo why he was speaking badly about his Father, Noel to other employees? Mr. Monteagudo told Alejandro it was not him. Jose Batista was waiting in the truck for Alejandro and did not witness an assault. |
| Monteagudo | ON TUESDAY OCTOBER 6TH I WENT TO THE SUPERINTENDENT, JERRY (WHITE AMERICAN) TO REPORT THE DISPARATE TREATMENT. |

**THE DE MOYA GROUP, INC**
**COMPLAINT DATED: 10/27/2020**

Complaint

**DISCRIMINATION BASED ON RACE, RETALIATION & NATIONAL ORIGIN**
**JORGE MONTEAGUDO EEOC COMPLAINT OF DISCRIMINATION**
**DESCRIPTION OF COMPLAINT PER JORGE MONTEAGUDO:**

| | |
|---|---|
| de Moya Response | We have a statement from Jerry Nasso, Jorge never approached him to inform him of any incidents or altercations he may have been involved with on de Moya Group or Asphalt Group projects. |
| Monteagudo | ON OCTOBER 7TH ELENA VALDES, HR CALLED MONTAGUDO TO ADVISE THERE WOULD BE AN INVESTIGATION. |
| Monteagudo | THAT SAME DAY JERRY MET WITH ME AND LET ME KNOW I WAS BEING WRITTEN UP FOR SLEEPING ON THE JOB. |
| Monteagudo | JERRY ADVISED ME IF I DID NOT SIGN THE WRITE UP, I WOULD BE TERMINATED. I REFUSED TO SIGN IT AS IT WAS COMPLETELY FALSE & WAS USED AS A PRETEXT |
| de Moya Response | Monteagudo was seen sleeping on a roller with the engine running which is very dangerous to himself and fellow Employees. He was terminated for sleeping on the roller and the multiple other warnings which copies are included in our repsonse. |
| Monteagudo | THEREFORE I WAS TERMINATED. |
| de Moya Response | Mr Monteagudo was terminated for sleeping on a roller with the engine running & not performing the work that was assigned to him. |
| Monteagudo | THROUGHOUT MY EMPLOYMENT, MY WORK HAS BEEN EXEMPLARY, ANY REASON FROM MY EMPLOYER FOR THE ADVERSE EMPLOYMENT ACTIONS IS MERE PRETEXT FOR UNLAWFUL DISCRIMINATION & RATALIATION |
| Monteagudo | I DID PERFORM MY JOB AT SATISFACTORY OR ABOVE SATISFACTORY LEVELS. I FEEL I HAVE BEEN DISCRIMATED & RETALIATED AGAINST. |
| de Moya Response | Mr. Monteagudo did not have a exemplary record, he was warned many times. He is claiming discrimination against The de Moya Group and Noel Leon for his  race and national origin. He is also claiming retaliation however The de Moya Group and our Supervisors tried to work with him by moving him around trying to find a place where he would hopefully be comfortable to work. However even though we sent him to a different project, Mr. Monteaguda continued to avoid peforming the work that was assigned to him. Multiple Supervisors witnessed him not performing his work, sitting around, leaving his work zone and hiding. It is obvious he did not value his job. His EEOC Complaint is based on false information that Mr. Monteagudo alleges against all parties in his complaint. |

# HR New Hires

**The de Moya Group Inc.**

**New Hire Dates: 06/01/20 - 12/31/20**

| ID# | Name | Race | National Origin | Hire Date | Pay Rate | Position | Supervisor Name | Term Date/Reason |
|---|---|---|---|---|---|---|---|---|
| 11205 | SALIAN,  AMAN S | A | INDIA | 8/24/2020 | $1,250/WK | PROJECT MGR | ALEX LAWRENCE | N/A |
| 11200 | BYGRAVE,  MEGUEL G | B | JAMAICA | 7/20/2020 | $18.00 | EQUIP. OP. | CHARLIE YOUNG | N/A |
| 11186 | HOLLOWAY,  DANIEL S | B | UNKNOWN | 6/15/2020 | $15.00 | EQUIP. OP. | FRANK DE MOYA | 6/22/20-VOLUNTARY |
| 10681 | DONALD,  TARRELL TRAVONE | B | USA | 9/30/2020 | $13.00 | LABORER | ARVIND KANDASWAMY | N/A |
| 11223 | DONALD,  TROVAN H | B | USA | 11/17/2020 | $10.75 | LABORER | CHARLIE YOUNG | N/A |
| 11216 | MIRZA,  ZAID B | B | USA | 10/19/2020 | $20.00 | EQUIP. OP. | CHARLIE YOUNG | 11/12/20-VOLUNTARY |
| 11217 | MITCHELL,  COREY S | B | USA | 10/26/2020 | $20.00 | EQUIP. OP. | CHARLIE YOUNG | N/A |
| 10398 | GOMEZ,  LAUREANO | H | COLUMBIA | 9/14/2020 | $18.00 | MECHANIC | ELIER CAMPOS | N/A |
| 11197 | BAEZ CAMEJO,  BARBARO E | H | CUBA | 7/8/2020 | $15.00 | LABORER | WILLIAM TEJEDA | 7/15/20-VOLUNTARY |
| 11188 | BALSA PEREZ,  CARLOS M | H | CUBA | 6/18/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | N/A |
| 11209 | BUJAN CORRALES,  ALBERTO | H | CUBA | 9/8/2020 | $16.00 | MOT FOREMAN | CHRISTIAN FERRERAS | N/A |
| 11212 | CORDOVA ALVAREZ,  YUSSEF | H | CUBA | 9/21/2020 | $25.00 | MECHANIC | ELIER CAMPOS | N/A |
| 11185 | CORRALES REYES,  JAVIER | H | CUBA | 6/15/2020 | $18.00 | QC | ALEJANDRO LEON | N/A |
| 11192 | DELGADO AROCHA,  JAVIER | H | CUBA | 6/23/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | N/A |
| 11198 | FABRET,  GILSON E | H | CUBA | 7/13/2020 | $21.00 | MECHANIC | ELIER CAMPOS | N/A |
| 11190 | FALCON CABRERA,  RODOLFO | H | CUBA | 6/22/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 8/26/20-INVOLUNTARY |
| 11180 | HERNANDEZ,  CONRADO | H | CUBA | 6/1/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 9/30/20-VOLUNTARY |
| 11182 | HERNANDEZ,  NESTOR | H | CUBA | 6/10/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 7/16/20-VOLUNTARY |
| 11225 | MOLINA VICTORES,  JAVIER | H | CUBA | 11/23/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | N/A |
| 11221 | MOLINA,  JAVIER | H | CUBA | 11/11/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | N/A |
| 11181 | PEREZ VALDES,  LAZARO M | H | CUBA | 6/5/2020 | $15.00 | LABORER | WILLIAM TEJEDA | 6/7/20-VOLUNTARY |
| 11213 | PRIETO LLANES,  SORGE | H | CUBA | 9/27/2020 | $14.00 | MOT | CHRISTIAN FERRERAS | N/A |
| 11215 | HERNANDEZ,  JUAN DE JESUS | H | MEXICO | 10/5/2020 | $18.00 | EQUIP. OP. | CHARLIE YOUNG | N/A |
| 11210 | APONTE,  ANDRES A | H | USA | 9/14/2020 | $15.00 | INTERN | FABRICIO CEDILLA | N/A |
| 11222 | CARRERA,  YBRAHIM P | H | USA | 11/16/2020 | $1,600/WK | SUPERVISOR | ALEX LAWRENCE | N/A |
| 11203 | CHAVEZ,  MARCO A | H | USA | 7/31/2020 | $19.00 | EQUIP. OP. | WILLIAM TEJEDA | N/A |
| 10117 | FERNANDEZ,  NORGE | H | USA | 6/12/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | N/A |
| 11189 | GONZALEZ,  MAIKEL | H | USA | 6/22/2020 | $15.00 | LABORER | FRANK DE MOYA | 6/29/20-VOLUNTARY |
| 11183 | GONZALEZ,  PEDRO DANIEL | H | USA | 6/10/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | N/A |
| 11206 | LASALLE MALAVE,  JAIME A | H | USA | 8/27/2020 | $15.00 | LABORER | FRANK DE MOYA | N/A |
| 11195 | OCHOA,  MARIO R | H | USA | 6/29/2020 | $22.00 | LABORER | WILLIAM TEJEDA | 6/29/20-VOLUNTARY |
| 11224 | RAMIREZ,  JUAN M | H | USA | 11/18/2020 | $1,471/WK | PROJECT MGR | FRANCISCO MARTIN | N/A |
| 11191 | RODRIGUEZ ARIAS,  HANSEL R | H | USA | 6/15/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 11/14/20-VOLUNTARY |
| 11196 | RODRIGUEZ PRADO,  REYNIEL | H | USA | 7/1/2020 | $21.00 | EQUIP. OP. | FRANK DE MOYA | N/A |
| 11193 | SALAZAR,  MOISES E | H | USA | 6/25/2020 | $11.00 | LABORER | GEOFF FERERO | 8/7/20-VOLUNTARY |
| 11214 | BINYAMINI,  BENJAMIN O | W | ISRAEL | 9/30/2020 | $18.00 | EQUIP. OP. | CHARLIE YOUNG | 12/14/20-INVOLUNTARY |
| 11184 | BOWMAN,  RICHARD B | W | USA | 6/9/2020 | $12.00 | LABORER | CHARLIE YOUNG | 7/8/20-VOLUNTARY |
| 11194 | DAHNE,  JAMES J | W | USA | 6/29/2020 | $1,900/WK | PROJECT MGR | LAWRENCE GARRETT | N/A |
| 11199 | MARANO JR,  LOUIS D | W | USA | 7/20/2020 | $14.00 | EQUIP. OP. | CHARLIE YOUNG | 8/31/20-VOLUNTARY |
| 11207 | SLAWSON,  CHRISTIAN M | W | USA | 8/31/2020 | $18.00 | EQUIP. OP. | CHARLIE YOUNG | 9/18/20-VOLUNTARY |
| 11187 | WALKER,  ANDREW J | W | USA | 6/16/2020 | $21.00 | EQUIP. OP. | CHARLIE YOUNG | 6/22/20-VOLUNTARY |

## HR Terminated Employees

The de Moya Group Inc.

Terminated Dates: 06/01/20 - 12/31/20

| ID# | Name | Race | National Origin | Hire Date | Pay Rate | Position | Supervisor Name | Term Date | Reason | Disciplinary record |
|---|---|---|---|---|---|---|---|---|---|---|
| 10965 | FREDERICKS,  TRAVIS J | B | GUYANA | 8/6/2018 | $14.00 | EQUIP. OP. | CHARLIE YOUNG | 12/18/2020 | VOLUNTARY | YES |
| 10926 | RAMSAY,  LINDON | B | GUYANA | 4/9/2018 | $15.50 | EQUIP. OP. | CHARLIE YOUNG | 12/23/2020 | VOLUNTARY | YES |
| 10921 | BROWN,  DEAN R | B | JAMAICA | 4/2/2018 | $19.00 | IRONWORKER | JOHN BRYANT | 9/22/2020 | VOLUNTARY | YES |
| 11058 | BABALOLA,  TEMITOPE | B | USA | 4/30/2019 | $14.00 | LABORER | HARRY GRIEME | 9/2/2020 | INVOLUNTARY | YES |
| 11028 | GULLEY,  CHRISTOPHER J | B | USA | 2/11/2019 | $12.00 | LABORER | CHARLIE YOUNG | 10/23/2020 | VOLUNTARY | YES |
| 11186 | HOLLOWAY,  DANIEL S | B | USA | 6/15/2020 | $15.00 | EQUIP. OP. | FRANK DE MOYA | 6/22/2020 | VOLUNTARY | NO |
| 11082 | JEAN JR,  HARRY G | B | USA | 6/19/2019 | $13.00 | MOT | GEOFF FERERO | 7/8/2020 | VOLUNTARY | NO |
| 11216 | MIRZA,  ZAID B | B | USA | 10/19/2020 | $20.00 | EQUIP. OP. | CHARLIE YOUNG | 11/12/2020 | VOLUNTARY | NO |
| 10703 | OSHMAN,  ROBERT JOSEPH | B | USA | 7/11/2016 | $1,100/WK | FOREMAN | CHARLIE YOUNG | 6/11/2020 | VOLUNTARY | YES |
| 11146 | WILDGOOSE,  JOHN HILTON | B | USA | 2/17/2020 | $13.00 | LABORER | LAWRENCE GARRET | 10/21/2020 | INVOLUNTARY | YES |
| 10105 | WOODSON,  VINCENT | B | USA | 2/17/2009 | $26.00 | CRANE OP | JOHN BRYANT | 7/27/2020 | VOLUNTARY | YES |
| 11167 | ARIAS PEREZ,  ALEXANDER | H | CUBA | 5/5/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 12/29/2020 | VOLUNTARY | NO |
| 11197 | BAEZ CAMEJO,  BARBARO E | H | CUBA | 7/8/2020 | $15.00 | LABORER | WILLIAM TEJEDA | 7/15/2020 | VOLUNTARY | NO |
| 11170 | CARRABEO,  REINALDO | H | CUBA | 5/11/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 11/13/2020 | VOLUNTARY | NO |
| 10733 | CASTILLA DIAZ,  ORESTES | H | CUBA | 9/14/2016 | $26.00 | CRANE OP | MANUEL LIMA | 8/28/2020 | INVOLUNTARY | YES |
| 10591 | CHAVEZ CARRANDI,  ARMANDO | H | CUBA | 5/13/2015 | $15.00 | TRK DRIVER | HARRY GRIEME | 8/28/2020 | INVOLUNTARY | YES |
| 11173 | DE LA CRUZ PAEZ,  LUIS A | H | CUBA | 5/12/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 6/5/2020 | VOLUNTARY | NO |
| 10168 | DORTA,  RAMON | H | CUBA | 8/10/2011 | $15.00 | CONC FINISHER | LAWRENCE GARRET | 7/22/2020 | VOLUNTARY | YES |
| 11190 | FALCON CABRERA,  RODOLFO | H | CUBA | 6/22/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 8/26/2020 | INVOLUNTARY | YES |
| 11174 | GARCIA RIVERA,  PEDRO A | H | CUBA | 5/18/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 11/12/2020 | VOLUNTARY | NO |
| 11180 | HERNANDEZ,  CONRADO | H | CUBA | 6/1/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 9/30/2020 | VOLUNTARY | NO |
| 11182 | HERNANDEZ,  NESTOR | H | CUBA | 6/10/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 7/16/2020 | VOLUNTARY | NO |
| 11225 | MOLINA VICTORES,  JAVIER | H | CUBA | 11/23/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 12/23/2020 | INVOLUNTARY | YES |
| 11098 | MONTEAGUDO ALBURQUERQUE,  JORGE | H | CUBA | 8/14/2019 | $13.50 | LABORER | JERRY NASSO | 10/7/2020 | VOLUNTARY | NO |
| 11181 | PEREZ VALDES,  LAZARO M | H | CUBA | 6/5/2020 | $15.00 | LABORER | WILLIAM TEJEDA | 6/7/2020 | VOLUNTARY | NO |
| 10164 | PITA OLIVA,  FELIX | H | CUBA | 5/23/2011 | $18.00 | LABORER | FRANK DE MOYA | 7/2/2020 | VOLUNTARY | YES |
| 11159 | REYES,  JOSE M | H | CUBA | 4/20/2020 | $21.00 | EQUIP. OP. | FRANK DE MOYA | 7/22/2020 | INVOLUNTARY | NO |
| 11177 | RIVERA AYALA,  YOMAN R | H | CUBA | 5/27/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 9/16/2020 | VOLUNTARY | NO |
| 11201 | RIVERO MORALES,  MANUEL | H | CUBA | 7/21/2020 | $14.00 | LABORER | LAWRENCE GARRET | 10/21/2020 | VOLUNTARY | NO |
| 11126 | RODRIGUEZ VIDAL,  JUAN ALBERTO | H | CUBA | 11/6/2019 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 7/24/2020 | VOLUNTARY | NO |
| 11176 | TARRAT MARTEL,  IVAN | H | CUBA | 5/27/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 7/21/2020 | VOLUNTARY | YES |
| 11135 | VAZQUEZ CASTILLO,  ROBERTO | H | CUBA | 1/21/2020 | $12.00 | PROJECT MGR | NOEL LEON | 9/11/2020 | VOLUNTARY | NO |
| 11079 | MARIANO RIVERA,  HECTOR E | H | DOMINICAN REPUBLIC | 6/17/2019 | $16.50 | TRK DRIVER | WILLIAM TEJEDA | 11/5/2020 | VOLUNTARY | NO |
| 11162 | RECINOS,  REMBERTO ENRIQUE | H | EL SALVADOR | 4/27/2020 | $18.00 | LABORER | ARVIND KANDASWAMY | 10/7/2020 | VOLUNTARY | YES |
| 11214 | BINYAMINI,  BENJAMIN O | H | ISRAEL | 9/30/2020 | $18.00 | EQUIP. OP. | CHARLIE YOUNG | 12/14/2020 | INVOLUNTARY | YES |
| 11165 | MOREJON OLIVERA,  DENIS | H | UNKNOWN | 5/4/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 7/30/2020 | VOLUNTARY | NO |
| 10823 | DE LA CRUZ,  MARIO | H | USA | 6/23/2017 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 12/17/2020 | INVOLUNTARY | YES |
| 11151 | DIAZ,  JORGE E | H | USA | 3/8/2020 | $13.00 | MOT | CHRISTIAN FERERRAS | 12/8/2020 | INVOLUNTARY | YES |
| 11158 | GONZALEZ,  JHOSVANNY | H | USA | 4/20/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 11/2/2020 | VOLUNTARY | NO |
| 11189 | GONZALEZ,  MAIKEL | H | USA | 6/22/2020 | $15.00 | LABORER | FRANK DE MOYA | 6/29/2020 | VOLUNTARY | NO |
| 11172 | HERRERA,  LENIN ANTONIO | H | USA | 5/11/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 6/26/2020 | VOLUNTARY | NO |
| 11141 | LLOPIZ,  JORGE | H | USA | 2/19/2020 | $20.00 | EQUIP. OP. | FRANK DE MOYA | 6/12/2020 | INVOLUNTARY | YES |
| 10916 | MARROU,  JAIME R | H | USA | 3/19/2018 | $17.00 | INTERN | FABRICIO CEDILLA | 10/2/2020 | VOLUNTARY | NO |
| 10928 | MENENDEZ,  JOSE A | H | USA | 4/18/2018 | $11.00 | CLERICAL | KIM JACKSON | 9/1/2020 | INVOLUNTARY | NO |
| 11195 | OCHOA,  MARIO R | H | USA | 6/29/2020 | $22.00 | LABORER | FRANK DE MOYA | 6/29/2020 | VOLUNTARY | NO |
| 11191 | RODRIGUEZ ARIAS,  HANSEL R | H | USA | 6/15/2020 | $15.00 | TRK DRIVER | WILLIAM TEJEDA | 11/14/2020 | VOLUNTARY | YES |
| 11193 | SALAZAR,  MOISES E | H | USA | 6/25/2020 | $11.00 | LABORER | GEOFF FERERO | 8/7/2020 | VOLUNTARY | NO |
| 10302 | BAIRD,  THOMAS WARD | W | USA | 7/31/2013 | $30.00 | CRANE OP | GARY ALLEN | 12/23/2020 | VOLUNTARY | YES |
| 11184 | BOWMAN,  RICHARD B | W | USA | 6/9/2020 | $12.00 | LABORER | CHARLIE YOUNG | 7/8/2020 | VOLUNTARY | NO |
| 10857 | CARNEY,  ROBERT A | W | USA | 8/23/2017 | $28.00 | EQUIP. OP. | CHARLIE YOUNG | 12/23/2020 | DECEASED | YES |
| 11006 | COLLINS III,  JOHN S | W | USA | 11/5/2018 | $15.00 | MOT | HARRY GRIEME | 9/2/2020 | INVOLUNTARY | NO |
| 11139 | DAVIDSON,  BROCK J | W | USA | 2/10/2020 | $1,400/WK | PROJECT MGR | ALEX LAWRENCE | 12/23/2020 | VOLUNTARY | NO |
| 10930 | GRIEME III,  HARRY E | W | USA | 4/23/2018 | $2,600/WK | SUPERVISOR | GRANT COOL | 9/5/2020 | VOLUNTARY | YES |
| 10631 | KAVADAS,  AKRIVOULA | W | USA | 10/19/2015 | $1,550/WK | ASST. PROJ MGR | GRANT COOL | 7/24/2020 | VOLUNTARY | NO |
| 11199 | MARANO JR,  LOUIS D | W | USA | 7/20/2020 | $18.00 | EQUIP. OP. | CHARLIE YOUNG | 8/31/2020 | INVOLUNTARY | NO |
| 10925 | MORGAN,  DONNIE R | W | USA | 4/2/2018 | $17.00 | LABORER | HARRY GRIEME | 8/28/2020 | INVOLUNTARY | NO |
| 11124 | OWEN,  BRIAN WILLIAM | W | USA | 10/13/2019 | $1,700/WK | SUPERVISOR | ALEX LAWRENCE | 9/3/2020 | VOLUNTARY | NO |
| 10574 | ROBERTS,  PENNY LYNNE | W | USA | 3/23/2015 | $16.00 | CLERICAL | GRANT COOL | 6/19/2020 | INVOLUNTARY | NO |
| 11207 | SLAWSON,  CHRISTIAN M | W | USA | 8/31/2020 | $18.00 | EQUIP. OP. | CHARLIE YOUNG | 9/18/2020 | VOLUNTARY | NO |
| 11187 | WALKER,  ANDREW J | W | USA | 6/16/2020 | $21.00 | EQUIP. OP. | CHARLIE YOUNG | 6/22/2020 | VOLUNTARY | NO |

# THE DE MOYA GROUP, INC.

## New Hire Orientation

### (To be conducted prior to the commencement of work)

**Employee:** _Jorge Monteagudo._

**Date:** _08/19/19_          **Time:** _7:00 AM_

**Instructor:** _Noel Sen_

**Interpreter:** _Noel Sen_

| Overview of General Safety | Check (x) |
|---|---|
| Management's Safety Commitment / Policy (responsibility to provide a safe, hazard-free environment) | ✓ |
| Employee Job Site Responsibilities (direct all questions or unsafe conditions to your Foreman) | ✓ |
| Weekly Safety Meetings (Monday AM, required to attend / listen / sign off sheet) | ✓ |
| Incident Reporting: Report all Injuries or accidents to the Supervisor immediately. (failure to report could effect WC coverage / benefits) | ✓ |
| Review of Company Safety Policy and contact phone numbers | ✓ |
| Clothing (boots, sleeved shirt, long pants) | ✓ |
| Personal Protective Equipment (hard hat, safety vest, glasses, hearing & respiratory) | ✓ |
| Hazard Communication Program (SDS, hazards, PPE) | ✓ |
| Trenching & Excavating Safety (brief overview) | ✓ |
| Fall Protection | ✓ |
| Heavy Equipment (work with and around) | ✓ |
| Driving Safety (authorized drivers & vehicle policy) | ✓ |

| Lifting Procedures (use your legs & get help!!) | ✓ |
|---|---|
| **Additional Issues:** | |
| Always of personal Protection Equipment | ✓ |
| | |
| | |
| | |

Employee Signature _____     Date __08/19/19__

Interpreter Signature _____     Date __08/19/19__

# THE DE MOYA GROUP, INC.

## New Hire Orientation

### (To be conducted prior to the commencement of work)

| | |
|---|---|
| **Employee:** | Jorge Monteagudo |
| **Date:** 09/16/19 | **Time:** 8:00 AM |
| **Instructor:** | Noel Leon |
| **Interpreter:** | Noel Leon. |

| Overview of General Safety | Check (x) |
|---|:---:|
| Management's Safety Commitment / Policy (responsibility to provide a safe, hazard-free environment) | x |
| Employee Job Site Responsibilities (direct all questions or unsafe conditions to your Foreman) | x |
| Weekly Safety Meetings (Monday AM, required to attend / listen / sign off sheet) | x |
| Incident Reporting: Report all Injuries or accidents to the Supervisor immediately. (failure to report could effect WC coverage / benefits) | x |
| Review of Company Safety Policy and contact phone numbers | x |
| Clothing (boots, sleeved shirt, long pants) | x |
| Personal Protective Equipment (hard hat, safety vest, glasses, hearing & respiratory) | x |
| Hazard Communication Program (SDS, hazards, PPE) | x |
| Trenching & Excavating Safety (brief overview) | x |
| Fall Protection | x |
| Heavy Equipment (work with and around) | x |
| Driving Safety (authorized drivers & vehicle policy) | x |

| Lifting Procedures (use your legs & get help!!) | |
|---|---|
| **Additional Issues:** | |
| Always os personal protection Equipment | X |
| | |
| | |
| | |

Employee Signature _____ Date 09/16/19

Interpreter Signature _____ Date 09/16/19



**The de Moya Group, Inc.** & ASPHALT GROUP, INC

*14600 SW 136 Street*　　　　　　　　　　　　　　　　　　　　　Tel (305) 255-5713
*Miami, FL 33186*　　　　　　　　　　　　　　　　　　　　　　　Fax (305) 255-1935

### *"REGLAMENTO DE SEGURIDAD"*

Esta compañía está comprometida a mantener el área de trabajo libre de accidentes y ha desarrollado este reglamento para proteger a sus trabajadores.  La cooperación de los trabajadores es vital no solamente para su protección individual, sino también para la protección de sus compañeros de trabajo y la protección del público en general.  Por lo tanto, todos los trabajadores de esta compañía tienen la obligación de cumplir con este Reglamento de Seguridad.

