# Exhibit 24



Evidentiary Hearing Exhibit 24

2022 WL 2340951
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Carolina MATAMOROS, Appellant/Plaintiff,
v.
BROWARD SHERIFF'S OFFICE, Appellee/Defendant.

CASE NO. 18-CV-62813-SMITH/VALLE
|
Signed April 18, 2022

**Attorneys and Law Firms**

Nathaly Saavedra, PereGonza The Attorneys, PLLC, Doral, FL, Peter Michael Hoogerwoerd, Remer & Georges-Pierre, PLLC, Miami, FL, for Appellant/Plaintiff.

Gale Ciceric Payne, Fort Lauderdale, FL, for Appellee/Defendant.

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

ALICIA O. VALLE, UNITED STATES MAGISTRATE JUDGE

\*1 THIS MATTER is before the Court upon Defendant Broward Sheriff's Office's Motion for Appellate Fees (the "Motion"), which the Eleventh Circuit transferred to the District Court for a determination of entitlement and amount, if any. *See generally* (ECF Nos. 56, 60); *see also* (ECF No. 62). United States District Judge Rodney Smith referred the Motion to the undersigned for a Report and Recommendation. *See* (ECF No. 61).

Having reviewed the Motion, Plaintiff's Response (ECF No. 65), and Defendant's Reply (ECF No. 66), and being otherwise duly advised in the matter, the undersigned respectfully recommends that the Motion be **GRANTED IN PART** for the reasons set forth below.

**I. PROCEDURAL HISTORY**

The procedural history of this case is set forth in the prior opinions of the District Court and the Eleventh Circuit, which are incorporated by reference. *See* (ECF No. 20) (Order on Motion to Dismiss); (ECF No. 40) (Order granting Defendant's Motion for Summary Judgment); (ECF No. 56) (Eleventh Circuit Opinion affirming the District Court's dismissal and summary judgment orders). Below is a summary of the proceedings relevant to the instant Motion, substantially as appearing in the Eleventh Circuit's Opinion.

Plaintiff Carolina Matamoros sued the Broward Sheriff's Office under the Florida Civil Rights Act of 1992, Fla. Sta. § 760.01 (the "FCRA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 (the "FMLA"). *See* (ECF No. 1); *see also* (ECF No. 10) (the "Amended Complaint"). More specifically, the Amended Complaint alleged that the Sheriff's Office interfered with and retaliated against Plaintiff under the FMLA by suspending her (Counts I and IV, respectively), and also discriminated and retaliated against her because of her association with her disabled son in violation of the FCRA (Counts II and III, respectively). *Id.* Only the FCRA claims (Counts II and III) are relevant to the instant Motion.

Defendant moved to dismiss Counts II, III, and IV. *See* (ECF No. 11). The District Court granted Defendant's motion in part, dismissing Count II on the basis that the FCRA did not permit an associational discrimination claim. *See* (ECF No. 20 at 3-5). Subsequently, Defendant sought and obtained summary judgment on the remaining counts (Counts I, III, and IV). *See* (ECF Nos. 21, 40). As to the FCRA retaliation claim in Count III, the District Court determined that Plaintiff had failed to establish a causal nexus between the filing of her EEOC charge and her termination. (ECF No. 40 at 8, 10). In this regard, the District Court found that "there is no record evidence that the ultimate decisionmakers knew about Plaintiff's EEOC [c]harge." *Id.* at 10.

On appeal, Plaintiff challenged the District Court's earlier dismissal of Count II (FCRA associational discrimination claim) and its grant of summary judgment on Count III (FCRA retaliation claim).[1]

\*2 On June 25, 2021, the Eleventh Circuit affirmed the District Court's dismissal and summary judgment orders, and transferred Defendant's motion for appellate fees to the District Court for determination of entitlement and amount. *See* (ECF Nos. 56, 60). In the Motion, Defendant seeks $25,194 in appellate attorneys' fees for having prevailed on

the two FCRA claims (Counts II and III).[2] *See* (ECF No. 60 at 19).

