UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-22343-MOORE/Louis

JORGE MONTEAGUDO ALBURQUERQUE,

     Plaintiff,

v.

THE DE MOYA GROUP, INC.,
a Florida Profit Corporation,

     Defendant.

_____/

**PLAINTIFF'S CLOSING BRIEF**
**IN OPPOSITION TO THE IMPOSITION OF RULE 11 SANCTIONS**

## I.     INTRODUCTION

Plaintiff, JORGE MONTEAGUDO ALBURQUERQUE, ("Plaintiff" or "Mr. Monteagudo"), pursued this lawsuit because of the adverse employment actions he suffered after complaining about disparate treatment he experienced based on his race/national origin. The evidence is that Plaintiff reported – both to his counsel and to the Miami-Dade County Commission of Humans Relations (hereinafter "MDCHR")'s investigator –that he complained to Chris de Moya about the particulars of his disparate treatment prior to filing this lawsuit. Guided by what Plaintiff and his counsel- Mrs. Nathaly Saavedra, Esq.- knew when they filed the Amended Complaint, the Court properly determines that Rule 11 sanctions are not warranted and denies the Defendant's Motion for Sanctions.

## II.     RELEVANT FACTUAL AND PROCEDURAL HISTORY

Defendant moved the Court for an award of fees and costs against Plaintiff and his counsel for the filing of the Amended Complaint under Fed. R. Civ. P. 11 (hereinafter "Defendant's Motion for Sanctions"). [ECF No. 58]. At the initial Evidentiary Hearing held on May 9, 2023,

(hereinafter "Initial Evidentiary Hearing"), Defendant argued that Plaintiff's complaint to Chris De Moya involved nothing more than a "petty workplace grievance" and did not constitute protected activity under the Acts and thus Plaintiff's retaliation claims was legally insufficient. *See* Plaintiff's Exhibit 50[1] at 14:12-16:1.

In advancing this argument at the initial evidentiary hearing, Defendant alleged that Plaintiff's counsel knew or should have known there was no basis for Plaintiff's claims prior to filing suit. *Id*. at 13:18-23. Defendant further contended that in the alternative, Plaintiff's counsel should have dismissed the suit after the depositions of Mr. Monteagudo, Chris De Moya, and Susan Giraldo. *Id*. at 21:13-16. The Court entertained testimony from Alisa De Moya based upon defense counsel's contention that the same would demonstrate that Mrs. Saavedra did not have a good faith basis to begin this action at the pre-suit stage. *Id.* at 37:7-38:17; 41:19- 42:16. Notwithstanding Defendant's counsel's representations to the Court, Alisa De Moya conceded that she never interacted with Plaintiff's counsel before the initial evidentiary hearing. *Id.* at 60:6-16.

The Court conducted a continued evidentiary hearing on September 12, 2023, (hereinafter "Continued Evidentiary Hearing"), at which time the Court entertained argument of counsel and testimony from Mrs. Saavedra and from Mr. Monteagudo. The Court's focus at the evidentiary hearing was on the factual investigation that Mrs. Saavedra undertook before filing the Amended Complaint.

Mrs. Saavedra explained the process by which she conducted the initial and subsequent interviews with Mr. Monteagudo. She further testified that her contingent financial arrangement with Mr. Monteagudo did not incentivize her (or her firm) to pursue a claim that had no merit.

---

[1] All Exhibits admitted during the Continued Evidentiary Hearing on September 12, 2023, and otherwise stipulated to by the Parties referenced herein have been filed with the Court pursuant to the Local Rules and the Court's instructions. See ECF No. 111.

Mr. Monteagudo's police report, which he provided to Mrs. Saavedra, corroborated his claim that he was subjected derogatory comments – which he explained involved his race/national origin. (Plaintiff's Exhibit 24 at p. 4) Mrs. Saavedra explained that she dual-filed the Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and that the EEOC transferred the Charge to the MDCCHR for investigation.  She confirmed that her office had no contact with the Defendant or its counsel until receipt of the Motion to Dismiss. ECF No. 9. Mrs. Saavedra did not receive the Position Statement (or any contemporaneously submitted materials) the Defendant provided to the MDCHR prior to filing the Amended Complaint. Mrs. Saavedra testified that the MDCHR investigator questioned Mr. Monteagudo by phone about certain issues and that his responses were consistent with what he previously told Mrs. Saavedra. The MDCHR investigator's notes from her interview with Mr. Monteagudo, which were received after litigation commended, reflect his recitation of events in complaining about specific derogatory comments and several instances of disparate treatment to Chris De Moya shortly before he was terminated. Plaintiff's Exhibit 43 at 95-97.  Also, during that interview, Mr. Monteagudo not only disputed falling asleep on the roller but also identified a comparator who was found sleeping on the job but was not terminated and then disputed being disciplined by Defendant before his termination. *Id.* During the litigation, Defendant's contentions regarding Plaintiff's termination, conflicted with its own records, which reflected not only that the roller was "not in operation" at the time Plaintiff was allegedly found sleeping (Plaintiff's Exhibit 27 at p. 3) -but also that other employees who were involved in accidents resulting in Defendant's property being damaged were not terminated. *See* Plaintiff's Exhibit 30.

