**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.: 22-cv-22343

JORGE MONTEAGUDO ALBURQUERQUE

      Plaintiff,

v.

THE DE MOYA GROUP, INC.,
a Florida Profit Corporation,

      Defendant.

_____/

**<u>DEFENDANT, THE DE MOYA GROUP, INC.'S VERIFIED MOTION FOR</u>**
**<u>ATTORNEYS' FEES AND SANCTIONS</u>**

Pursuant to S.D. Fla. L.R. 7.3(a), and Rule 54(d)(2) of the Federal Rules of Civil Procedure Defendant, The De Moya Group, Inc. ("De Moya"), hereby moves for an order and judgment awarding it attorneys' fees, costs, and sanctions against Plaintiff, Jorge Monteagudo Alburquerque, and his counsel. This Motion arises from the Court's August 25, 2023 Order denying Plaintiff's motion for reconsideration. *See* [ECF No. 100].

### Introduction

As the prevailing party in a frivolous civil rights action De Moya is entitled to attorneys' fees and sanctions under 42 U.S.C. § 1988(b), 28 U.S.C. § 1927, and the Court's inherent authority. Plaintiff initiated this action against De Moya alleging he was unlawfully terminated in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760, *et seq*. - despite a prior determination from the Miami-Dade Commission on Human Rights ("MDCHR") stating there was "no evidence that he participated in a protected activity." De Moya put Plaintiff and his counsel on notice from the onset, that it considered this case frivolous by moving to dismiss. Nevertheless, Plaintiff and his counsel vigorously litigated this groundless case, causing the parties and this Court to needlessly expend a substantial amount of time and resources on litigation for a case that had no merit from the start.

Plaintiff and his counsel's efforts to turn a petty workplace slight into a civil rights action ultimately failed. De Moya prevailed at summary judgment, and again at the motion for reconsideration - but De Moya's victory has come at a high cost. At the time this motion was drafted, De Moya has been billed over $252,620 in litigation expenses. Accordingly, De Moya requests that this Court find Plaintiff and his counsel liable for the fees De Moya incurred while defending a lawsuit that should have never been filed, much less pursued.

## Relevant Background

### *The Pre-Suit Discrimination Charge*

Before this lawsuit began, Plaintiff dual-filed a Charge through his current counsel, Nathaly Saavedra, with the EEOC and"), alleging De Moya committed violations of Title VII and the FCRA for national origin discrimination and retaliation when Plaintiff was terminated from his employment for sleeping on a roller.[1] Seven months after the MDCHR issued a detailed determination that Plaintiff's discrimination and retaliation charges lacked legal and factual support, this lawsuit was filed.

Plaintiff is a former laborer with a history of poor work performance, who alleged that De Moya, a Cuban-owned company based in Miami-Dade with a workforce that is almost entirely Hispanic, unlawfully retaliated against him on the basis of his Cuban national origin. According to Plaintiff, his Cuban supervisors, Noel Leon and Manuel Comes, who are Spanish-speaking and also Cuban, discriminated against him because he is Cuban and does not speak English.

Upon receiving notice of Plaintiff's Charge, De Moya submitted documents and information to the investigating agencies detailing Plaintiff's work history and reasons for his termination. After reviewing the parties' submissions, the MDCHR issued a memorandum in December 2021 with a detailed explanation for its determination that Plaintiff's claims did not constitute a violation of Title VII/FCRA (the "MDCHR Determination"), which stated, in pertinent part:

> Charging Party alleged he was discriminated against based on his race (Hispanic) and national origin (Cuban) when he was terminated. However, Charging Party provided no evidence that similarly situated individuals outside of his protected class were treated better or different than him. In fact, witnesses offered that N. Leon was highly respected among his peers and no other employee had ever made a complaint against him. . . There was no indication that Charging Party was reprimanded because of his race and/or national origin. Additionally, the Respondent provided a list of new hires for a six-month period in 2020, where it shows that fourteen (14) out of forty-one (41) persons hired, were of Cuban descent

---

[1] A Roller is a type of heavy equipment used to compact soil, gravel, concrete, or asphalt in the construction of roads.

and twenty-eight (28) of them identified as Hispanic. They also reported that during that same period, fifteen (15) employees were involuntarily terminated. Six (6) of those employees were of Cuban descent, but none of them were under Leon's supervision. This does not seem like the actions of a company with discriminatory animus based on race or national origin.

Moreover, Respondent provided a legitimate, non-discriminatory business reason for their actions. Respondent stated that Charging Party had been previously disciplined for various work performance deficiencies and their sole reason for terminating him was because he fell asleep on the job.

MDCHR Determination at p. 8. With respect to Plaintiff's retaliation claim, the MDCHR

Determination concluded:

In this case, Charging Party claimed he was terminated in retaliation for complaining about his supervisor and his supervisor's son. However, he provided no evidence that he participated in a protected activity for the purposes of retaliation under the anti-discrimination laws.

