**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-22343-KMM

JORGE MONTEAGUDO
ALBURQUERQUE,

      Plaintiff,

v.

THE DE MOYA GROUP, INC.,

      Defendant.

_____ /

**<u>REPORT AND RECOMMENDATIONS</u>**

**THIS CAUSE** is before the Court upon Defendant The De Moya Group, Inc.'s ("Defendant") Motion for Sanctions (ECF No. 58) against Plaintiff Jorge Monteagudo Alburquerque ("Plaintiff") and his counsel, under Federal Rule of Civil Procedure 11 (the "Rule 11 Motion"). Plaintiff and his counsel filed a Response in opposition (ECF No. 64), to which Defendant filed a Reply (ECF No. 78). The matter has been referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law with respect to the Motion for Sanctions. (ECF No. 59). I convened an evidentiary hearing on the Rule 11 Motion, first on May 9, 2023, and again on September 12, 2023. Plaintiff and his counsel filed a Closing Brief (ECF No. 112-1) after the September 12 evidentiary hearing. The Rule 11 Motion is now ripe for review. Having reviewed the Motion, Response, Reply, the evidence and argument advanced at both hearings, Plaintiff's

1

Closing Brief, the record, and being otherwise fully advised, the undersigned respectfully **RECOMMENDS** that the Motion be **DENIED** for the reasons that follow.

## I.      BACKGROUND

### A.      Procedural History

Plaintiff brought this civil rights action against Defendant, alleging four claims of discrimination based on race and national origin, under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act ("FCRA"), Florida Statutes §§ 760.01–760.11, and two claims for retaliation under those same statutes, based on conduct occurring in his workplace.   (ECF No. 1).   The Complaint was signed by Plaintiff's attorneys Nathaly Saavedra ("Saavedra") and Juan J. Perez of the law firm PereGonza The Attorneys, PLLC, and filed on July 26, 2022.

On August 15, 2022, Defendant filed a Motion to Dismiss and Motion for More Definite Statement (ECF No. 9), arguing that Plaintiff's assertions of race and national origin discrimination were conclusory because the Complaint lacked sufficient detail.   In response to Defendant's Motion to Dismiss, Attorney Saavedra, on behalf of Plaintiff, signed and filed the Amended Complaint on August 29, 2022.   (ECF No. 13).

Broadly, Plaintiff alleged in his Amended Complaint that his employment was terminated in retaliation for reporting complaints of discrimination to Defendant.   Plaintiff alleged in the Amended Complaint that he is a Hispanic, Cuban male who was employed by Defendant as a laborer from 2019 through his termination on October 7, 2020.   Plaintiff claimed he was subject to discriminatory and disrespectful comments about Cubans, micromanaged, and spoken to in a condescending tone by a supervisor, Noel Leon, who did not speak to non-Cubans in a condescending tone.   Plaintiff asserts he complained of the discriminatory treatment to

Defendant's owner, Christopher De Moya, in September 2020. As a result, Plaintiff was reassigned to a different project under the supervision of Manny Comes; Comes confronted Plaintiff and told him he had been warned by Noel Leon that Plaintiff was a "problematic" employee.

The Amended Complaint alleged that on October 2, 2020, Noel Leon's son, Alejandro Leon, physically assaulted Plaintiff at Plaintiff's jobsite. Plaintiff reported the incident to Comes but Alejandro Leon was not reprimanded. Plaintiff filed a police report three days later, on October 5, 2020. Plaintiff also complained to a superintendent named Jerry Nasso about the disparate treatment he was facing. Defendant's human resources representative, Elena Valdez, contacted Plaintiff on October 7, 2020 and advised him that Defendant would be investigating his complaint. That same day, however, Plaintiff was written up by Nasso for sleeping on the job. Plaintiff claims other non-Cuban employees were not disciplined for sleeping in their cars while on the clock. Plaintiff refused to sign the write-up and was terminated on October 7, 2020.