1. *Equipos de protección, tal como botas de trabajo, protectores de cabeza, chalecos reflectores, protectores de ojos y oídos, guantes, salvavidas, cinturones de seguridad, mascaras y respiradores deberán ser utilizados.   Si no tiene el equipo de seguridad requerido para el trabajo que esta desempeñando en ese momento, suspenda el trabajo inmediatamente y póngase en contacto con su supervisor.*
2. *Protectores de cabeza de seguridad (cascos) deberán ser usados en toda área de peligro.*
3. *Chalecos reflectores de seguridad deberán ser usados en áreas de tráfico de vehículos.*
4. *Los equipos de protección de caídas (cinturón de seguridad) deberán ser usados cuando se trabaja en alturas mayores de 6 pies.  Los equipos deberán ser inspeccionados antes de usarse.*
5. *Antes de comenzar trabajo a más de 6 pies del nivel de la tierra, póngase en contacto con su supervisor para establecer cual es el procedimiento de seguridad del trabajo.  La soga de los cinturones de seguridad debe tener el largo máximo que pueda protegerlo de una caída de no más de 6 pies.*
6. *Antes de comenzar cualquier tipo de excavación, póngase en contacto con su supervisor y asegúrese de que todas las empresas de servicio publico han sido contactadas y que dichas empresas a través de "Sunshine One Call" han marcado el área de trabajo. Para comunicar a "Sunshine One Call" marque el 811.*
7. *Antes de comenzar una excavación de trinchera, póngase en contacto con su supervisor para establecer cual será el procedimiento de seguridad de trinchera para ese trabajo.  Atención especial a la estabilidad de la excavación de trinchera es de gran importancia.   Todas las excavaciones de trinchera deberán ser ejecutadas en estricta conformidad con el Acta de Seguridad de Trinchera.*
8. *Durante la excavación de trinchera, si el suelo o las condiciones de la trinchera se ponen inestables, suspenda la excavación inmediatamente y póngase en contacto con su supervisor.*
9. *Equipos de flotación (Chalecos Salvavidas) deberán ser utilizados por todo el personal, cuando se trabaje en la proximidad de agua donde haya peligro de ahogo.*
10. *Boyas en forma de anillo con 90 pies de línea, por lo menos, tienen que ser proporcionadas a los empleados y tienen que estar disponibles en todo momento para rescates de emergencia.*
11. *Todo equipo pesado que transite por carreteras o calles abiertas a tráfico de vehículo público deberán estar equipados con luz estroboscopica amarilla y un triángulo reflectivo anaranjado de seguridad.*
12. *Los empleados que dirijan el trafico deberán usar chaleco reflector Clase III durante la noche y banderas anaranjadas reflectoras de seguridad y deben estar entrenados en el procedimiento correcto para el control del tráfico.  Es la obligación de los empleados comunicarle a su supervisor si no han sido entrenados a este respecto.*
13. *El uso de alcohol y/o drogas, así como presentarse en el trabajo bajo la influencia de alcohol y/o drogas está terminantemente prohibido en todo momento.  **Empleados que se presentan en el trabajo bajo la influencia de alcohol y/o drogas serán inmediatamente despedido debido a su mala conducta.***
14. *El uso de cinturones de seguridad (seat belts) es mandatorio en todo momento mientras este operando un vehículo de transporte.*
15. *Durante la operación de camiones, equipos de trabajo y grúas no se permite usar teléfonos celulares.  Si es necesario que use el teléfono celular, pare en firme y asegure la grúa o el equipo que esta utilizando o estacione el camión en un lugar seguro antes de usar el teléfono celular.*
16. *Es la obligación de todo empleado el mantener el área de trabajo ordenada y limpia en todo momento.*
17. *Esta prohibido remover o dejar de usar protectores o mecanismo de seguridad en cualquier equipo en todo momento.*
18. *Es la obligación de todo empleado el consultar con su supervisor, si estima que necesita equipo o instrucción adicional para completar su tarea con seguridad.*

　　　　　　　　　　　　　　　　　　　　　　　　Revised 01/10/19



**The de Moya Group, Inc.** AND ASPHALT GROUP, INC

19. *Levante objetos pesados con sus piernas y no con su espalda y obtenga asistencia para objetos mayores de 50 libras.*
20. *Notifique inmediatamente a su supervisor si observa cualquier situación peligrosa.*
21. *Notifique a su supervisor si los equipos o materiales no son apropiados o peligrosos para el trabajo que esta realizando.*
22. **Manténgase separado de los vehículos o equipos mientras estén funcionando o les estén dando mantenimiento. Nunca le de la espalda a los vehículos o equipos mientras estén funcionando o mientras los estén dando mantenimiento.**
23. *Tenga cuidado al montarse en los vehículos o equipos. Siempre mantenga tres contactos de seguridad (puede ser una mano y los dos pies o un pie y las dos manos) al montarse o desmontarse del equipo.*

24. *Se debe ejercitar un cuidado especial mientras se trabaja dentro del radio de operaciones de las grúas o equipos de grúas.*

   *El personal que dirige el trafico de las grúas y los operadores deben tener mucho cuidado para asegurarse que todo personal esté en una posición de seguridad antes de levantar o mover cualquier carga.*
25. *No se permitirá a nadie estar debajo de cargas que sean levantadas por equipos de alzamiento o equipos de excavación.*
26. *Ejercite mucho cuidado al cargar o descargar materiales o equipos y solicite asistencia si usted estima que necesite ayuda para ejecutar la tarea con seguridad.*
27. *Antes de entrar en el área de operación de equipo pesado o equipo de alzamiento, asegúrese de:*
   a) *Hacer contacto con el operador antes y durante su presencia en el área de trabajo.*
   b) *Que el operador apruebe sus movimientos dentro del área de trabajo; y*
   c) *Que el operador modere y pare los movimientos de las maquinas antes de Usted entrar en el área de trabajo si es necesario para mantener la seguridad.*
28. *Este siempre atento y reconozca los peligros para sus compañeros de trabajo y para usted mismo, mientras desempeñe sus obligaciones, y comunique a sus compañeros de trabajo y a sus supervisores cualquier condición peligrosa que surja, inmediatamente.*
29. *Antes de operar algún vehículo, grúa o equipo conduzca una pre-inspección de dicho vehículo, grúa o equipo. para asegurarse que es apropiado para el uso, al cual se le haya designado, y que todo el equipo de seguridad y materiales estén en buenas condiciones. Cerciórese que los materiales estén propiamente afianzados y que todas las piezas del vehículo, grúa o equipo estén firmes y con el seguro puesto antes de operar o mover el equipo, vehículo o grúa. Esto incluye, pero no se limita, a las camas de camiones de volteo, cerradura de oscilación del auge de la grúa, trailer o caravana.*
29 A. **Solamente personal con el entrenamiento y la licencia apropiada deben de manejar camiones y vehículo. Manejen camiones y/o vehículo teniendo en cuenta las adversas condiciones del tiempo y de las carreteras. Hay que cumplir con todas las leyes de conducir camiones y vehículo en las carreteras publicas. Los camiones y vehículo de la compañía tienen un accesorio electrónico GPS que continuamente sigue y registra la posición, velocidad y otros parámetros de operación y del motor. El hecho de conducir camiones y vehículos sin cumplir con las leyes y sin tomar precauciones de seguridad será motivo de despido sin previo aviso.**
30. *Si Usted no ha sido entrenado en la operación de algún equipo, no lo opere y comuníquese con su supervisor inmediatamente para que lo entrene o para que provea personal entrenado en la operación de dicho equipo.*
31. *Antes de comenzar cualquier operación nueva, póngase en contacto con su supervisor y asegúrese de que el plan a implementar sea adecuado y que suficiente consideración se le ha dado al uso del equipo apropiado, personal entrenado, equipo de seguridad y adecuada supervisión para asegurarse no solo de su seguridad sino también la seguridad de sus compañeros de trabajo y él publico en general.*
32. *Antes de usar o ponerse en contacto con materiales peligrosos siga las instrucciones en la etiqueta y la correspondiente hoja de información de seguridad materiales (MSDS).*
33. *Es la obligación de todo empleado el cumplir con toda instrucción de seguridad verbal o escrita.*
34. *Reporte inmediatamente a su supervisor todos los accidentes.*
34 (a) *La compañía ha suplido computadoras a ciertos empleados para facilitar su trabajo. Las computadoras, teléfono celulares, tabletas, servicio de internet y la red de servicio interno es para uso oficial de trabajo. El uso privado de estos está prohibido.*
35. *Todo tratamiento incluso los de no-emergencia deberá ser autorizado de antemano por el supervisor antes de aplicar el tratamiento.*
36. *En caso de emergencia, notifique al 911 inmediatamente y proceda a dar una notificación de emergencia por el radio poner en alerta a todo el que se encuentre en un área cercana que pueda darle asistencia. Especifique el lugar del accidente.*

Revised 01/10/19



**The de Moya Group, Inc.** AND ASPHALT GROUP, INC

### *Contactos de Emergencia*
THE DE MOYA GROUP

| | | | |
|---|---|---|---|
| Oficina Principal | 305-255-5713 | Alvaro de Moya | 305-323-1169 |
| A.J. de Moya | 305-498-5713 | Jorge de Moya | 305-297-9854 |
| Grant Cool | 305-322-5597 | Alisa de Moya | 305-255-5713 |
| Chris de Moya | 305-297-1554 | Mark Krizner | 954-695-6362 |
| Frank de Moya | 305-323-1170 | Geoff Ferero | 786-493-7545 |
| Brent Norman | 305-302-2320 | Kristina de Moya | 239-872-0282 |
| Peter Balwant | 305-582-7259 | Victor Suarez | 305-298-9639 |
| Lawrence Garret | 305-505-0062 | Mark Geiger | 305-342-9918 |
| Noel Leon | 305-810-9383 | Peter Perez | 305-310-9697 |
| William Tejeda | 305-812-7706 | Alex Lawrence | 954-675-5015 |
| Gary Allen | 305-951-5890 | | |

**ASPHALT GROUP**

| | | | |
|---|---|---|---|
| Main Office | 305-364-3595 | Walter Brewer | 305-986-0995 |
| Marty Andrade | 305-986-1571 | Keto Wright | 305-684-9306 |
| Jonathan Andrade | 305-986-1707 | | |

*Certifico que he leído todas estas regulaciones, que las comprendo completamente y que las he de cumplir para mi beneficio personal así como el beneficio de todos los que me rodean. Certifico también que comprendo y que estoy de acuerdo que el negarse a cumplir este reglamento es suficiente causa para terminar mi empleo.*

FIRMA: _____ FECHA: 08/03/2019 .

NOMBRE DEL EMPLEADO: _Jorge Monteagudo_ .



## POLÍTICA DE NO DISCRIMINACIÓN

Es la política y el compromiso de The de Moya Group, Inc. y Asphalt Group, Inc. de no discriminar por motivos de raza, edad, color, sexo, origen nacional, discapacidad ó religión.

### IGUALDAD DE OPORTUNIDADES EN EL EMPLEO

The de Moya Group, Inc. y Asphalt Group, Inc. están comprometidos con una política de igualdad de oportunidades de empleo y no discriminan bajo términos, condiciones ó privilegios de empleo por razón de raza, edad, color, sexo, origen nacional, discapacidad, religión ú otro modo que pueda estar prohibido por la ley federal y estatal.

Cualquier empleado que crea que él / ella ó cualquier persona afiliada con The De Moya Group, Inc. y / ó Asphalt Group, Inc. haya sido discriminado deberá Informar a su Supervisor ó a Carli Bailey, Oficial de EEO sobre esta inquietud.

### ACOSO DISCRIMINATORIO

El acoso ó intimidación de un empleado debido a su raza, edad, color, sexo, origen nacional, discapacidad ó religión de esa persona está específicamente prohibido y puede ser causa de terminación de empleo. El acoso y la intimidación incluyen lenguaje ó comportamiento abusivo, inapropiado ó amenazante. The de Moya Group, Inc. y Asphalt Group, Inc. se comprometen a mantener un lugar de trabajo libre de cualquier tipo de acoso y no tolerará la discriminación de los empleados.

Las cuestiones de trato discriminatorio, hostigamiento ó intimidación en cualquiera de estas bases se deben informar inmediatamente al Supervisor ó al Oficial de EEO, y se tomarán las medidas necesarias inmediatamente. Actos de represalia no se tolerarán contra ningún empleado que denuncie acoso ó discriminación.

He leído completamente y estoy de acuerdo con la Política de No Discriminación. Siempre he seguido y continuaré siguiendo esta política.

_Jorge Monterodo._

Nombre                                                           Testigo/Witness Print Name

Firma                                                             Firma /Witness Signature

14600 SW 136 Street, Miami, FL 33186          Phone (305)255-5713     Fax (305)255-1935

# La Igualdad de Oportunidades en el Empleo es



Los solicitantes de empleo y los empleados de la mayoría de los empleadores privados, autoridades locales y estatales, instituciones educativas, agencias de empleo y organizaciones laborales están protegidos conforme a la ley federal contra la discriminación por cualquiera de los siguientes motivos:

## RAZA, COLOR, RELIGIÓN, SEXO, ORIGEN NACIONAL

El Título VII de la Ley de Derechos Civiles de 1964, y sus enmiendas, protege a los solicitantes de empleo y a los empleados contra la discriminación en la contratación, ascenso, despido, sueldo, beneficios adicionales, capacitación laboral, clasificación, referencia, y otros aspectos del empleo, debido a la raza, color, religión, sexo (incluido el embarazo) u origen nacional. La discriminación religiosa incluye el no realizar los arreglos razonables para las prácticas religiosas de un empleado, cuando tales arreglos no impongan una dificultad indebida.

## DISCAPACIDAD

El Título I y el Título V de la Ley de Estadounidenses con Discapacidades de 1990, y sus enmiendas, protegen a los individuos que califiquen contra la discriminación por una discapacidad en la contratación, ascenso, despido, sueldo, beneficios adicionales, capacitación laboral, clasificación, referencia, y otros aspectos del empleo. La discriminación por discapacidad incluye el no realizar los arreglos razonables para las limitaciones mentales o físicas conocidas de un individuo con una discapacidad quien solicite empleo o sea empleado, salvo que implique una dificultad indebida.

## EDAD

La Ley Contra la Discriminación por Edad en el Empleo de 1967, y sus enmiendas, protege a los solicitantes de empleo y a los empleados que tengan 40 años de edad o más contra la discriminación por la edad en la contratación, ascenso, despido, sueldo, beneficios adicionales, capacitación laboral, clasificación, referencia, y otros aspectos del empleo.

## SEXO (SALARIOS)

Adicionalmente a la prohibición de la discriminación por sexo estipulada en el Título VII de la Ley de Derechos Civiles, y sus enmiendas, la Ley de Igualdad Salarial de 1963, y sus enmiendas, prohíbe la discriminación por sexo en el pago de salarios a los hombres y mujeres que realicen un trabajo sustancialmente similar, en empleos que requieran iguales destrezas, esfuerzos y responsabilidades, bajo condiciones laborales similares, en el mismo establecimiento.

## GENÉTICA

El Título II de la Ley contra la Discriminación por Información Genética de 2008 (GINA) protege a los solicitantes de empleo y a los empleados contra la discriminación con basada en información genética, en la contratación, ascenso, despido, sueldo, beneficios adicionales, capacitación laboral, clasificación, referencia, y otros aspectos del empleo. GINA también restringe la adquisición de la información genética por parte de los empleadores y limita estrictamente la divulgación de la información genética.

La información genética incluye la información sobre las pruebas genéticas de los solicitantes de empleo, los empleados o sus familiares; las pruebas genéticas de enfermedades o desordenes en los familiares (historial médico familiar); y las solicitudes o recibo de servicios genéticos por los solicitantes de empleo, los empleados o sus familiares.

## REPRESALIA

Todas estas leyes federales prohíben a las entidades cubiertas tomar represalias contra una persona que presente un cargo de discriminación, participe en un procedimiento de discriminación o se oponga a una práctica laboral ilegal.

## QUÉ DEBE HACER SI CONSIDERA QUE HA OCURRIDO UNA DISCRIMINACIÓN

Hay límites estrictos de tiempo para presentar cargos de discriminación en el empleo. Para conservar la capacidad del EEOC de actuar en su nombre y para proteger su derecho de presentar una demanda privada, en caso de que en última instancia lo necesite, usted debe comunicarse con el EEOC de manera oportuna cuando sospeche de la discriminación: La Comisión para la Igualdad de Oportunidades en el Empleo de los EE.UU. (EEOC), 1·800·669·4000 (número gratuito) o 1·800·669·6820 (número TTY gratuito para las personas con dificultades auditivas). La información de las oficinas de campo del EEOC está disponible en www.eeoc.gov o en la mayoría de los directorios telefónicos en la sección de Gobierno de los EE.UU. o Gobierno Federal. Puede encontrar información adicional sobre el EEOC, incluida la información sobre la presentación de cargos, en www.eeoc.gov.

## Empleadores que tengan contratos o subcontratos federales

Los solicitantes de empleo y los empleados de compañías con un contrato o subcontratgubernamental federal están protegidos conforme a las leyes federales contra la discriminación por los siguientes motivos:

**RAZA, COLOR, RELIGIÓN, SEXO, ORIGEN NACIONAL**
La Orden Ejecutiva 11246, y sus enmiendas, prohíbe la discriminación en el trabajo por motivo de raza, color, religión, sexo u origen nacional, y exige la aplicación de acción afirmativa para garantizar la igualdad en las oportunidades en todos los aspectos del empleo.

**INDIVIDUOS CON DISCAPACIDADES**
La Sección 503 de la Ley de Rehabilitación de 1973, y sus enmiendas, protege a los individuos que califiquen contra la discriminación por una discapacidad en la contratación, ascenso, despido, sueldo, beneficios adicionales, capacitación laboral, clasificación, referencia, y otros aspectos del empleo. La discriminación por discapacidad incluye el no realizar los arreglos razonables para las limitaciones mentales o físicas conocidas de un individuo con una discapacidad quien solicite empleo o sea empleado, salvo que implique una dificultad indebida. La Sección 503 también exige que los contratistas federales tomen las acciones afirmativas para emplear y ascender en el empleo a individuos calificados con discapacidades en todos los niveles laborales, incluido el nivel ejecutivo.

**VETERANOS CON MEDALLAS DEL SERVICIO DE LAS FUERZAS ARMADAS Y VETERANOS DISCAPACITADOS, SEPARADOS RECIENTEMENTE Y DE OTRO ESTATUS PROTEGIDO**
La Ley de Asistencia a la Readaptación de los Veteranos de Vietnam de 1974, y sus
enmiendas, 38 U.S.C. 4212, prohíbe la discriminación laboral y exige la acción afirmativa para emplear y ascender en el empleo a veteranos discapacitados, veteranos separados

del servicio recientemente (dentro de los tres años dados de baja del servicio activo), otros veteranos protegidos (quienes hayan prestado el servicio militar en una guerra o en una campaña o expedición para la cual se haya autorizado una insignia de campaña), y los veteranos con medallas del Servicio de las Fuerzas Armadas (veteranos quienes, mientras se encontraban en el servicio activo, participaron en una operación militar de EE.UU. para la cual se les otorgó una medalla del Servicio de las Fuerzas Armadas).

**REPRESALIA**
Se prohíben las represalias contra una persona que presente un cargo de discriminación, participe en un procedimiento de la Oficina de Programas de Cumplimiento de Contratos Federales (OFCCP), o quien se oponga a la discriminación de conformidad con estas leyes federales.