## II. LEGAL STANDARDS

### A. Entitlement to Fees and Costs Generally

Under the "American Rule," each party must pay its own attorneys' fees, unless a statute or contract provides otherwise. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (citations omitted); *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract). Relevant to Counts II and III of the Amended Complaint, the FCRA provides:

> [T]he court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. It is the intent of the Legislature that this provision for attorney's fees be interpreted in a manner consistent with federal law involving a Title VII action.

Fla. Stat. § 760.11(5).

As discussed above, the District Court initially dismissed Count II and later granted summary judgment for Defendant as to Count III. *See* (ECF Nos. 20, 40). The Eleventh Circuit affirmed those rulings. *See* (ECF No. 56). On these facts, the undersigned finds that Defendant is the prevailing party.[3] *See, e.g.*, *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995) (a defendant who obtains summary judgment in its favor is the prevailing party); *Glob. Pat. Holdings, LLC v. Panthers BRHC LLC*, No. 08-CV-80013, 2009 WL 10667023, at *1 (S.D. Fla. Jan. 7, 2009) ("In light of the dismissal with prejudice, [d]efendants are clearly prevailing parties[.]").

### B. Attorneys' Fees to Prevailing Defendants in Civil Rights Actions

Courts have found that the rationale and policy considerations supporting an award of attorney's fees under Title VII apply equally to attorney's fees under the FCRA. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978); *see also Quality of Life, Corp. v. City of Margate*, No. 17-CV-61894, 2020 WL 8812832, at *2 (S.D. Fla. Dec. 9, 2020) (noting that the rationale and policy considerations supporting an award of attorney's fees under Title VII apply equally to attorney's fees under the ADA).

Under Title VII, a prevailing plaintiff should ordinarily be awarded attorneys' fees in all but special circumstances. *See Bruce v. City of Gainsville, GA*, 177 F.3d 949, 951 (11th Cir. 1999) (citing *Christiansburg*, 434 U.S. at 416-17). However, the equitable and policy considerations supporting an award of fees to a prevailing civil rights plaintiff do not apply to prevailing defendants, as to whom a more stringent standard applies. *Id.* As to prevailing defendants, "a district court may in its discretion award attorney's fees ... in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Bruce*, 177 F.3d at 951 (citing *Christiansburg*, 434 U.S. at 418-21). Moreover, for a plaintiff's claims "[t]o be deemed 'meritless' for purposes of assessing a prevailing defendant's [entitlement to] attorney's fees, it is not enough that the plaintiff ... ultimately lost [the] case." *Id.*; *Head*, 62 F.3d at 356 ("Merely because plaintiff did not ultimately prevail on [its] federal claims does not determine that [the] claims were groundless."). Thus, "the grant of summary judgment, in and of itself, does not mean that an action is frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

**\*3** Although determining frivolousness requires a case-by-case analysis, three factors guide the Court's inquiry: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985). These factors are "general guidelines ... not hard and fast rules" to determine whether a case or claim is frivolous. *Id.* Further, "[i]n determining whether a claim is frivolous, [the Court] views the evidence in the light most favorable to the non-prevailing plaintiff." *Barnes v. Zaccari*, 592 F. App'x 859, 872 (11th Cir. 2015) (citing *Cordoba v. Dillard's, Inc.* 419 F.3d 1169, 1179 (11th Cir. 2005)).

Lastly, the *Christiansburg* frivolity standard applies not only to trials in civil rights cases, but also to plaintiffs' appeals. *See Young v. New Process Steel, LP,* 419 F.3d 1201, 1206 (11th Cir. 2005). Thus, appellate attorneys' fees can only be awarded upon a finding that the appeal was frivolous. *Bruce*, 177 F.3d at 951 (citing *Christiansburg*, 434 U.S. at 412).

## III. AN AWARD OF APPELLATE FEES IS WARRANTED

### A. Count II (Associational Disability Under the FCRA)

Having reviewed the record, including the parties' oral argument before the Eleventh Circuit, and viewing the evidence in the light most favorable to the non-prevailing plaintiff, *Barnes*, 592 F. App'x at 872, the undersigned concludes that Plaintiff's appeal of the dismissal of Count II was legally frivolous. Thus, the undersigned recommends that Defendant be awarded appellate fees in connection with Plaintiff's appeal of the District Court's dismissal of Count II.