As evidenced by the MDCCHR's Statement of Determination as well as Alisa De Moya's testimony during the Initial Evidentiary Hearing, Defendant was not represented by counsel during the administrative proceedings. Plaintiff's Exhibit 49 at p. 3, *see also* Plaintiff's Exhibit 50 at

48:22-24. Further, each of the Defendant's employees referenced during the evidentiary hearings appeared at deposition during the litigation, while represented by defense counsel. *See generally* Plaintiff's Exhibits 3 through 10. Consequently, Mrs. Saavedra could not interview them prior to initiating this litigation. Mrs. Saavedra was justified in filing the initial and Amended Complaint based on the limited information available to her at the time of filing. Further, it was reasonable for Mrs. Saavedra to continue the litigation believing a factfinder could conclude that Defendant's reason for termination was pretextual because inferences could be drawn that the termination was in retaliation of Plaintiff's complaint about Noel Leon to Chris De Moya.

### III.   LEGAL STANDARD

"The grant of summary judgment, in and of itself, does not mean that an action is frivolous or warrants the imposition of sanctions." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Instead, the Court must engage in a two-step inquiry as to (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous. *Baker*, 158 F.3d at 524; *see also Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

> The standard for imposing Rule 11 sanctions is more stringent than other attorney's fees statutes because it requires the additional element of bad faith. The amended rule incorporates an objective standard in assessing bad faith. *See Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (en banc). The standard requires a determination as to whether the party's conduct was reasonable under the circumstances. *Id.*

*Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987). Rule 11 is intended to deter attorneys from pursuing claims with no factual or legal basis and to be used as a basis for sanctions sparingly:

> We might agree that the appellants used poor judgment in pursuing their allegations. We do not perceive in the appellants' conduct, however, the deliberate indifference to obvious facts that compels a court's resort to Rule 11 sanctions. We hold, therefore, that the district court abused its discretion by concluding that the appellants' claims were factually groundless.

\*      \*      \*

> Although we agree that counsel's professional judgment and common sense should discourage certain claims, in most cases we prefer that an attorney feel free to exercise that judgment without fear of reprisals should his lawsuit miscarry. As we see it, Rule 11 is intended to deter claims with no factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment.

*Davis v. Carl*, 906 F.2d 533, 537-38 (11th Cir. 1990). As this Court recognized:

> The purpose of a Rule 11 motion is to determine whether a party or attorney has abused the judicial process; it is *not* an alternative remedy to seek disposition of the merits of the case. *See Bigford v. BESM, Inc.*, 2012 WL 12886184, at \*2 (S.D. Fla. Oct. 12, 2012) ("Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits." (citation omitted)).

*PayRange, Inc. v. Kiosoft Techs., LLC*, 2021 WL 8566761, at \*5 (S.D. Fla. Sept. 8, 2021).

## IV.    ARGUMENT

### A.    <u>Neither the filing of the Amended Complaint nor the continued pursuit of it violated Rule 11.</u>

Defendant's Motion for Sanctions fails to even arguably demonstrate that Plaintiff's Amended Complaint has been filed without an inquiry reasonable under the circumstances or that Plaintiff's retaliation claims are not warranted by existing law; lacked evidentiary support; or were pursued in bad faith or for an improper purpose. Accordingly, Defendant's Motion for Sanctions should be denied in its entirety.  As this Court previously recognized:

> Rule 11 sanctions are warranted when a party demonstrates a "deliberate indifference to obvious facts," but not when the evidence is merely weak or the case is brought as a result of "poor judgment." *Davis v. Carl*, 906 F.2d at 537.

*Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1239 (S.D. Fla. 2008). Mrs. Saavedra advanced a legal theory supported by facts and law. The Fifth Circuit Court of Appeals has noted that, "[a]n attorney may escape sanctions under [R]ule 11 if he had to rely on a client for information about the facts underlying the pleadings." *St. Amant v. Bernard*, 859 F.2d 379, 383, n.15

(5th Cir. 1988). While Plaintiff's claims did not survive summary judgment, that determination alone is not evidence here to conclude that Plaintiff or his counsel engaged in sanctionable conduct. Especially when the Court's summary judgment ruling, relying primarily on Defendant's statement of material facts, hinged on the issue of pretext for its adverse decision, not whether Mr. Monteagudo's complaints to Mr. De Moya were sufficient. [ECF Nos. 87, 100.]