*Id*. at 8-9. Plaintiff and his counsel did not identify any additional facts or legal authority that would bring about a different result from the conclusion reached by the MDCHR. Nevertheless, they proceeded to file this lawsuit seven months later.

On July 26, 2022, Plaintiff filed his initial six-count complaint, alleging claims for discrimination on the basis of race, national origin and unlawful retaliation in violation of Title VII and the FCRA. *See generally* [ECF No. 1]. After the suit was filed, Plaintiff and his counsel were first alerted that the lawsuit was frivolous when De Moya filed a motion to dismiss highlighting the lack of legal support for the claims asserted, and Plaintiff's mischaracterization of key facts, such as describing the complained of supervisors as "white" while omitting they are of Cuban origin. *See* [ECF No. 9]. Instead of dropping the suit in full, Plaintiff opted to only drop the discrimination claims and on August 29, 2022, Plaintiff filed the operative amended complaint alleging two counts of retaliation under Title VII and the FCRA. *See* [ECF No. 13].

The next warning that this suit was frivolous came during Plaintiff's first deposition. When asked about complaints of alleged discrimination he made while employed with De Moya, Plaintiff only testified about alleged "disrespect" by his supervisor, Noel Leon:

> Q:   And that's when you told them that you thought that Mr. De Moya had a bad attitude and treated you with a lack of respect?
>
> A:   Let me explain it to you. *The lack of respect happened one day and he never asked to – he never apologized to anything.* I tried to leave it at that not to lose my job. But once, on a certain day, he told me that I had to go to 874. I explained to him that one of my tires was in bad condition and that I couldn't get on the expressway and asked if he had someone else that he could send. He responded no, that it had to be myself. That if I didn't go, I would be fired – I was fired. I went to that place and during the break I explained to him everything that had happened, everything that was happening and I asked him to change me to a different project.

Pl. First Dep., pp. 15:13-16:6 (emphasis added). It is axiomatic that there is no Eleventh Circuit precedent to support an employment discrimination claim simply because an employee feels disrespected. Hence, even if Plaintiff's counsel were to claim subjective good faith until this point, it became painfully clear during Plaintiff's deposition that the claims were groundless.

When the parties continued Plaintiff's deposition in November 2022, he altered his testimony to add that he also complained about Leon because of discrimination. But he did not offer any testimony describing specific examples of discriminatory conduct by Leon, or on behalf of De Moya. *See* Pl. Second Dep., pp. 16:4-17:17. Nevertheless, Plaintiff and his counsel relied on this inconsistent and unsubstantiated testimony to relentlessly pursue this frivolous case. There was extensive discovery taken, including eleven depositions. Yet, the evidence uncovered only provided additional proof of Plaintiff's history of poor work performance and that he was terminated for falling asleep on machinery. Notably, there was no evidence to support Plaintiff's claims of actionable discriminatory conduct on behalf of De Moya, or that any alleged employment actions were taken for prohibited reasons.

Throughout this litigation, De Moya's counsel maintained that this lawsuit is meritless and engaged in multiple conferrals with Plaintiff's counsel urging her to drop this suit before fees were sought. On February 2, 2023, De Moya's lead counsel, Reginald Clyne, informed Plaintiff's lead counsel, Ms. Saavedra, that this is "a frivolous lawsuit worthy of [] Rule 11 sanction[s]" and implored her to "please review the law on Title VII" before proceeding further. *See* [ECF. No. 58-2]. Ms. Saavedra replied with a recitation of case law for Rule 11 sanctions and indicated her belief that they will be able to establish the retaliation claims "at the conclusion of discovery." *Id.*

After filing a motion for summary judgment, De Moya served Plaintiff's counsel with a "safe harbor" letter and enclosed Rule 11 motion in accordance with Fed. R. Civ. P. 11(b). Before filing the Rule 11 motion, De Moya's counsel again tried to reason with Ms. Saavedra, and asked that the case be dismissed by noon the following day to prevent the filing of the Rule 11 motion. *See* April 13-14 email thread, [ECF No. 58-3]. In her reply, Ms. Saavedra contended that "this is not a discrimination case" and concluded her email by advising Mr. Clyne to confer with our client before proceeding as "the costs of litigating this case will only increase at this point." *Id.* On April 17, 2023, De Moya filed its Rule 11 Motion for Sanctions. [ECF No. 58]. During the first Rule 11 evidentiary hearing, Judge Louis voiced her concerns regarding "what Rule 11 requires the courts to do to prevent frivolous cases from continuing to cost the system and the parties money." [ECF No. 92] at pp. 30:25-31:5. Judge Louis also raised the possibility of the entire costs of litigation shifting to Plaintiff in the event that De Moya prevailed on the merits and moved for fees under frivolity. *See id.* at p. 16:13-18. Once again, Plaintiff and his counsel chose to ignore glaring red flags warning that this case is frivolous.