Based on these facts, the Amended Complaint asserted one claim, for retaliatory termination for complaining of discrimination, under Title VII and the FCRA. In filing the Amended Complaint, Plaintiff removed his Title VII and FCRA claims for discrimination based on national origin and race that he had raised in his original Complaint. Defendant answered the Amended Complaint on September 8, 2022. (ECF No. 16).

On March 20, 2023, Defendant moved for summary judgment. (ECF No. 45). After the conclusion of briefing on the Motion for Summary Judgment but before the District Court had rendered a decision, Defendant filed the instant Rule 11 Motion. The Rule 11 Motion was held in abeyance pending disposition of Defendant's summary judgment motion. (ECF No. 84).

On May 16, 2023, the District Court granted Defendant's Motion for Summary Judgment. (ECF No. 87).  The District Court found that Plaintiff had adduced evidence of an adverse employment action and assumed without deciding that Plaintiff had established a *prima facie case* of retaliation.[1]  With the burden shifting to Defendant, the District Court further found that Defendant had advanced evidence of a legitimate non-retaliatory reason for Plaintiff's termination: Plaintiff's history of poor work performance and safety lapses, which included finding Plaintiff asleep atop a roller (a large piece of road-working machinery).  As for pretext, the District Court found that Plaintiff had not met his burden of identifying evidence in the record establishing Defendant's reasons for terminating Plaintiff were pretextual.  Plaintiff moved for reconsideration under Federal Rule of Civil Procedure 59.  (ECF No. 94).  The motion was denied.  (ECF No. 100).

### B.    Evidence Presented at the Hearings

The Rule 11 Motion is now ripe for review.  To resolve the Rule 11 Motion, I convened an evidentiary hearing, first on May 9, 2023.[2]  A continued evidentiary hearing was held on September 12, 2023.

At the May 9, 2023 hearing, the Secretary and Treasurer of Defendant, Alisa De Moya, testified on direct examination that the founders of The De Moya Group are all Cuban or Cuban-American and the company's workforce is approximately 70 percent or 80 percent Hispanic. According to Alisa De Moya, Plaintiff had not complained of discrimination when he complained to Christopher De Moya.  Alisa De Moya testified that Plaintiff had complained of disrespect,

---

[1]  The District Court found that Plaintiff's termination on October 7, 2020 was evidence of an adverse employment action.  The District Court rejected Plaintiff's argument that his confrontations with Comes and Alejandro Leon were adverse employment actions.

[2]  The Court took the testimony of one witness at the May 9 hearing for the convenience of the Parties and the witness. Evidence relating to the Rule 11 Motion later closed at the September 12 hearing.

though she later conceded on cross-examination that she does not speak Spanish (the only language Plaintiff speaks) and was not part of the conversation between Christopher De Moya and Plaintiff. Alisa De Moya testified that she responded to Plaintiff's EEOC charge when Defendant received it. She averred on direct examination that her investigation did not reveal any evidence that corroborated Plaintiff's allegations. In responding to the EEOC charge she submitted Plaintiff's discipline history, demographic information about Defendant's workforce, and statements from employees and supervisors regarding Plaintiff's claim. She was unable to recall if this information was also provided to Plaintiff's counsel who was representing him at the time and explained on cross-examination that her involvement with the EEOC's investigation was minimal.