Toda persona quien considere que un contratista ha incumplido sus obligaciones antidiscriminatorias o de acción afirmativa conforme a las autoridades antes indicadas, debe contactar de inmediato a:

The Office of Federal Contract Compliance Programs (OFCCP), U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210, 1-800-397-6251 (número gratuito) o (202) 693-1337 (número TTY). También puede contactar a la OFCCP por el correo electrónico OFCCP-Public@dol.gov, o llamando a una oficina distrital o regional de la OFCCP, la cual puede encontrar en la mayoría de los directorios telefónicos en la sección U.S. Government (Gobierno de los EE.UU.), Department of Labor (Departamento del Trabajo).

## Programas o actividades que reciban asistencia financiera federal

**RAZA, COLOR, ORIGEN NACIONAL, SEXO**
Adicionalmente a las protecciones del Título VII de la Ley de Derechos Civiles de 1964, y sus enmiendas, el Título VI de la Ley de Derechos Civiles de 1964, y sus enmiendas, prohíbe la discriminación por raza, color u origen nacional en los programas o actividades que reciban asistencia financiera federal. La discriminación en el empleo está cubierta por el Título VI si el objetivo principal de la asistencia financiera es la provisión del empleo, o donde la discriminación laboral cause o pueda causar una discriminación en la provisión de los servicios conforme a tales programas. El Título IX de las Enmiendas en la Educación de 1972 prohíbe la discriminación en el empleo por motivo del sexo en las actividades o programas educativos que reciban asistencia financiera federal.

**INDIVIDUOS CON DISCAPACIDADES**
La Sección 504 de la Ley de Rehabilitación de 1973, y sus enmiendas, prohíbe la discriminación en el empleo por una discapacidad, en cualquier programa o actividad que reciba asistencia financiera federal. Se prohíbe la discriminación en todos los aspectos del empleo contra las personas con discapacidades quienes, con o sin arreglos razonables, puedan realizar las funciones esenciales del trabajo.

Si usted considera que ha sido discriminado en un programa de alguna institución que reciba asistencia financiera federal, debe contactar inmediatamente a la agencia federal que proporciona dicha asistencia.

*Las versiones de EEOC de 9/02 y OFCCP de 8/08 se pueden utilizar con el Suplemento de 11/09*

*EEOC-P/E-1 (Revisado 11/09)*

Jorge Montearudo

Nombre (Letra de molde) _____

Firma _____

Testigo _____

Fecha _____

## DERECHOS Y RESPONSABILIDADES DEL EMPLEADO
### BAJO LA LEY DE AUSENCIA FAMILIAR Y MÉDICA

**Derechos Básicos de Ausencia**
La Ley de Ausencia Familiar y Médica (FMLA-en sus siglas en inglés) exige que todo empresario sujeto a la Ley provea a sus empleados elegibles hasta 12 semanas de ausencia del trabajo, no pagadas y con protección del puesto, por las siguientes razones:
• Por incapacidad causada por embarazo, atención médica prenatal o parto;
• Para atender a un hijo del empleado después de su nacimiento, o su colocación para adopción o crianza;
• Para atender a un cónyuge, hijo(a), o padres/del/la empleado(a), el/la cual padezca de una condición de salud seria; o
• A causa de una condición de salud seria que le impida al empleado desempeñar su puesto.

**Derechos de Ausencia Para Familias Militares** Empleados elegibles con un cónyuge, hijo, hija, o padre que esté en servicio activo o se le haya avisado de una llamada a estado de servicio activo en la Guardia Nacional o las Reservas para respaldar una operación contingente, pueden usar su derecho de ausencia de 12 semanas para atender ciertas exigencias calificadoras. Las exigencias calificadoras pueden incluir la asistencia a ciertos eventos militares, la fijación del cuido alternativo de hijos, para atender ciertos arreglos financieros y legales, para asistir a ciertas consultas con consejeros, y para asistir a sesiones de instrucción por despliegue con reintegración.

FMLA también incluye un derecho especial de ausencia que concede a empleados elegibles ausentarse del trabajo hasta 26 semanas para atender a un miembro del servicio militar bajo el alcance de la Ley durante un período único de 12 meses. Un miembro del servicio militar bajo el alcance de la Ley es un miembro actual de las Fuerzas Armadas, inclusive un miembro de la Guardia Nacional o las Reservas, que padece de una lesión o enfermedad grave sufrida en cumplimiento del deber en el servicio activo que puede incapacitar, por razones médicas, al miembro del servicio militar para desempeñar sus deberes y por la cual recibe tratamientos médicos, recuperación, o terapia; o está en estado de paciente no hospitalizado; o aparece en la lista de jubilados temporalmente por minusvalidez.

**Beneficios y Protecciones**
Durante una ausencia bajo FMLA, el empresario ha de mantener en vigor el seguro de salud del empleado bajo cualquier "plan de seguro colectivo de salud" con los mismos términos como si el empleado hubiese seguido trabajando. Al regresar de una ausencia FMLA, a la mayoría de los empleados se le ha de restaurar a su puesto original o puesto equivalente con sueldo, beneficios y otros términos de empleo equivalentes.
El tomar una ausencia bajo FMLA no puede resultar en la pérdida de ningún beneficio de empleo acumulado antes de que el empleado comenzara la ausencia.

**Requisitos Para Elegibilidad**
El empleado es elegible si ha trabajado para el empresario bajo el alcance de la Ley por lo menos por un año, por 1,250 horas durante los previos 12 meses, y si el empresario emplea por lo menos 50 empleados dentro de un área de 75 millas.

**Definición de una Condición de Salud Seria**
Una condición de salud seria es una enfermedad, lesión, impedimento, o condición física o mental que involucra o una pernoctación en un establecimiento de atención médica, o el tratamiento continuo bajo un servidor de atención médica que, o le impide al empleado desempeñar las funciones de su puesto, o impide al miembro de la familia que califica participar en actividades escolares o en otras actividades diarias. Dependiendo de ciertas condiciones, se puede cumplir con el requisito de tratamiento continuo con un período de incapacidad de más de 3 días civiles consecutivos en combinación con por lo menos dos visitas a un servidor de atención médica o una visita y un régimen de tratamiento continuo, o incapacidad a causa de un embarazo, o incapacidad a causa de una condición crónica. Otras condiciones pueden satisfacer la definición de un tratamiento continuo.

**Uso de la Ausencia**
El empleado no necesita usar este derecho de ausencia todo de una vez. La ausencia se puede tomar intermitentemente o según un horario de ausencia reducido cuando sea médicamente necesario. El empleado ha de esforzarse razonablemente cuando hace citas para tratamientos médicos planificados para no interrumpir indebidamente las operaciones del empresario. Ausencias causadas por exigencias calificadoras también pueden tomarse intermitentemente.

**Substitución de Ausencia Pagada por Ausencia No Pagada**
El empleado puede escoger o el empresario puede exigir el uso de ausencias pagadas acumuladas mientras se toma ausencia bajo FMLA. Para poder usar ausencias pagadas cuando toma FMLA, el empleado ha de cumplir con la política normal del empresario que rija las ausencias pagadas.

**Responsabilidades del Empleado**
El empleado ha de proveer un aviso con 30 días de anticipación cuando necesita ausentarse bajo FMLA cuando la necesidad es previsible. Cuando no sea posible proveer un aviso con 30 días de anticipación, el empleado ha de proveer aviso en cuanto sea factible y, en general, ha de cumplir con los procedimientos normales del empresario en cuanto a llamar para reportar su ausencia.

El empleado ha de proporcionar suficiente información para que el empresario determine si la ausencia califica para la protección de FMLA, con la fecha y la duración anticipada de la ausencia. Suficiente información puede incluir que el empleado no puede desempeñar las funciones del puesto, que el miembro de la familia no puede desempeñar las actividades diarias, la necesidad de ser hospitalizado o de seguir un régimen continuo bajo un servidor de atención médica, o circunstancias que exijan una necesidad de ausencia familiar militar. Además, el empleado ha de informar al empresario si la ausencia solicitada es por una razón por la cual se había previamente tomado o certificado FMLA. También se le puede exigir al empleado que provea certificación y recertificación periódicamente constatando la necesidad para la ausencia.

**Responsabilidades del Empresario**
Los empresarios bajo el alcance de FMLA han de informar a los empleados solicitando ausencia si son o no es elegibles bajo FMLA. Si lo son, el aviso ha de especificar cualquier otra información exigida tanto como los derechos y las responsabilidades del empleado. Si no son elegibles, el empresario ha de proveer una razón para la inelegibilidad. Los empresarios bajo el alcance de la Ley han de informar a los empleados si la ausencia se va a designar protegida por FMLA y la cantidad de tiempo de la ausencia que se va a contar contra el derecho del empleado para ausentarse. Si el empresario determina que la ausencia no es protegida por FMLA, el empresario ha de notificar al empleado de esto.

**Actos Ilegales Por Parte del Empresario**
La ley FMLA le prohíbe a todo empresario:
• que interfiera con, limite, o niegue el ejercicio de cualquier derecho estipulado por FMLA;
• que se despida a, o se discrimine en contra de, alguien que se oponga a una práctica prohibida por FMLA o porque se involucre en cualquier procedimiento bajo o relacionado a FMLA.

**Cumplimiento**
El empleado puede presentar una denuncia con el Departamento de Trabajo de EEUU o puede presentar un pleito particular contra el empresario.
FMLA no afecta ninguna otra ley federal o estatal que prohíbe la discriminación, o invalida ninguna ley estatal o local o ninguna negociación colectiva que provee derechos superiores familiares o médicos.
**La Sección 109 de FMLA (29 U.S.C. § 2619) exige que todo empresario bajo el alcance de FMLA exhiba el texto de este aviso. Los Reglamentos 29 C.F.R. § 825.300(a) pueden exigir divulgaciones adicionales.**

**Si precisa información adicional:**
**1-866-US-WAGE(1-866-487-9243) TTY: 1-877-889-5627**
**WWW.WAGEHOUR.DOL.GOV**
U.S. Department of Labor | Employment Standards Administration | Wage and Hour Division
WHD Publication 1420 Revised January 2009



Firma

08/03/2019.

Fecha



the **de Moya Group**, inc. & Asphalt Group, Inc.
Engineering - Construction - Management

Tel.: (305) 255-5713
Fax: (305) 255-1935

## SPECIAL DAILY REPORT

PROJECT: 592                          Date: 10/08/20.

NATURE OF REPORT: Conflicts, Accidents, Delays, Claims, Equipment Damage, Utility Damages, Etc.

| EQUIPMENT INVOLVED | HRS | | PERSONNEL INVOLVED | HRS |
|---|---|---|---|---|
| | | | Jorge Monteaguto | |
| | | | | |
| | | | | |
| | | | | |

**REMARKS:**

02/19/20
Jorge Monteaguto was working in a small crew and the operator hit the FO. The operator was sent for alcohol and drug Testing and He received a verbal warning (Jorge Monteaguto).

03/24/20
The small crew was Gradding bad for side walk and curb and Gutter and they broken the DASD Service line which was perfectly located. They were sent for drug and alcohol Testing and warning (Jorge Monteaguto).

07/16/20.
We was checking the base inspection of the cul de sac at Segment II with CEI which was very wet and after a difficult inspection the Rock was approved. He went (Jorge Monteaguto) through it the Rock marking the entire base. At that moment I gave him a very strong scolding to him and my Forman Francisco Baldelamar. Later we talk and everything was resolved. The next day I spoke at

Noel Sam
Supervisor Name

Take detailed sketch on back if required

Supervisor Signature



the **de Moya Group**, inc. & Asphalt Group, Inc.

Engineering - Construction - Management

Tel.: (305) 255-5713
Fax: (305) 255-1935

## SPECIAL DAILY REPORT

PROJECT: _JS2_  Date: _10/08/20_

NATURE OF REPORT: Conflicts, Accidents, Delays, Claims, Equipment Damage, Utility Damages, Etc.

| EQUIPMENT INVOLVED | HRS | PERSONNEL INVOLVED | HRS |
|---|---|---|---|
| | | Jorge Marleagudo | |
| | | | |
| | | | |
| | | | |

REMARKS:

the safety meeting and it was cleared up.

09/04/20

He was working on 874 No purpose The left Shoulder where he had to clean the wingrass between the Shoulder land TSW with he never did. The next day, I informed him that He had to join up with Jimenez (operador) To clean what he had no done and he told me that he don't work with Jimenez. I immediately Told him that if He did not work with Jimenez it was his last day.

09/14/20

He was sent with the Motor Grader operador for the other project and from that day on I have not had any comunicacion with him.

Make detailed sketch on back if required.

_Noel Jein_
Supervisor Name

_[signature]_
Supervisor Signature



the **de Moya Group,** inc.
Engineering - Construction - Management

Tel.: (305) 255-5713
Fax: (305) 255-1935

## TERMINATION OF EMPLOYMENT

Supervisor's Name:   Noel Leon                                      Date: 3.24.2020

Name of Employee Terminated:   Jorge Monteagudo

☐ Voluntary Termination          ☐ Involuntary Termination

Explain Reason:   N /A

Corrective Measures Previously Taken:

☒ Warning          ☐ Suspension          ☐ Final Warning

If there were any Injuries (Explain):
Hit a 1-inch poly pipe (water line). He was not the operator but was 1-EA of 2-EA guys below that could have
caught this issue before it happened.

Uniform and/or Safety Equipment Status:

☒ N/A          ☐ All accounted for          ☐ Missing (Explain)

dMG Equipment Status (tools, phones, radios, beeper, etc.):
N/A

Remarks/Complaints:
Employee was written up and sent for drug testing. Will not report back until called back to work.
Entire crew is being written up.

_____                              _____
Employee Signature                                              Supervisor Signature






RE: Jorge MonteAguado terminated  10/7/20 sleeping on the roller

Fabricio Cedillo fabricio.cedillo@demoya.com
Fri 1/22/2021 1:08 PM

Team,


Here are my comments regarding this issue.


A. The phone number on the EEOC Complaint of 305.824.1048, belongs to DemTech out
   of Miami Lakes not The de Moya Group. They are a medical supply company; he may
   be working there.


B. Luis Rivas write up
   a. Monteagudo was working with Luis Rivas, and had stepped away but Luis
      continued to work without a spotter.
   b. Luis hit the line and was written up for doing so and for not having a spotter.
   c. This is why Monteagudo wasn't written up.


C. Instances where Noel and myself attempted to help Monteagudo out.
   a. Monteagudo had come up to both Noel and myself, and asked if we had any
      night work or overtime, if he could be considered.
      i. Rather than bringing out an essential worker that we would lose during
         the day, Monteagudo was brought out.
      ii. This work included but not limited to installing temporary barrier walls,
          fixing MOT, traffic shifts, etc.
   b. Monteagudo also had come to me and asked if he could be switched to night
      shift.
      i. In no time did Monteagudo mention any issue with Noel during this
         conversation.
      ii. He said that since he got here from Cuba, most of his jobs were working
          at night and he liked working nights.
      iii. I had asked Christian if he needed anyone for MOT; this was during the
           time a few people had quit. Christian did not have the need since he
           just hired some guys.
   c. As you can see both Noel and myself tried to help the guy out. Now for him to
      fabricate these false claims and not mention what was done to help him is
      unethical.


D. Monteagudo was also involved in a physical altercation while at work.
   a. This took place on his lunch break and not on the job site.
   b. He was with two other employees (Francisco Baldelomar and Angelica
      Rodriguez), and an unknown man had said something to Angelica in a
      disrespectful way.
   c. Monteagudo and the man had words, and ultimately Monteagudo struck the
      man.
   d. They came back to work and it seems the man called the cops.

e. Then the cops then showed up to the main office looking for Monteagudo and got his statement; no idea what happened after that.

Let me know if you have any questions.

Thank you,

Fabricio Cedillo
Project Manager



The de Moya Group, Inc.
14600 SW 136th Street
Miami, Florida 33186
305.987.4097 mobile
305.255.5713 office
305.255.1935 fax
fabricio.cedillo@demoya.com

**From:** Alisa DeMoya <alisa.demoya@demoya.com>
**Sent:** Tuesday, January 26, 2021 2:56 PM
**To:** Chris DeMoya <chris.demoya@demoya.com>; Fabricio Cedillo <fabricio.cedillo@demoya.com>
**Subject:** FW: Tony Hernandez

Guys:

Do we have reports for Alejandro's altercation with Tony Hernandez. Monteagudo had called Elena in October and told her the below statement in red. I spoke to Alejandro and he says there are reports. Please send the reports to me so I can review them. Alejandro says Tony has had problems with other de Moya employees, do you know who? I will need all of the information you have on this subject.

Please see the statement below that Jorge Monteagudo made to Elena Valdes, Director of Risk Management on 10/15/2020.

**10/15/20 11 AM**

I received a call from Mr. Agudo in follow up to his complaint. I explained that an investigation into the allegations was underway. He offered additional information in support of his allegations of assault involving Mr. Leon's son Alejandro. He claims there was an incident with an FDOT Inspector by the name Tony Hernandez (Dominican) that was also assaulted by the same individual on a different

occasion.  I asked him to call me back with the contact information of the individual who can collaborate this. I emailed Chris/Fabricio with this information.

Please confirm whether or not there is any truth to the above statement. Also please tell us what you remember about any problems you have had with Tony FDOT/Inspector.

Thanks,

Alisa

RE: Tony Hernandez

Fabricio Cedillo fabricio.cedillo@demoya.com

Tue 1/26/2021 3:10 PM

 Attached are the forms we have for Tony Hernandez

Fabricio


**The de Moya Group**

# Workplace Incident Report

REPORTED BY: _____ Fabricio Cedillo _____

DATE OF REPORT: _____

TITLE / ROLE: _____ Project Manager _____

INCIDENT NO.: _____ 007 _____

| WORKPLACE INCIDENT INFORMATION |
|---|

DATE OF INCIDENT: _____ July 2018 _____

TIME OF INCIDENT: _____ 3:00 PM _____

NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR: _____ Tony Hernandez _____

NAME OF VICTIM: _____ Osamani Perez _____

LOCATION: _____ SW 128th Street (Segment 1) at SW 125th Ave (Drainage Structure S1-132) _____

ADDITIONAL PERSON(S) INVOLVED: _____

WITNESSES: _____ Stout Group personnel, CEI personnel _____

**INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:**

The Stout Group had to reset the structure and had removed it from its location. Tony arrived to the area and said told Stout Group that the structure was damaged. Stout Group told Tony that they would repair any dings made to it. Tony told them in a aggressive manner that he didn't care what they did, but they weren't installing that structure. They proceeded to call Noel to the site and wait for him. Noel came on site they fixed the  dings and installed the structure.

**NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:**

Noel was called to the area to try and resolve the issue.
He saw that the structure had minor chips and had Stout Group fix it and then installed it with no issues.

**RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:**

A meeting was set up with Alain to discuss the issue, and gather more information for this incident report.

POLICE REPORT FILED? _____

PRECINCT: _____

REPORTING OFFICER: _____

PHONE: _____

POLICE ACTION TAKEN: _____

REPORTING STAFF NAME: _____ Osamani Perez _____

REPORTING STAFF SIGNATURE: _____

DATE: _____

SUPERVISOR NAME: _____ Fabricio Cedillo _____

SUPERVISOR SIGNATURE: _____

DATE: _____ 11.30.2018 _____



# Workplace Incident Report

**REPORTED BY:** Fabricio Cedillo

**TITLE / ROLE:** Project Manager

**DATE OF REPORT:** November 29, 2018

**INCIDENT NO.:** 009

## WORKPLACE INCIDENT INFORMATION

**DATE OF INCIDENT:** November 27, 2018

**TIME OF INCIDENT:** 3:30 PM

**NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:** Tony Hernandez

**NAME OF VICTIM:** Alejandro Leon

**LOCATION:** SW 128th Street (Segment 1) West of Nixon Smiley Preserve on the North side MOT

**ADDITIONAL PERSON(S) INVOLVED:**

**WITNESSES:** dMG personnel, Stout Group personnel (dMG), CEI personnel (CEI)

**INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:**

During the cross slope inspection of the base, Tony approached Alejandro from behind and abruptly snatched the smart level from his hands. Tony then proceeded to say, that the smart level Alejandro had did not function correctly. Stout Group operator then instructed Tony that it was his smart level, and Tony changed his demeanor. He went from angry to trying to joke around immediately. Alejandro then proceeded to walk away, and go to the next location to continue the inspection. Tony then started an argument with the SG operator (another Workplace Incident Report will be drafted for this issue). Alejandro then came back to Tony and SG operator after he heard the arguing. Alejandro told Tony that he had no right to yell or insult anyone on the site. Tony then proceeded to scream and told his inspectors to leave the site.

**NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:**

Both dMG and CEI management convened on site to discuss the issue that happened and continued to perform the base inspection. During the final cross slope inspection (close to SW 137th Ave), Alejandro was bent down placing Tony's smart level on the straight edge, a car horn was hard beeping erratically. Without knowledge of why the horn was beeping, Alejandro said to "get the.. out of here" all the while still looking down. Fabricio then acknowledged that it was a WASD inspector trying to get his attention about an email he sent. Fabricio then told him, he would look into it and to keep moving; due to traffic behind his vehicle. Tony then proceeded to turn to Chris de Moya and say "you see how he's talking." Referring to Alejandro and continuing to instigate yet another confrontation. No one made an effort to pay him any attention, but instead proceeded with the cross slope inspection.

**RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:**

This incident was later discussed in the project construction meeting. MDX asked Tony if he could work with Alejandro, but Tony only responded that he would "do his job." No definitive yes or no answer was provided.
A meeting was set up with Alejandro to discuss the issue, and gather more information for this incident report.

**POLICE REPORT FILED?**

**PRECINCT:**

**REPORTING OFFICER:**

**PHONE:**

**POLICE ACTION TAKEN:**

**REPORTING STAFF NAME:** Alejandro Leon

**REPORTING STAFF SIGNATURE:**

**DATE:** 11.30.2018

**SUPERVISOR NAME:** Fabricio Cedillo

**SUPERVISOR SIGNATURE:**

**DATE:** 11.30.2018

# Workplace Incident Report


**The de Moya Group**

REPORTED BY: _____ Fabricio Cedillo _____

DATE OF REPORT: _____

TITLE / ROLE: _____ Project Manager _____

INCIDENT NO.: _____ 008 _____

| WORKPLACE INCIDENT INFORMATION |
|---|

DATE OF INCIDENT: _____ July 24, 2018 _____

TIME OF INCIDENT: _____ 3:00 PM _____

NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR: _____ Tony Hernandez (B&A) _____

NAME OF VICTIM: _____ Fabricio Cedillo _____

LOCATION: _____ SW 128th Street (Segment 1); SW 122 Ave; Cortland Building _____

ADDITIONAL PERSON(S) INVOLVED: _____ Eduardo Rodriguez _____

WITNESSES: _____ Noel Leon, Jaime Marrou, Greisy Perez (Cortland Developer) _____

## INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:

All parties met at the Corland property to discuss the access request for the SW 128th Street driveway. I had instructred Gresiy that the driveway was not part of the contract and that MDX would need to provide a work order in order to provide said access. She was upset because it seems that both Tony and Eduardo were telling her that dMG was going to perform this work, and after hearing what I said she was not happy. Eduardo then began to tell her that they should not talk with me because I am hard to deal with. That they should talk to Noel because he is the Supt. and he will help out. I told them all that I would talk directly to MDX. Tony asked what MDX people and I said Gil Portela and Mario Nunez. He then told Greisy that I was "jealous because I didn't have two initials after his last name and that those were P.E." I went to my vehicle and proceeded to let Noel handle the situation.

## NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:

I contacted Brent Norman and told him what had happened. Noel told me to calm down that he would tend to this issue.

## RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:

The incident was left as is and the project continued.

POLICE REPORT FILED? _____

PRECINCT: _____

REPORTING OFFICER: _____

PHONE: _____

POLICE ACTION TAKEN: _____

REPORTING STAFF NAME: _____ Fabricio Cedillo _____

REPORTING STAFF SIGNATURE: _____

DATE: _____

SUPERVISOR NAME: _____

SUPERVISOR SIGNATURE: _____

DATE: _____



# Workplace Incident Report

**REPORTED BY:** Fabricio Cedillo

**DATE OF REPORT:** _____

**TITLE / ROLE:** Project Manager

**INCIDENT NO.:** 009

| WORKPLACE INCIDENT INFORMATION |
|---|

**DATE OF INCIDENT:** August 2018

**TIME OF INCIDENT:** 10:00 AM

**NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:** Tony Hernandez

**NAME OF VICTIM:** Alain A. Perez

**LOCATION:** SW 128th Street (Segment 1) dMG Material Yard

**ADDITIONAL PERSON(S) INVOLVED:** _____

**WITNESSES:** Noel Leon

**INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:**

Alain was moving a stick of drainage pipe within the MOT area. The pipe was on the forks and elevated. This was done to move the pipe over the stockpiled materials. Tony was driving westbound on SW 128th Street (outside of the MOT area), and then parked his vehicle in front of the loader abruptly, causing Alain to stop immediately. Tony got out of his vehicle and started yelling at Alain. Saying that he could not transport the pipe in that manner. Alain then got out of the loader and confronted Tony. Alain explained to Tony that he could have caused the loader to strike his vehicle. Both Alain and Noel then called Noel to come to the area. Noel then came to the site to resolve the issue. Tony then proceeded to tell Noel that Alain almost ran into his vehicle.

**NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:**

Noel was called to the area to try and resolve the issue.
The incident was left as is and the project continued.

**RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:**

A meeting was set up with Alain to discuss the issue, and gather more information for this incident report.

**POLICE REPORT FILED?** _____

**PRECINCT:** _____

**REPORTING OFFICER:** _____

**PHONE:** _____

**POLICE ACTION TAKEN:** _____

**REPORTING STAFF NAME:** Alain A. Perez

**REPORTING STAFF SIGNATURE:** _____

**DATE:** 11.30.2018

**SUPERVISOR NAME:** Fabricio Cedillo

**SUPERVISOR SIGNATURE:** _____

**DATE:** 11.30.2018


**The de Moya Group**

# Workplace Incident Report

| | | | |
|---|---|---|---|
| **REPORTED BY:** | Fabricio Cedillo | **DATE OF REPORT:** | November 29, 2018 |
| **TITLE / ROLE:** | Project Manager | **INCIDENT NO.:** | 010 |

## WORKPLACE INCIDENT INFORMATION

**DATE OF INCIDENT:** November 27, 2018     **TIME OF INCIDENT:** 3:30 PM

**NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:** Tony Hernandez

**NAME OF VICTIM:** Noel Leon

**LOCATION:** SW 128th Street (Segment 1) West of Nixon Smiley Preserve on the North side MOT

**ADDITIONAL PERSON(S) INVOLVED:**

**WITNESSES:** dMG personnel, Stout Group personnel (dMG), CEI personnel (CEI)

### INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:

After the cross slope inspection, and after Fabricio and Chris left the site. Tony approached Noel, and told him with an attitude that he did not approve the base. Noel was surprised and asked why? If we all inspected the base and everything seemed good. Tony then proceeded to show Noel that at one point of the curb (with his tape measure) he got 2.5". Noel then told him to measure at another point where it is 2", and Tony said "he didn't care about that measurement." This started another argument amongst Noel and Tony. Alejandro then came into the argument to stop this argument. Once it stopped, Tony left the area laughing (another Workplace Incident Report will be drafted for this issue).

### NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:

Eduardo was present and also tried to calm down the situation.

### RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:

This incident was later discussed in the project construction meeting. MDX asked Tony if he could work with Alejandro, but Tony only responded that he would "do his job." No definitive yes or no answer was provided.
A meeting was set up with Noel to discuss the issue, and gather more information for this incident report.

| | | | |
|---|---|---|---|
| **POLICE REPORT FILED?** | | **PRECINCT:** | |
| **REPORTING OFFICER:** | | **PHONE:** | |
| **POLICE ACTION TAKEN:** | | | |

| | | | | |
|---|---|---|---|---|
| **REPORTING STAFF NAME:** | Alejandro Leon | **REPORTING STAFF SIGNATURE:** | | **DATE:** 11.30.2018 |
| **SUPERVISOR NAME:** | Fabricio Cedillo | **SUPERVISOR SIGNATURE:** | | **DATE:** 11.30.2018 |



# Workplace Incident Report

**REPORTED BY:** _____ Fabricio Cedillo _____

**DATE OF REPORT:** _____ March 27, 2019 _____

**TITLE / ROLE:** _____ Project Manager _____

**INCIDENT NO.:** _____ 013 _____

| WORKPLACE INCIDENT INFORMATION |
|---|

**DATE OF INCIDENT:** _____ March 27, 2019 _____

**TIME OF INCIDENT:** _____ 10:30 AM _____

**NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:** _____ Tony Hernandez _____

**NAME OF VICTIM:** _____ Osmany Perez _____

**LOCATION:** _____ SW 128th Street (Segment 1) and SW 132nd Court; at S1-58 _____

**ADDITIONAL PERSON(S) INVOLVED:** _____

**WITNESSES:** _____ dMG personnel, Stout Group personnel (dMG), _____

## INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:

A lane closure was set up to install S1-58 and Stout's loader was bringing the structure to stage near the proposed excavation area. The witnesses were observing traffic and Tony H. came in and in a belligerent manner told Osmany that he needed to move the loader right away. The loader was both in the temporary MOT and Phase 2 MOT work area; meaning it was not in traffic. Osmany asked why he had to move the loader and Tony responded "if a drunk driver were to drive through." Both Tony and Osmany got into a heated argument. When Noel arrived Osmany told Noel that Tony had no right to come screaming at him and being disrespectful. Tony then denied being belligerent to Osmany and the group disagreed since they were all present. Tony then mentioned that it was due to the heat of the moment.

## NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:

Noel Leon was called to the location as the issue was unfolding.

## RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:

Tony later came back to the site and told the group that he was coming in peace. He tried to talk to the group and reason with them as to why he lost his cool.

**POLICE REPORT FILED?** _____

**PRECINCT:** _____

**REPORTING OFFICER:** _____

**PHONE:** _____

**POLICE ACTION TAKEN:** _____

**REPORTING STAFF NAME:** _____ Osmany Perez _____

**REPORTING STAFF SIGNATURE:** _____ **DATE:** _____ 03.29.2019 _____

**SUPERVISOR NAME:** _____ Fabricio Cedillo _____

**SUPERVISOR SIGNATURE:** _____ **DATE:** _____ 03.29.2019 _____



## Workplace Incident Report

| | | | |
|---|---|---|---|
| **REPORTED BY:** | Fabricio Cedillo | **DATE OF REPORT:** | |
| **TITLE / ROLE:** | Project Manager | **INCIDENT NO.:** | 001 |

### WORKPLACE INCIDENT INFORMATION

**DATE OF INCIDENT:** _____    **TIME OF INCIDENT:** _____

**NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:** Tony Hernandez (B&A)

**NAME OF VICTIM:** Mario Adan

**LOCATION:** SW 128th Street (Segment 1) East Bound

**ADDITIONAL PERSON(S) INVOLVED:** N/A

**WITNESSES:** _____

**INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:**

Mario had installed MOT devices incorrectly during the Tree Removal on SW 128th Street (East Bound), and Tony approached him in a disrespectful and vulgar manner. He proceeded to yell and curse when he approached Mario. Mario called me, and told me to go to the operation because of how Tony treated him. Tony also called me, and explained the issue. He understood that he acted incorrectly towards Mario. Even though he was wrong he was not going to apologize.
When I got to the location, I talked to Mario and he was very distraught. He said that he never got this treatment before, and that if he did not value his job he would have said something back to Tony. I calmed him down, and assured him that I would let Tony know of his wrong doing.

**NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:**

I told Tony that he has no right to yell or insult a de Moya employee or anyone for that fact. That if he saw an issue he should call me or Noel Leon and we would correct the issue.

**RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:**

I spoke to Tony and told him that he has no right and that, that will not be tolerated.

**POLICE REPORT FILED?** _____    **PRECINCT:** _____

**REPORTING OFFICER:** _____    **PHONE:** _____

**POLICE ACTION TAKEN:** _____

| | | | |
|---|---|---|---|
| **REPORTING STAFF NAME:** | Fabricio Cedillo | **REPORTING STAFF SIGNATURE:** _____ | **DATE:** _____ |
| **SUPERVISOR NAME:** _____ | | **SUPERVISOR SIGNATURE:** _____ | **DATE:** _____ |



# Workplace Incident Report

**REPORTED BY:** _____ Fabricio Cedillo _____     **DATE OF REPORT:** _____

**TITLE / ROLE:** _____ Project Manager _____     **INCIDENT NO.:** _____ 002 _____

## WORKPLACE INCIDENT INFORMATION

**DATE OF INCIDENT:** ____ March 2017 ____     **TIME OF INCIDENT:** _____

**NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:** ____ Tony Hernandez (B&A) ____

**NAME OF VICTIM:** _____ The Project _____

**LOCATION:** ___ SW 128th Street (Segment 1) West of SW 127 Ave on the North Side MOT ___

**ADDITIONAL PERSON(S) INVOLVED:** ___ N/A ___

**WITNESSES:** ___ Eduardo Rodriguez and Victor Zarzuela ___

### INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:

Protective Barriers (silt fence subcontractor) was about to start installing silt fence in this area. The CEI was not given notice they were on site and working. Victor called Tony and told him they were on site. Tony called me and expressed to me that we need to communicate to the CEI when a subcontractor will be on site. Victor had an issue that the silt fence was being installed and communicated that to Tony. Tony came back to the job site from his home and arrived at the site with Eduardo. The CEI proceeded to express the importance of communication and etc. Tony then offered the information that he was "at home, smoking a cigar in his chair and having wine." I then asked him that if he was inebriated, why was he on the site. Eduardo, then jumped in and said something along the lines that he was having wine with his dinner. I told him that's not what Tony just said. They changed the subject matter and left immediately.

### NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:

This incident was later touched on again in another argument where Tony said that I was flexing my "pechito, a.k.a. chest" and when I brought up the fact that he may have been inebriated on the job site, he denied saying anything about drinking wine. Eduardo also lied to me and said he too never said anything about Tony drinking wine with his dinner (another Workplace Incident Report will be drafted for this issue).

### RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:

Tony left the job site immediately after the situation calmed down.

**POLICE REPORT FILED?** _____     **PRECINCT:** _____

**REPORTING OFFICER:** _____     **PHONE:** _____

**POLICE ACTION TAKEN:** _____

**REPORTING STAFF NAME:** ____ Fabricio Cedillo ____     **REPORTING STAFF SIGNATURE:** _____   **DATE:** _____

**SUPERVISOR NAME:** _____     **SUPERVISOR SIGNATURE:** _____   **DATE:** _____



# Workplace Incident Report

The de Moya Group

| REPORTED BY: | Fabricio Cedillo | DATE OF REPORT: | |
|---|---|---|---|
| TITLE / ROLE: | Project Manager | INCIDENT NO.: | 003 |

## WORKPLACE INCIDENT INFORMATION

DATE OF INCIDENT: _____     TIME OF INCIDENT: _____

NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:     Tony Hernandez (B&A)

NAME OF VICTIM:     Fabricio Cedillo

LOCATION:     SW 128th Street (Segment 1); SW 127 Ave on the South of SW 128th Street; FP&L Extra Work for MDX

ADDITIONAL PERSON(S) INVOLVED:     N/A

WITNESSES:     Noel Leon, Eduardo Rodriguez and Victor Zarzuela

**INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:**

During the investigation of the FP&L conflict there was an arguement between Tony and myself. He didn't like that I was giving an order not to proceed and he proceeded to say something along the lines of flexing my "pechito." I asked him to repeat that again and he did. At that moment in time, I asked him if he was inebriated again. Eduardo then said that he was fine. I mentioned that the other day he had been drinking and returned on the job site and that Eduardo said "he had a glass of wine with his meal." Eduardo then proceeded to lie and say that he never said that.

**NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:**

I contacted Brent Norman and told him that I am having a hard time with Tony and Eduardo. This was communicated to AJ and he communicated that I had another issue with Tony.

**RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:**

During the weekly meeting Tony apologized for what he said but only after he was told to do so.

POLICE REPORT FILED? _____     PRECINCT: _____

REPORTING OFFICER: _____     PHONE: _____

POLICE ACTION TAKEN: _____

| REPORTING STAFF NAME: | Fabricio Cedillo | REPORTING STAFF SIGNATURE: | | DATE: |
|---|---|---|---|---|
| SUPERVISOR NAME: | | SUPERVISOR SIGNATURE: | | DATE: |



# Workplace Incident Report

| | |
|---|---|
| **REPORTED BY:** Fabricio Cedillo | **DATE OF REPORT:** |
| **TITLE / ROLE:** Project Manager | **INCIDENT NO.:** 004 |

## WORKPLACE INCIDENT INFORMATION

| | |
|---|---|
| **DATE OF INCIDENT:** June 16, 2018 | **TIME OF INCIDENT:** 1:30 PM |

**NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR:** Tony Hernandez (B&A)

**NAME OF VICTIM:** Lisa Kavadas

**LOCATION:** SW 128th Street (Segment 1); SW 136 Ave; Drainage Crossing (S1-22 to S1-23)

**ADDITIONAL PERSON(S) INVOLVED:** Fabricio Cedillo

**WITNESSES:** dMG personnel, JS&L personnel, Stout Group personnel, CEI personnel

**INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:**

During the drainage crossing a gas line was struck. At this time both Lisa and myself proceeded to call first responders, FL City Gas, and make sure that the patrons at Keg South Bar put out their cigarettes, and close the access between SW 137th Ave and SW 136th Ave. While trying to make sure we have everything covered Tony comes over and starts arguing about 5 other crossings being done just east of this issue. It had rained previously and dMG's QC inspector, CEI inspector and myself got together to evaluate which of the 5 crossings needed road plates and which could have cold patch placed on top (4 road plates and 1 cold patch). He then proceeded to tell Lisa that she was doing a bad job and that she needs to do better and etc. Lisa told Tony that it's not the place or time to talk right now. I told Lisa to relax and let's just make sure we get this crisis under control. Tony kept inciting a reaction from Lisa and she ended up screaming at him that we are in the middle of a crisis. He then proceeded to incite an argument with me (another Workplace Incident Report will be drafted for this issue).

**NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:**

I contacted Brent Norman and told him what had happened with Tony and how he provoked Lisa.

**RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:**

Both dMG and MDX got involved on a project level and heard out both Lisa and Tony's versions. The incident was left as is and the project continued.

| | |
|---|---|
| **POLICE REPORT FILED?** | **PRECINCT:** |
| **REPORTING OFFICER:** | **PHONE:** |
| **POLICE ACTION TAKEN:** | |

| | |
|---|---|
| **REPORTING STAFF NAME:** Fabricio Cedillo | **REPORTING STAFF SIGNATURE:** **DATE:** |
| **SUPERVISOR NAME:** | **SUPERVISOR SIGNATURE:** **DATE:** |


**The de Moya Group**

# Workplace Incident Report

REPORTED BY: _____ Fabricio Cedillo _____

TITLE / ROLE: _____ Project Manager _____

DATE OF REPORT: _____

INCIDENT NO.: _____ 006 _____

## WORKPLACE INCIDENT INFORMATION

DATE OF INCIDENT: _____ June 16, 2018 _____

TIME OF INCIDENT: _____ 3:00 PM _____

NAME OF PERSON DEMONSTRATING PROHIBITED BEHAVIOR: _____ Tony Hernandez (B&A) _____

NAME OF VICTIM: _____ Fabricio Cedillo _____

LOCATION: _____ SW 128th Street (Segment 1); SW 136 Ave; Drainage Crossing (S1-22 to S1-23) _____

ADDITIONAL PERSON(S) INVOLVED: _____ Lisa Kavadas _____

WITNESSES: _____ dMG personnel, JS&L personnel, Stout Group personnel, FL City Gas personnel, CEI personnel _____

### INCIDENT DESCRIPTION INCLUDING ANY EVENTS LEADING TO OR IMMEDIATELY FOLLOWING THE INCIDENT:

FL City Gas arrived on site, turned off the gas and then assessed the issue. They told us they didn't have any pumps with them and if we could help them out, and provide the pumps. Both JS&L and Stout Group provided their pumps. They were used to pump down the water enough so that FLCG can make the repair. JS&L then made a berm where to pump the water into. Then FCG proceeded to pump down the water. During this process Tony walks over to me (while I'm standing next to the FCG Supt.) and says "you know you don't have a dewatering permit. You can't be pumping out this water." I just looked at him and he then proceeded to walk away. The FCG Supt. was surprised at the comment and that this was an emergency repair. What did Tony expect; leave it as is?

### NAMES OF SUPERVISORY STAFF INVOLVED ALONG WITH THEIR RESPONSE TO THE INCIDENT:

I contacted Brent Norman and told him what had happened with Tony and how he was not helping the situation but instead instigating another argument.

### RESULTING ACTION EXECUTED, PLANNED, OR RECOMMENDED:

Both dMG and MDX got involved on a project level and heard out both My and Tony's versions. The incident was left as is and the project continued.

POLICE REPORT FILED? _____

PRECINCT: _____

REPORTING OFFICER: _____

PHONE: _____

POLICE ACTION TAKEN: _____

REPORTING STAFF NAME: _____ Fabricio Cedillo _____

REPORTING STAFF SIGNATURE: _____

DATE: _____

SUPERVISOR NAME: _____

SUPERVISOR SIGNATURE: _____

DATE: _____

Elena Valdes Summary of Discussions with Jorge Monte Agudo

10/7/2020 10 AM

Mr. Monteagudo called me from phone #786-344-7868.

Below is an account of his allegations during the call:

He is a deMoya employee for about 1 ½ years.  He worked on Project 552 as a laborer/roller operator.  His Supervisor is Noel Leon. He was working on the bridgework on 128th Street & SR874. He went to help an equipment operator who asked for assistance when Noel approached him in an aggressive manner, screaming at him and using foul language in Spanish. He felt that Noel was in a bad mood and decided not to say anything until another opportunity.  The following day, he approached Noel and told him he was being abusive and had embarrassed him in front of his coworkers and that he did not appreciate his tone.  He believes Noel did not appreciate this and felt he was retaliating against him as he was moved to the crew working on 874 under Fermin Jimenez. Jorge asked him not to transfer to this crew as he did not like that crew and was ignored.  He spoke to Chris deMoya about his interest in a transfer to another crew/Supervisor.  Chris transferred him to Project 490 (106 & Turnpike) Shortly after starting with his new crew, he was approached by several employees who were saying that he was known as a tattletale and that he felt Noel was trying to poison the well to ensure he was not accepted by the new crew.

He was subsequently visited by Noel's son who parked his pickup truck behind the roller he was operating and approached him and struck him in the chest and threatened to kill him by running him over with the company pickup truck if he messed with his father. Mr. Agudo informed Manny of this incident and he filed a police report with Miami Dade Police claiming battery, case number PD201005316722.  The report was filed 10/5/20.  He also claims he went to court to file a restraining order against his assailant, Alejandro Leon.

He claims that on 10/7/20, he was approached by Jerry Naso who accused him of sleeping on the job and asked him to sign a blank form stating it was a warning notice.  He refused to sign a blank form and told Jerry that he was not sleeping on the job and that he was wrongfully accused.  Since he refused to sign the form, he was fired.

Immediately following this discussion, I sent an email to Chris deMoya and Fabriocio Cedillo and recommend interviews with all employees that have knowledge of these allegations and documenting the interviews as, at the time, I believed the employee would likely file an Employment Practice claim and/or a complaint with the EEOC.

**10/7/20 4:18 PM – I received an email from Chris deMoya stating the following:**

"I spoke with Alejandro and he did have a conversation with Jorge Friday Oct 2.  Jorge was blocking him from proceeding through the job with his roller and refused to move.  Alejandro got out of his truck and told him that he needed to get through to check the rock.  Alejandro does admit to telling Jorge that he had been hearing from other employees Jorge had been talking badly about his father and he did not like it.  Alejandro was with Jose Batista at this time and we will have him give a statement as well.   At no time did he get on the machine or touch Jorge.  If in fact Jorge filed a police report; it sounds like he filed a false report.  I'd like to note, I can't remember any employee ever complaining about Noel.  I actually think he may be too easy on the guys sometimes.  My two cents.  I find it hard to believe that Noel could have called Jerry, the supervisor who fired Jorge, because they don't know each other.   Noel

doesn't have his number and vice versa. Alejandro also stated that he has never spoken to Jerry but knew who he was from the field. Also the firing doesn't seem to have anything to do with the police filing as no one knew about it."

I spoke to Victor and he will be getting statements from Jerry, the grader operator that was working with Jorge and anyone else that may have input to the situation. According to Alejandro, the Supervisor Alan told him Jorge filed suit against Odebrecht when being fired from there as well. Accusing them of discrimination. Chris further added that he interviewed Jose Batista prior to allowing Alejandro to speak with him and he confirmed Alejandro did not mount the roller nor make any physical contact with Mr Montesgudo.

**10/15/20 11 AM**

I received a call from Mr. Agudo in follow up to his complaint. I explained that an investigation into the allegations was underway. He offered additional information in support of his allegations of assault involving Mr. Leon's son. He claims there was an incident with an FDOT Inspector by the name Tony Hernandez (Dominican) that was also assaulted by the same individual on a different occasion. I asked him to call me back with the contact information of the individual who can collaborate this. I emailed Chris/Fabricio with this information.