In reaching this conclusion, the undersigned applied the *Sullivan* factors, all of which weigh in favor of Defendant.[4] As to the first factor, Plaintiff failed to establish a prima facie case as to Count II. *See* (ECF No. 20 at 3-5). More specifically, the District Court concluded that "[b]ecause the FCRA's plain language does not include a provision that protects against association discrimination, Plaintiff has failed to state a claim for discrimination under the FCRA." *Id.* at 4-5. The Eleventh Circuit resoundingly agreed, finding that the FCRA's "plain language" foreclosed Plaintiff's position. (ECF No. 56 at 8). The Eleventh Circuit explained that "state courts are the ultimate expositors of state law," and noted that no Florida court had interpreted the FCRA to include associational discrimination. *Id.* at 9-10. The Circuit Court emphasized that "in the decades since [the FCRA was enacted], the FCRA has remained unchanged in this respect" and the Court did not have a "license to rewrite that law."[5] *Id.* at 10. Thus, the Circuit Court concluded that it "would be improper ... to create a wholly new doctrine, virtually out of whole cloth, that would work a profound change in Florida's law." *Id.* at 10; *see also id.* at 14 (further noting that "[d]ecades back, the old Fifth Circuit recognized that 'substantive innovation' in state law is something that ought to be left to state courts").

**\*4** Simply put, both the District Court and the Court of Appeals unreservedly held that Plaintiff's association claim was precluded by the clear language of the FCRA, so that Plaintiff could not bring an association claim. Thus, the first *Sullivan* factor weighs decidedly in Defendant's favor. The second and third *Sullivan* factors likewise weigh in favor of Defendant: (i) no settlement offer was extended to Plaintiff during the litigation;[6] and (ii) the FCRA associational claim was dismissed by the court early in the litigation. (ECF Nos. 20 at 3-5, 60 at 9).

Moreover, notwithstanding Plaintiff's argument to the contrary, this was not a claim of first impression that required judicial resolution. *See* (ECF No. 62 at 3-4). Instead, Count II was dismissed early in the litigation based on the District Court's straightforward application of clear and controlling legal precedent that foreclosed associational disability claims under the FCRA. As Plaintiff concedes, "[a]dvocacy of a claim after it is clearly no longer tenable may subject the plaintiff to attorney's fees, even though the complaint was not initially frivolous." (ECF No. 65 at 6). Such is the case here. Under these circumstances, the undersigned finds that it was legally frivolous for Plaintiff to continue to pursue this claim on appeal. Although perhaps not initially brought in subjective bad faith, Plaintiff's subsequent appeal of the District Court's dismissal of Count II was frivolous, unreasonable, and without foundation. Thus, in the undersigned's discretion, Defendant should be awarded reasonable fees as to Count II.

### B. Count III (FCRA Retaliation Claim)

In granting summary judgment for Defendant on Count III alleging FCRA retaliation, the District Court found that "Plaintiff's FCRA retaliation claim fail[ed] because [Plaintiff] has not established the third element of her claim—that the decision to terminate her was causally related to the protected activity of filing her EEOC [c]harge." *See* (ECF No. 40 at 8). The District Court noted that "[b]oth temporal proximity and knowledge of the decisionmaker [were] missing." *Id.* at 9. Specifically, the Court found "*no record evidence* that the ultimate decisionmakers knew about Plaintiff's EEOC [c]harge." *Id.* at 10 (emphasis added). The Court wrote:

> The only record evidence indicates that members of the PSC were unaware of Plaintiff's [EEOC charge] and there is no evidence that the Executive Director of Defendant's Department of Professional Standards, ... who made the ultimate decision to terminate Plaintiff had any knowledge that Plaintiff had filed an EEOC [charge]. Thus, Plaintiff has not established the necessary causal connection because there is a lack of temporal proximity between her protected activity and the adverse employment action and the decisionmakers lacked knowledge of the Plaintiff's protected activity.