Several cases support the proposition that an employee need not be as specific as the Defendant argues when complaining about discriminatory conduct to be protected from retaliation. *See e.g.*, *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022); and *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). All that is required is that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, and that his belief, though perhaps mistaken, was objectively reasonable considering the facts and record presented. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997). Further, the proposition that threats of physical harm and unsubstantiated discipline for complaining of discrimination constitute adverse employment action under retaliation is also well founded in legal precedent. *See Burlington Northern and Sata Fe Ry. Co. v. White*, 548 U.S. 53 at 70-72 (2006); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020). Even if Plaintiff's retaliation claim was exceptionally weak– Defendant has failed to show that it was entirely without foundation as required under the statute. *See* Fed. R. Civ. P. 11. As Mrs. Saavedra explained during her testimony at the Continued Evidentiary Hearing, there were certain facts Mr. Monteagudo asserted to her and during his interview with the Commission, that were relied upon that suggested Plaintiff's complaint to Chris De Moya constituted protected activity and that this complaint, was the reason he was targeted, physically threatened, and ultimately terminated.  Thus, Mrs. Saavedra was justified in relying on Plaintiff for his (consistent) recitation of facts that supported the filing of

the Amended Complaint for retaliatory discharge and to conclude that Plaintiff's claims of retaliation lacked foundation whatsoever is a stretch.

    1.  <u>Mrs. Saavedra was entitled to rely on her client as a basis for the facts underlying the filing of the Amended Complaint.</u>

Rule 11 places an affirmative duty on an attorney to inquire into the factual basis of a paper before filing it with the court. *Gutierrez v. City of Hialeah*, 729 F. Supp. 1329,1330 (S.D. Fla. 1990). "A signor cannot rely solely on his personal interpretation of the facts, speculation, suspicion, rumor or surmise to sustain a reasonable belief." *Id*. A review of the evidence presented in this case supports a finding that the efforts undertaken by Mrs. Saavedra before filing the Amended Complaint were reasonable under the applicable standard.

"A signer's obligation personally to comply with the requirements of Rule 11 clearly does not preclude the signer from any reliance on information from other persons." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994).  Here, Mrs. Saavedra had to rely on her client to a significant extent for the facts since the nature of his complaints to Chris De Moya could hardly be known to an outsider and since the relevant information regarding Plaintiff's termination was largely in the Defendant's control. S*ee Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986)(finding attorney's reliance on statements of his client, that client's employer was recipient of federal grants and other federal assistance, was reasonable); *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir.1993) (*quoting Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452, 1470 (2d Cir.1988), rev'd sub nom. on other grounds, *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989))(recognizing "'[a]n attorney is also entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable.'") ; *see also Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746 (1st Cir. 1988)(where the court affirmed denial of sanctions noting that it is difficult to establish Defendant's intent except through discovery in discrimination cases that turn

on the question of pretext and quoting the lower's court reasoning that "imposing sanctions in cases such as this runs the risk of chilling meritorious litigation"); *see also Mohammed v. Union Carbide Corp.*, 606 F.Supp. 252, 261–62 (E.D.Mich.1985)(where the court relaxed the reasonable inquiry standard of Rule 11 for certain cases due to the difficulty of obtaining necessary documents and materials, which were in defendant's possession.)

The annotations to Fed. R. Civ. P.  26(g) are also instructive on this issue since the requirement of reasonable inquiry under Rule 26 parallels the requirement in Rule 11. *See* Fed. R. Civ. P. 26, advisory committee's note to 1983 amendment. The advisory committee note specifically permits counsel to rely on the assertions of her client in evaluating the client's case. ("[i]n making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances."). *Id*. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances as they were when the document was submitted. *Id.*; *see also Garr*, 999 F.2d at 1279.

Here, Plaintiff's complaint was based on his testimony which supported a determination he engaged in protected activity.  What occurred and what was said in Mr. De Moya's office is a prototypical "swearing match" usually resolved at trial.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (affirming the denial of summary judgment where Plaintiff's sworn statements although self-serving, directly contradicted the   officers' assertions about what they observed. Noting "the contradiction presents a classic swearing match, which is the stuff of which jury trials are made").

Prior to commencing this lawsuit, Mrs. Saavedra was not in a position to know or obtain all the facts. Plaintiff and his counsel conducted inquiries into the matters that gave rise to the litigation, yet their inquiries were limited by the fact that they were not in possession of Defendant's position statement and supporting documents concerning Plaintiff's employment with the

Defendant.  As reflected on the MDCHR's Statement of Determination, as well as conceded by Alisa De Moya, Defendant was not represented by counsel through the administrative proceedings. *See* Plaintiff's Exhibit 49 at 2; *see also* Plaintiff's Exhibit 50 at 48:22-24. During the investigation of the Charge of Discrimination, the MDCHR investigator did not provide Mrs. Saavedra with a copy of Defendant's position statement or its supporting documents nor did Mrs. Saavedra had the opportunity to cross examine the adverse witnesses. A copy of the MDCCHR's file could only be requested after the case was closed by the commission and the EEOC issued its Right to Sue. Furthermore, Mrs. Saavedra had no reason to question Mr. Monteagudo's credibility as his statements were consistent and specific during his interviews with Mrs. Saavedra and during the rebuttal interview.