As for the summary judgment filings, Plaintiff's filings created issues which unnecessarily multiplied the proceedings. Plaintiff's statement of material facts filed in response to De Moya's

material facts was deficient and stricken by the Court for failure to comply with Local Rule 56.1. [ECF No. 62]. In addition, Plaintiff's response opposing De Moya's motion for summary judgment [ECF No. 45], challenged the admissibility of his own testimony from the first deposition. This unsubstantiated challenge resulted in the Court ordering the parties to submit briefs addressing the admissibility of Plaintiff's first deposition. [ECF No. 63]. Then, despite being allowed the opportunity to re-submit his response statement of material facts, Plaintiff's amended statement suffered from similar deficiencies. [ECF No. 69]. Plaintiff's warrantless objections to the use of his testimony as summary judgment evidence, and his repeated failure to comply with Local Rule 56.1 resulted in De Moya's counsel preparing a brief establishing the admissibility of Plaintiff's first deposition, a second reply statement of material facts, and a memorandum of law addressing Plaintiff's non-compliance with Local Rule 56.1. *See* [ECF Nos. 57, 82, 83].

Ms. Saavedra's recklessness in pursuing this case is highlighted by her repeated attempts to advance arguments that were not factually or legally plausible. For example, in response to Judge Louis' request for case law that recognizes the complained-of conduct in *this case* meets the objective standard for a Title VII retaliation claim, Ms. Saavedra cited *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020), and *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1350 (11th Cir. 1999). However, as the Court correctly noted, neither of those cases are factually analogous to the facts at hand. *See* hearing transcript at pp. 30:14-31:22, [ECF No. 92]. Then, when the Court asked Ms. Saavedra to point to specific evidence proffered supporting the allegation that Plaintiff was treated differently, Ms. Saavedra mischaracterized her client's deposition testimony in open court, claiming that Plaintiff testified Noel Leon assigned Plaintiff "less desirable" jobs:

> MS. SAAVEDRA:     My client has testified that Noel Leon has treated him differently. That they would give him -- that he would give him the less -- the less desirable jobs.

| | |
|---|---|
| THE COURT: | Where did he testify to that? Where is that evidence? I didn't see that cited in your response. |
| MS. SAAVEDRA: | Part of that is the complaint about the job that he was being assigned to and sent to right before he went to make a complaint. That was one example. |
| THE COURT: | I'm looking for evidence, not a general description. |
| MS. SAAVEDRA: | It's on 50-2, starting on page 31, line 21. |
| MS. SAAVEDRA: | Page 31, is where the question starts. |
| THE COURT: | I'm not seeing that on this page. On page 31, you said? |
| MS. SAAVEDRA: | Starting on actual page 31 of the deposition. |
| THE COURT: | And where is his testimony that he was treated differently? |
| MS. SAAVEDRA: | So his explanation to me was that that was part of the way that he was being treated differently by Noel Leon, that he will give him those assignments that were more physical and more demanding and less desirable, I guess you could say, than other employees. |
| THE COURT: | *Okay. That is not clear from the words on the page.* |

*Id.*, p. 33:6-7 (emphasis added).

The Court's confusion was well-founded. Page 31, line 21 of Plaintiff's second deposition does not even hint at complaints of Plaintiff being assigned more physically demanding jobs. That excerpt of Plaintiff's testimony states:

| | |
|---|---|
| MR. CLYNE: | Were you advised on 7/16/2020 that you drove through the base rock, running the length of the base, which would need to be fixed and re- inspected? |
| THE WITNESS: | No. When we finished, when we ended the finish grade, I will put the barriers around the area with the tape and barrels. And not till we are planning, and not till we apply the prime, which is the liquid asphalt and sand, you cannot go through that area. |

8

Plt. Second Dep., pp. 31:21-32:6. Hence, the actual text of the portion of the transcript Plaintiff's counsel directed the Court to was not actual evidence of discriminatory treatment.

Ms. Saavedra has also shown a reckless disregard for the well-established case law addressing a prevailing civil rights defendant's right to a fees award upon a finding of frivolity. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The Court flagged Plaintiff's potential liability for attorneys' fees during the first Rule 11 hearing, and made the observation that "if, ultimately the plaintiff does not prevail on motion by the defense and a finding of frivolity, the fees for the entire case are shiftable to the defense." *See* [ECF No. 92] at pp. 33:25-34:10. Ms. Saavedra responded by wrongly stating that "the law allows for the plaintiff to recover fees and costs if they prevail but it's not fee-shifting, it's not whoever prevails." *Id*. The fee-shifting analysis for civil rights cases under *Christiansburg* has been in place since the Supreme Court issued the decision in 1978. It is not new. It is more than reasonable to expect any attorney litigating similar claims to be aware of the fee shifting analysis for a prevailing party in a civil rights action.