On September 12, 2023, Plaintiff offered the testimony of his attorney, Nathaly Saavedra. Saavedra testified that she conducted the intake interview with Plaintiff and believed him to be credible because the information he provided was consistent with and was substantiated by the police report. Prior to the filing of the Complaint and Amended Complaint, Saavedra's office filed Plaintiff's charge of discrimination with the EEOC. She listened to the investigator's interview with Plaintiff and recalled that Plaintiff had provided specific examples of why he believed he had been discriminated against. This is corroborated by the investigator's handwritten notes of the interview, obtained after the filing of the Amended Complaint pursuant to a public records request. Plaintiff was asked in his interview to provide specific examples of why he believed he was discriminated against; the investigator's notes suggest Plaintiff answered that Noel Leon would "speak negatively against Cubans" and that Cubans were described with the Spanish expletive, "comemierdas." (ECF No. 111-16 at 95–96). The investigator's notes further suggest that, when asked if Plaintiff had reported Noel Leon and mentioned that he had felt discriminated against, Plaintiff answered that he had complained to Christopher De Moya that he was having problems

with Noel Leon.  The investigator's notes state that Noel Leon told Plaintiff that "Cubans don't work" and that Plaintiff requested a transfer.  (ECF No. 111-16 at 95, 97).  When asked about the Miami-Dade Commission on Human Rights' ("MDCHR") December 1, 2021 Statement of Determination (ECF No. 111-19) finding no probable cause for a Title VII retaliation claim, Saavedra testified that she disagreed with the decision.  She noted that in eight years of practice she has only received two findings of probable cause.

Plaintiff testified at the September 12 hearing, as well.  His testimony was difficult to follow and rather undirected.  When questioned by the Court, Plaintiff represented that though he did not take notes of his EEOC interview, he remembered what he told the EEOC investigator because it "marked" him.  Plaintiff generally testified that he believed he had been treated differently based on comments relating to his inability to speak English and because he was Cuban. His testimony suggested that he informed the EEOC investigator of this belief and that he had reported this complaint to Christopher De Moya.  This was corroborated by review of the investigator's handwritten notes.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 11 imposes an affirmative duty on litigants to make a reasonable inquiry into the legal and factual basis of a pleading before submitting it to the court for consideration.  Fed. R. Civ. P. 11(b).  Rule 11 governs any pleading, written motion, or other paper filed with the court, and applies equally to attorneys, law firms, and parties.  Fed. R. Civ. P. 11(b).  When an attorney files a pleading in federal court, the attorney signs the pleading to certify that, among other things, (1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law or a nonfrivolous argument to change existing law;

and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery. Fed. R. Civ. P. 11(b).

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting 2 James Wm. Moore *et al.*, Moore's Federal Practice § 11.03 (3d ed. 2010)). In assessing whether Rule 11 sanctions are warranted, the Court must first determine whether the party's claims are objectively frivolous and if so, whether the person who signed the pleadings should have been aware that they were frivolous. *Id.*

Because Rule 11 sanctions function to deter rather than punish conduct, motions seeking relief under Rule 11 cannot be filed without first being served on the directed party. Fed. R. Civ. P. 11(c)(2). The party then has a safe harbor period of twenty-one days to withdraw or correct the challenged paper. *Peer*, 606 F.3d at 1315; *see also* Fed. R. Civ. P. 11(c) advisory committee's note to 1993 amendment (explaining that service of the motion was designed to put the party on notice and the moving party must wait a minimum of twenty-one days before filing its motion). A party will only be subject to Rule 11 sanctions if it refuses to either withdraw that position or acknowledge that it does not have evidentiary support for the particular allegation. *Peer*, 606 F.3d at 1315. Upon termination of the twenty-one day safe harbor period, the moving party may file the motion.

## III.  DISCUSSION

Defendant seeks to impose Rule 11 sanctions against Plaintiff and his counsel for "filing and maintaining" this action and because Plaintiff's counsel should have known that this action was meritless before filing it. Defendant first argues in its Rule 11 Motion that this action was objectively frivolous because Plaintiff fails to meet his burdens at the different steps of the