**10/15/20 2PM**

I received the following email from Chris deMoya:

We have witnesses that this "assault" never took place and that the disciplinary report he refused to sign was indeed filled out and not blank. In my opinion, no further action is required by us. He was terminated for sleeping on the job. His termination had nothing to do with retaliation as Noel Leon and the supervisor who terminated him, Jerry, have never met nor had any conversations.. If he wishes to press charges against Alejandro, that is between the two of them. It appears the man is lying about the entire account and we have no place for him here.

Given the directive from Chris deMoya that no further action was required; I made no additional inquiries.

Elena Valdes (Nationality – Cuban)

Director of Insurance & Risk Management



305-239-9463 office

305-546-6077 mobile

January 22, 2021

To whom it may concern:

I recall one afternoon. Mr. Jorge MonteAguado came in extremely upset wanting to speak specifically to Chris de Moya regarding a situation he was having with Noel.  He was a tall heavy-set, Hispanic man with a very mean demeanor at the time. I told him to please wait in the lobby as I went upstairs to find Chris (who was is in a meeting at the time) and ask if he could speak with this employee. Chris asked if he was upset and I said yes. I personally did not feel comfortable having this person in our office. Chris asked if I could help translate for him in our conference room. As Mr. MonteAguado was speaking, his tone of voice would escalate and there was a moment where he started pointing his finger towards Chris. Both Chris and I told him to please bring down his finger and calm down. He was claiming that Noel had been very disrespectful with him that day and on other occasions and he had had enough. He requested to please be reassigned to another project. Chris said he would speak to Noel and others regarding the situation and see what he could do for him. Mr. MonteAguado never mentioned having been discriminated against in the conversation. He left soon after and never came back to the office.

I have been working for The De Moya Group going on 4 years now and have witness many applicants come in from all ethnicities and genders. I am Colombian and can attest that I have never felt discriminated against or belittled by anyone from this company. This company has always upheld a professional atmosphere to the point where it has felt more like a second family.


Sincerely,

Susana Giraldo



**Asphalt Group, Inc.**
14600 SW 136th Street
Miami, FL 33186

Tel.: (305) 364-3595
Fax: (305) 364-3599

## Employee Accident / Disciplinary Report

Name _Jorge Monteaguada_ Division _Roadway_

Location _Ramp J_

Date of Incident _____ Equipment _____

Action(s) to be Taken: | Please document if there were any injuries |

☐ Warning ☐ Suspension ☐ Final Warning ☐ Termination ☐ Accident

This report is to be made part of the official record of the above employee.

Nature of Incident:

☐ Unexcused Absence ☐ Violation of Safety Rules

☐ Tardiness ☐ Carelessness

☐ Insubordination ☐ Destruction of company property

☐ Improper Conduct ☐ Defective and improper work

☐ Failure to follow instructions ☐ Violation of company rules

☐ Leaving without permission ☐ Theft

☐ Substandard work ☐ Violation of Drug Free Workplace Policy

Facts of incident: _Employee was warned of constantly disappearing out of his_
_work zone, I approach him while hiding behind a light tower mass and told him_
_that if caught again not being in his work zone was going to be written with_
_a disciplinary report._

Witnesses: _____

_____

Desired Outcome: _To be focused and do his Job._

Signature of Manager _____ Manuel Comes
_Cuban Nationality_

I have read this report

Signature of Employee _____



**Asphalt Group, Inc.**
14600 SW 136th Street
Miami, FL 33186

Tel.: (305) 364-3595
Fax: (305) 364-3599

## Employee Accident / Disciplinary Report

Name _Jorge Manteguds_     Division _Roadway_

Location _HEFT 490 ramp I southbound_

Date of Incident _09-29-20_     Equipment _Labor Spotting trucks_

Action(s) to be Taken:     | Please document if there were any injuries |

[✓] Warning   [ ] Suspension   [ ] Final Warning   [ ] Termination   [ ] Accident

This report is to be made part of the official record of the above employee.

Nature of Incident:

[ ] Unexcused Absence               [ ] Violation of Safety Rules

[ ] Tardiness                       [ ] Carelessness

[ ] Insubordination                 [ ] Destruction of company property

[ ] Improper Conduct                [ ] Defective and improper work

[✓] Failure to follow instructions   [ ] Violation of company rules

[ ] Leaving without permission      [ ] Theft

[ ] Substandard work                [ ] Violation of Drug Free Workplace Policy

Facts of incident: _Was assigned to spot trucks and help with_
_the grader clearing the stakes in the ground so the operator can_
_see the grade mark. Jorge was warned about sitting around_
_and not working and not following Instructions_

Witnesses: _____

_____

Desired Outcome: _Stay Productive_

Signature of Manager _[signature]_     MANUEL COMES

I have read this report     CUBAN

Signature of Employee. _____



| Office Use Only: Case # | |
|---|---|

## Statement of Employee

Please Print or Type

This sheet is to be completed by the involved or injured party involved in the incident or accident. When completed, return this form to your supervisor.

**\*\*Attach to the investigation Report.\*\***

### Employee Involved in Incident or Injured

Name of Employee  **Alejandro Leon**  Title: **QC Manager**

Home Address:  **18993 SW 135 AVE**

City  **MIAMI**  State: **FL**  Zip **33177**

Phone: **305-498-6015**  Department/Craft **QC Department**  SS# **xxx-xx- 6768**

Project Name:  **AGI deMoya JV**  Job Number  **490**

Location of Incident: **821 southbound**  Date and Time: **Oct 02,2020**

Task being performed:  **Temporary Base Rock Inspection for Roadway**

Where were you located at the time: _____

Briefly describe how the incident occurred and / or what you observed

On October 2nd, 2020 I was performing a base inspection on 821 northbound out side widening with Allan who is a Superintendent with deMoya Group and Jose Batista QC with Demoya. When the inspection was completed, Jose Batista and my self head to another section on 821 SB widening north of Okeechobee southbound off ramp for another inspection. While Jose Batista was driving to get there, he made a comment that he heard from a person ( he did not tell me who) that one worker was trying to convince a couple of guys to make a complain about a Supervisor ( Noel Leon) to the HR department, but none of them believed on his causations. Once we arrived at the inspection site, we noticed that a roller operator was blocking the only existent path to the place we were supposed to inspect. We started to point fingers out to get him out of the way, but he refused to moved ; even after we tried to persuade him a few

The information I have provided either in my own writing or verbally for the purpose of this form is true and correct.
I understand that providing false or misleading information or omission of information on this report or any other forms relating to this claim of injury / illness may result in termination of my employment.

Employee Signature _____  Reader/ Interpreter _____

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

This information is prepared in anticipation of litigation and therefore is privileged and confidential.  Revised: JAN 2020

| | Office Use Only: Case # | |
|---|---|---|

**Statement of Employee**

This sheet is to be completed by the involved or injured party involved in the incident or accident. When completed, return this form to your supervisor.

**\*\*Attach to the investigation Report.\*\***



Please Print or Type

## Employee Involved in Incident or Injured

Name of Employee   Alejandro Leon                    Title:   QC Manager

Home Address:   18993 SW 135 AVE

City   MIAMI                         State: FL      Zip 33177

Phone: 305-498-6015      Department/Craft QC Department      SS# xxx-xx- 6768

Project Name:   AGI deMoya JV              Job Number   490

Location of Incident: 821 southbound        Date and Time: Oct 02,2020

Task being performed:   Temporary Base Rock Inspection for Roadway

Where were you located at the time:

Briefly describe how the incident occurred and / or what you observed

times. When I realized he was not understanding that we need to drive by. I got out of Jose's truck and approach him to explain that he was blocking our access to the inspection site. I spent a couple of minutes letting him know that every time he sees a Supervisor, Survey or a Mechanic truck he needs to guarantee access. Ones I got back to the truck, Jose told me that the man blocking our way and the one who had been making false and negative comments about Noel Leon; they were the same person. Then I step out of the truck again and, I asked the guy why he was making that kind of comment knowing what type of person and a great supervisor Noel Leon is. He accepted that Noel Leon is a respectful and great person. He even added he had no comment anything insulting about Noel. My last words were " thank you", I will look who is the person behind all this.

The information I have provided either in my own writing or verbally for the purpose of this form is true and correct.
I understand that providing false or misleading information or omission of information on this report or any other forms relating to this claim of injury / illness may result in termination of my employment.

Employee Signature _____    Reader/ Interpreter _____

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

This information is prepared in anticipation of litigation and therefore is privileged and confidential.        Revised: JAN 2020

| Office Use Only: Case # | |
|---|---|

**Statement of Employee**

This sheet is to be completed by the involved or injured party involved in the incident or accident. When completed, return this form to your supervisor.

**\*\*Attach to the investigation Report.\*\***



Please Print or Type

### Employee Involved in Incident or Injured

Name of Employee   Jose Batista                          Title:   QC

Home Address:   14160 SW 151 CT

City   MIAMI                          State: FL      Zip  33196

Phone: 305-793-1144      Department/Craft QC Department      SS# xxx-xx- 0038

Project Name:   AGI deMoya Group                  Job Number   490

Location of Incident: 821 southbound      Date and Time:  Oct 02,2020

Task being performed:      Base Inspection for a temporary rock

Where were you located at the time:

Briefly describe how the incident occurred and / or what you observed

It happened on October 2, 2020. I was verifying a temporary base in Heft 5 with my supervision, Alejandro Leon, QC manager of The Moya Group. When we finished the verification in the North bound, we moved to the South bound section. When we arrived, there was a worker (the person of interest) rolling a base material, he approached us with a very rude attitude requesting us move from his path. We were driving a Fords 150 truck and there were temporary walls in one side and a slope on the other side which did not allow us to move from the path. Due to these conditions we asked the worker to let us pass but he refused to the action and kept his attitude against us. My supervisor walked out the truck and went to talk to the worker closer to explained him the reason why we could not move out of his path. Also, Alejandro was explaining him that he was not having his best behavior when referring to a supervisor. This was all that happened.

The information I have provided either in my own writing or verbally for the purpose of this form is true and correct. I understand that providing false or misleading information or omission of information on this report or any other forms relating to this claim of injury / illness may result in termination of my employment.

Employee Signature _____      Reader/ Interpreter _____

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

This information is prepared in anticipation of litigation and therefore is privileged and confidential.      Revised: JAN 2020

| Agency Of Occurence | Date Written | OFFENSE-INCIDENT REPORT MIAMI-DADE POLICE DEPARTMENT | Agency Report Number |
|---|---|---|---|
| 030 | 10/05/2020 | | PD201005316722 |

## REPORT SUMMARY (ORIGINAL)

| ☐ L.E. Exempt | ☐ D.V. | ☐ Gang Related | ☐ Juv. in Report | ☐ Juv. Warn/Dismiss | ☐ Marsy's Law | ☐ Tourist |
|---|---|---|---|---|---|---|

| Victims: 1 | Offenders: 1 | Stolen Vehicles: 0 | Offenses: 1 | Properties: 0 | SARS: NO | Drive By: NO |
|---|---|---|---|---|---|---|

### INCIDENT (NW 106TH ST & FLORIDA TURNPIKE (SR-91))

| Original Reported Date | Title or Classification | | Time Dispatched | Time Arrived | Time Completed |
|---|---|---|---|---|---|
| MON, 10/05/2020 18:10 | ASSAULT/BATTERY | | 10/05/2020 18:10 | 10/05/2020 18:15 | 10/05/2020 20:00 |

| Incident From | | Incident To | | District | |
|---|---|---|---|---|---|
| FRI, 10/02/2020 10:30 | | FRI, 10/02/2020 10:30 | | MIDWEST | |

| Incident Location | City | | Zip | Grid | Area |
|---|---|---|---|---|---|
| NW 106TH ST & FLORIDA TURNPIKE (SR-91) | MIAMI | | 33172 | 0650 | 1 |

| Business Name/Area Identifier | Location Type | Forced Entry | #Prem Ent. | Occupancy |
|---|---|---|---|---|
| ROADWAY | HIGHWAY/ROADWAY | N/A | 0 | N/A |

## OFFENSES

### 784.03 BATTERY

| | Description | Statute | Subsection | Ordinance |
|---|---|---|---|---|
| 1st | BATTERY | 784.03 | | |

| | Type | Action | NCIC/UCR | Weapons | DV |
|---|---|---|---|---|---|
| | MISDEMEANOR | COMMITTED | 130B | HANDS/FIST/FEET/ETC | |

## VICTIM/WITNESS

### 1 - VICTIM-MONTEAGUDO ALBURQUERQUE, JORGE

| 1 | V/W Code | Offenses Indicator |
|---|---|---|
| | VICTIM | 784.03 |

| Name (Last, First, Middle or Business) | Synopsis of Involvement/Activity | Victim Type | Tourist |
|---|---|---|---|
| MONTEAGUDO ALBURQUERQUE, JORG | AT WORK | ADULT | ☐ |

| Address | City, State Zip Country |
|---|---|
| 3261 NW 18TH TER | MIAMI, FLORIDA 33125 US |

| Race | Sex | Date of Birth | Age | Juvenile | Hispanic | Ethnicity |
|---|---|---|---|---|---|---|
| WHITE | MALE | 05/07/1963 | 57 | | YES | CUBAN |

| Residence Type | Residence Status | Extent of Injury | Will victim prefer charges? |
|---|---|---|---|
| CITY | FULL YEAR | NONE | YES |

| Web Site | Email Address |
|---|---|
| | |

### Phone Numbers

| Type | Phone Number | Extension | Best time to call |
|---|---|---|---|
| CELL | 786-344-7868 | | |

### Relationship(s)

| Suspect Type | Suspect Name | Relationship of Subject to the Victim or Witness |
|---|---|---|
| SUSPECT | LEON, ALEJANDRO | EMPLOYER |

### Injury Types
☑ N/A

| Agency Of Occurence | Date Written | OFFENSE-INCIDENT REPORT | Agency Report Number |
|---|---|---|---|
| .030 | 10/05/2020 | MIAMI-DADE POLICE DEPARTMENT | PD201005316722 |

## VICTIM/WITNESS

### 2 - OTHER-LEON, NOEL

| **2** | V/W Code | | Offenses Indicator | | | |
|---|---|---|---|---|---|---|
| | OTHER | | 784.03 | | | |

| Name (Last, First, Middle or Business) | Synopsis of Involvement/Activity | | Victim Type | |
|---|---|---|---|---|
| LEON, NOEL | AT WORK | | ADULT | |

| Address | City, State Zip  Country |
|---|---|
| 14600 SW 136TH ST | MIAMI, FLORIDA 33186  US |

| Race | Sex | Date of Birth | Age | Juvenile | Hispanic | Ethnicity |
|---|---|---|---|---|---|---|
| WHITE | MALE | Age Range ☐ | 54 TO 65 YR | | YES | OTHER HISPANIC |

| Residence Type | Residence Status | Extent of Injury | Will victim prefer charges? |
|---|---|---|---|
| UNKNOWN | N/A | | |

| Web Site | Email Address |
|---|---|
| | |

### Phone Numbers

| Type | Phone Number | Extension | Best time to call |
|---|---|---|---|
| BUSINESS | 305-255-5713 | | |

### Relationship(s)

| Suspect Type | Suspect Name | Relationship  of Subject to the Victim or Witness |
|---|---|---|
| SUSPECT | LEON, ALEJANDRO | PARENT |

## SUSPECTS OR MISSING PERSONS

### 1 - SUSPECT-LEON, ALEJANDRO

| **1** | Person Code | | Offenses Indicator | | | |
|---|---|---|---|---|---|---|
| | SUSPECT | | 784.03 | | | |

| Name (Last, First, Middle) | Maiden Name | Nickname/Alias | Place of Birth |
|---|---|---|---|
| LEON, ALEJANDRO | | | UNKNOWN UNKNO |

| Race | Sex | Date of Birth | Age | Juvenile | Hispanic | Ethnicity |
|---|---|---|---|---|---|---|
| WHITE | MALE | 12/23/1988 | 31 | | YES | OTHER HISPANIC |

| Residence Type | Last Known Address | City, State Zip  Country |
|---|---|---|
| | | , |

| Occupation/Grade | Address | Employer/School |
|---|---|---|
| FOREMAN | 14600 SW 136TH ST | DE MOYA GROUP |

| Driver License | DL State | Social Security Number | Citizenship | FCIC/NCIC |
|---|---|---|---|---|
| | | | XX | N/A |

| Height | Weight | Clothing |
|---|---|---|
| 67" or 5'7" | 180 lbs | |

| Transportation Mode | Special Identifiers |
|---|---|
| TRUCK | |

| Eye Color | Hair Color | Hair Length | Hair Style | Complexion |
|---|---|---|---|---|
| BROWN | BROWN | SHORT | STRAIGHT | MEDIUM |

| Build | Facial Hair | Teeth | Speech | |
|---|---|---|---|---|
| MEDIUM | CLEAN SHAVEN | NORMAL | NORMAL | |

### Phone Numbers

| Type | Phone Number | Extension | Best time to call |
|---|---|---|---|
| BUSINESS | 305-255-5713 | | |

| Agency Of Occurrence .030 | Date Written 10/05/2020 | OFFENSE-INCIDENT REPORT MIAMI-DADE POLICE DEPARTMENT | | Agency Report Number PD201005316722 |
|---|---|---|---|---|

## VEHICLE/VESSEL/AIRCRAFT

### 1 - VEHICLE-UNLISTED CONSTRUCTION EQUIPMENT MAKE OTHER

| 1 | Person Code Victim - MONTEAGUDO ALBURQUERQ | | Property Type TRACTOR | | Status OTHER | |
|---|---|---|---|---|---|---|
| **Damage** N/A | **Year** | **Make** UNLISTED CONSTRUC | | **Model** OTHER | | **Style** OTHER |
| **Tag / Doc #** | **Reg Year** | **Decal Number** | **Tag Type** | | **Reg State** | **Reg Country** |
| **Vehicle ID (VIN, Hull, FAA)** | | | **Top Color** YELLOW | **Bottom Color** YELLOW | **Method of Theft** N / A | |
| **Estimated Value** | | | **Insurance Company** | | **Lien Holder** | |

**Description**
ASPHALT ROLLER

| **Vessel Name** | | **Length (Ft)** | **Propulsion** | **Hull Material** | **Boat Type** |
|---|---|---|---|---|---|
| **Original Reporting Agency** | **Original Report Number** | | **Location of Original Theft** | | **FCIC/NCIC** N/A |
| **Towed by** | | **Storage Location** | | **Hold** | **Reason/Authority** |
| **Recovery Address** | | **Agency** | | **District** | **Grid** |
| **Recovery Location** | | **Recovery code** | | **Date Recovered** | **Value Recoved** |

### 2 - VEHICLE-FORD F-150XLT

| 2 | Person Code Suspect - LEON, ALEJANDRO | | Property Type LIGHT TRUCK | | Status OTHER | |
|---|---|---|---|---|---|---|
| **Damage** N/A | **Year** | **Make** FORD | | **Model** F-150XLT | | **Style** PICKUP |
| **Tag / Doc #** | **Reg Year** | **Decal Number** | **Tag Type** | | **Reg State** | **Reg Country** |
| **Vehicle ID (VIN, Hull, FAA)** | | | **Top Color** WHITE | **Bottom Color** WHITE | **Method of Theft** N / A | |
| **Estimated Value** | | | **Insurance Company** | | **Lien Holder** | |

**Description**
AMBER CONSTRUCTION LIGHTS ON FRONT & REAR

| **Vessel Name** | | **Length (Ft)** | **Propulsion** | **Hull Material** | **Boat Type** |
|---|---|---|---|---|---|
| **Original Reporting Agency** | **Original Report Number** | | **Location of Original Theft** | | **FCIC/NCIC** N/A |
| **Towed by** | | **Storage Location** | | **Hold** | **Reason/Authority** |
| **Recovery Address** | | **Agency** | | **District** | **Grid** |
| **Recovery Location** | | **Recovery code** | | **Date Recovered** | **Value Recoved** |

## OFFICERS

### Unit: PB313

| 1 | Agency Code 030 | Badge 7546 | Title POLICE OFFICER | Name TILLET, E. A. | Loc Code 07073 | Role REPORTING OFFICER |
|---|---|---|---|---|---|---|

### Supporting Officer(s)

| 2 | Agency Code 030 | Badge 3228 | Title POLICE SERGEANT | Name RUBIO, L. | Loc Code 07073 | Role REVIEWING SUPERVISOR |
|---|---|---|---|---|---|---|
| 3 | Agency Code 030 | Badge 7148 | Title POLICE OFFICER | Name MARTINEZ, R. | Loc Code 09074 | Role ASSIGNED DETECTIVE |

| Agency Of Occurrence | Date Written | OFFENSE-INCIDENT REPORT MIAMI-DADE POLICE DEPARTMENT | Agency Report Number |
|---|---|---|---|
| 030 | 10/05/2020 | | PD201005316722 |

## ADMINISTRATION

| Clearance Type | Clearance Date | Exception Type | Juvenile/Adult |
|---|---|---|---|
| CLEAR BY EXCEPTION | 10/29/2020 00:00 | NOT APPLICABLE | ADULT |
| Case Status | Assignment Type | Referred By | Additional Forms |
| CLOSED | ASSIGNED INFO | | |
| Reporting Agency | AOA Agency | Other AOA | AOA Related Case |
| MIAMI-DADE | | | |
| Original Case Number | | | |

## NARRATIVES

| Written By: mdpd\U307546 | NARRATIVE | Date and Time: 10/5/2020 6:52:42 PM |
|---|---|---|

MR. JORGE MONTEAGUDO RESPONDED TO THE VILLAGE OF PALMETTO BAY POLICING UNIT STATION FOR DOCUMENTATION ON A BATTERY THAT HAD OCCURRED. MR. MONTEAGUDO ADVISED THIS UNIT THAT HE HAS HAD AN ONGOING ISSUE AT WORK BETWEEN HIMSELF AND MR. NOEL LEON OVER CONSTRUCTION JOB SITE ISSUES. MR. NOEL LEON IS A SUPERVISOR IN THE SAME COMPANY MR. MONTEAGUDO IS EMPLOYED BY. MR. NOEL LEON HAS PREVIOUSLY MADE DEROGATORY COMMENTS TOWARDS MR. MONTEAGUDO. AS A RESULT, MR. MONTEAGUDO REQUESTED TO BE REASSIGNED FROM UNDER MR. NOEL LEON'S DIRECT SUPERVISION. THE INITIAL VERBAL EXCHANGES BETWEEN MR. NOEL LEON AND MR. MOTEAGUDO OCCURRED AT A JOB SITE LOCATED IN THE AREA OF SOUTHWEST 128TH STREET AND SR 874. ON 10/02/2020 AT APPROXIMATELY 1030 HOURS MR. ALEJANDRO LEON, WHICH IS THE SON OF MR. NOEL LEON HAD A PHYSICAL ALTERCATION WITH MR. MONTEAGUDO. MR. MONTEAGUDO WAS OPERATING A COMPANY ASPHALT ROLLER ON THE FLORIDA TURNPIKE AND NORTHWEST 106TH WAY. MR. ALEJANDRO LEON ARRIVED IN A COMPANY TRUCK AND JUMPED ON TOP OF THE ASPHALT ROLLER BEGINNING TO INSULT MR. MONTEAGUDO. MR. MONTEAGUDO STATED THAT DURING THE EXCHANGE OF WORDS, MR. ALEJANDRO LEON STRUCK HIM TWICE ON HIS CHEST WITH AN OPEN HAND. MR. MONTEAGUDO ALSO ADVISED THAT MR. ALEJANDRO LEON STATED "IF ANYTHING HAPPENS TO MY FATHER, I WILL DISAPPEAR YOU." MR. ALEJANDRO LEON THEN GOT OFF THE ASPHALT ROLLER AND DROVE AWAY IN THE COMPANY TRUCK.