*Id.*

The Eleventh Circuit, in turn, made "quick work" of Plaintiff's FCRA retaliation claim. (ECF No. 56 at 15). After noting the legal requirement of a "causal link" to prove the third element of a retaliation claim, the Circuit Court readily concluded—as the District Court had previously concluded—that Plaintiff had failed to establish a *prima facie* case of retaliation. *Id.* at 16. Specifically, the Circuit Court noted:

[Plaintiff] hasn't shown that any of her supervisors, the investigators, or members of the Professional Standards Committee who took the relevant adverse actions were aware that she had filed an EEOC charge, and all decisionmakers testified that they had no knowledge of it. You can't retaliate against something you don't know exists. And on this record, *there is no evidence* that the relevant decisionmakers knew of [Plaintiff's] protected activity, so any adverse action taken against her couldn't have been in retaliation for it.... And her cat's-paw theory likewise fails, principally because she hasn't shown, or even suggested, the existence of any 'biased recommendations' from other Sheriff's Office employees to the relevant decisionmakers.

 **\*5** *Id.* at 17-18 (emphasis added). Thus, the Eleventh Circuit affirmed the District Court's summary judgment in favor of Defendant. *Id.* at 18.

After reviewing the record and viewing the evidence in the light most favorable to the non-prevailing plaintiff, the undersigned concludes that Plaintiff's appeal on Count III was factually frivolous. Thus, the undersigned recommends that Defendant be awarded appellate fees in connection with Plaintiff's appeal of the District Court's grant of summary judgment in favor of Defendant on Count III.

As with Count II, the undersigned applied the *Sullivan* factors, all of which again weigh in favor of Defendant. First, Plaintiff failed to establish a prima facie case, so that an award of fees to the prevailing Defendant would be appropriate. *See Quintana v. Jenne*, 414 F.3d 1306, 1310 (11th Cir. 2005). In addition, no settlement offer was extended during the litigation and the trial court granted summary judgment in favor of Defendant as to Count III after full discovery. *See Sullivan*, 773 F.2d at 1189. All three factors thus weigh in favor of an award of fees.

Plaintiff correctly argues that although her appellate arguments were ultimately unavailing, losing the appeal should not automatically result in a *post hoc* finding by this Court that her claim was frivolous. *See* (ECF No. 65 at 7). The undersigned agrees. "The fact that a plaintiff may ultimately lose [her] case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980); *see also Head,* 62 F.3d at 356 ("Merely because plaintiff did not ultimately prevail on [its] federal claims does not determine that [the] claims were groundless."). But more than a *post hoc* analysis of the merits of Plaintiff's claims informs the undersigned's conclusion. Instead, critical to the undersigned's conclusion is Plaintiff's failure to present *any evidence* to support the retaliation claim in Count III. Indeed, the District Court granted summary judgment for Defendant because "Plaintiff's FCRA retaliation claim fail[ed] because [Plaintiff] has not established the third element of her claim —that the decision to terminate her was causally related to the protected activity of filing her EEOC [c]harge." (ECF No. 40 at 8). The District Court further noted that "[b]oth temporal proximity and knowledge of the decisionmaker [were] missing." *Id.* at 9. Notably, the Court found "*no record evidence* that the ultimate decisionmakers knew about Plaintiff's EEOC [c]harge." *Id.* at 10 (emphasis added). Moreover, even after full discovery, Plaintiff failed to offer any evidence of pretext to counter Defendant's legitimate reasons for its disciplinary actions. *Id.* at 11.

The Eleventh Circuit concurred. *See* (ECF No. 56 at 15-16). Like the District Court, the Circuit Court found "*no evidence* that the relevant decisionmakers knew of [Plaintiff's] protected activity, so any adverse action taken against her couldn't have been in retaliation for it.... And her cat's-paw theory likewise fails, principally because she hasn't shown, or even suggested, the existence of any 'biased recommendations' from other Sheriff's Office employees to the relevant decisionmakers. *Id.* at 17-18 (emphasis added).