Upon receiving Defendant's Motion to Dismiss, Plaintiff's Amended Complaint was filed to correct some of the facts as initially alleged[2] and to remove the discrimination claims. ECF No. 13. At the time, other than the Motion to Dismiss and the Determination by MDCCHR,  Mrs. Saavedra was only in possession of: 1) her notes that memorialized Plaintiff's statements to her and the MDCCHR's investigator; 2) Plaintiff's police report filed prior to his termination(Plaintiff's Exhibit 24), and 3) the notice of approval of unemployment benefits (Plaintiff's Exhibit 31) which further supported Plaintiff's contention that the reason Defendant provided for his termination was pretextual. At that time, it was not completely unreasonable for Plaintiff and his counsel to believe that Plaintiff's initial claims were colorable. Mr. Monteagudo's statements regarding the nature of his complaints and the events that led to his termination, were admissible evidence of his retaliation claim, or at a minimum, were sufficient to lead to such evidence.  To comply with her

---

[2] Defendant's counsel argued that the allegations in the original Complaint which identified Noel Leon as "White" were evidence of bad faith. However, the Amended Complaint corrected these factual allegations. *Compare ECF* No. 1 at ¶¶ 17, 21 and ECF No. 13 at ¶¶17, 21.

duties under Rule 11, an attorney need not provide an absolute guarantee of the correctness of the legal theory advanced in the paper she files. *See Smith v. Our Lady of the Lake Hosp., Inc.,* 960 F.2d 439, 448 (5th Cir. 1992). As the 7th Circuit remarked in *Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1068 (7th Cir.1987):

> Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case, yet the need for discovery does not excuse the filing of a vacuous complaint.

*Id.* Therefore, under the circumstances the extent of counsel's inquiry and her reliance on the information supplied by her client was "reasonable" within the meaning of Rule 11. *See Brasport, S.A. v. Hoechst Celanese Corp.,* 134 F.R.D. 45, 47 (S.D.N.Y. 1991), aff'd sub nom. *Brasport S.A. v. Hoechst Celanese,* 940 F.2d 649 (2d Cir. 1991)(where the court held that Rule 11 sanctions were not warranted, in that representative and counsel could have reasonably believed information and documentation revealed in discovery would fully substantiate claims.); *see also Smith,* 960 F.2d at 448 (holding that the prefiling factual investigation by attorneys was not flawed so as to warrant sanctions under Rule 11when from their own discussions and interview notes, attorneys could infer that hospital terminated physician's privileges for reasons other than his lack of medical skill and although none of it was conclusive, that information, coupled with knowledge that physician was economic rival of at least one defendant, was sufficient for attorneys to draw inference that some wrongdoing was afoot); *Greenberg v. Sala,* 822 F.2d 882, 887 (9th Cir. 1987)(affirming the denial of sanctions holding that "a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading"); *Solberg v. Inline Corp.,* 740 F. Supp. 680, 686 (D. Minn. 1990)(finding counsel for plaintiffs satisfied their duties under Rule 11 when they indicated that after they diligently interviewed and instructed their clients, plaintiffs

stated that they did not recall receiving any notice and that their records contained no evidence of receipt of the notice under COBRA).

2. <u>Defendant failed to establish that sanctions are warranted based on the lack of an adequate pre-filing inquiry into the facts.</u>

Defendant, as the Rule 11 movant, bears the burden of establishing that Plaintiff's legal positions are utterly lacking in support. *See, e.g., O'Brien v. AlexandAer*, 101 F.3d 1479, 1489 (2d Cir. 1996); *Cortez v. CMG Worldwide, Inc.*, 962 F.Supp. 308, 313 (N.D. N.Y. 1997). Defendant is required to present binding, controlling precedent which forecloses the arguments or positions taken by the Plaintiff. Defendant failed to, and cannot, cite any binding precedent precluding any of Plaintiff's claims. Instead, Defendant's position is that Plaintiff's counsel should have known that Plaintiff's claims were futile before they were filed solely based upon the no-cause determination by the MDCHR. [ECF No. 58 at 2].This contention fails as a matter of law.

A commission's determination of no cause is not an adjudication of rights and liabilities. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982); *see also Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1288, 1289 (11th Cir.2008). Rather, it is a non-adversarial proceeding designed to notify an employer of an investigative agency's findings which are not reviewable in court and not binding. *See, e.g., EEOC v. KECO Indus., Inc.*, 748 F.2d 1097, 1100–01 (6th Cir.1984). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) where the U.S. Supreme Court unequivocally stated:

> in view of the large volume of complaints before the Commission and the nonadversary character of many of its proceedings, 'court actions under Title VII are de novo proceedings and . . . **a Commission 'no reasonable cause' finding does not bar a lawsuit in the case.'**

*Id*. citations omitted; emphasis added. Further, it is well established that the designated agencies are not required to go into an in-depth review of each charge. *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971). The Eight Circuit Court of Appeals discussed some of the problems inherent in findings

made by agencies that investigate and determine charges of discrimination, since those findings are plagued by "the hearsay nature of the EEOC report and to the inability of [a party] to cross-examine the report in the same way that a party can cross-examine an adverse witness." *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984).

Plaintiff's charge was assigned to the MDCHR for investigation. *See* Plaintiff's Exhibit 46. Approximately two (2) months after the Commission received Plaintiff's charge, Plaintiff's telephonic rebuttal interview was scheduled by investigator Mercedes Obando through his counsel for April 8, 2021. *See* Plaintiff's Exhibit 48 at p. 4. The call was ex-parte proceeding in which only the investigator, Plaintiff, and his counsel participated.  During the interview, Mr. Monteagudo's responses were consistent with what he had told his counsel in previous conversations and what he had reported to the police before he retained legal representation. *See* Plaintiff's Exhibit 24 at p. 4.