A week after the first Rule 11 evidentiary hearing, the Court granted De Moya's motion for summary judgment on both of Plaintiff's claims. *See generally* [ECF No. 87]. The Court's findings included the observation that Plaintiff's allegations regarding Comes suggested the encounter was nothing "more than a petty slight" which is not actionable under Title VII. *See id.* at p. 6. The Court referenced specific examples of record evidence pertaining to Plaintiff's work history and concluded that De Moya "had legitimate nondiscriminatory reasons for terminating Plaintiff." *Id*. at 7. The Court also noted the lack of evidence to establish that the reason for Plaintiff's termination was false or that the reason for his termination was a pretext, and ultimately held "Plaintiff utterly fail[ed] to demonstrate that these legitimate, nondiscriminatory reasons are pretext for discrimination." *Id*. at p. 9-10. After losing the summary judgment, Plaintiff tried to relitigate the

claims by filing a motion to alter or amend judgment under Fed. R, Civ. P. 59 – another groundless motion where De Moya prevailed. *See* [ECF Nos. 94, 100].

De Moya has fulfilled its "primary objective" by "rebuffing the Plaintiff's legal challenges" and thus, is the prevailing party in this case. *Club Madonna, Inc. v. City of Miami Beach*, No. 16-25378-CIV-MORE, 2023 U.S. Dist. LEXIS 87512, at \*16 (S.D. Fla. May 18, 2023). Meanwhile, in their relentless pursuit of a meritless case, Plaintiff and his counsel have shown a reckless disregard for controlling law and judicial resources throughout this litigation - at De Moya's expense. Only a tangible consequence of attorneys' fees can adequately address Plaintiff and his counsel's vigorous prosecution of this case despite its obvious frivolity. Accordingly, this Court should enter an order awarding De Moya its attorneys' fees.

## MEMORANDUM OF LAW

### A.  Grounds for Entitlement to Attorneys' Fees and Sanctions

The circumstances in this case warrant an award of attorneys' fees to De Moya pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and the Court's inherent authority. *See Quinto v. Universal Parking of Florida, LLC*, CV 15-21055-CIV, 2016 WL 8739323, at \*1 (S.D. Fla. Sept. 29, 2016). First, De Moya is entitled to a fees award under 42 U.S.C. § 1988(b), as the prevailing defendant in an employment discrimination lawsuit that was obviously lacking in legal or factual support from its inception. *See Turner v. Sungard Bus. Sys., Inc.,* 91 F.3d 1418 (11th Cir. 1996) (citation omitted); *Sloan v. Miami-Dade Cnty.*, 1:18-CV-21517, 2020 WL 5902486, at \*5 (S.D. Fla. Jan. 24, 2020). Second, Plaintiff's counsel should be sanctioned under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings in this case despite it being abundantly clear his Title VII claims had no basis in law or in facts. *See Torres v. City of Orlando*, 264 F. Supp. 2d 1046, 1053 (M.D. Fla. 2003), *aff'd*, 88 Fed. Appx. 391 (11th Cir. 2003). In the Eleventh Circuit, bad faith constitutes a basis for attorneys' fees regardless of the *Sullivan* factors. *See*

*Turner*, 91 F.3d at 1422 n. 6; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Lastly, attorneys' fees are warranted under this Court's inherent authority to award sanctions against Plaintiff and his counsel for recklessly pursuing this frivolous action. *See Dalton*, 158 F.3d at 1214. Eleventh Circuit courts caution that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). Here, Plaintiff and his attorney refused to discontinue their quest until they were forced to by the Court's disposition of the claims. Accordingly, De Moya should be awarded its fees.

1. **As the Prevailing Party, De Moya is Entitled to Attorneys' Fees Under 42 U.S.C. § 1988 Because Plaintiff Brought and Maintained this Action Despite its Frivolity**

A prevailing defendant in a civil rights case is entitled to recover attorneys' fees under § 1988(b), —even in the absence of subjective bad faith— if the court finds that the "claim was frivolous, unreasonable, or groundless, *or that the plaintiff continued to litigate after it clearly became so*." *See, e.g.*, *Turner,* 91 F.3d at 1423 (emphasis in original) (citation omitted); *Bevan v. Lee Cnty. SO*, 224 F. App'x 880, 882 (11th Cir. 2007). A meritless case is one "that it is groundless or without foundation." *Club Madonna, Inc. v. City of Miami Beach*, No. 16-25378-CIV-MORE, 2023 U.S. Dist. LEXIS 87512, at *10 (S.D. Fla. May 18, 2023). "The plaintiff's subjective intent -that is, whether the plaintiff subjectively perceived her lawsuit to be frivolous- is irrelevant." *Palm Beach Polo, Inc. v. Vill. of Wellington*, No. 19-cv-80435, 2021 U.S. Dist. LEXIS 198624, at *7 (S.D. Fla. Oct. 13, 2021) (citations omitted). Thus, "a court need not find both at a plaintiff wholly failed to substantiate its claims and that a plaintiff persisted in a legal argument after learning of binding precedent that was clearly to the contrary; rather, *the court simply must simply make a finding that the plaintiff engaged in one of the two types of conduct*." *Id.* (emphasis added).