*McDonnell Douglas* burden-shifting framework applied at the summary judgment stage. Specifically, with respect to Plaintiff's *prima facie* case of retaliation in the first step of the burden-shifting framework, Defendant argues there was no factual basis to support that (i) Plaintiff engaged in a protected activity, based on his deposition testimony that he complained he had been "disrespected," or that (ii) there was a causal connection between Plaintiff's complaint and his termination, as the supervisor who terminated Plaintiff was not the individual Plaintiff had complained to. With respect to the third step of the burden-shifting framework, Defendant argues that (iii) Defendant's proffered legitimate non-retaliatory reason for Plaintiff's termination was pretextual, because Plaintiff was terminated for falling asleep atop a roller. Defendant further argues that Plaintiff's counsel failed to make a reasonable inquiry into Plaintiff's retaliation claim and later continued to prosecute this suit despite the evidence showing the claim was frivolous, in light of the MDCHR's finding of no probable cause.

### A.   Defendant May Not Seek Sanctions Based on the Filing of the Initial Complaint

First, a procedural matter.[3] Defendant's Rule 11 Motion seeks sanctions for both bringing and maintaining this action. Defendant makes much of how the initial Complaint was deceptive for advancing claims of race and national origin discrimination while leaving out or misrepresenting the race and national origin of Defendant's employees.[4] Defendant makes clear in its Reply that its "Rule 11 Motion is not solely based on the original complaint. Rather,

---

[3] Plaintiff and Saavedra assert the Rule 11 Motion Defendant filed differs from the draft served on them prior to the safe-harbor period, citing three pages for comparison. To the extent the filed motion includes factual averments not raised in the safe-harbor draft, they have not been considered by the Court.

[4] The Rule 11 Motion suggests it is incredulous that Plaintiff, who is Cuban, could bring this suit, initially raising Title VII and FCRA race and national origin discrimination claims, against a company owned and operated by Cuban-Americans and which employs a significant number of Hispanic Americans.

Defendant is seeking sanctions due to Plaintiff's filing of the initial complaint and maintaining this suit, even though its frivolity was evident from the start."  (ECF No. 78 at 1).

Defendant may not seek sanctions based on the filing of the Complaint because the Complaint is no longer operative.  As noted above, Plaintiff filed a six-count Complaint alleging four claims of race and national origin discrimination under Title VII and the FCRA, and two claims for retaliation under those statutes.  After Defendant moved to dismiss, Saavedra signed and filed the Amended Complaint on behalf of Plaintiff.  The Amended Complaint, which replaced the Complaint, omitted Plaintiff's race and national origin discrimination claims and retained only Plaintiff's retaliation claims.  Plaintiff and his counsel could not have withdrawn discrimination claims in a non-operative pleading in response to the Rule 11 Motion when those claims were already abandoned upon the filing of the Amended Complaint.  *See Geico Gen. Ins. v. Hampel*, No. 11-61620-CIV, 2012 WL 204284, at *2–3 (S.D. Fla. Jan. 6, 2012), *report and recommendation adopted*, No. 11-61620-CIV, 2012 WL 204176 (S.D. Fla. Jan. 24, 2012) ("[T]he defendant argues that the safe harbor provision of Rule 11 is inapplicable because the instant Motion was not filed until after the case was dismissed, and there was no offending pleading or paper for the plaintiff to withdraw.  This argument only serves to prove the plaintiff's point.  The defendant should have served its motion for sanctions, which clearly was directed against the plaintiff's complaint, prior to the dismissal of this action.").

In short, Defendant's Rule 11 Motion cannot be based on the filing of the withdrawn Complaint.  The Court's focus here is thus on the signing and filing of the Amended Complaint.

## B.    Whether Plaintiff's Retaliation Claims in the Amended Complaint Were Objectively Frivolous

Defendant moves for Rule 11 sanctions on the ground that Plaintiff and his counsel filed this action without a reasonable factual basis and later maintained the suit after it became clear that

Plaintiff's evidence was not sufficient to establish a *prima facie* case of retaliation under Title VII and the FCRA.[5]  Defendant claims that no Eleventh Circuit case has found a *prima facie* case of retaliation based on complaints of being "disrespected" by a supervisor.