MR. MONTEAGUDO WAS REFERRED TO THE STATE ATTORNEYS OFFICE.

CASE CARD ISSUED.

BWC USED.



**Asphalt Group, Inc.**
14600 SW 136 Street
Miami, FL 33186



## TERMINATION OF EMPLOYMENT

Tel: (305) 255-5713
Fax: (305) 255-1935

Supervisor's Name: JEROME NASSO

Date: 10/07/2020

Name of Employee:
JORGE MONTEQUDO

Date of Termination:
10/07/2020

☐ Voluntary Termination          ☒ Involuntary Termination

Explain Reason: MR. MONTEQUDO WAS FOUND SLEEPING ON ROLLER. ALL EMPLOYEES ARE TOLD DURING OUR DAILY PRODUCTION MEETING THAT WHEN THEY FINISH THEIR TASKS OR ARE NOT SURE WHAT TO DO THEY ARE TO FIND A SUPERINTENDANT IN THE AREA TO BE GIVEN A NEW TASK. SLEEPING ON A ROLLER IS INEXCUSABLE IN LIEU OF THE ABOVE DIRECTIONS

Corrective Measures Previously Taken: - NONE - SEE ABOVE

☐ Warning          ☐ Suspension          ☐ Final Warning

If there were any Injuries (Explain):
NONE

Uniform and/or Safety Equipment Status:
☒ N/A          ☐ All accounted for          ☐ Missing (Explain)

dMG Equipment Status (tools, radios, beeper, etc.):
☐ Phone          ☐ Labtop          ☐ Uniforms
NONE

Remarks/Complaints:
EMPLOYEE REFUSED TO SIGN DOCUMENT. SEE ACCOMPANYING WITNESS DOCUMENT.

Employee Signature

JEROME NASSO
Manager Signature



**Asphalt Group, Inc.**
14600 SW 136th Street
Miami, FL 33186

Tel.: (305) 364-3595
Fax: (305) 364-3599

## Employee Accident / Disciplinary Report

Name __JORGE MONTEQUDO__          Division __ROADWAY__

Location __HEFT 490   RAMP "J"__

Date of Incident __10/06/2020__

Equipment __ROLLER #3__

### Action(s) to be Taken:

☐ Warning   ☐ Suspension   ☐ Final Warning   ☒ Termination   ☐ Accident

*Please document if there were any injuries*

This report is to be made part of the official record of the above employee.

### Nature of Incident:

☐ Unexcused Absence
☐ Tardiness
☐ Insubordination
☒ Improper Conduct
☒ Failure to follow instructions
☐ Leaving without permission
☒ Substandard work

☐ Violation of Safety Rules
☐ Carelessness
☐ Destruction of company property
☐ Defective and improper work
☐ Violation of company rules
☐ Theft
☐ Violation of Drug Free Workplace Policy

Facts of incident: __FOUND EMPLOYEE SLEEPING ON ROLLER__

Witnesses: __NONE__

Desired Outcome: __TERMINATION__

Signature of Manager _____ - JEROME FINASSO

I have read this report
Signature of Employee        __EMPLOYEE REFUSED TO SIGN__

I NEEDED A ROLLER TO COMPACT FILL BEING PLACED ON RAMP "I"
I WENT TO RAMP "I" TO GET ROLLER AND MR. MONTEQUIDO WHO
SHOULD HAVE BEEN ROLLING AND COMPACTING THE AREA. I
ARRIVED AT ROLLER AT APPROXIMATELY 11:30 AND FOUND MR. MONTEQUDO
SITTING ON THE ROLLER WITH HIS EYES CLOSED AND HEAD LEANING
BACK SLIGHTLY. THE ROLLER WAS NOT RUNNING. MR. MONTEQUIDO DID NOT
ACKNOWLEDGE OR RESPOND WHEN I GOT OUT OF MY TRUCK AND CLOSED
MY DOOR. I SHOUTED " HEY" AS I WAS WALKING TOWARDS ROLLER.
IT TOOK A FEW SECOND FOR MR. MONTEQUDO TO OPEN HIS EYES AND
IT WAS VERY APPARENT HE WAS SLEEPING. MR. MONTEQUDO KNOWS
TO FIND A SUPERVISOR IF HE THINKS HE IS DONE WITH HIS TASK
OR HAS ANY QUESTIONS. THIS IS SPOKEN ABOUT FREQUENTLY IN OUR
MORNING SAFETY / PRODUCTION MEETING. IT IS GIVEN IN BOTH ENGLISH
AND SPANISH. SLEEPING ON THE PROJECT IS INEXCUSABLE IN MY OPINION
WHICH LED ME TO TERMINATE MR. ~~MONTEQUDO~~ MONTEQUDO.

Make detailed sketch on back if required

JEROME NASSO
**Supervisor Name**

**Supervisor Signature**

**From:** Jerry Nasso <jerry.nasso@demoya.com>
**Sent:** Wednesday, February 10, 2021 10:23 AM
**To:** Chris DeMoya <chris.demoya@demoya.com>
**Cc:** Alisa DeMoya <alisa.demoya@demoya.com>
**Subject:** RE: Jorge Monteagudo

Chris,

Jorge did not approach me at any time while he was on the Heft 490 project to inform me of any incidents or altercations he may have been involved with from a different AG/DeMoya project. In my previous email statement I stated that I did not know Alejandro and that I was not aware of an altercation between them until after Jorge was terminated for sleeping on the roller on Ramp J of the Heft 490 project.

Please let me know if there is anything else you need.

Regards,

Jerry

RE: Jorge MonteAguado terminated  10/7/20 sleeping on the roller

Mon 1/25/2021 9:47 AM
Carlos Cardona   carlos.cardona@demoya.com

Alisa

Good morning, in regards to Jorge Monte Aguado's work performance. His time on our job (490) was limited. From day one I know he wasted no time in talking negatively about Noel Leon in his previous position. He said he felt as if he was disrespected. In my experience anytime an employee speaks negatively about a former supervisor its usually the employee that has some issues and since his remarks were about Noel I was all the more suspicious. Anyone that I've ever met in the company who has worked with Noel has the utmost respect for him in his work ethic, knowledge and employee interaction. Jorge didn't take long to prove he wasn't a model employee, he avoided work and wandered from assigned work areas and I understand he was caught sleeping while on a running roller. On one occasion I was asked by Jerry Nasso to help him explain to Miguel Quiroz,(a grader operator who was a witness to a write-up that was given to Jorge) that he would be included as a witness in the write-up on the report. I don't recall entirely what the write-up was for but by that point Jorge had already shown he didn't possess a strong work ethic.

In reading some of the statements included in this chain I understand that he (Jorge) has complaints about discrimination of his race. I find those accusations utterly ridiculous. The majority of the employees here are of Cuban decent and I myself being of Puerto Rican decent have never experienced racism in any way shape form or fashion. Employees are fairly given opportunities based on job performance. Jorge in my opinion wants something for nothing, it was proven in how he conducted himself as an employee.

Please let me know if you have any more questions.

Thank you

Carlos Cardona
Foreman

RE: Jorge MonteAguado terminated  10/7/20 sleeping on the roller

Carlos Cardona   carlos.cardona@demoya.com

Mon 1/25/2021 4:07 PM

Alisa

To add to my previous statement I served as a witness/translator when Jorge was presented with his termination/final write-up, which was the incident involving him falling asleep on the roller. It was explained to him the seriousness of his offence and why he was being terminated. He refused to sign the write-up.

**Statement of Witness**

Please Print or Type

Office Use Only: Case #

This sheet is to be filed out if there were witnesses to any on the job incident, near miss, injury, or accident. When completed, return this form to your supervisor. Attach to the investigation Report.



## Witness First Hand Account of Incident

Name of Witness: MIGUEL QUIROZ     Title: OPERATOR

Home Address: 7741 NW 77th STREET #80B

City: MIAMI     State: FL.     Zip: 33126

Phone: —     Department/Craft: ROADWAY     GRADER

Project Name: HEFT 490     Job Number: 490

Location of Incident: RAMP J     Date and Time: 10/07/2020 6:45 AM

Task being performed:

Where were you located at the time: RAMP J

Briefly describe how the incident occurred and / or what you observed

I, MIGUEL QUIROZ, HAVE ASKED MR. NASSO TO FILL THIS FORM ON MY BEHALF. THE FOLLOWING IS WHAT I WITNESSED ON 10/07/2020 @ 6:45 AM I, CARLOS CARDONA WITNESSED MR. QUIROZ REQUEST THAT MR. NASSO FILL OUT THE FORM ON HIS BEHALF AT APPROXIMATELY 6:45 AM ON 10/07/2020 I WAS ON RAMP "J" PREPARING FOR THE DAYS WORK. MR. NASSO ARRIVED AND ASKED ME TO BE A TRANSLATOR FOR A DISCIPLINARY/TERMINATION HE HAD TO GIVE TO AN EMPLOYEE. A FEW MOMENTS LATER JORGE MONTEQUIDO ARRIVED. I TRANSLATED FOR MR. NASSO THAT HE WAS TERMINATING MR. MONTEQUIDO FOR SLEEPING ON THE ROLLER. MR. MONTEQUIDO ARGUED ABOUT THE TERMINATION. MR. NASSO TOLD MR. MONTEQUIDO AGAIN THAT HE SAW HIM SLEEPING ON THE ROLLER AND THAT HE WAS BEING TERMINATED. MR. NASSO ASKED MR. MONTEQUIDO TO SIGN THE FORM AND HE REFUSED AND LEFT. MR. NASSO SIGNED AND STATED ON FORM THAT THE EMPLOYEE REFUSED TO SIGN.

*CARLOS CARDONA*

The information I have provided either in my own writing or verbally for the purpose of this form is true and correct. I understand that providing false or misleading information or omission of information on this report or any other forms relating to this claim of injury / illness may result in termination of my employment.

Witness Signature _____     Reader/ Interpreter _____

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

This information is prepared in anticipation of litigation and therefore is privileged and confidential.

Revised JAN 2020



**MIAMI·DADE**
**COUNTY**

**miamidade.gov**

**Human Resources**
Human Rights and Fair Employment Practices
111 NW 1st Street • 21st FL
Miami, FL 33128
T 305-375-2784  F 305-375-2114

February 16, 2021

**VIA EMAIL at Nathaly@peregonza.com**
Nathaly Saavedra, Esq.
Peregonza the attorneys. PLC
1414 NW 107TH AVE STE. 302
Doral, FL  33172

**Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc**
     **CHR Charge No. F-8515**
     **EEOC Charge No. 15C-2021-00021**

Dear Ms. Saavedra:

This is to inform you that your client's charge of employment discrimination based on, ☒ Title VII of the Civil Rights Act of 1964, as amended; ☐ the Age Discrimination in Employment Act of 1967, as amended; ☐ Title I of the Americans with Disabilities Act of 1990, as amended, has been deferred to the Miami-Dade Commission on Human Rights (CHR) for investigation by the U.S. Equal Employment Opportunity Commission (EEOC).

Further, the Respondent in this matter has submitted a response to the allegations raised in the above-cited charge. As part of the investigation of this claim, it is necessary to schedule a conference with your client to obtain your client's rebuttal to the Respondent's articulated defense.

Upon receipt of this letter, please email me at mercedes.obando@miamidade.gov your/your client's availability on two or three dates in order to schedule the rebuttal interview. I will review my own availability and will respond with a confirmation of the date, time, and telephone number to contact for the rebuttal interview. If for some reason, you do not receive a response, or would like to speak to a representative, you may call (305) 375-2784 and leave a message; someone will return the call within 24 hours.

Please note that if you/your client fail(s) to respond within thirty (30) days of the receipt of this letter, we will assume that you/your client are/is no longer interested in pursuing the charge and the file will be closed.

Sincerely,

Mercedes Obando, HRFEP Specialist
Commission on Human Rights, Human Rights & Fair Employment
Human Resources Department
c:  Case file

F-025B
Rev. 04/20

**Obando, Mercedes (HR)**

| | |
|---|---|
| **From:** | Obando, Mercedes (HR) |
| **Sent:** | Thursday, July 15, 2021 1:08 PM |
| **To:** | 'Nathaly Saavedra' |
| **Cc:** | Gustavo Torres |
| **Subject:** | RE: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr. |

Good afternoon Ms. Saavedra,

This above-referenced case is still under investigation since the Respondent is no longer interested in mediating the case.

Regards,

**Mercy Obando,** HRFEP Specialist
**Miami-Dade County Human Resources Department**
Human Rights  & Fair Employment Practices
111 NW 1 Street, 21st Floor, Miami, FL 33128
Office: 305-375-5762   Fax: 305-375-2114
www.miamidade.gov/humanrights

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

---

**From:** Nathaly Saavedra <nathaly@peregonza.com>
**Sent:** Thursday, July 15, 2021 11:21 AM
**To:** Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov>
**Cc:** Gustavo Torres <gustavo@peregonza.com>
**Subject:** Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

**EMAIL RECEIVED FROM EXTERNAL SOURCE**

Good Morning investigator Mercedes,

Can you advise on the status of this claim? Is the respondent not interested in mediation?
Best Regards,





**Notices:** This email may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately.
**Fair Debt Collection Practices Act:** This law firm is a debt collector and this may be an attempt to collect a debt. Any information obtained may be used for that purpose.

1

On Thu, Mar 11, 2021 at 1:49 PM Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov> wrote:

Great, thank you. I'll send you a calendar invitation in a few moements.

**Mercy Obando,** HRFEP Specialist

**Miami-Dade County Human Resources Department**

Human Rights  & Fair Employment Practices

111 NW 1 Street, 21st Floor, Miami, FL 33128

Office: 305-375-5762   Fax: 305-375-2114

www.miamidade.gov/humanrights

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

Due to the unprecedented and changing situation involving COVID-19, the Human Rights & Fair Employment Practices Division, which includes the Commission on Human Rights, is currently working remotely.  We will have limited access to regular mail, physical files, and other resources that we would otherwise have while working in the office. As a result, we ask that you please correspond with us by e-mail or send an electronic copy of any physical document you send to our offices to the e-mail address of the investigator assigned to your case or to our general inbox at ofep@miamidade.gov. We also will have limited access to certain physical and other records in response public records requests and other similar requests and ask for your patience and understanding in any delayed or untimely response. To the extent that we have stored data or information online and readily accessible, we will continue to provide it in a timely manner. We appreciate your cooperation at this difficult time. Thank you.

**From:** Cesar Roqueta <cesar@peregonza.com>
**Sent:** Thursday, March 11, 2021 1:48 PM
**To:** Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov>
**Cc:** Nathaly Saavedra <nathaly@peregonza.com>
**Subject:** Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

**EMAIL RECEIVED FROM EXTERNAL SOURCE**

Yes. 10 AM is actually perfect for us.

**Kind regards,**

**Cesar J. Roqueta**
**Paralegal**

cesar@peregonza.com



1414 NW 107th Ave, Suite 302

Doral, FL 33172

Office: (786) 650-0202

Fax: (786) 650-0200

https://www.peregonza.com



**Notices:** This email may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately.

**Fair Debt Collection Practices Act:** This law firm is a debt collector and this may be an attempt to collect a debt. Any information obtained may be used for that purpose.

---

**From:** "Obando, Mercedes (HR)" <Mercedes.Obando@miamidade.gov>
**Date:** Thursday, March 11, 2021 at 1:47 PM
**To:** 'Cesar Roqueta' <cesar@peregonza.com>
**Cc:** Nathaly Saavedra <nathaly@peregonza.com>
**Subject:** RE: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

Is 10:00 am a good time for you?  We can begin at that time if it's fine with you.

Thank you.

**Mercy Obando,** HRFEP Specialist

**Miami-Dade County Human Resources Department**

Human Rights  & Fair Employment Practices

111 NW 1 Street, 21st Floor, Miami, FL 33128

Office: 305-375-5762  Fax: 305-375-2114

www.miamidade.gov/humanrights

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

Due to the unprecedented and changing situation involving COVID-19, the Human Rights & Fair Employment Practices Division, which includes the Commission on Human Rights, is currently working remotely.  We will have limited access to regular mail, physical files, and other resources that we would otherwise have while working in the office. As a result, we ask that you please correspond with us by e-mail or send an electronic copy of any physical document you send to our offices to the e-mail address of the investigator assigned to your case or to our general inbox at ofep@miamidade.gov. We also will have limited access to certain physical and other records in response public records requests and other similar requests and ask for your patience and understanding in any delayed or untimely response. To the extent that we have stored data or

information online and readily accessible, we will continue to provide it in a timely manner. We appreciate your cooperation at this difficult time. Thank you.

---

**From:** Cesar Roqueta <cesar@peregonza.com>
**Sent:** Thursday, March 11, 2021 1:00 PM
**To:** Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov>
**Cc:** Nathaly Saavedra <nathaly@peregonza.com>
**Subject:** Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

EMAIL RECEIVED FROM EXTERNAL SOURCE

Ms. Obando:

April 8th in the AM would work for us and the client. Can you confirm this date is still available on your end and provide me with the best time to begin so I can calendar? Thanks in advance.

**Kind regards,**

**Cesar J. Roqueta**
**Paralegal**

cesar@peregonza.com



1414 NW 107th Ave, Suite 302

Doral, FL 33172

Office: (786) 650-0202

Fax: (786) 650-0200

https://www.peregonza.com



**Notices:** This email may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately.

**Fair Debt Collection Practices Act:** This law firm is a debt collector and this may be an attempt to collect a debt. Any information obtained may be used for that purpose.

**From:** "Obando, Mercedes (HR)" <Mercedes.Obando@miamidade.gov>
**Date:** Wednesday, March 10, 2021 at 4:53 PM
**To:** 'Cesar Roqueta' <cesar@peregonza.com>
**Cc:** Nathaly Saavedra <nathaly@peregonza.com>
**Subject:** RE: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

Good Afternoon Mr. Roqueta,

I'm available on the following days:

March 22, 23, 26, 29, 30

March 25 (available AM only)

April 2, 5, 6,

April 7 (available PM only)

April 8 (available AM only)

If none of these work, I can provide you with other dates .

Thank you.

**Mercy Obando,** HRFEP Specialist

**Miami-Dade County Human Resources Department**

Human Rights  & Fair Employment Practices

111 NW 1 Street, 21st Floor, Miami, FL 33128

Office: 305-375-5762   Fax: 305-375-2114

www.miamidade.gov/humanrights

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

Due to the unprecedented and changing situation involving COVID-19, the Human Rights & Fair Employment Practices Division, which includes the Commission on Human Rights, is currently working remotely.  We will have limited access to regular mail, physical files, and other resources that we would otherwise have while working in the office. As a result, we ask that you please correspond with us by e-mail or send an electronic copy of any physical document you send to our offices to the e-mail address of the investigator assigned to your case or to our general inbox at ofep@miamidade.gov. We also will have limited access to certain physical and other records in response public records requests and other similar requests and ask for your patience and understanding in any delayed or untimely response. To the extent that we have stored data or information online and readily accessible, we will continue to provide it in a timely manner. We appreciate your cooperation at this difficult time. Thank you.

**From:** Cesar Roqueta <cesar@peregonza.com>
**Sent:** Wednesday, March 10, 2021 10:13 AM
**To:** Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov>

**Cc:** Nathaly Saavedra <nathaly@peregonza.com>

**Subject:** Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

**EMAIL RECEIVED FROM EXTERNAL SOURCE**

Ms. Obando:

As it relates to the Jorge Monteagudo matter, I see that the date you proposed for the interview, 3/17/21 is not going to work for us. Would you please provide a few alternate dates so I can go ahead and coordinate with the client? Perhaps provide me with 3-4 days towards the end of March and early April. Please advise.

On Tue, Mar 9, 2021 at 9:19 AM Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov> wrote:

Good Morning Nathaly,

Let's do next Wednesday, March 17 at 10:30 a.m. or thereabouts.  Would that work?

Thank you.

**Mercy Obando,** HRFEP Specialist

**Miami-Dade County Human Resources Department**

Human Rights  & Fair Employment Practices

111 NW 1 Street, 21st Floor, Miami, FL 33128

Office: 305-375-5762  Fax: 305-375-2114

www.miamidade.gov/humanrights

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

Due to the unprecedented and changing situation involving COVID-19, the Human Rights & Fair Employment Practices Division, which includes the Commission on Human Rights, is currently working remotely.  We will have limited access to regular mail, physical files, and other resources that we would otherwise have while working in the office. As a result, we ask that you please correspond with us by e-mail or send an electronic copy of any physical document you send to our offices to the e-mail address of the investigator assigned to your case or to our general inbox at ofep@miamidade.gov. We also will have limited access to certain physical and other records in response public records requests and other similar requests and ask for your patience and understanding in any delayed or untimely response. To the extent that we have stored data or information online and readily accessible, we will continue to provide it in a timely manner. We appreciate your cooperation at this difficult time. Thank you.

---

**From:** Nathaly Saavedra <nathaly@peregonza.com>
**Sent:** Monday, March 8, 2021 12:13 PM
**To:** Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov>
**Cc:** Cesar Roqueta <cesar@peregonza.com>
**Subject:** Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

**EMAIL RECEIVED FROM EXTERNAL SOURCE**

Good Morning Mercedes,


This week is a bit hectic for me. Are you available next Monday or wednesday?


Best Regards,

**Nathaly Saavedra, Esq.**

nathaly@peregonza.com


1414 NW 107th Ave, Suite 302

Doral, FL 33172

Office: (786) 650-0202

Fax: (786) 650-0200

https://www.peregonza.com

9



**Notices:** This email may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately.

**Fair Debt Collection Practices Act:** This law firm is a debt collector and this may be an attempt to collect a debt. Any information obtained may be used for that purpose.