 **\*6** Against this background, where Plaintiff offered no evidence to support her retaliation claim, the undersigned finds that the case was so lacking in arguable merit so as to be groundless and without foundation, warranting an award of fees to the prevailing Defendant. It is the complete absence of evidence to support the retaliation claim that distinguishes the instant case from other cases in which other courts in this District have found plaintiffs' claims not frivolous and denied fees to prevailing defendants. *See, e.g.*, *Guevara v. Fla. E. Coast Ry., LLC*, No. 18-CV-24726, 2020 WL 5578960, at \*3-5 (S.D. Fla. Aug. 7, 2020) (denying prevailing defendant fees because, although plaintiff's claims "were undeniably weak, ... [p]laintiff advanced *some evidence* in support of his claims") (emphasis added) (citations omitted), *report and recommendation adopted*, 2020 WL 5572100 (S.D. Fla. Sept. 17, 2020) (J. Smith); *see also Gilroy v. Baldwin*, No. 16-CV-14521, 2021 WL 6427476, at \*3 (S.D. Fla. Dec. 15, 2021) (noting that frivolity has been found in cases where plaintiffs did not introduce *any evidence* to support their claims) (emphasis added) (citations omitted); *Minus v. Miami-Dade Cnty.*, No. 19-CV-25113, 2021 WL 5238604, at \*2 (S.D. Fla. Oct. 30, 2021) (noting that frivolity has been found when a motion for summary judgment or a motion for involuntary dismissal has been granted where plaintiff did not introduce

*any evidence* to support its claim) (emphasis added) (citation omitted); *Sloan v. Miami Dade Cnty.*, No. 18-CV-21517, 2020 WL 5902486, at *5 (S.D. Fla. Jan. 24, 2020) (referencing *lack of evidence* as a factor in awarding attorney fees to prevailing defendant) (emphasis added); *Fair Hous. Ctr. of Greater Palm Beaches, Inc. v. Shutters Condo. Ass'n, Inc.*, No. 08-CV-81566, 2011 WL 13172602, at *2-3 (S.D. Fla. Feb. 9, 2011) (denying prevailing defendant fees where appeals court reviewed evidence presented to the jury and issue was *weight of the evidence*, not lack of evidence) (emphasis added). This critical distinction guides the undersigned's conclusion.

In sum, after considering the relevant factors, and in the exercise of its discretion, the undersigned concludes that an award of attorney's fees against Plaintiff and in favor of the prevailing Defendant is appropriate as to Counts II (legally frivolous) and III (factually frivolous).

## IV. DETERMINING REASONABLE FEES

### A. The Lodestar Method of Determining Fees

Courts in the Eleventh Circuit use the "lodestar" method to calculate the value of an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, a court first determines the reasonable rate of an attorney's services and then determines if the hours expended by counsel are reasonable. *Id.* at 1299-1302. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. The relevant legal community is "the place where the case is filed." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotations and citation omitted). The movant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates[.]" *Norman*, 836 F.2d at 1299.

When determining whether the number of hours expended by counsel is reasonable, the court "must deduct time spent on discrete and unsuccessful claims." *Id.* at 1302 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Further, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428. Thus, when a court finds the number of hours claimed by counsel is unreasonably high, the court may conduct an hour-by-hour analysis or reduce the requested hours with an across-the-board cut, but not both. *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2013 WL 6238647, at *16-17 (S.D. Fla. Dec. 3, 2013) (reducing party's fee request with across-the-board cut based upon billing inefficiencies). Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

### B. Reasonable Hourly Rates

*7 "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). The relevant market is "the place where the case is filed." *Barnes*, 168 F.3d at 437 (quotation marks and citation omitted). Here, the relevant legal community is South Florida.

Defendant seeks an award for legal services performed by attorney Gale Ciceric Payne. (ECF No. 60 at 18) (the "Affidavit"). According to the Affidavit, attorney Payne billed Defendant, a public agency, at a discounted hourly rate of $130. (Affidavit ¶ 5). Although the Affidavit does not describe counsel's skills and experience, the undersigned has reviewed attorney Payne's Florida Bar profile, which reflects that he graduated from Duke University School of Law and has been practicing law since October 1980. *See* State Bar of Florida, Member Profile of Gale Ciceric Payne, https://www.floridabar.org/directories/findmbr/profile/?num=306967&key=eaa063d0960609848e84c4eee7eb9602 (last visited April 18, 2022). Plaintiff, for her part, does not address the reasonableness of counsel's rate. *See generally* (ECF No. 65).