During the Continued Evidentiary Hearing, Mrs. Saavedra testified that the interview of Mr. Monteagudo revealed additional details confirming the elements of Plaintiff's prima facie case of retaliation. The investigator's (presumably) contemporaneous handwritten notes corroborate Mrs. Saavedra's testimony about the details Plaintiff shared regarding his claims.  *See* Plaintiff's Exhibit 43 at 95-99 at 95-99. Looking first to Plaintiff's protected activity, Mrs. Saavedra testified that during the interview, Plaintiff described how he was subjected to disparate treatment by Noel Leon because of his race and national origin and provided specific examples of several instances of preferential treatment identifying at least one (1) comparator along with the derogatory comments made about Cubans and Plaintiff because he did not speak English. *See id.* at p. 95- 98.  Plaintiff's testimony expresses an objective belief on Plaintiff's part that he was being treated unfairly because he was Cuban.

> *[handwritten at top right:]* Debió informar al supervisor o a Carlos Bailey, Oficial de EEx

**3. You stated that you were discriminated against by the Respondent based on race and national origin. Please provide specific examples.**

> *[handwritten:]*
> 3 Noel would speak negatively about Cubans
> "You Cubans are conemierdas - por eso no quiero trabajar son unos vagos"
> (Asked him to bring the roller - (2 ruedas de hierro)
> llegó con el rolo de gomas
> • It started raining and he called everyone to come in
> Manny LNU - Foreman - Cuban / White trab.

*Id.* at 95 ¶3, 96 at ¶ 3. Mrs. Saavedra testified that in response to the investigator's questioning, Plaintiff also described the details of his complaint to Chris De Moya about Noel Leon. He explained to the investigator that after several incidents with Noel Leon he decided to go see the owner Chris De Moya to complain about Noel Leon. He stated that he explained to Chris De Moya he was having problems with Noel Leon, gave him examples of the disparaging comments regarding Cubans and described several instances in detail of the way he was treated by Leon including the last incident, and asked to be transferred under a different supervisor.

**10. Did you ever report Leon to anyone else in the company and mentioned that you felt discriminated? To whom? Race/national origin?**

> *[handwritten:]*
> 10. Chris De Moya - owner - Cubans / White
> • Having problems w/ Noel and
> he said "Cubans don't work" and I
> need you to transfer.
> Nuevo project - Jerry, LNU (American / White)

*Id.* at 95, ¶ 10, and 97 at ¶ 10.  Similarly, Plaintiff's allegations of adverse actions that would deter

a reasonable person from making a complaint were supported by Plaintiff's descriptions during his

rebuttal interview of the physical and verbal threats he was subjected to after he was transferred

under new supervisor, Manuel Comes. He provided a detailed explanation of how he was

physically threatened by Noel Leon's son, Alejandro Leon, in retaliation for complaining about

Noel Leon and how Manuel Comes, his new supervisor, failed to act to prevent this harassment.

*See id.* at 97. He also explained that he was accused of sleeping on the roller and terminated two

working days after he complained about Alejandro Leon's threats which related back to his original

complaint to Chris De Moya.

> **11. Did you know Alejandro Leon?  What race and national origin is he?  What is his position at the company?  On October 2, 2020, while Leon was attempting to do Quality Control at a site, did you purposefully block the entrance with the asphalt roller while Leon and another employee tried to enter the job site?  Please explain what occurred during that incident.**



Lastly, Mrs. Saavedra testified that the investigator asked questions regarding the alleged

performance issues Plaintiff had and the discipline that Defendant allegedly issued, which

Plaintiff's counsel was not privy to up until the day of the interview. *See*, *id*. at 95. Plaintiff denied all but one of the situations the investigator described. *Id*. at 96 ¶¶5-7. Plaintiff admitted at the rebuttal interview that the day of his termination, he had been told that he was going to be terminated on account of sleeping on the job the day before but denied that the alleged events actually occurred and there is nothing in the record that would indicate Plaintiff did not sincerely believe that he had been set up.

Mrs. Saavedra testified that at the time the Amended Complaint was drafted, she conducted several calls with Plaintiff, that she reviewed the notes and memoranda she prepared during and after each of those interviews including the rebuttal interview, as well as the documents provided by Mr. Monteagudo. She also stated she researched the legal issues of protected activity, adverse action in retaliation cases and pretext, and explained the analysis she undertook of the facts and law, based in part on the information provided by her client. Importantly, on or about August 25, 2022, prior to the Amended Complaint being filed, Plaintiff notified his counsel he received the Notice of Approval of Plaintiff's unemployment which found that his discharge was for reason other than misconduct. *See* Plaintiff's Exhibit 31 at 1.