When determining whether to award attorneys' fees to a defendant in a civil rights case, district courts in the Eleventh Circuit typically apply the "*Sullivan*" factors, which are: (1) whether the plaintiff established prima facie case, (2) whether the defendant offered to settle, and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on merits. *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985); *Sibley v. Levy*, 203 F. App'x 279, 280-81 (11th Cir. 2006) (per curiam). However, a finding of bad faith—even if not subjective bad faith—constitutes a basis for attorneys' fees regardless of Sullivan's three factors. *McDonough v. City of Homestead, Fla.*, No. 1:21-cv-21538-KMM, 2022 U.S. Dist. LEXIS 126813, at *7 (S.D. Fla. July 15, 2022). Courts determining an award of fees to a prevailing defendant also consider whether the case was "meritorious enough to receive careful attention and review." *O'Boyle v. Thrasher*, 647 F. App'x 994, 995 (11th Cir. 2016). Typical "frivolity" cases are those that have been dismissed before trial, on summary judgment or on a motion to dismiss. *See Bevan*, 224 F. App'x at 882); *Perry v. Orange Cnty.*, 341 F. Supp. 2d 1197, 1205 (M.D. Fla. 2004).

Here, De Moya is the prevailing party. The Court granted De Moya's motion for summary judgment on all counts, thereby "rebuffing Plaintiff's opportunity to litigate the claims and resolving the case in [De Moya's] favor." *McDonough*, 2022 U.S. Dist. LEXIS 126813, at *8. As discussed below, all three *Sullivan* factors weigh strongly in favor of a finding that Plaintiff's claims were frivolous, unreasonable, and without merit, because: (1) Plaintiff failed to establish a prima facie case under Title VII; (2) De Moya did not present Plaintiff with any settlement offer; and (3) this Court granted summary judgment and dismissed Plaintiff's claims prior to trial. *See Quintana v. Jenne*, 414 F.3d 1306, 1310 (11th Cir. 2005).

**a. De Moya is Entitled to Attorneys' Fees Because Plaintiff Failed to Establish a Prima Facie Retaliation Claim Under Title VII**

Plaintiff's "utter failure" to submit probative evidence to support his bare allegations of his prima facie claims demonstrates that this case was legally and factually deficient from the start. *See, e.g.*, *Quinto*, 2016 WL 8739323, at *3 (awarding fees where the "frivolity of [plaintiff's] complaint was apparent from its inception"); *Torres*, 264 F. Supp. 2d at 1052 (awarding defendant attorneys' fees under § 1988 because plaintiff's employment discrimination case was factually and legally groundless at the outset). Similar to the plaintiff in *Torres*, the essence of Plaintiff's case is "preposterous" - he did not like the way his supervisors spoke to him, or that he was directed to go to a certain job site, and since he's Cuban, the company must have engaged in unlawful retaliation when they terminated him. *See Torres*, 264 F. Supp. 2d at 1052 ("The essence of the [p]laintiff's case is she was fired and she's Hispanic, therefore, they must have discriminated against her, and that's preposterous.").

Plaintiff's lack of evidence to support his prima facie claims was apparent well before the summary judgment order was entered. This became obvious during the first Rule 11 hearing, where Plaintiff and his counsel could not satisfy the Court's request for evidence Plaintiff had a good faith, reasonable belief De Moya was engaged in unlawful employment practices. *See Saffold v. Special Counsel, Inc*., 147 Fed. Appx. 949, 951 (11th Cir. 2005). Plaintiff's failure to establish a prima facie claim is further demonstrated in the Court's order granting summary judgment, and the order denying Plaintiff's Rule 59 motion. *See* [ECF Nos. 87 and 100].

This Court granted De Moya's motion for summary judgment on both of Plaintiff's claims on May 16, 2023. *See generally* [ECF No. 87]. In its order, the Court found that under the controlling precedent, Plaintiff's purported complaints about Leon's alleged disrespect do not constitute statutorily protected activity. *See United States v. City of Fort Pierce*, 08-14309-CIV, 2009 WL

10668949, at *5 (S.D. Fla. Oct. 29, 2009). Furthermore, Plaintiff never established that Noel Leon's alleged disrespectful remarks about Cubans and his alleged treatment of Plaintiff on the basis that Plaintiff does not speak English, was attributable to De Moya as an employer. Rather, the Court found that Plaintiff's alleged interaction with Comes, and the altercation with Alejandro Leon were not adverse employment actions under controlling case law. *See id.* at pp. 5-6. The Court also noted Plaintiff provided no evidence suggesting that his encounter with Comes "was anything more than a petty slight, which is not actionable under a retaliation claim." *Id.* at p. 6. As a result, the Court found Plaintiff failed to show "that the altercation [with Alejandro] was meant to retaliate against Plaintiff for complaining *of discrimination* . . ." *Id.* (emphasis in original). There is also no causal connection between Plaintiff's alleged complaints to Chris De Moya about Leon and Jerry Nasso's decision to terminate Plaintiff's employment, especially since there is no competent evidence showing Nasso knew of the complaints when he decided to fire Plaintiff for sleeping on the roller. Ultimately, this Court concluded that De Moya "had legitimate nondiscriminatory reasons for terminating Plaintiff." *Id.* at 7-10.