To determine whether Rule 11 has been violated, a court analyzes two prongs: (1) whether the party's claims are objectively frivolous, in view of the facts or law; and (2) whether the person who signed the pleadings should have been aware that they were frivolous—that is, whether the person would have been aware had they made a reasonable inquiry.  *Peer*, 606 F.3d at 1311.  The first prong considers what was reasonable to consider at the time the subject of the sanction motion was filed.  If the first prong is proved, then a court analyzes the second prong: the reasonable inquiry.  *See Edgefield Holdings, LLC v. Adams*, No. 15-MC-23666, 2016 WL 7210441, at *2 (S.D. Fla. Dec. 13, 2016).  The second prong focuses on whether the lawyer should have been aware that the claims were frivolous.  *Id.* (quoting *Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1238–39 (S.D. Fla. 2008)).

Defendant's request for sanctions asserts lack of a factual basis for Plaintiff's Title VII and FCRA retaliation claims.  To the extent Defendant asserts lack of a legal basis, it does so on the ground that no case has found retaliation on facts as thin as those presented here.  "A complaint is factually groundless and merits sanctions where the plaintiff has absolutely no evidence to support its allegations."  *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995).  If, however, the evidence supporting the claim is reasonable, but simply "weak" or "self-serving," sanctions cannot be imposed.  *See Davis v. Carl*, 906 F.2d 533, 536–37 (11th Cir. 1990).  Because the subject of Defendant's Rule 11 Motion is the Amended Complaint, the Court assesses whether there was

---

[5] "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones."  *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (citing *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998)).

evidence to support Plaintiff's retaliation claims under Title VII and the FCRA at the time the Amended Complaint was filed.  And because Defendant argues that Plaintiff testified at deposition only that he was disrespected (and not that he was discriminated against), the Court also assesses whether maintaining the suit was at that point no longer tenable.  *Peer*, 606 F.3d at 1311 ("For example, the advisory committee note of 1993 states that Rule 11 was amended to emphasize 'the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable.'  Fed. R. Civ. P. 11 advisory committee note of 1993.  The commentary specifically notes that 'if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.'").

To conduct this inquiry, the Court assesses the frivolity of Plaintiff's retaliation claim using the three-step *McDonnell Douglas* burden-shifting framework.[6]  At the first step, an employee must show "a prima facie case of retaliation by proving that [he] engaged in statutorily protected conduct; [he] suffered an adverse employment action; and a causal relation exists between the two events.  If an employee establishes a prima facie case, the employer may proffer a 'legitimate, nonretaliatory reason' for the adverse action.  If the employer does so, the employee must prove that the employer's proffered reason was a pretext for retaliation."  *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023) (citing and quoting *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021)).

---

[6] Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any [unlawful employment] practice," or because of participation in a Title VII investigation or hearing. 42 U.S.C. § 2000e–3(a).  "A violation of the anti-retaliation provision can be established by direct or circumstantial evidence."  *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). When presenting a retaliation claim through circumstantial evidence, the *McDonnell Douglas* burden-shifting framework is "not the only way to prove retaliation; instead, it is *one* way to prove retaliation with circumstantial evidence."  *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023).  A Title VII retaliation claim may also be established through a "convincing mosaic" of circumstantial evidence, sufficient to raise a reasonable inference of retaliatory intent.  *Id.*

The District Court assumed without deciding at the summary judgment stage that Plaintiff had established a *prima facie* case of retaliation before determining that Plaintiff had not met his burden of showing that Defendant's proffered reason for his termination was pretext for retaliation. Before making this finding, the District Court first found that Plaintiff had adduced evidence of an adverse employment action, the second requirement of Plaintiff's *prima facie* case: Plaintiff was terminated. Thus, only protected activity and causal connection are at issue here.

### 1.   Protected Activity

Defendant first argues that no factual basis existed to support that Plaintiff engaged in a protected activity.