On Mon, Feb 22, 2021 at 9:52 AM Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov> wrote:

Good Morning,

Sorry for the delay in getting back to you.  I'm free all next week and the following, with the exception of the hour between 12:30-1:30 pm and on March 10, 2021, I am available only after 11:00 a.m..  Please let me know what works best with your client.

Thank you.

**Mercy Obando,** HRFEP Specialist

**Miami-Dade County Human Resources Department**

Human Rights  & Fair Employment Practices

111 NW 1 Street, 21st Floor, Miami, FL 33128

Office: 305-375-5762   Fax: 305-375-2114

www.miamidade.gov/humanrights

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

Due to the unprecedented and changing situation involving COVID-19, the Human Rights & Fair Employment Practices Division, which includes the Commission on Human Rights, is currently working remotely.  We will have limited access to regular mail, physical files, and other resources that we would otherwise have while working in the office. As a result, we ask that you please correspond with us by e-mail or send an electronic copy of any physical document you send to our offices to the e-mail address of the investigator assigned to your case or to our general inbox at ofep@miamidade.gov. We also will have limited access to certain physical and other records in response public records requests and other similar requests and ask for your patience and understanding in any delayed or untimely response. To the extent that we have stored data or information online and readily accessible, we will continue to provide it in a timely manner. We appreciate your cooperation at this difficult time. Thank you.

---

**From:** Nathaly Saavedra <nathaly@peregonza.com>
**Sent:** Thursday, February 18, 2021 5:58 PM
**To:** Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov>
**Cc:** Travis Hoopingarner <travis@peregonza.com>
**Subject:** Re: Jorge Monteagudo Alburquerque v. The De Moya Group, Inc. / EEOC Charge No. 15C-2021-00021/ CHR Charge F-8515 - 30-Day Rebuttal Ltr.

EMAIL RECEIVED FROM EXTERNAL SOURCE

Good Evening Investigator Mercedes,

At your convenience, please provide some proposed dates so I can check my client's availability.

Thank you.

On Tue, Feb 16, 2021 at 2:41 PM Obando, Mercedes (HR) <Mercedes.Obando@miamidade.gov> wrote:

Good Afternoon Ms. Saavedra,

This is to inform you that the respondent in the above indicated matter has submitted a response to the allegations raised in the above-cited charge of discrimination. As part of the investigation of this claim, it is necessary to schedule a conference with you and your client to obtain your rebuttal to the respondent's articulated defense.

Please contact me at Mercedes.Obando@miamidade.gov or at 305-375-5762, to confirm receipt of this letter and to schedule a conference.  If I am not available, please leave a message with your name, the CHR charge number, and a telephone number where you can be contacted and I will return your call as soon as possible.

If you fail to respond within thirty (30) days of your receipt of this letter, we will assume that you are no longer interested in pursuing the charge and the file will be closed.

Sincerely,

**Mercy Obando,** HRFEP Specialist

**Miami-Dade County Human Resources Department**

Human Rights  & Fair Employment Practices

111 NW 1 Street, 21st Floor, Miami, FL 33128

Office: 305-375-5762   Fax: 305-375-2114

www.miamidade.gov/humanrights

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.*

Due to the unprecedented and changing situation involving COVID-19, the Human Rights & Fair Employment Practices Division, which includes the Commission on Human Rights, is currently working remotely.  We will have limited access to regular mail, physical files, and other resources that we would otherwise have while working in the office. As a result, we ask that you please correspond with us by e-mail or send an electronic copy of any physical document you send to our offices to the e-mail address of the investigator assigned to your case or to our general inbox at ofep@miamidade.gov. We also will have limited access to certain physical and other records in response public records requests and other similar requests and ask for your patience and understanding in any delayed or untimely response. To the extent that we have stored data or information online and readily accessible, we will continue to provide it in a timely manner. We appreciate your cooperation at this difficult time. Thank you.

--

Best Regards,

**Nathaly Saavedra, Esq.**

nathaly@peregonza.com


1414 NW 107th Ave, Suite 302

Doral, FL 33172

Office: (786) 650-0202

Fax: (786) 650-0200

https://www.peregonza.com



**Notices:** This email may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately.


**Fair Debt Collection Practices Act:** This law firm is a debt collector and this may be an attempt to collect a debt. Any information obtained may be used for that purpose.


--

**Cesar J. Roqueta**
**Paralegal**

cesar@peregonza.com

1414 NW 107th Ave, Suite 302

Doral, FL 33172

Office: (786) 650-0202

Fax: (786) 650-0200

https://www.peregonza.com



**Notices:** This email may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately.

**Fair Debt Collection Practices Act:** This law firm is a debt collector and this may be an attempt to collect a debt. Any information obtained may be used for that purpose.

Jorge Monteagudo Albuquerque v. The De Moya Group (Case No. F-8515)

Rebuttal Questions 4/8/2021

1. What was the date of your employment with the respondent?  Who hired you?  Race/national origin. What was your position with the Respondent? How many people work for the company? Do you know their race and national origin?

2. Who was your supervisor? Race and national origin? Were you given an employee handbook or manual?  Was it given to you in Spanish?  *Política de Discriminacion? Deberá informar al supervisor o a Carli Bailey, Oficial de EEO*

3. You stated that you were discriminated against by the Respondent based on race and national origin. Please provide specific examples.

4. Was there a disciplinary process in place by the employer?  Did they provide you with a copy? Were you ever disciplined?  By whom?  Race and national origin? For what reasons?

5. Were you responsible for spotting or watching out for lines or piping while the machine operator dug?  Was a line or pipe ever hit? Was it customary to receive a discipline after this happens?  How many times did it occur to you while you were spotting?

6. Were you ever disciplined for hiding behind a light tower mass? Please explain. Who disciplined you?  Race and national origin?

7. Were you also disciplined for sitting around while you were supposed to be spotting trucks and assisting with the grader, removing the stakes so that the operator can see the grade marks? Please explain. Who disciplined you?  Race and national origin?

8. Why do you believe you were treated less favorably than the rest of the employees.  Please provide examples.  Have there been any other incidents where you feel the respondent has acted in a discriminatory manner? Please describe.

9. What is Noel Leon's race and national origin?  Did you know him previously to this job?  Did you have personal problems with this supervisor?  Please explain.

10. Did you ever report Leon to anyone else in the company and mentioned that you felt discriminated?  To whom? Race/national origin?

11. Did you know Alejandro Leon?  What race and national origin is he?  What is his position at the company?  On October 2, 2020, while Leon was attempting to do Quality Control at a site, did you purposefully block the entrance with the asphalt roller while Leon and another employee tried to enter the job site?  Please explain what occurred during that incident.

Rebuttal - Jorge Monteagudo Albuquerque
F 8515    4/8/21

1. Aug. 2020 2019 - began employment.
   Hired by Fabricio Cedillo - Ecuadoran / White
   CP- Race: White / Cuban
   Finisher-helper. How many people work for this
   company? Unsure. Haitian, Cuban, Colombians,
   Nicaraguan. White / black
2. Noel Leon - Cuban / white.
   Manual / Policies - can't remember
   Spoke with Elena LNU - Not orig / Telephone
3. Noel would speak negatively about Cubans
   " You Cubans are comemierdas - por eso no quiero trabajar son unos vagos "
   Asked him to bring the roller - (2 ruedas de hierro)
   llegó con el rolo de gomas
   ⓧ It started raining and he called everyone to come in
   Manny LNU - Foreman ~ Cuban / White threw to
4. Never disciplined but...
5. Operator dogging broke piping
   Happened once
6. Not true
7. Not true
8. Goes to work and is not a tattle tale
   ~~Never was~~ Didn't have the rapport
9. Noel Leon - White / Cuban

Workers are treated poorly.

Noel - called him to go to 874
137 & 138 - working → You have to go to
874, I have a bad tire afraid to get on
the expressway, went b/c he was
threatened.

10. Chris De Moya - ~~owner~~ - Cubans / White
@ ~~Mall~~ Having problems w/ Noel and
he said "Cubans don't work" and I
need you to transfer.
New project - Jerry LNU (American / White)

11. Did know Alejandro Leon - Cuban / White
Inspector - ~~be~~ Supervisor
He did not block the entrance
Got off from the truck and went up and
hit him in the chest
Witnesses - another company
He called Manny, supervisor and told ~~him~~
him he would speak with them.

12. Left work on ~~10/0~~ 10/2 - Palmetto Bay
Tuesday took the report to Pedro LNU
Name unknow - driver who told H.R.
him that Alejandro was looking for him

13. Tony - DOT inspector
Problems w/ Noel, hijo del Noel.

14. Tony Hernandez — DOT Inspector
    786-251-8056                          Luis Rivas
    Operator → Miguel Quiroz              Nicaraguan
    786-343-0714
    Francisco Baldelomar → coworker.
    786-229-1110

15. Oct. 7, 2020, denies allegations,
    that he was sleeping
14/17. Dept. of Labor — No jurisdiction
    working as an operator but not getting
    paid for it

Xloel — Luis Hernandez (Venezuelan) White?
found him sleeping on the job
⚹ Sept. 2020 - find out

                                    Project Engineer
4/15/21- Called Tony Hernandez — MDX MDX
955 am                              Consultant
— He wasn't in the project but he filed
a complaint against an employee at
De Moya. He had a physical altercation w/
Alejandro Leon but did not file charges
The De Moya Group is very powerful, a lot
    of political connections.
⚹ Has worked w/ De Moya Group twice

Equipment Operator

Honduran

4/15/21 - Miguel Quiroz   10:00 am
Called - No answer, not even vmail
2nd try: 10:20 am - N/A

4/15/21 Francisco Baldelomar   10:03 am
pls call back 3:30 pm          Nicaragua /
                                Brown
Foreman Sometimes bosses

Superintendent went off on him and
Jorge

➜  Noel Leon went off on them -
b/c of work. If you don't like it,
leave, I can hire 10 others better than
you "

He was like that [crossed out] almost w/
everyone but he had an issue w/
Jorge (LNU) b/c he complained against him.

Never witnessed Jorge doing anything wrong
but in construction, employees get heat
exhaustion and are tired and may rest
under a tree. They're humans, not machines

- Noel also had problems w/ Miguel Ormoz,
  Operator de moto niveladora
Class 3A - ( Only a can drive)
He left the co.

MIAMI-DADE COMMISSION ON HUMAN RIGHTS
INVESTIGATIVE REPORT

**RE:**   CHR Charge No. F-8515
         EEOC Charge No. 15C-2021-00021

**Charging Party**                        **Respondent**
Jorge Monteagudo Albuquerque              The de Moya Group, Inc.
3261 NW 18 Terrace                        14600 SW 136 Street
Miami, FL  33125                          Miami, FL 33186

**STATEMENT OF DETERMINATION**

In accordance with Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); Chapter 760 of the Florida Statutes, as amended ("Chapter 760"), and Chapter 11A of the Miami-Dade County Code, as amended ("Chapter 11A"), it is determined that there is **no probable cause** to believe that Charging Party was subjected to unlawful employment actions. Detailed below are the investigative findings, which led to this determination.

1. Jorge Monteagudo Albuquerque ("Charging Party") alleged he was subjected to unlawful discrimination and retaliation based on his race (Hispanic) and national origin (Cuban). He alleged that in August 2020, Noel Leon ("N. Leon") (Hispanic/Cuban), Supervisor, subjected him to discriminative and disrespectful comments, such as "Cubans are lazy." After complaining to the owner about the discriminatory treatment, Charging Party was transferred to another project under the supervision of Manuel Comes[1] (Hispanic/Cuban). On October 2, 2020, Alejandro Leon ("A. Leon") (Hispanic/Cuban), N. Leon's son, went to his work site to harass him. He alleged that A. Leon physically attacked him and threatened him. Charging Party reported the incident to Comes, to no avail. Consequently, on October 5, 2020, Charging Party filed a police report because he was concerned for his safety. The following day, Charging Party reported the incident to Jerome Nasso[2] (White/American), Superintendent. On October 7, 2020, Elena (LNU), from Human Resources, advised Charging Party they would be investigating. Later that same day, Nasso presented him with a write up for "sleeping on the job." Charging Party refused to sign the document and was terminated. He alleged that the charges were false and were used as a pretext for his termination.

2. Charging Party is a person claiming to be aggrieved under Title VII, Chapter 760, and Chapter 11A. On October 27, 2020, he filed the charge of discrimination with the Miami-Dade Commission on Human Rights (CHR); within 180 days of the alleged discrimination. The case was then forwarded to the Equal Employment Opportunity Commission (EEOC) for dual-filing.

3. The de Moya Group, Inc., ("Respondent") is an engineering and construction firm that constructs roads and bridges. Respondent conducts business in Miami-Dade County and is an "employer" within the meaning of Title VII, Chapter 760, and Chapter 11A.

---

[1] Charging Party did not identify Comes' last name in his Charge of Discrimination. Respondent provided the complete name at a later date.
[2] Charging Party did not identify Nasso's last name in his Charge of Discrimination. Respondent provided the complete name at a later date.

## RESPONDENT'S RESPONSE

1. In their position statement, Respondent stated they construct roads and bridges and due to the dangers of the job, they must make sure that their employees understand that there is no margin for error as safety comes first.

2. Respondent reported that Charging Party had been involved in several incidents and his attitude and failure to complete his assigned work had been well documented.

3. Respondent stated Charging Party was not satisfied working for the company. In September 2020, Charging Party walked into their main office with a "threatening demeanor," scaring the staff, and asked to speak with Christopher de Moya (Cuban American), owner. Susan Giraldo (Hispanic/Colombian), employee, served as interpreter translating from Spanish to English. In a raised voice, Charging Party stated he felt disrespected by N. Leon, but never mentioned discrimination based on race or national origin. He requested to be moved to another project. On September 14, 2020, Respondent transferred him to their Turnpike/Okeechobee 490 project.

4. Respondent stated N. Leon has been employed with them since 2007, and this is the first complaint made against him since he was hired. They reported that N. Leon is "very well respected by his peers."

5. Respondent refuted Charging Party's statement that Comes told him N. Leon had warned him about Charging Party being "problematic." Respondent stated N. Leon and Comes did not know each other, did not work together and did not have each other's phone numbers.

6. Respondent offered that once Charging Party was transferred, he again was unreliable in the completion of his assignments. He blocked A. Leon, supervisor, from entering the project to perform his Quality Control work. A. Leon became upset and got out of his truck where an argument ensued, and A. Leon told Charging Party to stop talking negatively about his father. On October 5, 2020, Charging Party filed a police report stating he was assaulted by A. Leon. Jose Batista (Hispanic/Cuban), another employee that was present during the incident, did not witness the assault.

7. Respondent stated that on October 6, 2020, Nasso terminated Charging Party for sleeping on a roller. However, his behavior from February through October 2020, included not following instructions, not completing his tasks, and not working safely.

8. Respondent stated Charging Party's work record has not been exemplary; he was given chance after chance; "it [was] his own behavior that got him terminated;" and "he has never taken responsibility for his actions." Case in point, Charging Party blamed Nasso for his termination.

9. Respondent stated they welcome employees of all nationalities and races and there was no discrimination nor retaliation against Charging Party. Charging Party was not treated any differently than any other employee. He was expected to perform his job and was warned many times about focusing and completing his work. Charging Party stood up to his supervisors by not performing any job he did not feel like doing and complained about working with certain crews. He was seen not performing his work, sitting around, leaving his work zone, and hiding.

## CHARGING PARTY'S REBUTTAL

1. During his rebuttal conference, Charging Party stated that he began his employment in August 2019 as a Finisher/Helper. He was hired by Fabricio Cedillo (Hispanic/Ecuadorian), Project Manager, and was assigned to work under the supervision of N. Leon.

2. Charging Party stated he did not know how many employees worked there, however, there people of various nationalities such as Haitian, Cuban, Colombian, and Nicaraguan, and their races varied.

3. Charging Party reported that he began having problems with N. Leon because he would make negative comments about Cubans (in Spanish), such as "you don't want to work because you're lazy." Specifically, he described an incident where Charging Party was asked to bring a roller tractor and he brought back the one with the rubber tires instead of the one with steel tires. N. Leon then said to him, "You Cubans are comemierdas," (you Cubans are shit eaters).

4. Charging Party stated workers were treated poorly. For example, he stated that while he was already working on a project on 137th Street, N. Leon called him to work on road 874. Charging Party advised him that he had a bad tire and was afraid to get on the expressway, but N. Leon threatened him to go or get fired; Charging Party ended up going as assigned.

5. Charging Party stated he was assigned as a spotter and while the operator was digging, a pipe broke. He acknowledged he was disciplined for that, but also mentioned that it only happened once. He denied any all other incidents and/or disciplinary actions Respondent claimed he was involved in.

6. Charging Party stated he thought he was treated less favorably than others because "he is not there to socialize; he is there to work." He stated he did not have a rapport with his supervisor, and he is not a snitch.

7. Charging Party stated he reported N. Leon's treatment to de Moya and was consequently transferred to another project under Nasso's supervision.

8. Charging Party mentioned that on October 2, 2020, while he was working on the new project, A. Leon drove up to him, got out of his truck, went up to him, and hit him on the chest. Charging Party denied blocking the entrance and stated there was another company working there that witnessed the incident; however, he did not give any specific names as witnesses to the incident. Charging Party stated he reported the incident to Comes, who told him he would speak with N. Leon.

9. Charging Party said that on October 5, 2020, the day after the incident with A. Leon, he filed a police report; the following day he gave the report to Pedro (LNU), Human Resources.

10. Charging Party alleged that both Leons, father and son, had issues with Tony Hernandez, DOT Inspector, and offered him as a witness. He also offered the name of two other co-workers as witnesses: Francisco Baldelomar (Hispanic/Nicaraguan) and Miguel Quiroz (Hispanic/Honduran).

11. Charging Party vehemently denies the allegations that on October 7, 2020, he was sleeping on the job; the cause for his termination.

**SUMMARY OF FINDINGS**

1.  Respondent submitted a copy of employees that were hired and discharged between the period of June 1, 2020, through December 31, 2020. There were 41 individuals hired whose national origins included: (21) Americans, (14) Cubans, (1) Indian, (1) Jamaican, (1) Colombian, (1) Mexican, (1) Israeli and (1) unknown. Those employees identified as (1) Asian, (6) Black, (28) Hispanic, and (6) White. There were 60 employees terminated, 15 were listed as involuntary discharges, including (8) Americans, (6) Cubans and (1) Israeli. Those employees identified as (2) Black, (10) Hispanic, and (3) White. None of those employees were under N. Leon's supervision.

2.  Respondent submitted the New Hire Orientation package Charging Party signed on August 18, 2019, and a checklist of an Overview of General Safety. Also included was a "Policy of Safety," "Discrimination Policy," "Equal Opportunity" flyer, "Rights and Responsibilities of Employee Under FMLA," all translated in Spanish and signed by Charging Party on August 3, 2019.

3.  Respondent reported that on February 21, 2020, Charging Party served as a spotter when an operator using an excavator hit the overhead AT&T lines. Neither of the spotters assigned to that job warned the operator that there was a utility line above him. Due to this error, damage to the lines occurred and the operator received a written disciplinary warning; the two spotters, including Charging Party, received verbal warnings.

4.  Respondent also submitted a Disciplinary Warning presented to Charging Party dated March 24, 2020, describing an incident where the crew hit a water line. It was further described in a separate statement that Charging Party was one of two spotters who failed to warn the operator there was a water line underground. All three employees received warnings.

5.  Respondent offered that on July 16, 2020, after N. Leon and a Construction Engineer Inspector had just inspected and passed the base rock on a project, Charging Party drove through the base rock rutting the length of the base rock. Due to Charging Party's carelessness, the base rock needed to be fixed and reinspected. N. Leon scolded both Charging Party and Baldelomar. The following day N. Leon had a safety meeting with the crews to ensure that would not happen again.

6.  Respondent explained that Charging Party asked N. Leon and Cedillo to switch him to nights, but they were unable to switch him permanently because Christian Ferreras (Hispanic), the night Supervisor, had already hired new employees on his crew. Cedillo stated Charging Party requested night work or overtime and he (Cedillo) and Leon had him installing temporary barrier walls, fixing MOT, and traffic shifts. Cedillo stated Charging Party made the request, but never mentioned he had problems with N. Leon; he just said that most of his jobs had been working nights and he liked working nights. In an attempt to help Charging Party, Cedillo then asked Ferreras if he needed anyone at night, but was told he had already hired some guys.

7.  Additionally, in his written statement, Cedillo stated Charging Party was involved in a physical altercation during his lunch break and away from the job site. Charging Party had been with Baldelomar and Angelica Rodriguez, co-worker, and an unknown man said something disrespectful to Rodriguez, which lead Charging Party to strike the man. The man called the police and they showed up to the main office looking for him and took his statement. Cedillo stated he did not know what happened after that incident.

8.  Respondent stated that on September 4, 2020, N. Leon assigned Charging Party to clean the window between the road shoulder and the temporary barrier wall. The next day, N. Leon found that the work had not been performed. Leon asked Charging Party to join up with Fermin Jimenez (Hispanic/Mexican), Equipment Operator, to complete the prior day's assignment. Charging Party responded that he did not work with Jimenez. At that point, N. Leon advised

Charging Party to work together or he would be terminated. N. Leon made the decision to give Charging Party another chance.