In determining reasonable hourly rates in South Florida, the undersigned may consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* factors")).[7] The Court also may consider its

own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1303).

The Court has considered the relevant *Johnson* factors, the time records submitted by counsel, and the record in this case. *See generally* (ECF No. 60 at 22-32). Additionally, the undersigned has considered counsel's Notice of Previously Awarded Fees and Costs.[8] *See* (ECF Nos. 67, 68). Based on this review, and the Court's own judgment and expertise, and despite the sparsity of biographical information in counsel's Affidavit, the Court finds that $130 is a reasonable discounted hourly rate for attorney Payne's services in the South Florida community. The Court is "deemed an expert on the issue of hourly rates in this community and may properly consider 'its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.' " *Fiedler v. Anglin's Beach Café, LLC*, No. 15-60989, 2017 WL 1278632, at *1 (S.D. Fla. Apr. 3, 2017) (quoting *Loranger*, 10 F.3d at 781). Thus, the undersigned recommends that attorney Payne be awarded fees at the discounted hourly rate of $130.

### C. Reasonable Hours Expended

*8 Having determined counsel's reasonable hourly rate, the undersigned next determines the reasonableness of the hours expended by the attorney working on the case. As a general rule, attorneys must exercise what the Supreme Court has termed "billing judgment." *Hensley*, 461 U.S. at 434. That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (quotations and citations omitted).

Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them." *Barnes*, 168 F.3d at 428. The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the action. *Id.* at 427, 432-33. In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d. at 1301.

The undersigned has reviewed counsel's billing records. (ECF No. 60 at 22-32). Although the billing records reflect 387.6 hours of work, Defendant seeks only $25,194 in fees, which is "one half of the $50,338 total fees expended for this entire appeal."[9] (Affidavit ¶ 6). According to Defendant, this reduction seeks to exclude the time it spent addressing Plaintiff's two FMLA claims (Counts I and IV), which do not contain a statutory provision for attorneys' fees to a prevailing defendant. *Id.*

As with the reasonableness of the claimed hourly rate, Plaintiff has not addressed the reasonableness of the hours claimed by attorney Payne. *See generally* (ECF No. 65). Nonetheless, the Court has independently reviewed counsel's billing records and finds that some adjustment is necessary to account for a number of billing inefficiencies. First, Defendant's offer to cut its fees in half to account for time spent on the two non-FCRA claims, although laudable, is nonetheless arbitrary and unsupportable. Instead, Defendant should have reviewed the billing records to more accurately excise the hours expended on the non-compensable FMLA claims.[10] *See Estrada v. Alexim Trading Corp.*, No. 10-CV-23696, 2012 WL 4449470, at *12 (S.D. Fla. Sept. 26, 2012) (assessing the entire record, including specific billing entries, to determine which hours were non-compensable).

In addition, the billing records contain several other billing inefficiencies that require further adjustment to the hours claimed. *See generally* (ECF No. 60 at 26-32) (billing records). For example, the billing records reveal repeated instances of inappropriate "block billing." "Block billing" is the practice of including multiple distinct tasks within the same time entry. *See Interim Healthcare, Inc. v. Health Care@Home, LLC*, No. 17-CV-61378, 2019 WL 6791465, at *6 (S.D. Fla. Nov. 27, 2019). To illustrate, without indicating how much time was spent on each task, the 5.5 hour time entry for 4/2/20 reflects "[r]eceipt and review of Appellant's Initial Brief; Outline points raised therein; Analyze issues and counter arguments; Review Federal Rules of Appellate Procedure and the Local Rules of the U.S. Court of Appeals for the Eleventh Circuit; Calendar deadlines for Answer Brief and Appellee's Appendix; Review deadline for Appellant's Appendix." (ECF No. 60 at 22). Similarly, the time entry for 4/3/20 reflects 5.6 hours spent to "[d]igest points argued in Initial Brief; Check record to verify what issue(s) were raised by appellant for the first time on appeal; Outline facts not raised in Initial Brief and those to be featured in Answer Brief; Review of record cites addressed in Initial Brief; Review of pertinent portions of the record not referenced in Initial Brief;

Prepare for Answer Brief." *Id.* Additional examples of block billing appear throughout the billing records. *See, e.g.*, 4/6/20 time entry for 5.9 hours; 4/8/20 time entry for 6.3 hours; 4/9/20 time entry for 6.6 hours; 4/10/20 time entry for 7.1 hours; 4/13/20 time entry for 5.9 hours; 4/15/20 time entry for 7.5 hours; 5/14/20 time entry for 7.5 hours; and 5/4/21 time entry for 3 hours.