During the Continued Evidentiary Hearing, defense counsel made much of the fact that Mrs. Saavedra did not personally interview non-party witnesses or individuals otherwise involved prior to filing the Amended Complaint. However, Mrs. Saavedra had no access to Defendant's witnesses and was instead limited to the facts she learned during her encounters with Mr. Monteagudo and the limited facts contained in the MDCHR's finding which included findings that were vague and/or inconsistent.[3] Looking at the totality of Plaintiff's claims, this Court cannot

_____

[3] For example, while the Statement of Determination identified Plaintiff's complaint to Chris De Moya about Noel Leon's disparaging comments this allegation was not considered in the retaliation analysis. Plaintiff's Exhibit 49 at 5, 10-11. Furthermore, while the Determination stated that On April 15, 2020, an interview was conducted with Francisco Baldelomar, Foreman who told the investigator that Noel Leon had an issue with Charging Party because he

say it was unreasonable for Plaintiff's counsel to believe that the operable complaint in this case was well-grounded in fact and law. Nor can it conclude on this record that counsel's inquiry into the facts was inadequate. Courts have found that similar inquiries undertaken by Counsel were not unreasonable under the circumstances.  *See Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1329 (2d Cir.1995)(stating an attorney "is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable."); *See also Weiss v. Coca-Cola Bottling Co. of Chicago*, 1994 WL 327381 (N.D. Ill. July 6, 1994) (stating that "during pre-filing client interviews an attorney is required to disbelieve his or her client, grilling the client to elicit adverse facts, the court will not conclude that plaintiff's sexual harassment claim was based on an inadequate pre-filing investigation into the facts").

Ultimately, the viability of Plaintiff's retaliation claims turned on his credibility, and the information that would corroborate or disprove his allegations had to come from Defendant and its employees. Defendant cannot say that a reasonable pre-filing investigation by Plaintiff's attorneys necessarily would have brought these inconsistencies to light. Therefore, Plaintiff requests that the Court conclude that the Amended Complaint was not frivolous when filed.

3.  <u>Defendant failed to establish that sanctions are warranted based on maintaining the action</u>.

 Defendant argues that Plaintiff's counsel violated Rule 11 by maintaining this action after she heard testimony of Mr. Monteagudo, Chris De Moya, and Susan Giraldo, because she failed to recognize that Plaintiff's complaints during his employment did not amount to protected activity. *See* ECF No. 58. On this basis, Defendant argues that Plaintiff's Counsel violated Rule 11 because the factual assertions categorized Plaintiff's complaints as complaints of discrimination lacked

---

complained against him. He also said he never witnessed Charging Party doing anything wrong his testimony was not weighted at all in the retaliation analysis. *See id.* at 9-11.

evidentiary support. Defendant's argument is based exclusively on excerpts of the deposition testimony given by Plaintiff, and the two Defendant's witnesses -Chris De Moya and Susan Giraldo- while excluding the other testimony they gave favorable to Plaintiff's claims or the conflicting evidence that called their credibility into question.

Specifically, Defendant relies on the deposition testimony from both Chris De Moya and Giraldo when they denied Plaintiff complained about discrimination and assert Plaintiff only used the word "disrespect". *See* ECF No. 58 at p. 3-5. However, Defendant fails to mention that Susan Giraldo conceded she could not recall exactly what was said during the meeting with Plaintiff or that Chris De Moya conceded he was not fluent in Spanish, and he did not understand what Plaintiff stated at the meeting. *See* Plaintiff's Exhibit 7 at 38:1-23 (Susan Giraldo conceded that she did not recall exactly what Mr. Monteagudo said during the meeting); *see also id.* at 55:1-20 (Ms. Giraldo did not remember what Mr. Monteagudo claimed made him feel insulted); *id.* at 56:1-1-13 (Ms. Giraldo concedes that she did not remember exactly why Mr. Monteagudo was asking for a transfer); *See also* Plaintiff's Exhibit 20 at p. 5 (e-mail from Chris De Moya stating "Susan assisted me with the conversation as his Spanish was hard for me to understand"). In contrast to Mr. Monteagudo, who recalled in his deposition exactly what he said and to whom. *See* Plaintiff's Exhibit 2 at 18:11-14.

The deposition testimony any of the witnesses, insofar as it contradicts or disavows some of the assertions in the Amended Complaint does not, without more, warrant a finding that counsel violated Rule 11(b). Whether a witness subsequently testifies in a manner that contradicts statements attributed to him/her in a pleading is not sufficient to establish that counsel failed to make a reasonable inquiry with respect to that witness. *See In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices and Prods. Liab. Litig.*, 268 F.R.D. 509, 518 (S.D.N.Y.2010) (mere fact that confidential sources testified in manner contradictory to statements attributed to them in

complaint was insufficient to support finding that plaintiffs acted in objectively unreasonable manner). Such discrepancies may be attributed to a witness's changing memory or, in the case of a whistleblowing confidential witness, the desire to remain in a former employer's good graces once the protection of confidentiality has been removed. *Id.*; *In re Dynex Capital, Inc. Sec. Litig.*, Case No. 05−1897, D.E. 107, 2011 WL 2581755 (S.D.N.Y. Apr. 29, 2011).