De Moya anticipates that Plaintiff will argue that because the order granting summary judgment was based on a finding of no pretext, rather than the lack of a prima facie claim, the first *Sullivan* fact is not met. *See* [ECF No. 87] at p. 6. However, a prevailing defendant is still entitled to fees where the court "only presumed for purposes of summary judgment" that plaintiff established a prima facie case. *See Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002). This Court's order granting summary judgment expressly states – and reiterates – it only assumes Plaintiff established a prima facie retaliation claim "*arguendo*" for purposes of its summary judgment analysis under the *McDonnell Douglas* framework. *See* [ECF No. 87] at p. 6-7. Thus, the Court's assumption for solely summary judgment purposes is not dispositive. Instead,

14

a finding of frivolity can be found on the basis of Plaintiff's failure to introduce competent evidence to support his prima facie claims. *See Sloan*, 2020 WL 5902486, at \*5; *Minus v. Miami-Dade Cty.*, No. 19-CV-25113-BLOOM/LOUIS, 2021 U.S. Dist. LEXIS 219466, at \*4 (S.D. Fla. Oct. 30, 2021) ("findings of frivolity have been sustained when either a motion for summary judgment . . . has been granted in instances where the plaintiff did not introduce any evidence to support its claim."). Moreover, Plaintiff's insistence on maintaining this action despite the persistent warning signs that the claims had no basis in fact presents a basis for attorneys' fees under § 1988. *See Turner*, 91 F.3d at 1423 (district court did not abuse its discretion in sanctioning plaintiff's counsel under Rule 11 and awarding attorneys' fees to prevailing defendant under § 1988 for maintaining groundless claim).

### b.  De Moya Never Offered to Settle

The second *Sullivan* factor also weighs in favor of awarding fees to De Moya, because De Moya never offered Plaintiff any affirmative relief to settle this case. *See, e.g.*, *Hamilton*, 700 Fed. Appx. at 886; *Jerelds*, 194 F. Supp. 2d at 1311.

### c.  This Court Dismissed Plaintiff's Claims Prior to Trial Without Giving the Case Close and Careful Attention

This Court dismissed Plaintiff's claims at the first opportunity it had to consider the merits. *See Hamilton*, 700 Fed. Appx. at 886; *Quintana*, 414 F.3d at 1310. In determining if an award of fees to a prevailing defendant is warranted, Eleventh Circuit courts also consider whether the case was "meritorious enough to receive careful attention and review." *O'Boyle v. Thrasher*, 647 F. App'x 994, 995 (11th Cir. 2016). Here, summary judgment was granted in favor of De Moya on all of Plaintiff's claims on May 16, 2023 - less than 9 months after the operative complaint was filed on August 29, 2022. The Court's brief deliberation before disposing of Plaintiff's claims is a strong indicator that this case did not merit "careful attention and review." *See id.*

**2.   Sanctions are Warranted Under 28 U.S.C. § 1927 and the Court's Inherent Authority Because this Action was Initiated and Maintained in Bad Faith**

To justify an award for sanctions against an attorney pursuant to 28 U.S.C. § 1927: (i) the attorney must have engaged in unreasonable and vexatious conduct; (ii) the conduct must have multiplied the proceedings; and (iii) the amount of the sanctions cannot exceed the costs occasioned by the objectionable conduct. *See Eldredge v. EDCare Mgmt., Inc*., 766 Fed. Appx. 901, 907 (11th Cir. 2019) (citation omitted) (affirming district court's decision awarding $422,433.30 to prevailing defendant in FLSA and employment discrimination action); *see also Collar v. Abalux, Inc*., 16-20872-CIV, 2018 WL 3328682, at *9 (S.D. Fla. July 5, 2018) ("Section 1927 sanctions . . . cover more misconduct than Rule 11, though the scope of sanctionable conduct often overlaps."); *Bernstein v. Boies, Schiller & Flexner, L.L.P*., 416 F. Supp. 2d 1329, 1330 (S.D. Fla. 2006). 28 U.S.C. § 1927 was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith. *Bernstein*, 416 F. Supp. 2d at 1331.

In addition, the Court may also invoke its potent inherent authority to sanction "even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc*., 501 U.S. 32, 49 (1991). Attorneys' fees and costs may be assessed under the court's inherent power, against the client, or the attorney, or both "when either has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dalton*, 158 F.3d at 1214 (affirming fees award against plaintiffs' counsel under court's inherent powers for bad faith pursuit of frivolous employment discrimination claim); *JTR Enters., LLC v. An Unknown Quantity*, No. 11-cv-10074-KMM, 2014 U.S. Dist. LEXIS 188881, at *24 (S.D. Fla. June 19, 2014) (citation omitted). Pursuing a claim "without reasonable inquiry into the underlying facts" can constitute the bad faith necessary to support a fees sanction under § 1927 or the Court's inherent authority. *See Dalton*, 158 F.3d at 1214; *see also Rodriguez v. Marble Care Int'l, Inc*., 863 F. Supp. 2d 1168, 1179 (S.D. Fla. 2012).