As to protected activity, "[t]he making of informal complaints or the use of an internal grievance system is protected conduct under the opposition clause." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1144 (11th Cir. 2020). The Eleventh Circuit has explained:

> [Title VII's] protections only reach individuals who "explicitly or implicitly communicate[ ] a belief that the practice constitutes unlawful employment discrimination." EEOC Compl. Man. (CCH) § 8–11–B(2) (2006).
>
> In addition, a plaintiff is required to show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). This burden includes both a subjective and an objective component. *Id.* That is, the plaintiff must not only show that she subjectively (*i.e.*, in good faith) believed the defendant was engaged in unlawful employment practices, but also that her "belief was objectively reasonable in light of the facts and record present." *Id.* (emphasis in original); *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). The objective reasonableness of her belief is measured by reference to controlling substantive law. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008). Even so, the plaintiff is not required to prove that the discriminatory conduct complained of was actually unlawful. *Little*, 103 F.3d at 960. The conduct opposed need only "be close enough to support an objectively reasonable belief that it is." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

*Furcron*, 843 F.3d at 1311 (footnote omitted) (second alteration in original).

The record reflects that there was at least some evidentiary basis to support Plaintiff's retaliation claims at the time the Amended Complaint was filed.  Saavedra testified at the September 12 hearing that she had conducted the intake interview with Plaintiff when he contacted her firm.  She stated that she found Plaintiff's allegations credible because the information he reported to her was consistent with the police report that Plaintiff filed in relation to his physical altercation with Alejandro Leon.  That police report, which was admitted as Plaintiff's Exhibit 24 at the September 12 hearing, is dated October 5, 2020 and states that Plaintiff had requested to be reassigned from under Noel Leon's supervision because Noel Leon had "previously made derogatory comments toward" Plaintiff.  (ECF No. 111-11 at 4).

Saavedra testified that her firm filed Plaintiff's charge of discrimination with the EEOC, and she listened to Plaintiff's telephonic interview with the investigator from the MDCHR, which occurred more than 1 year before the filing of both the Complaint and Amended Complaint. Saavedra testified at the September 12 hearing that, when Plaintiff was asked by the investigator why he believed he was discriminated against, Plaintiff provided specific examples, including comments made by Noel Leon about Cubans being lazy.

Saavedra's testimony at the September 12 hearing was corroborated by the case file for Plaintiff's EEOC charge of discrimination, which Saavedra's firm obtained pursuant to a public records request in November 2022 after the filing of the Amended Complaint.  The case file was admitted without objection at the September 12 hearing as Plaintiff's Exhibit 43.  It contains a list of Rebuttal Questions from an April 8, 2021 interview of Plaintiff.  Included among those questions, Plaintiff was indeed asked in Question 3 to provide specific examples of the race and national origin discrimination he experienced.  (ECF No. 111-16 at 95).  The investigator's handwritten notes, also dated April 8, 2021, suggest that Plaintiff answered with, "Noel would

13

speak negatively about Cubans," and with the expletive, "You Cubans are comemierdas." (ECF No. 111-16 at 96). In Question 10, Plaintiff was asked whether he had reported Noel Leon to anyone else in the company and whether Plaintiff mentioned that he had felt discriminated against. The handwritten notes suggest Plaintiff answered that he had told Christopher De Moya, the owner of the company, that Plaintiff was "having problems w/ Noel and he said 'Cubans don't work.'" (ECF No. 111-16 at 97).

Though the MDCHR issued a decision adverse to Plaintiff, the evidence available at the time the Amended Complaint was filed included Plaintiff's informal complaint to Defendant's owner that he felt he was being discriminated against by Noel Leon because Noel Leon was making derogatory statements about Cubans. The Court cannot say there was *no* evidence of a protected activity, such that the retaliation claim was objectively frivolous at the time the Amended Complaint was filed.