9.  In response to Charging Party's allegation that A. Leon had had an incident not only with him, but also with Hernandez, Respondent provided Workplace Incident Reports of incidents between Tony Hernandez (Hispanic/Dominican), FDOT Inspector, and other employees. The incidents were as follows:

   - Workplace Incident Report – March 2017. Incident between Hernandez and Cedillo where Hernandez and Eduardo Rodriguez, position unknown, had to be called to a job site and then Hernandez telling Cedillo that he had been "home, smoking a cigar, and drinking wine." Cedillo asked why would show up at the site inebriated and then later Hernandez and Rodriguez denied ever saying that.
   - Workplace Incident Report – Following the March 2017 incident. Another report was provided of issues between Hernandez and Cedillo about Hernandez making comments such as saying that Cedillo weas "flexing his pechito (chest)." Cedillo asked him whether Hernandez had been inebriated again, both Hernandez and Rodriguez denied that ever happened.
   - Workplace Incident Report – June 16, 2018. Incident between Hernandez and Lisa Kavadas, position unknown, where during a gas line rupture, Hernandez told Kavadas she was doing a bad job and provoking her. She ended up screaming at him.
   - Workplace Incident Report – Following the June 16, 2018, incident. Another report was provided of issues between Hernandez and Cedillo about Hernandez approaching him during an emergency situation where water had to be pumped and Hernandez told him that he didn't have a dewatering permit.
   - Workplace Incident Report - July 2018. Stated that Hernandez had an incident with Osmani Perez, Slout Group (SG) operator, regarding a damaged structure and that Hernandez spoke in an aggressive manner with employee.
   - Workplace Incident Report - July 24, 2018. Issues between Hernandez, Rodriguez, and Cedillo, regarding their treatment of Cedillo.
   - Workplace Incident Report - August 2018. Argument between Hernandez and Alain A. Perez, position unknown. Noel had to be called onsite to resolve the issue.
   - Workplace Incident Report - November 27, 2018. Hernandez and A. Leon had an argument over the way Hernandez spoke with an SG operator, consequently bringing dMG and CEI management to convene on the site to continue the base inspection and clear things between the employees.  Noel had to be called onsite to resolve the issue.
   - Workplace Incident Report - November 27, 2018. Hernandez and N. Leon had an argument regarding a curb measurement and that Hernandez would not approve it.
   - Workplace Incident Report – March 27, 2019. Issue between Hernandez and Perez where Hernandez again spoke to Perez in a belligerent manner regarding moving a loader. Noel had to be called onsite to resolve the issue.
   - Workplace Incident Report – Unspecified date. Issue between Hernandez and Mario Adan, position unknown, regarding Hernandez approaching employee in a disrespectful and vulgar manner, proceeding to yell and curse at Adan. Cedillo had to be called onsite to resolve the issue.

10. Respondent provided a statement from Elena Valdes, (Cuban), Director of Insurance and Risk Management. She provided a summary of the events as described to her during a call on October 7, 2020, by Charging Party. She also provided a statement of an e-mail she received on October 7, 2020, from de Moya, stating that he had spoken with A. Leon and obtained a version of his events. He also commented that he could not recall any other employee complaining about N. Leon, and that N. Leon and Nasso did not know each other or have each other's phone numbers. De Moya mentioned that Charging Party's termination had nothing to do with what had happened previously and also stated that "the firing doesn't seem to have anything to do with the police filing as no one knew about it." According to de Moya,

Batista was interviewed as a witness, and he confirmed that A. Leon did not mount the roller nor make any physical contact with Charging Party. Valdes also noted that she again spoke with Charging Party on October 15, 2020, who told her during that call that A. Leon had been involved in an assault incident with Hernandez, the FDOT inspector, and she asked him to call her back with the contact information of the individual that could corroborate that. Later that afternoon, she received an e-mail from de Moya, who advised that the witness said "the assault never took place," and the disciplinary report Charging Party refused to sign was filled out and not blank like Charging Party alleged. His opinion was that Charging Party was terminated for sleeping on the job and that "no further action is required by us."

11. Respondent submitted a written statement from Giraldo, dated January 22, 2020, where she described Charging Party walking into the main office to speak with de Moya and recalls Charging Party's demeanor as "very mean." She stated Charging Party began pointing fingers at de Moya and his voice began to escalate as he spoke to him. He was asked to calm down and Charging Party requested to be transferred because he had been having issues with N. Leon and felt disrespected by him, however, he never mentioned discrimination. Giraldo stated she has been employed with the company for four (4) years and had never felt discriminated or belittled, and stated, "this company has upheld a professional atmosphere to the point where it has felt more like a second family."

12. Respondent submitted Employee Accident/Disciplinary Reports written by Comes in reference to Charging Party's performance. One report dated September 29, 2020, is a Written Warning for "Failure to Follow Instructions." The incident summary stated Charging Party was assigned to spot trucks and help with the grader, cleaning the stakes on the ground so the operator could see the grade mark. Charging Party was warned about sitting around and not working and not following instructions. Another undated report described Charging Party was warned for constantly disappearing out of his work zone. Comes approached him while he was hiding behind a light tower mass and told him "if he was caught again not being in his work zone [he] was going to be written with a disciplinary report." None of these reports were signed or dated by Charging Party.

13. Respondent submitted a Statement of Employee and the Miami-Dade Police Offense-Incident Report for the October 2, 2020, incident between Charging Party and A. Leon. A. Leon provided a statement noting he was performing an inspection with Batista and when they arrived at the inspection site, they noticed a roller operator was blocking the only existent path to the place where the inspection was to take place. He stated they started pointing fingers to get him out of the way, but Charging Party "refused to move." He stated he got out of the truck to tell him he was blocking access to the site. When he returned to the truck, Batista told A. Leon that was the man that had been making false and negative comments about N. Leon (his father). He then stated he got out of the truck again and asked Charging Party why he was making those kind of comments, "knowing what type of person and great supervisor [N. Leon] is." A. Leon stated Charging Party accepted that N. Leon is a "respectful and great person," and A. Leon's last words to him were "thank you."

14. Respondent also submitted a statement from Batista stating Charging Party had a "very rude attitude requesting us to move from his path," but they could not move since there were temporary walls on one side and a slope on the other. Batista further described that Charging Party "refused to take action and kept his attitude against us." He then described A. Leon got off the truck to talk to the worker and explain the reason they could not move. He stated A. Leon explained to Charging Party that "he was not having his best behavior when referring to a supervisor," but that was all that happened.

15. Respondent submitted a Termination of Employment form written by Nasso describing how Charging Party was found sleeping on a roller. He further stated, "all employees are told during our daily production meeting that when they finish their tasks or are not sure what to do, they

are to find a superintendent in the area to be given a new task. Sleeping on a roller is inexcusable." Charging Party refused to sign the form. Additionally, Respondent submitted an e-mail from Nasso to de Moya stating Charging Party never informed him of any incidents or altercations he may have been involved in previously. Nasso asserted that he did not know Leon and was not aware of any altercation between them, and that Charging Party was terminated for sleeping on the roller.

16. Respondent provided an additional statement from Carlos Cardona, Foreman, where he described Charging Party and stated, "from day one I know he wasted no time in talking negatively about Noel Leon in his previous position." Cardona offered that those who have worked with N. Leon have the utmost respect for him and his work ethic, his knowledge and employee interaction. He stated Charging Party was not a "model employee," avoided work and wandered from assigned work areas. He also stated Charging Party's complaints of discrimination of his race are "utterly ridiculous…the majority of the employees here are of Cuban decent [sic]." He stated that as a person of Puerto Rican descent, he has never experienced racism in any way, shape, form, or fashion. He stated that "employees are fairly given opportunities based on job performance." He also offered that he served as a witness/translator when Charging Party was presented with his termination. Charging Party was explained the seriousness of the offense, but he refused to sign the write-up.

17. On April 15, 2021, an interview was conducted with Tony Hernandez, MDX Project Engineer Consultant. Hernandez stated that he worked as a consultant for MDX, and he left the project in September 2020. He stated he had a physical altercation with A. Leon, but did not file charges. He stated that "the de Moya Group is very powerful, they a have a lot of political connections." Hernandez mentioned no other incidents relating to this charge.

18. On April 15, 2020, an interview was conducted with Francisco Baldelomar (Brown/ Nicaraguan), Foreman. He stated that sometimes "bosses/superintendents went off" and N. Leon "went off on them because of work." He mentioned that Leon was like that almost with everyone, but he had an issue with Charging Party because he complained against him. He said he never witnessed Charging Party doing anything wrong, but that in construction, employees get heat exhaustion and are tired and may rest under a tree; "they're humans, not machines." He also mentioned that Leon had problems with Quiroz, but did not provide specific examples. Quiroz has since left the company.

19. On April 15, 2020, attempts were made to schedule an interview with Miguel Quiroz, Equipment Operator, however he never returned the phone calls.

## ANALYSIS

**Disparate Treatment Claim:**

Courts use the analytical framework established by the Supreme Court in *McDonnell Douglas* when a plaintiff offers circumstantial evidence to prove a Title VII claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff may establish a *prima facie* case of discrimination by showing that: 1) s/he was a member of a protected group, 2) s/he was qualified for the job, 3) s/he was subjected to an adverse employment action, and 4) the employer treated similarly situated employees outside of his/her class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). A plaintiff may show that he or she was subjected to an adverse employment action by showing a serious and material change in the terms, conditions, or privileges of employment. *Id.* at 971.

Once the plaintiff has established his or her *prima facie* case of discrimination, a rebuttable presumption arises establishing that the employer acted unlawfully. *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir. 2010).  The employer may rebut the

presumption of discrimination by simply articulating a legitimate non-discriminatory reason for its action. *Alvarez,* 610 F.3d at 1264. After the employer has proffered a legitimate non-discriminatory reason for its action, the burden shifts back to the employee to produce evidence that the employer's proffered reason is pretext for discrimination. *Id.* To establish pretext, the plaintiff may identify "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered explanation. *Brooks v. County Com'n of Jefferson County, Ala.,* 446 F.3d 1160, 1163 (11th Cir. 2006). Therefore, pretext may be established only when it is shown that the employer's reason was false, and that discrimination was the real reason. *Id.* Ultimately, the burden of persuasion remains with the plaintiff to prove that he or she was intentionally discriminated against. *Id.*

Charging Party alleged he was discriminated against based on his race (Hispanic) and national origin (Cuban) when he was terminated. However, Charging Party provided no evidence that similarly situated individuals outside of his protected class were treated better or different than him. In fact, witnesses offered that N. Leon was highly respected among his peers and no other employee had ever made a complaint against him. A witness offered that N. Leon went off on them, but that he was like that with almost everyone. There was no indication that Charging Party was reprimanded because of his race and/or national origin. Additionally, the Respondent provided a list of new hires for a six-month period in 2020, where it shows that fourteen (14) out of forty-one (41) persons hired, were of Cuban descent and twenty-eight (28) of them identified as Hispanic. They also reported that during that same period, fifteen (15) employees were involuntarily terminated. Six (6) of those employees were of Cuban descent, but none of them were under Leon's supervision. This does not seem like the actions of a company with discriminatory animus based on race or national origin.

Moreover, Respondent provided a legitimate, non-discriminatory business reason for their actions. Respondent stated Charging Party had been previously disciplined for various work performance deficiencies and their sole reason for terminating him was because he fell asleep on the job. Charging Party admitted he was disciplined once before, but denied receiving any other disciplinary action.

Overall, Charging Party has not provided, nor has this investigation revealed, any evidence that Respondent's reason for the action taken was pretextual. Pretext may be established only when it is shown that the employer's reason was false, and that discrimination was the real reason. *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir. 2010). Ultimately, the burden of persuasion, which remains with the Charging Party to prove that he was intentionally discriminated against, was not met.

**Retaliation Claim:**

A *prima facie* case for retaliation is established when an employee shows that: 1) the employee engaged in statutorily protected expression, 2) the employee suffered an adverse employment action, and 3) the adverse employment action was causally connected to the protected expression. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).

In *University of Texas Southwestern Medical Ctr. v. Nassar,* No 12-484 (June 24, 2013), the U.S. Supreme Court held that the plaintiff must demonstrate that the employee's protected activity was the but-for cause of the alleged adverse action by the employer. Relying on what the Supreme Court views as "textbook tort law," this "standard requires the plaintiff to show 'that the harm would not have occurred' in the absence of –that is, but for – the defendant's conduct.

In this case, Charging Party claimed he was terminated in retaliation for complaining about his supervisor and his supervisor's son. However, he provided no evidence that he participated in a protected activity for the purposes of retaliation under the anti-discrimination laws. Although there was evidence that he complained, it appears that the complaint was centered on the alleged

physical altercation with A. Leon. Further, no one knew, except for Human Resources, that Charging Party had filed a police report against A. Leon for the altercation.

Moreover, Respondent articulated a legitimate, non-retaliatory business reason for terminating Charging Party's employment, as discussed above – Charging Party was found sleeping on the job while mounted on a roller and was terminated by Nasso. There was no evidence presented that Nasso and Leon knew each other or had each other's phone number. Furthermore, there was no evidence Charging Party's termination had anything to do with any previous incidents he may have had with his previous supervisor.

Charging Party has not provided, nor has this investigation revealed, any evidence that the Respondent's offered reasons for their actions were pretextual. Ultimately, the burden of persuasion, which remains with the plaintiff to prove that he was intentionally retaliated against, was not met.

## CONCLUSION

Based on the foregoing, it is determined that there is no probable cause to believe a discriminatory and/or retaliatory employment practice has occurred.

## RIGHT OF APPEAL

Under Chapter 11A, Code of Miami-Dade County, as amended, either party has the right to ***request an appeal*** of the findings or recommendations of the CHR and a hearing on such appeal shall be granted. **A request for appeal must be made via email to ofep@miamidade.gov or via certified mail with return receipt addressed to: Erin A. New, Division Director, Human Rights & Fair Employment Practices, Human Resources Department, 111 NW 1 Street, 21st Floor, Miami, Florida, 33128. Appeal requests submitted via facsimile or via telephone will not be accepted.** The request must be emailed or postmarked within fifteen (15) days of the date the you receive the final determination, which is calculated based on the date the e-mail was sent to the e-mail address you provided this agency or the date you received the final determination via USPS certified mail [if you did not consent to receive documents electronically]. If no appeal is timely filed, the recommendations shall become final orders and may be enforced in Circuit Court.

Dated this  1st  day of  December  , 2021.

*Erin A. New*
_____
Erin A. New, Division Director
Commission on Human Rights, Human Rights and Fair Employment Practices
Human Resources Department

Ec: Case file

**MIAMI-DADE COMMISSION ON HUMAN RIGHTS**
111 NW 1 Street, 21ˢᵗ Floor, Miami, FL  33128
P. (305) 375-2784 F. (305) 375-2114
ofep@miamidade.gov
www.miamidade.gov/humanrights

**MIAMI-DADE**
**COUNTY**
miamidade.gov

| | |
|---|---|
| **VIA EMAIL at Nathaly@peregonza.com**<br><br>**Nathaly Saavedra, Esq.**<br>**Peregonza the Attorneys, PLC**<br>**1414 NW 107 Avenue, Suite 302**<br>**Doral, FL  33172** | **CHARGING PARTY:**<br>**Jorge Monteagudo Alburquerque** |
| | **RESPONDENT:**<br>**The de Moya Group, Inc.** |
| | **CHR CHARGE No.**<br>**F-8515** |
| | **EEOC CHARGE No.**<br>**15C-2021-00021** |

## Statement of Determination

In accordance with 1) ☒ Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"); 2) ☐ The Age Discrimination in Employment Act of 1967, as amended ("ADEA"); 3) ☐ Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Chapter 11A of the Miami Dade County Code, as amended ("Chapter 11A"), it is determined that there is no probable cause to believe that a discriminatory employment practice has occurred. A summary of the investigative findings is contained in the enclosed Investigative Report.

## Request for Substantial Weight Review

Either party may request a review of this determination from the U.S. Equal Employment Opportunity Commission (EEOC). To secure a review, you must mail your written request within fifteen (15) days of receipt of this letter to: *US EEOC, State & Local Coordinator, Miami Tower, 100 SE 2ⁿᵈ Street, Suite 1500, Miami, FL 33131.* Otherwise, the EEOC will generally adopt our determination in this case.

## Request for Hearing

Please note that under Chapter 11A, Code of Miami-Dade County, as amended, a party aggrieved by the enclosed determination may ***request an appeal*** of this determination. To do so, you must email your request to ofep@miamidade.gov or mail your request to: Director, Human Rights & Fair Employment Practices, Human Resources Department, 111 NW 1ˢᵗ Street, 21ˢᵗ Floor, Miami, FL 33128. The request **must be emailed or postmarked within fifteen (15) days of the date the you received the final determination**, which is calculated based on the date the e-mail was sent to the e-mail address you provided this agency or the date you received the final determination via USPS certified mail [if you did not consent to receive documents electronically]. If a timely request for appeal is received, you will be notified of the appeal procedures and a hearing date will be scheduled. If no appeal is timely filed, this determination will become final and the charge will be dismissed.

## Notice of Right to Sue

Once the CHR's determination is adopted, the EEOC will generally issue you a Notice of Right to Sue. The Notice of Right to Sue allows you to commence a civil action in U.S. District Court within ninety (90) days of receipt of the Notice. No administrative hearing will be held on this matter by the CHR once a civil action is commenced in court.

Please contact Mercedes Obando, HRFEP Specialist, at (305) 375-5762, or via e-mail at mercedes.obando@miamidade.gov, should you have any questions regarding this matter.

| Date<br><br>**December 1, 2021** | **Erin A. New, Division Director**<br>Human Rights & Fair Employment Practices<br>Human Resources Department | Signature<br><br>*Erin a. New* |
|---|---|---|

**Garcia, Christine (HR)**

| | |
|---|---|
| **From:** | Garcia, Christine (HR) |
| **Sent:** | Monday, December 6, 2021 7:55 PM |
| **To:** | Nathaly Saavedra |
| **Cc:** | Dana, Jacqueline (HR); Obando, Mercedes (HR) |
| **Subject:** | FW:  Jorge Albuquerque v. The de Moya Group, CHR Case No. F-8515 |
| **Attachments:** | 8515_IR_Jorge Monteagudo Albuquerque.pdf; 8515 - Determination to CP atty.pdf |

Please see attached time sensitive correspondence regarding the above indicated matter.  If you have any questions or concerns, feel free to email me or our agency at ofep@miamidade.gov.

Thank you,

**Christine M. Garcia**, PHR, HRFEP Manager
**Miami-Dade County Human Resources**
Human Rights & Fair Employment
P:305-375-2784 F:305-375-2114
Christine.Garcia@miamidade.gov
www.miamidade.gov/humanrights
*Human Resources… Matters!*
*Email messages are subject to Chapter 119 of the Florida Statutes concerning public records and thus subject to disclosure.*

**Garcia, Christine (HR)**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | Nathaly Saavedra |
| **Sent:** | Monday, December 6, 2021 7:55 PM |
| **Subject:** | Relayed: FW:  Jorge Albuquerque v. The de Moya Group, CHR Case No. F-8515 |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

Nathaly Saavedra (nathaly@peregonza.com)

Subject: FW: Jorge Albuquerque v. The de Moya Group, CHR Case No. F-8515

**MIAMI-DADE COMMISSION ON HUMAN RIGHTS**
111 NW 1 Street, 21st Floor, Miami, FL 33128
P. (305) 375-2784 F. (305) 375-2114
ofep@miamidade.gov
www.miamidade.gov/humanrights

**MIAMI-DADE**
**COUNTY**
**miamidade.gov**

| | |
|---|---|
| **VIA EMAIL at Alisa.Demoya@demoya.com**<br><br>**Alisa de Moya, Esq.**<br>**The de Moya Group, Inc.**<br>**14600 SW 136 Street**<br>**Miami, FL 33186** | **CHARGING PARTY:**<br>Jorge Monteagudo Alburquerque |
| | **RESPONDENT:**<br>The de Moya Group, Inc. |
| | **CHR CHARGE No.**<br>F-8515 |
| | **EEOC CHARGE No.**<br>15C-2021-00021 |

## Statement of Determination

In accordance with 1) ☒ Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"); 2) ☐ The Age Discrimination in Employment Act of 1967, as amended ("ADEA"); 3) ☐ Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Chapter 11A of the Miami Dade County Code, as amended ("Chapter 11A"), it is determined that there is **no probable cause** to believe that a discriminatory employment practice has occurred. A summary of the investigative findings is contained in the enclosed Investigative Report.

## Request for Substantial Weight Review

Either party may request a review of this determination from the U.S. Equal Employment Opportunity Commission (EEOC). To secure a review, you must mail your written request within fifteen (15) days of receipt of this letter to: *US EEOC, State & Local Coordinator, Miami Tower, 100 SE 2nd Street, Suite 1500, Miami, FL 33131.* Otherwise, the EEOC will generally adopt our determination in this case.

## Request for Hearing

Please note that under Chapter 11A, Code of Miami-Dade County, as amended, either party may *request an appeal* of this determination. To request an appeal you must email your request to ofep@miamidade.gov or mail your request to: Director, Human Rights & Fair Employment Practices, Human Resources Department, 111 NW 1st Street, 21st Floor, Miami, FL 33128. The request **must be emailed or postmarked within fifteen (15) days of the date the you received the final determination**, which is calculated based on the date the e-mail was sent to the e-mail address you provided this agency or the date you received the final determination via USPS certified mail [if you did not consent to receive documents electronically]. If a timely request for appeal is received, you will be notified of the appeal procedures and a hearing date will be scheduled. If no appeal is timely filed, this determination will become final and the charge will be dismissed.

## Notice of Right to Sue

Once the CHR's determination is adopted, the EEOC will generally issue the Charging Party a Notice of Right to Sue. The Notice of Right to Sue allows the Charging Party to commence a civil action in U.S. District Court within ninety (90) days of receipt of the Notice. No administrative hearing will be held on this matter by the CHR once a civil action is commenced in court.

Please contact Mercedes Obando, HRFEP Specialist, at (305) 375-5762, or via e-mail at mercedes.obando@miamidade.gov, should you have any questions regarding this matter.

| Date | | Signature |
|---|---|---|
| **December 1, 2021** | **Erin A. New, Division Director**<br>Human Rights & Fair Employment Practices<br>Human Resources Department | *Erin A. New* |

**Garcia, Christine (HR)**

---

| | |
|---|---|
| **From:** | Garcia, Christine (HR) |
| **Sent:** | Monday, December 6, 2021 7:54 PM |
| **To:** | 'Alisa.Demoya@demoya.com' |
| **Cc:** | Obando, Mercedes (HR); Dana, Jacqueline (HR) |
| **Subject:** | Jorge Albuquerque v. The de Moya Group, CHR Case No. F-8515 |
| **Attachments:** | 8515 - Determination to R atty.pdf; 8515_IR_Jorge Monteagudo Albuquerque.pdf |

Please see attached time sensitive correspondence regarding the above indicated matter. If you have any questions or concerns, feel free to email me or our agency at ofep@miamidade.gov.

Thank you,

**Christine M. Garcia**, PHR, HRFEP Manager
**Miami-Dade County Human Resources**
Human Rights & Fair Employment
P:305-375-2784 F:305-375-2114
Christine.Garcia@miamidade.gov
www.miamidade.gov/humanrights
*Human Resources... Matters!*
*Email messages are subject to Chapter 119 of the Florida Statutes concerning public records and thus subject to disclosure.*

**Garcia, Christine (HR)**

---

**From:** postmaster@demoya.com
**To:** Alisa.Demoya@demoya.com
**Sent:** Monday, December 6, 2021 7:54 PM
**Subject:** Delivered: Jorge Albuquerque v. The de Moya Group, CHR Case No. F-8515

## Your message has been delivered to the following recipients:

Alisa.Demoya@demoya.com

Subject: Jorge Albuquerque v. The de Moya Group, CHR Case No. F-8515