**\*9**  The billing records also reflect that counsel billed for the performance of non-legal administrative and clerical tasks, including, for example, "[c]alendar[ing] deadlines for Answer Brief and Appellee's Appendix" (time entry for 4/2/20); cross-checking Appellant's record citations (time entry on 4/24/20); checking deposition citations (time entry for 5/3/20); calculating hours worked (time entry for 5/14/20); preparing and checking supplemental appendix (time entries for 5/21/20 and 5/28/20); electronically filing appellate brief and serving paper copies on the Court (time entry for 5/29/20); and filing acknowledgement form (time entry for 4/13/21). *See* (ECF No. 60 at 22-32). These tasks appear to be clerical rather than "work traditionally done by an attorney," and are not compensable at attorney or paralegal rates. *Kennedy v. Bonom Enters., Inc.*, No. 18-CV-62175, 2019 WL 1429513, at \*3 (S.D. Fla. Mar. 29, 2019) (noting that plaintiff could not recover fees for paralegal work that was clerical in nature rather than work traditionally performed by an attorney); *Sensat v. Beryhill*, No. 15-CV-24727, 2018 WL 5257143, at \*4 (S.D. Fla. Oct. 22, 2018) (deducting counsel's hours that pertained to "strictly clerical tasks").

While the undersigned does not doubt that counsel worked in good faith on the projects attributed to this case, the Court must be able to verify the need or relatedness of those projects before it can approve payment for the time incurred. *Interim Healthcare*, 2019 WL 6791465, at \*6 (citation omitted). Because of inappropriate block billing, however, it is impossible for the undersigned "to ascertain how much time was spent on each task." *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F. App'x 927, 931 (11th Cir. 2013); *Maiden Specialty Ins. Co. v. Three Chefs & a Chicken, Inc.*, No. 12-CV-22724, 2014 WL 11429052, at \*10 (S.D. Fla. Jan. 28, 2014), *report and recommendation adopted*, 2014 WL 11429053 (S.D. Fla. Mar. 13, 2014) (reducing fees for block billing where court was unable to determine if the amount of time spent on each task was reasonable); *Estrada,* 2012 WL 4449470, at \*11 (reducing hours for block billing where counsel failed to separate the entries to allow the court to properly determine whether a reasonable amount of time was spent reviewing a particular filing as opposed to conferring about the filing).

For the foregoing reasons, the undersigned concludes that a further reduction in the requested fees is appropriate.[11] Rather than conducting an hour-by-hour analysis of counsel's time entries, the undersigned recommends an across-the-board 30% reduction to the amount of fees requested to account for hours expended on the FMLA claims, block billing, and other billing inefficiencies. *See, e.g., Interim Healthcare*, 2019 WL 6791465, at \*6 (recommending a 10% reduction for billing inefficiencies); *Ovalle v. Perez*, No. 16-CV-62134, 2017 WL 7792719, at \*2 (S.D. Fla. Nov. 9, 2017), *report and recommendation adopted*, 2017 WL 7796183 (S.D. Fla. Nov. 30, 2017) (adopting a 10% reduction for use of block billing, redacted time entries, and redundancy in efforts); *Shipping and Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290 (S.D. Fla. 2017) (adopting 15% reduction in fees based on billing inefficiencies); *Rubenstein v. Fla. Bar*, No. 14-CV-20786, 2015 WL 1470633, at \*4-6 (S.D. Fla. Mar. 31, 2015), *report and recommendation adopted*, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015) (adopting a 30% reduction to counsel's hours for use of block billing); *see also Bivins*, 548 F.3d at 1350 (noting that when the number of hours claimed is unreasonably high, a court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut). Consequently, the undersigned recommends that Defendant be awarded $17,635.80 in attorneys' fees ($25,194 × .70 = $17,635,80).