Plaintiff's depositions were taken approximately 1 1/2 years after his counsel and the commission investigator initially interviewed him. Further, to the extent that Plaintiff's testimony may appear contradictory, some of this may be attributed to the use of an interpreter. *See Garang v. Smithfield Farmland Corp.*, 439 F. Supp. 3d 1073, 1098 (N.D. Iowa 2020). Other claimed "inconsistencies" resulted from inartful questions that did not delve further into the specifics of what Mr. Monteagudo said, to whom, or foreclose him from further explaining the testimony he gave in deposition. Thus, without more —the Court simply cannot determine that counsel failed to make a reasonable inquiry or that the assertions lacked evidentiary support and were, thus, factually frivolous, at the time the Amended Complaint were filed.

Lastly, the Court was cautious in deciding summary judgment on the basis of whether Mr. Monteagudo established pretext, not whether he stated a prima facie case of discrimination. [ECF No. 87.] Presumably, the reason the Court assumed Plaintiff stated a prima facie case was due to the disputed evidence thereon and its decision to rely primarily on Defendant's statement of material facts. *Id.*; *see also* ECF No. 100.

**B. <u>Defendant did not present any evidence to meet the stringent standard under Rule 11 to recover attorney's fees and costs.</u>**

It is well settled that a plaintiff's claims should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendant when the claims are meritorious enough to receive careful attention and review in this Circuit. *See O'Neal v. DeKalb*

*County, Ga.*, 850 F.2d 653, 658 (11th Cir. 1988). In *Borges*, the Court concluded: "[T]he Court finds that 'the claims [were] meritorious enough to receive careful attention and review.'" *Busby v. City of Orlando*, 931 F.2d 764, 787(11th Cir.1991). Thus, Defendant's evidence does not meet the stringent standard under 42 U.S.C. § 1988(b) or Rule 11 to recover attorneys' fees. *See also, CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791 (5th Cir. 1993) (trial court should not impose Rule 11 sanctions for advocacy of plausible legal theory, particularly if law is arguably unclear; misapplication of Rule 11 can chill counsel's enthusiasm and stifle creativity of litigants).

It seems apparent that the facts as outlined in this action indicate that the claims raised by Plaintiff herein are at least meritorious enough to warrant "careful attention and review" as in the cases cited above. Defendant simply has no good faith basis to assert that Plaintiff's pleading and actions are violative of these standards in connection with any of the matters specified in Defendant's Motion.

### C. <u>Defendant has failed to present any evidence of bad faith by Plaintiff or his counsel.</u>

There is no evidence of bad faith on the part of Plaintiff or his counsel, that a fraud was perpetrated upon the Court, or that the very temple of justice has been defiled. Mrs. Saavedra testified that she has been counsel of record in over 400 federal cases in the Southern and Middle Districts of Florida and has never been sanctioned in any of them. *See* Plaintiff's Exhibit 42. In this case, two parties simply disagreed about whether Defendant illegally retaliated against Plaintiff and about whether he complained about disparate treatment. Nothing in the record supports the proposition that Plaintiff or his counsel acted in bad faith, perpetrated a fraud on the Court, or pursued a sham proceeding without any basis in fact or law. Defendant's tactic of casting aspersions upon Plaintiff and his counsel reveals nothing more than a facile understanding of a legal process where opposing parties often assert diametrically opposed positions.

### D. **Defendant filed its Motion for Sanctions for an improper purpose.**

As this Court is aware, the provisions of Rule 11 are fully applicable to Rule 11 motions such as that of Defendant. Comment to Rule 11, Fed. R. Civ. P., 1993 revision ("the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions"); *see also Clever Covers, Inc. v. Storm Guard, Inc.*, 2006 WL 2474266 *3 (M.D. Fla. 2006)(parties considering filing Rule 11 motions should exercise extreme caution and act at their own peril since "such an approach carries risk, for an inappropriate Rule 11 motion can subject the movant's counsel to Rule 11 sanctions.") *confirmed Clever Covers, Inc. v. Storm Guard, Inc.*, 2006 WL 2691759 *1 (M.D. Fla. 2006).Defendant's Motion for Sanctions alleged that the Amended Complaint was filed without a prefiling inquiry to determine if the allegations could be brought, all while its own pre-filing investigation of the law and fact in support of the Motion would have demonstrated its Motion was baseless.

First, Defendant attempted to advance several legal theories that were foreclosed by clear legal precedent including requesting sanctions based on a withdrawn pleading and the claims of discrimination that had been abandoned well before the safe harbor letter was served by Defendant. *See* ECF No. 58 at 10, 18; *see also* Plaintiff's Exhibit 50 at 16:2-18.  In addition, Defendant continued to advance the legal theory that Plaintiff's retaliation claims should not have been filed based upon the no cause determination issued by the MDCCHR notwithstanding the well settled law that, the absence of a finding of reasonable cause does not bar a suit in federal court. *See McDonnell Douglas*, 411 U.S. 792, at 798–99, 93 S.Ct. at 18 22–23, 36 L.Ed.2d 668.