16

The record in this case shows that Plaintiff's counsel either failed to conduct a reasonable inquiry into the underlying facts or simply did not care that the facts did not create a colorable Title VII action. Furthermore, Plaintiff's counsel maintained this suit even after onerous discovery revealed that there was no evidence to bear out Plaintiff's retaliation claims. Plaintiff's first deposition only mentioned his feeling disrespected. In his subsequent deposition, Plaintiff inserted the term discrimination into his complaints of disrespect but still could not give any examples of De Moya engaging in actual discriminatory acts on account of Plaintiff's Cuban origin.

. The Court may infer from the record that Plaintiff's counsel "intentionally —although perhaps without malice—filed and prosecuted claims that lacked any plausible legal or factual support." *See Torres*, 264 F. Supp. 2d at 1053. "An attorney should not equate the pursuit of zealous advocacy with the zealous pursuit of the dubious ends of clients by relentlessly advancing whatever marginally, colorable claim that might exist." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351, 2011 WL 4433570, at *5 n. 7 (S.D. Fla. Sept. 21, 2011); *see also Collar*, 2018 WL 3328682, at *11. Here, Plaintiff's counsel relentlessly pursued the dubious ends of her client by advancing a claim that was not even marginally colorable under any objective attorney's interpretation of Eleventh Circuit Title VII precedent. *See id.* Examples of Plaintiff's counsel's recklessness include:

- Filing the lawsuit despite the MDCHR Determination's detailed findings which plainly demonstrated there was no grounds for a discrimination or a retaliation claim
- Maintaining the lawsuit even though discovery did not reveal any facts to make it a viable case, and disregarding well-established Title VII precedent
- Proffering of testimony from the Plaintiff during the evidentiary hearing that had no relevance to the claims
- Filing severely deficient statements of material facts despite this Court's admonishments
- Making evidentiary arguments that lacked any legal support whatsoever

- Filing suit without adequate investigation; no witnesses corroborated plaintiff's claims

These factors establish Plaintiff's counsel knowingly or recklessly raised frivolous arguments that were unsupported by any credible evidence. Had Plaintiff's counsel objectively reviewed the MDCHR Determination and Plaintiff's bare allegations under the lens of Eleventh Circuit precedent, she would have quickly determined that the claims were untenable. However, Plaintiff's counsel continued to litigate this case even though it was factually and legally groundless at the outset. Consequently, sanctions against Ms. Saavedra are appropriate under 28 U.S.C. § 1927 and this Court's inherent authority.

### 3.  De Moya's Attorneys' Fees are Reasonable

The starting point in any determination for an objective estimate of the value of an attorneys' services is to multiply the hours reasonably expended by a reasonable hourly rate. *See, e.g.*, *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Sloan*, 2020 WL 5902486, at *6. "The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation omitted). To support the reasonableness of the fees sought, enclosed herein are supporting declarations from De Moya's fees expert, Matthew Dietz, and the lead attorney on this case, Reginald Clyne. *See* Ex. 1 and 2. The district court itself is presumed to be an expert in reviewing reasonableness of the hourly rate and the number of hours expended on litigation for attorneys' fees. *Norman* at 1303. Accordingly, when awarding fees, the Court is required to provide an order that articulates the decisions it made, shows the calculations, and otherwise allows for "meaningful review." *See Am. Civ. Liberties Union of Ga v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999); *Norman*, 836 F.2d at 1304.

The total amount of attorneys' fees billed on this matter as of September 2023 is $252,990.

Enclosed with this motion are the invoices incurred for this matter up until September 2023 attached herein as Ex. 3. On September 20, 2023, De Moya's counsel served Plaintiff's counsel with a draft version the motion for attorneys' fees and sanctions and supporting invoices pursuant to Local Rule 7.3(a).[2] Plaintiff's counsel did not provide any written objections to the time entries or the amount of fees sought, as required by Rule 7.3(a). Instead, on October 21, 2023, Plaintiff's counsel communicated to the undersigned her belief the fees motion is premature. As set forth below, the attorneys' fees incurred on this matter are reasonable and should be awarded in full.

### a. De Moya's Counsel Charged Reasonable Hourly Rates

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (citation omitted). The hourly rates billed in this case are reasonable based on the credentials, skills, experience, and the caliber of the work performed by the attorneys on this matter. *See Ariza v. Casablanco Mattress & Furniture Gallery, LLC*, 22-CV-23759, 2023 WL 246689, at *3 (S.D. Fla. Jan. 18, 2023) ($425 hourly rate is reasonable); *Lakhani v. 900 Sw., LLC*, 22-CV-23220, 2023 WL 1965056, at *3 (S.D. Fla. Feb. 13, 2023) (hourly rate of $415 is reasonable); *Goldwire v. City of Riviera Beach, Florida*, 18-81285-CIV, 2022 WL 1050331, at *2 (S.D. Fla. Mar. 3, 2022), *appeal dismissed*, 22-10995-J, 2022 WL 2346521 (11th Cir. Apr. 19, 2022) ($400 hourly fee is reasonable).