As to maintenance of the case, evidence developed during discovery suggested that Plaintiff's retaliation claim was exceptionally weak. There was, nonetheless, some evidence that would have tended to support the claim. Defendant focuses on Plaintiff's testimony from his first deposition in which Plaintiff testified that he complained Noel Leon had been disrespectful to him. At Plaintiff's second deposition, Plaintiff testified that he complained Noel Leon had been disrespectful to Plaintiff *and* had discriminated against Plaintiff because Plaintiff did not speak English and was Cuban. Though there was *substantial* testimonial evidence from defense witnesses purporting to rebut Plaintiff's testimony, there was evidence that tended to support Plaintiff's retaliation claim after the Amended Complaint was filed, though minimal. While Plaintiff's prior inconsistent statements and conclusory testimony called his credibility into question, Plaintiff did not expressly or impliedly recant that he reported he had felt discriminated

against.  Rather, Plaintiff's evidence at summary judgment for his protected activity included a self-serving affidavit in which Plaintiff averred that Noel Leon treated Plaintiff differently because Plaintiff was a Cuban immigrant who did not speak English, and that Plaintiff told this to Christopher De Moya.  (ECF No. 50-48 at 1–2).

In essence, after the Amended Complaint had been filed, Plaintiff's retaliation claim was weak, tended towards conclusory, and hinged on credibility determinations with respect to Plaintiff's self-serving testimony.  But there was nonetheless some evidentiary support for the claim.  *Davis*, 906 F.2d at 536–37.

## 2.   Causal Connection

Defendant next argues that no legal or factual basis existed to support a causal connection between Plaintiff's protected activity and his termination.  First, Defendant argues that Plaintiff submitted a complaint to Christopher De Moya that was no more than a complaint about disrespect and did not amount to a protected activity.  The Court rejects this argument for the reasons above.  Second, Defendant argues that the decision-maker behind Plaintiff's termination, Jerry Nasso, was not aware of any of the specific details regarding Plaintiff's complaint to Christopher De Moya and thus there was no evidence to support a causal connection.

To demonstrate a causal connection, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."  *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted).  "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse action."  *Adams v. City of Montgomery*, 569 F. App'x 769, 773 (11th Cir. 2014).  But mere temporal proximity

between the protected conduct and the materially adverse action taken by the employer must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

In this case, the evidence developed by the time the Amended Complaint was filed, and known throughout the case, included that Plaintiff purportedly complained of discrimination in early September 2020 and that he was terminated on October 7, 2020. This evidence would establish Plaintiff's termination was in temporal proximity, approximately one month, of his complaint to Christopher De Moya. *Cf. id.* at 1364 ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). That there was intervening conduct to support Plaintiff's termination goes to Defendant's proffered legitimate non-retaliatory reason for terminating Plaintiff and not to whether Plaintiff had evidence of a causal connection at the time the Amended Complaint was filed.

### 3.     Pretext

Defendant also argues that Plaintiff did not have a factual or legal basis to challenge Defendant's legitimate, non-retaliatory reason for Plaintiff's termination; that is, Plaintiff had no evidentiary basis to show pretext. Defendant asserts that Plaintiff's simple denial that he was not sleeping on the roller is not sufficient to overcome Defendant's proffered, legitimate non-retaliatory reason for his termination. At summary judgment, the District Court rejected Plaintiff's argument that Defendant's proffered reason was a pretext for retaliation because there were inconsistencies in the reason and because Defendant did not follow its own disciplinary policy.

As the Eleventh Circuit recently summarized:

> To prove that an employer's explanation is pretextual, an employee must cast enough doubt on its veracity that a reasonable factfinder could find it "unworthy of credence." *Gogel v. Kia Motors Manuf. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (citation and internal quotation marks omitted). If the employer's stated reason is legitimate—in other words, if it might motivate a reasonable employer to act—then the employee must address "that reason head on

and rebut it." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (citation and internal quotation marks omitted). An employee cannot rebut a reason "by simply quarreling with the wisdom of " it. *Id.* (citation and internal quotation marks omitted). Instead, she must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the justification. *Id.* (citation omitted).