## V. RECOMMENDATION

**\*10**  Accordingly, for the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Defendant's Motion for Appellate Attorney's Fees (ECF No. 60) be **GRANTED IN PART** and that Defendant be awarded $17,635.80 in appellate attorney's fees.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2021); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on April 18, 2022.

**All Citations**

Slip Copy, 2022 WL 2340951

Footnotes

1 Plaintiff also challenged the District Court's summary judgment in favor of Defendant as to Counts I and IV (FMLA interference and retaliation claims).

2 To be clear, Defendant incurred $50,388 in appellate fees, but requests an award of only $25,194. *See* (ECF No. 60 at 19). In the Motion, Defendant acknowledges that the FMLA, unlike the FCRA, does not provide for an award of attorney's fees to a prevailing defendant. *Id.* Accordingly, Defendant has reduced its appellate fees ($50,388) by half to exclude fees incurred in connection with the FMLA claims. *Id.* Defendant's method for adjusting its fees will be addressed below. *See* Section IV.C., *infra*.

3 Without explanation or supporting case law, Plaintiff summarily argues that Defendant is not the prevailing party. *See, e.g.,* (ECF No. 65 at 4, 5). Arguments raised in cursory fashion are deemed waived. *See Bryan v. Saul*, No. 19-CV-63164, 2021 WL 707594, at *10 n.11 (S.D. Fla. Feb. 6, 2021).

4 As discussed above, *Sullivan* requires consideration of three factors in determining whether a claim or case is frivolous: (i) whether Plaintiff established a prima facie case; (ii) whether Defendant offered to settle; and (iii) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Sullivan*,773 F.2d at 1189.

5 At oral argument before the Eleventh Circuit, Plaintiff's counsel candidly admitted that he was asking the Court to "change Florida law" and seek an "advisory opinion" from the Florida Supreme Court. *See* Audio Recording of Oral Argument ("Oral Argument") at time entry 1:40-1:50. But, as Judge Newsom pointed out, the Eleventh Circuit will certify a question to the Florida Supreme Court only when the Court is "pretty dog-gone uncertain about the result" and not "so the Florida Supreme Court can innovate" the law. (Oral Argument at 28:50-29:27). Thus, the Eleventh Circuit rejected Plaintiff's request that it certify to the Florida Supreme Court the question of whether the FCRA covers associational discrimination, explaining that "the question isn't close, and the sources of Florida law ... more than suffice to allow us to reach a principled conclusion." *See* (ECF No. 56 at 14 n. 4).

6 Plaintiff does not dispute Defendant's assertion that no settlement offer was extended during the litigation. (ECF No. 60 at 9).

7 The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

8 Counsel's Notice of Previously Awarded Fees lists more than 20 cases in which counsel has been awarded his non-discounted trial and appellate attorney's fees in this District in the last two years. *See generally* (ECF No. 68). The court-approved fee awards have ranged from $150 to $500. *Id.*

9 The billing records did not tally the total hours expended, thus requiring the undersigned to add the time entries to obtain the total hours claimed: 387.6 hours. At an hourly rate of $130, this results in a fee request of $50,388.

10 For example, the billing records contain several entries reflecting time expended on the FMLA claims. *See, e.g.*, time entries for 5/5/20, 5/13/20, 5/14/20. (ECF No. 60). However, because of poor billing practices, it is impossible for the undesigned to determine how much time Defendant spent working on the FMLA claims.

11 This further reduction would also address billing inefficiencies resulting from potentially excessive or duplicative work. Once again, because of the pattern of block billing, the Court is unable to ascertain the reasonableness of seemingly duplicative tasks, which are carried over from one day to the next. See, for example, time entries for drafting and revising

answer at 4/6/20, 4/7/20, 4/8/20, 4/9/20, 4/10/20, 4/13/20, 4/14/20, 4/15/20, 4/16/20, 4/17/20, 4/18/20, 4/19/20, 4/20/20, 4/21/20, 4/22/20.

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.  9