Second, Defendant's counsel has also misrepresented facts in support of Defendant's requested sanctions even after it became clear that the contentions were not supported by the record. For example, Defendant represented to the Court that Plaintiff's counsel had received evidence from the Defendant prior to filing suit. *See* Plaintiff's Exhibit 50 at 37:7-19; *id*. at 43:13-

44:18. Defendant and its counsel knew (or should have known) no contact had been made between Defendant and Plaintiff's counsel prior to the lawsuit being filed. As Mrs. De Moya testified during the Initial Evidentiary Hearing, Defendant was only in contact with the investigator during the administrative proceeding. *Id*. at 45:14-24; *id*. at 48:14-49:7; *see also id*. at 55:13-57:16. Notwithstanding, the record evidence, in an attempt to support its contention that Mrs. Saavedra had failed to perform a reasonable inquiry, Defendant and its counsel attempted to mislead the Court on this issue basing its contentions in nothing more than their speculations. *Id*. at 60:4-21 Similarly, Defendant and its counsel sought to portray Mrs. Saavedra as an attorney who had previously been found to bring and maintain frivolous claims by questioning her about an appeal of an unrelated matter that she was not involved in. While a simple PACER search would have revealed to Defendant's counsel the allegation was baseless, at the Continued Evidentiary Hearing, Defendant's counsel continued to misrepresent the matter to the Court in an attempt to discredit Mrs. Saavedra.

Finally, the Defendant has made clear that its Motion was filed for an improper purpose. Defendant's Motion for Sanctions is nothing more than an attempt to recoup the fees and costs incurred in having to defend an otherwise legitimate claim. *See* ECF No. 58 at p. 3. Defendant's request for relief undermines the deterrence nature Rule 11 is intended to incite. By serving Defendant's Rule 11 motion, defense counsel exposed himself to sanctions. Rule 11 authorizes a court to sanction a party who submits a pleading for an improper purpose. Fed. R. Civ. P. 11(b)(1). "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11 advisory committee's note.

The lack of merit in Defendant's Motion for Sanctions warrants both the denial of the Motion and the awarding of Plaintiff's fees and costs incurred in having to respond to such a filing. *See*, Rule 11 l(c)(l)(A) ("[i]f warranted, the court may award to the party prevailing on the motion

the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."). Defendant has used its Rule 11 motion to emphasize its own position, intimidate Plaintiff and his counsel into withdrawing contentions that are fairly debatable, and seek disclosure of matters otherwise protected by privilege. By misusing Rule 11 as a sword against Plaintiff instead of as a shield from truly frivolous legal argument, Defendant has stepped over the bounds of zealous advocacy and into the realm of sanctionable behavior. Having to defend a colorable claim of retaliation is not sanctionable under Rule 11.

## V.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion for Sanctions in its entirety, and grant sanctions against Defendant and its counsel for requiring such protracted and otherwise unnecessary litigation.

Dated: September 24, 2023.          Respectfully submitted,

| | |
|---|---|
| _/s/ Brian H. Pollock_<br>Brian H. Pollock, Esq.<br>Fla. Bar No. 174742<br>brian@fairlawattorney.com<br>FAIRLAW FIRM<br>135 San Lorenzo Avenue<br>Suite 770<br>Coral Gables, FL 33146<br>Tel: (305) 230-4884<br><br>_Counsel for Nathaly Saavedra, Esq. and PereGonza The Attorneys_ | _/s/ Nathaly Saavedra_<br>Nathaly Saavedra, Esq.<br>Fla. Bar No. 118315<br>Email: nathaly@peregonza.com<br>Juan J. Perez, Esq.<br>Fla. Bar No. 115784<br>Email: juan@peregonza.com<br>**PEREGONZA THE ATTORNEYS, PLLC**<br>5201 Blue Lagoon Drive, Suite 290,<br>Miami, FL 33126<br>Tel. (786) 650-0202<br><br>Counsel for Plaintiff |

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Nathaly Saavedra</u>
Nathaly Saavedra, Esq.

**SERVICE LIST**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 1:22-cv-22343-KMM Moore/Louis

Nathaly Saavedra, Esq.
Fla. Bar No. 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Fla. Bar No. 115784
Email: juan@peregonza.com
P. Brooks, LaRou, Esq.
Fla. Bar No. 1039018
Email: brooks@peregonza.com
Jocelyn R. Rocha, Esq.
Fla. Bar No. 1039302
Email: jocelyn@peregonza.com
**PEREGONZA THE ATTORNEYS, PLLC**
5201 Blue Lagoon Drive,
Suite 290,
Miami, FL 33126
Tel. (786) 650-0202
Fax. (786) 650-0200

Attorneys for Plaintiff

Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel: (305) 230-4884

*Counsel for Nathaly Saavedra, Esq. and PereGonza The Attorneys*

Method of Service: CM/ECF notice

Reginald J. Clyne, Esq.
Florida Bar No. 654302
reginald.clyne@qpwblaw.com
Chanelle Artiles, Esq.
Florida Bar No. 10006402
chanelle.artiles@qpwblaw.com
Quintairos, Prieto, Wood & Boyer, P.A.
9300 South Dadeland Blvd., 4th Floor
Miami, Florida 33156
Telephone: 305-670-1101

Attorneys for Defendant

Method of Service: CM/ECF notice