De Moya is represented by Reginald J. Clyne, Chanelle Artiles, Andres F. Vidales, and Michael Birts, with Quintairos, Prieto, Wood & Boyer, P.A. Mr. Clyne is a partner with more than 36 years of experience as a trial attorney and he has successfully tried over 45 civil jury trials in federal and state court. He is the chair of the firm's employment practice group, and he has

---

[2] De Moya's counsel provided Plaintiff's counsel copies of additional draft invoices from July 2023 to September 2023 on September 26, 2023.

experience handling a wide span of commercial litigation matters, including Title VII and other civil rights actions, whistleblower claims, Section 1983 claims, construction litigation, contract disputes, educational institution claims, and toxic tort litigation. Ms. Artiles is an associate with over five years of experience in defending employers in Title VII and FCRA actions, as well as handling complex commercial matters in various practice areas. Mr. Vidales and Mr. Birts are both new attorneys who handle employment law and other assorted commercial litigation matters.

The hourly rates charged in this matter are: $450 for Mr. Clyne, $300 for Ms. Artiles, and $250 for Mr. Vidales, and Mr. Birts. These rates are below the market rates the rates the attorneys who worked on this matter typically charge for their services in commercial matters and are reasonable for the credentials of each attorney and the caliber of work performed.

### b.  De Moya's Counsel Expended a Reasonable Number of Hours

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended in the litigation. *See Burlington*, 505 U.S. at 562. In determining the number of hours "reasonably expended," the Supreme Court requires fee applicants to exercise "billing judgment." *Hensley*, 461 U.S. at 434 (citation omitted). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

De Moya's attorneys have spent 892.2 hours defending this litigation as of the last bill issued. The amount of time spent on this case is in large part due to Plaintiff's litigation tactics. Defense counsel had to engage in multiple discovery conferrals, handle more than 11 depositions, and address Plaintiff's convoluted allegations and frivolous arguments raised throughout numerous

motions. *See Trump v. Clinton*, No. 22-14102-CV-MIDDLEBROOKS, 2023 U.S. Dist. LEXIS 11432, at *55 (S.D. Fla. Jan. 19, 2023) (noting case required "excellent lawyering to defend against the overwhelming number of convoluted allegations and frivolous claims"). In addition, Plaintiff's repeated failure to comply with Local Rule 56.1, the submission of unnecessary materials, such as non-parties' phone records, with his summary judgment response, and filing of a motion for reconsideration also added to the amount of time spent in this matter.

<u>**CONCLUSION**</u>

De Moya respectfully requests that this Court award De Moya its attorneys' fees as the prevailing defendant under 42 U.S.C. § 1988, and as sanctions against Plaintiff and his counsel, pursuant to 28 U.S.C. § 1927, and this Court's inherent powers for the initiation and maintenance of this frivolous lawsuit and grant any other further relief it deems just and proper.

<u>**LOCAL RULE 7.3 CERTIFICATE OF GOOD FAITH CONFERENCE**</u>

I hereby certify that in compliance with Local Rules 7.1 and 7.3, counsel for De Moya made conferred with Plaintiff's counsel on multiple occasions, by email and by phone conversations, in a good faith effort to resolve the matters raised in this motion by agreement. Plaintiff's counsel has declined or failed to respond to such efforts. Defendant's counsel has served Plaintiff's counsel a copy of this motion on September 20, 2023, as required by L.R. S.D. Fla. 7.3(b).

Dated: October 25, 2023                      Respectfully submitted,

                                   By:    /s/ *Chanelle Artiles*
                                          Reginald J. Clyne, Esq.
                                          Florida Bar No.: 654302
                                          Chanelle Artiles, Esq.
                                          Florida Bar No.: 1006402
                                          QUINTAIROS, PRIETO, WOOD &
                                          BOYER, P.A.
                                          *Attorneys for Defendant, The De Moya Group, Inc.*
                                          9300 S. Dadeland Blvd., 4th Floor

21

Miami, FL 33156
Tel: (305) 670-1101
Fax: (305) 670-1161
Email: rclyne.pleadings@qpwblaw.com
reginald.clyne@qpwblaw.com
chanelle.artiles@qpwblaw.com
andres.vidales@qpwblaw.com
cecilia.quevedo@qpwblaw.com

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, undersigned counsel declares under penalty of perjury that, having personal knowledge of the facts set forth above, the fees itemized in the bills attached to this Motion were actually incurred in defense of this case and were reasonable and necessary to provide a legal defense on behalf of Defendant, The De Moya Group, Inc.

Executed on the 25th day of day of October 2023.

/s/ *Chanelle Artiles*
Chanelle Artiles