*Berry*, 84 F.4th at 1307–08.

Though Plaintiff's evidence of causation could be used to prove Defendant's reason was pretext, the intervening misconduct was enough to sever the causal inference here. *See id.* at 1309. Plaintiff's other evidence of pretext included Plaintiff's testimony at deposition that Comes never issued verbal warnings to Plaintiff as claimed. (ECF No. 50-2 at 34). Plaintiff also testified at deposition that, on the day Plaintiff was fired, Nasso had asked Plaintiff to sign a blank disciplinary form and that Nasso told Plaintiff that Plaintiff would be fired if he refused to sign it. (ECF No. 50-2 at 39). Nasso later indicated in that form that he had found Plaintiff sleeping atop the roller. At summary judgment, Plaintiff filed an affidavit attesting to this same version of events. (ECF No. 50-48 at ¶ 10).

Although the District Court found that Plaintiff had not established pretext and thus Plaintiff ultimately did not succeed in overcoming Defendant's proffered reason, the finding does not necessarily render the filing of the Amended Complaint and maintenance of this action objectively frivolous. While self-serving, conclusory, and in hindsight weak, this is not a case where there was absolutely *no* evidentiary basis in support of Plaintiff's claim.

\*\*\*

The Court has very serious concerns about the reasonableness of having persisted in this litigation after Plaintiff's depositions. The evidence of discriminatory action about which Plaintiff could have complained was marginal, and the testimony that supports his claim that he did complain of discrimination is conclusory, at best. Though Saavedra testified that she found

17

Plaintiff's allegations to be credible, having heard his testimony at the hearing, the Court would not have reached the same conclusion. But Rule 11 is not intended to punish attorneys for crediting their clients. In sum, while Defendant's Rule 11 Motion presents an exceptionally close call, any doubt here should be resolved in favor of not sanctioning the attorney, who has demonstrated here some (minimal) basis in fact for bringing and maintaining Plaintiff's claim.

### C.     Whether Plaintiff's Counsel Should Have Been Aware the Amended Complaint Was Objectively Frivolous

If the first prong is proved, then a court analyzes the second prong: the reasonable inquiry. *Edgefield*, 2016 WL 7210441, at *2. The second prong focuses on whether the lawyer should have been aware that the claims were frivolous. *Id.* (quoting *Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1238–39 (S.D. Fla. 2008)). Having found Plaintiff's retaliation claim was not objectively frivolous, though in hindsight it was exceptionally weak, conclusory, and self-serving, the Court need not assess whether Saavedra should have been aware that Plaintiff's Title VII and FCRA retaliation claims were frivolous.

### D.     Plaintiff's Request for Rule 11 Sanctions

In the Response, Plaintiff and Saavedra cross-move for an award of Rule 11 sanctions against Defense counsel for bringing the Rule 11 Motion for an improper purpose.

Rule 11 states that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). The advisory committee notes to Rule 11 explain that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment. The Rule obviates the need for filing a cross-motion. *Id.* "[W]hen a party files a Rule 11 motion for an improper purpose, the court may award fees to the target of the motion." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014).

Plaintiff and Saavedra have not met their burden of showing that the Rule 11 Motion itself warrants Rule 11 sanctions. Though Plaintiff had *some* evidentiary basis for his retaliation claim, the claim as noted throughout was exceptionally weak to the extent that this Rule 11 Motion presented a close question. Moreover, the request for cross-sanctions is relatively conclusory.

## IV.     RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that:

(1)     Defendant's Motion for Sanctions (ECF No. 58) should be **DENIED**.

(2)     Plaintiff's request for Rule 11 sanctions against Defendant should be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 2nd day of February, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable K. Michael Moore
Counsel of record

19